KATHY BAZOIAN PHELPS (155564)
*kphelps@diamondmccarthy.com*
DIAMOND MCCARTHY LLP
1999 Avenue of the Stars, Suite 1100
Los Angeles, California 90067-4402
Telephone: (310) 651-2997

CHRISTOPHER D. SULLIVAN (148083)
*csullivan@diamondmccarthy.com*
LESLEY ANNE HAWES (117101)
*lhawes@diamondmccarthy.com*
DIAMOND MCCARTHY LLP
150 California Street, Suite 2200
San Francisco, CA 94111
Phone: (415) 692-5200

*Proposed Counsel for Bradley D. Sharp,*
*Permanent Receiver*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION – LOS ANGELES

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Case No. 2:19−cv−02188−DSF−MRW |
| Plaintiff, | **FIRST STATUS REPORT OF PERMANENT RECEIVER BRADLEY D. SHARP [April 1, 2019 through April 9, 2019]** |
| v. | |
| DIRECT LENDING INVESTMENTS LLC, | **Status Conference Set for:** |
| Defendant. | Date:   April 15, 2019<br>Time:   1:30 PM<br>Dept.:   Courtroom 7D<br>Place:  United States District Court<br>           Western Division<br>           350 West 1st Street,<br>           Los Angeles, CA 90012 |

1    Bradley D. Sharp, the Court-appointed permanent receiver (the "Receiver") for

2    the estate of defendant Direct Lending Investments LLC ("DLI"), and Direct

3    Lending Income Fund, L.P., Direct Lending Income Feeder Fund, Ltd., DLI Capital,

4    Inc., DLI Lending Agent, LLC, and DLI Assets Bravo, LLC and their successors,

5    subsidiaries and affiliated entities (collectively, the "Receivership Entity") pursuant

6    to the Preliminary Injunction Order and Order Appointing Permanent Receiver

7    issued April 1, 2019 ("Receiver Order"), Doc. No. 10, hereby submits his First Status

8    Report covering the period from April 1, 2019 through April 9, 2019.

9

10   DATED: April 12, 2019              DIAMOND McCARTHY LLP

11                                      By:   /s/ Kathy Bazoian Phelps
                                              Kathy Bazoian Phelps
12                                            Proposed Counsel for Bradley D. Sharp,
                                              Permanent Receiver
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.    First Week Activities

On the afternoon of April 1, 2019, the Receiver and his deputies from Development Specialists, Inc. ("DSI") met with the management committee of defendant Direct Lending Investments LLC ("DLI") at the DLI headquarters offices located at 550 N. Brand Blvd., Suite 2000, Glendale, CA 91203.  The management committee is comprised of Stephen Ballas, Managing Director and General Counsel of DLI, Andrew Kim, Chief Financial Officer of DLI, and Christopher Bigos, the Chief Investment Officer of DLI.  The Receiver and his team from DSI have been present at the offices daily since April 2, 2019.

### a.    Securing of Books and Records

The entities comprising the Receivership Entity are operating businesses in that their assets consist of portfolios of loans made by the Receivership Entity to third party borrowers, with loans ranging in size from approximately $1 million to approximately $200 million.  The Receivership Entity books and records are almost entirely held in electronic form in the cloud, including the document/data management and email records.  The Receiver has taken steps necessary to preserve the electronic records, including instructing the third parties managing the cloud databases and email records to preserve the electronic backup data and to ensure the data is not overwritten or deleted.  There are very few hard copy records, and the Receiver is in the process of reviewing the electronic and physical records as the Receiver investigates the business and assets of the Receivership Entity.

The Receiver is in the process of sending a notice of the receivership to investors and developing his own website for the case to provide investors and others with copies of the complaint and other pleadings filed in the case as well as any Receiver's Reports and other information related to the investors and their claims.

### b.    Control of Bank Accounts and Funds on Hand at Appointment

Shortly after the initial entry, the Receiver also took control of the bank accounts of the Receivership Entity, including DLI, Direct Lending Income Fund,

L.P., Direct Lending Income Feeder Fund, Ltd., DLI Capital, Inc., DLI Lending Agent, LLC, and DLI Assets Bravo, LLC.   In addition, the Receiver took control and secured a bank account in the name of DLI Assets, LLC, which is wholly owned by DLI Capital, Inc.  All bank accounts have been secured, and the Receiver has opened new accounts as appropriate.

The Receiver took control of bank accounts for the following entities and with the following April 1, 2019 balances:

| Entity | 4/1/2019 Total Balance |
| --- | --- |
| Direct Lending Investments, LLC | $1,990,845.94 |
| Direct Lending Income Fund, L.P. | $2,889,941.84 |
| Direct Lending Income Feeder Fund, Ltd. | $704,779.90 |
| DLI Capital, Inc. | $732,165.23 |
| DLI Lending Agent, LLC | $0.00 |
| DLI Assets Bravo, LLC | $25,634,292.02 |
| DLI Assets, LLC | $390,350.79 |
| TOTAL FUNDS SECURED | $29,741,428.70 |

c.   Employees and Cooperation

As of April 1, 2019, when the Receiver made his entry, DLI had 16 employees and one temporary/contract employee.  In addition to the management team, the employees include accounting personnel, employees assigned to investor relations who respond to investor inquiries, personnel involved in loan and related collections, and legal personnel.  The Receiver has provided the investor relations personnel standard information to be given to investors about the status of DLI, its funds and the receivership, including advising investors that additional information will be available on a website being established for the purpose of keeping investors informed of developments in the case.

The members of the management committee and employees of DLI have been helpful, cooperative and responsive to the Receiver's team.

d.    <u>Analysis of Loan Assets Locations and Section 754 Filings</u>

The Receiver's team gathered and analyzed available documents regarding the loan portfolio and the collateral securing the Receivership Entity loans, which consist of loans of varying balances to borrowers throughout much of the United States. The Receiver focused on locations where there are concentrations of loans with a material estimated recoverable value according to the Receivership Entity's books. That list was used to target courts for the Receiver to file notices of the receivership under 28 U.S.C. § 754.

## II.    <u>Preliminary Analysis of Corporate Structure and Business Operations</u>

DLI is the general partner and investment manager of two investment "feeder" funds through which funds from investors were obtained. The feeder funds consist of Direct Lending Income Fund, L.P., a Delaware limited partnership ("Domestic Fund"), which is the entity that obtained investments from persons domiciled in the Unites States, while the offshore investment entity, Direct Lending Income Feeder Fund, Ltd., a Cayman Islands Exempted Company ("Offshore Fund"), obtained overseas investor funds.

The Domestic Fund and Offshore Fund funneled investor funds to DLI which then provided the funds to DLI-related entities, including DLI Capital, Inc., and other DLI entities to be loaned to third parties. In some cases, the DLI entity entered into a co-lending relationship with another lender to make the loan to the third party. The borrowers were lending companies, some of which made loans to small businesses or consumers, with those loans becoming the collateral for the Receivership Entity's loans. Attached to this Report as Exhibit 1 is an organization chart prepared by DLI showing the investment feeder funds and other related entities under its control.

a.    <u>Loan Portfolio</u>

The Receiver is in the process of identifying and evaluating the estate assets but has determined that the primary assets are a portfolio of 26 outstanding loans to

third party borrowers.  The amount listed on the books of the Receivership Entity as being outstanding on the loans is an aggregate of approximately $755 million.  The current value of the loan portfolio is unknown and is being investigated by the Receiver.  The $755 million value, however, is expected to be reduced, as one of the borrowers on the outstanding loans, VoIP Guardian Partners I, LLC ("VoIP GP I"), filed a voluntary petition under Chapter 7 of the Bankruptcy Code on March 11, 2019 in the United States Bankruptcy Court for the Central District of California Case No. 2:2019-bk-12607-BR.  A Chapter 7 Trustee has been appointed in the case, and the Receiver has reached out to the Trustee and/or his counsel to address the collection and enforcement of the underlying loans comprising the collateral for the Receivership Entity's loan to VoIP Guardian.  The Receivership Entity's books show an outstanding loan balance owed by VoIP Guardian in the amount of approximately $192,297,000.

Another of the loans made by the Receivership Entity with a book balance outstanding of approximately $3 million was to Walsh Electrical Contracting Inc., a borrower under an arrangement wherein DLI is a co-lender with The Credit Junction. Walsh is no longer in business.  DLI has employed counsel to help collect the underlying assets collateralizing the loan to Walsh, consisting primarily of accounts receivable, and through counsel and collection personnel has been directing the efforts to recover the balance of the loan.

Some of the loans in the portfolio have provisions potentially obligating the Receivership Entity to advance additional funds under certain specific and defined circumstances.  The Receiver has been sent a number of demands by borrowers under these loans asking for additional funding and claiming that the Receivership Entity is required to advance additional funds.  The largest of these demands is for an additional funding of $5 million.  The Receiver and its proposed counsel are evaluating the loan documentation and these demands to assess the estate's rights and respond to these funding requests.

b.   <u>Investor Summary</u>

Records of the Receivership Entity show the following investor balances from investments in the two feeder funds and a total of 917 onshore United States investors and 58 offshore investors based on investment records and subscriptions through February 1, 2019 as set forth in the following chart:

| | NAV at 11/30/2018 | Investor Count |
|---|---|---|
| Onshore | 577,949,793.22 | 898 |
| Offshore | 179,581,078.20 | 54 |
| Total Combined | 757,530,871.42 | 952 |
| | | |
| | 12/01/2018-2/1/2019 Subscriptions | Investor Count |
| Onshore | 19,068,425.49 | 19 |
| Offshore | 15,028,000.00 | 4 |
| Total Combined | 34,095,425.49 | 23 |

When investors made their investments, they were granted a number of shares based on the aggregate asset portfolio outstanding on the Receivership Entity's books at the time of the investment.  The Receiver is still in the process of reviewing and evaluating the investor information and calculation and allocation of shares in the Receivership Entity's investment records.

**III.   Pending Litigation**

a.   <u>*Marcia Kosstrin Trust and Professional Home Improvements, Inc. Retirement Plan v. Direct Lending Investments, LLC et al.,* Case 2:19-cv-02452 ("Proposed Class Action")</u>

On April 1, 2019, the same date the Receiver Order was entered, a class action complaint was filed in this Court by Marcia Kosstrin Trust and Professional Home Improvements, Inc. Retirement Plan against DLI, Brendan Ross, Bryce Mason, Frank Turner, Rodney Monaoff, and QuarterSpot, Inc.   The Receiver through counsel filed a notice of stay of the action based on Section IX of the Receiver Order. The Receiver through his proposed counsel has communicated with proposed class counsel and is evaluating the action.

b.   *Forefront Partners LLC v. Rodney Omanoff, et al., and Counterclaims,* New York County Supreme Court Index No. 650973/2017 ("Forefront Partners Action")

The Receiver also was notified shortly after his appointment of litigation pending in the New York state court involving DLI.  The Receiver through his proposed counsel filed a notice of stay of the action pursuant to Section IX of the Receiver Order.  The Receiver is still investigating the action; however, the plaintiff has named DLI TC, LLC, an affiliate of DLI, as a defendant, along with DLI, the Domestic Fund, and two VoIP entities, VoIP GP I, which is in a Chapter 7 bankruptcy proceeding, and VoIP Guardian LLC.  DLI TC, LLC filed counterclaims against Forefront Partners LLC. Also named in the action as nominal defendants are Talking Capital LLC, Talking Capital Partners II, LLC and Talking Capital Partners III, LLC, entities which are also named as Third Party Defendants along with other related Talking Capital entities.

At the time the Receiver was appointed, the Receiver was advised that a settlement had been reached among certain of the parties in the Forefront Partners Action which contemplated a dismissal of the action as to certain parties.  The Receiver with counsel determined the settlement may have an adverse effect on the receivership estate and based on the Notice of Stay filed in that action, took the position that the dismissal could not be entered.  The New York Supreme Court did not find that the Court's Receiver Order impeded the continuation of proceedings in that Court and issued an Order to Show Cause as to why the dismissal order should not be entered that required a response by noon on April 9, 2019.  The Receiver's proposed counsel was able to obtain an extension of the deadline to April 16, 2019, and is evaluating the appropriate course of action to address this litigation, the proposed settlement and dismissal, and the Order to Show Cause.

//

//

8

**IV.   Receiver Communications and Notice to Third Parties Concerning the Receivership**

The Receiver has received numerous inquiries from investors, primarily seeking information about the SEC Action, the receivership, the value of their investments and the timing of future distributions to investors.   The Receiver prepared a letter which is being sent to all known investors based on the Receivership Entity's records and which will also be posted on the dedicated website the Receiver will be constructing for filings and other information regarding the case.

The Receiver and his proposed counsel have also communicated with a number of law firms which have formerly represented DLI or its affiliates, as well as counsel for the former Managing Member Brendan Ross, and counsel for other current and former officers.   The Receiver through counsel is also reviewing prior communications with various insurers concerning Directors & Officers Liability and Errors & Omissions insurance and other policies issued to DLI or the other related entities.

The Receiver, through proposed counsel, has also communicated with a number of law firms which have represented the Receivership Entity and requested the professional firm's client files.   The Receiver's dialogue with the firm's regarding the turnover of the client files is continuing.

**V.   Issues Receiver Seeks to Address at the Status Conference and Request for Instructions from the Court**

a.   <u>Employment of Counsel</u>

The Receiver expects to file a motion to approve the employment of general counsel, Diamond McCarthy LLP, accountants for the estate, Development Specialists, Inc. ("DSI"), and attorneys to represent the Receiver in the Cayman Islands, Collas Crill. The Receiver also will seek approval by the Court to continue to engage and pay in the ordinary course attorneys and professionals who are

1  handling loan collections, in some cases on an hourly basis and in others on a
2  contingency fee arrangement.

3       Employment of these professionals will be essential to address the myriad
4  legal issues currently facing the receivership estate and to continue the collection
5  activities on the underlying loans in the ordinary course of the Receivership Entity's
6  business to maximize recoveries on the underlying assets.  The investment assets
7  require ongoing collection efforts to preserve and maximize their value.

8       The Receiver and its proposed general counsel Diamond McCarthy are also
9  assessing the needs of the receivership with respect to the collection of larger loans.

10      b.    Receiver's Need to Exercise Discretion and Business Judgment to Settle
11  Claims for Collection of Underlying Collateral

12      The Walsh loan involves numerous small loans comprising the value of
13  approximately $3 million on the Receivership Entity's books.  Those underlying
14  loans are in the process of being collected by attorneys, and the Receiver expects that
15  there will be many proposed settlements of the accounts receivable and loan claims
16  the Receiver will be asked to approve.  To the extent further authority or approval of
17  the Court is needed, the Receiver recommends and requests that he be granted
18  immediate settlement authority by the Court to compromise these and similar claims
19  to resolve the collection of loans and accounts receivable in the ordinary course of
20  the Receivership Entity's business.  In addition to the inordinate expense that would
21  be involved in obtaining Court approval of individual or even groups of small
22  settlements, in order to effectively settle and collect those claims, the Receiver needs
23  to be able to obtain prompt payment upon acceptance of the settlement proposal or
24  risk the settlement not being completed or paid to the detriment of the estate and its
25  creditors.  The Receiver believes such authority is already provided in the Receiver
26  Order based on his role as permanent equity receiver for the Receivership Entity and
27  is consistent with Sections VI.D. and F. of the Receiver Order which empower the
28  Receiver to take actions to preserve and prevent dissipation of estate assets and to

1  make such agreements "as may be necessary and advisable in discharging [his]

2  duties as permanent receiver."

3      c.   Receiver's Exercise of Discretion and Business Judgment to Modify

4  Loan Terms in the Ordinary Course of Business

5      In addition to reaching settlements regarding loans in the portfolio of assets of

6  the estate, the Receivership Entity is regularly approached for approval of

7  modifications of loans by borrowers on the underlying loans.  The modifications may

8  involve an extension of a maturity date, a deferral of payments, or a forbearance

9  from enforcing a default, or other similar typical modifications typical of workouts of

10  a troubled or defaulted loan.  The modifications involved do not involve a release of

11  liability on the debt or other general releases of claims.  The Receiver believes he has

12  the authority to make such ordinary course modifications of the loan agreements and

13  terms in his role a permanent equity receiver for the Receivership Entity and based

14  on the specific powers and duties of the Receiver Order, including Sections VI.D.

15  and F.  To the extent necessary, the Receiver would ask the Court for instructions

16  and authorization to engage in such ordinary course extensions, forbearances and

17  modifications of the underlying loans in his discretion and business judgment and

18  without further Court approval.

19      d.   Additional Matters for Instructions and Potential Motions

20      The Receiver anticipates that the following issues may require additional

21  motions or requests for instructions from the Court in the near term based on issues

22  that have arisen during the initial stage of the receivership:

23      1.   Attorney-Client Privilege/Work Product Issues:  The Receiver under

24  applicable law is the holder of the attorney-client privilege of the Receivership

25  Entity.  *Commodity Futures Trading Commission v. Weintraub*, 471 U.S. 343, 105

26  S.Ct. 1986 (1985). The Receiver has made demand for the client files held by a

27  number of law firms that have represented the Receivership Entity prior to the

28  Receiver's appointment.  The files constitute property of the Receivership Entity

under applicable law.  Former Managing Member Brendan Ross has asserted the attorney-client privilege in response to at least certain of those requests, including in instances in which the Receiver contends the law firm was strictly engaged by the corporate entities and no joint representation is at issue.  The Receiver anticipates that a motion may be necessary to request instructions and orders from the Court addressing the privilege issues and the duty of the former law firms to turn over the client files to the Receiver.

2.    Loan Funding Matters:   The Receivership Entity has loans in its portfolio in which the borrowers are demanding additional funding, claiming there is a requirement that the Receiver fund requests for further advances based on the loan documentation.   The Receiver continues to evaluate the loans, the requirements under the documents, and other issues  affecting the collection, enforcement and maximization of value from the loans, and may require instructions or approval for certain actions or agreements relating to the loans in question.

3.    Loan Portfolio and Asset Matters:   The Receiver is in the process of performing a comprehensive evaluation of the loan portfolio and other assets of the estate, including insurance policies and potential claims under those policies.   The Receiver's review of the assets is still in the preliminary stages. The Receiver anticipates seeking further instructions from the Court when the Receiver's evaluation is complete.

**VI.    Receiver's Financial Report and 30-Day Time Line for Filing Additional Status Report**

Section VI.E. of the Receiver Order contemplates the Receiver making an accounting of the assets and financial condition of the Receivership Entity "as soon as practicable."  The Receiver anticipates filing with the Court a financial report and

//
//
//
//

---

FIRST STATUS REPORT

accounting for the assets of the estate within approximately 30 days of the Status
Conference.

Dated: April 12, 2019                              Respectfully submitted,

                                                  BRADLEY D. SHARP
                                                  Receiver

**PROOF OF SERVICE**

I hereby declare under penalty of perjury pursuant to the laws of the State of California that I am a citizen of the United States, over the age of 18 years, and not a party to the within action. My business address is 150 California Street, Suite 2200, San Francisco, CA 94111. On **April 12, 2019**, I served the following document(s):

- **FIRST STATUS REPORT OF PERMANENT RECEIVER BRADLEY D. SHARP [April 1, 2019 through April 9, 2019]**

  X    TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF): On **April 12, 2019** the document listed above will be served by the court via NEF and hyperlink to the document which effects electronic service on counsel who are registered with the CM/ECF system..

X    SERVED VIA ELECTRONIC TRANSMISSION/EMAIL: On **April 12, 2019**, I served the following persons and/or entities at the by transmitting via electronic mail the document(s) listed above to the addresses set forth below:

 Nicolas Morgan at nicolasmorgan@paulhastings.com.

  X    SERVED BY UNITED STATES MAIL: On **April 12, 2019**, I served the following persons and/or entities at the last known addresses by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows:

> Nicolas Morgan
> Paul Hastings LLP
> 515 South Flower Street, 25th Floor
> Los Angeles, CA 90071

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary

course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of United States of America that the above is true and correct.

Executed on April 12, 2019 at San Francisco, California.


_/s/ Michaela M. O'Rourke_
Michaela M. O'Rourke

FIRST STATUS REPORT

# EXHIBIT 1





[1] Available to United States domiciled investors.
[2] Available to non-United States domiciled investors.
[3] The Direct Lending Income Feeder Fund Ltd. and Direct Lending Income Fund L.P. together own 100% of DLI Capital, Inc. The proportional ownership varies.