1  KATHY BAZOIAN PHELPS (155564)
2  *kphelps@diamondmccarthy.com*
   DIAMOND MCCARTHY LLP
3  1999 Avenue of the Stars, Suite 1100
4  Los Angeles, California 90067-4402
   Telephone: (310) 651-2997
5
6  CHRISTOPHER D. SULLIVAN (148083)
   *csullivan@diamondmccarthy.com*
7  LESLEY ANNE HAWES (117101)
8  *lhawes@diamondmccarthy.com*
   DIAMOND MCCARTHY LLP
9  150 California Street, Suite 2200
10 San Francisco, CA 94111
   Phone: (415) 692-5200
11
12 *Proposed Counsel for Bradley D. Sharp,*
   *Permanent Receiver*
13
14         UNITED STATES DISTRICT COURT
15         CENTRAL DISTRICT OF CALIFORNIA
16         WESTERN DIVISION – LOS ANGELES

17 SECURITIES AND EXCHANGE          Case No. 2:19−cv−02188−DSF−MRW
   COMMISSION,
18                                  **NOTICE OF MOTION AND MOTION**
                                    **OF RECEIVER FOR INSTRUCTIONS**
19         Plaintiff,               **RE SCOPE OF RECEIVER'S**
                                    **DUTIES; MEMORANDUM OF**
20         v.                       **POINTS AND AUTHORITIES AND**
                                    **DECLARATION OF BRADLEY D.**
21 DIRECT LENDING INVESTMENTS       **SHARP**
22 LLC,
                                    Date:  June 3, 2019
23         Defendant.              Time:  1:30 PM
24                                  Dept.: Courtroom 7D
                                    Place: United States District Court
25                                         Western Division
26                                         350 West 1st Street,
27                                         Los Angeles, CA 90012
28

1    PLEASE TAKE NOTICE THAT on June 3, 2019, at 1:30 p.m. in Courtroom

2    7D of the above-entitled Court, located at 350 West 1st Street, Los Angeles, CA

3    92701-4516, Bradley D. Sharp, the Court-appointed permanent receiver (the

4    "Receiver"), will and hereby does make this Motion for Instructions Regarding the

5    Scope of the Receiver's Duties (the "Motion").

6    The Receiver further seeks an order finding that notice of and the opportunity

7    for hearing on the Motion provided to creditors and other interested parties is

8    sufficient under the circumstances and under Local Civil Rule 66-7, including mail

9    service on known non-investor creditors on May 3, 2019, and email service on

10   investors through Opus Fund Services, as more fully described herein. Additionally,

11   the Motion can be reviewed on the Receiver's website at https://cases.stretto.com/dli.

12   The Motion is made following the Receiver's contact with counsel for the

13   Securities and Exchange Commission under Local Rule 7-3, and the Receiver is

14   advised that the SEC generally does not oppose the Motion.  There are numerous

15   interested parties served with the Motion, making a pre-filing conference with the

16   other interested parties impracticable.

17   This Motion is based upon this Notice, the following Memorandum of Points

18   and Authorities, the concurrently filed Declaration of Bradley D. Sharp, the separate

19   notice of hearing on the Motion, and upon such further oral argument, testimony and

20   evidence as may be received at the hearing on this matter.

21   PLEASE TAKE FURTHER NOTICE that pursuant to Local Rule 7-9, any

22   party who opposes the Motion must, not later than 21 days before the date of the

23   hearing on the motion, serve upon all other parties and file with the Clerk either (a)

24   the evidence upon which the opposing party will rely in opposition to the motion and

25   a brief but complete memorandum which shall contain a statement of all the reasons

26   in opposition thereto and the points and authorities upon which the opposing party

27   will rely, or (b) a written statement that that party will not oppose the motion.

28   ///

Evidence presented in all opposing papers shall comply with the requirements of L.R. 7-6, 7-7 and 7-8.

DATED: May 3, 2019                    DIAMOND McCARTHY LLP

                                      By:   /s/ *Kathy Bazoian Phelps*
                                            Kathy Bazoian Phelps
                                            Proposed Counsel for Bradley D. Sharp,
                                            Permanent Receiver

Bradley D. Sharp, the Court-appointed permanent receiver (the "Receiver"), hereby files his Motion for Instructions re Scope of Receivership (the "Motion").

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### SUMMARY OF RELIEF REQUESTED

The Receiver brings this Motion to clarify the scope of his duties in his capacity as the Receiver over defendant Direct Lending Investments LLC ("DLI"), and Direct Lending Income Fund, L.P., Direct Lending Income Feeder Fund, Ltd., DLI Capital, Inc., DLI Lending Agent, LLC, and DLI Assets Bravo, LLC and their successors, subsidiaries and affiliated entities (the "Receivership Entity"). Though the Receiver believes that he has plenary powers and discretion as permanent equity receiver over the Receivership Entity to take all steps necessary or appropriate to address, manage, protect and preserve the entities and assets of the estate including the matters covered in this Motion, the Receiver requests entry of an order setting for the particular duties identified herein and authority to take certain actions regarding the business operations of the Receivership Entity. Specifically, the Receiver requests authority for the following:

1. To reject leases and executory contracts if not in the best interest of the estate, and to enter into sublease agreements in his business judgment if such agreement would be in the best interest of the estate.

2. To sublease the business premises of the Receivership Entity utilizing the services of a broker to be compensated at market, or below market rates.

3. To compromise or settle claims in the ordinary course of business for amounts in controversy, or discounts, not to exceed $100,000 without further court authority. If outside of the ordinary course of business or for matters exceeding $100,000, the Receiver shall seek further Court authority.

4. To operate the business of the Receivership Entity in his business

1

discretion in amounts not to exceed those set forth in the budget attached hereto as Exhibit "1" through July 31, 2019.

5. To terminate employees and enter into ordinary course severance arrangements.

6. To liquidate or sell assets in the ordinary course of business, including accepting payoffs in the full amount owed, without further Court authority. If the Receiver proposes to sell or liquidate any assets outside of the ordinary course of business, the Receiver shall seek further Court authority.

7. To waive prepayment penalties in his business discretion.

The Receiver also seeks an order approving the notice and opportunity for hearing given on this Motion as adequate under the circumstances under Local Civil Rule 66-7.

## II.

## PROCEDURAL HISTORY

On April 1, 2019, this Court entered Preliminary Injunction Order and Order Appointing Permanent Receiver ("Receiver Order"), Doc. No. 10, appointing Bradley D. Sharp ("Receiver") as permanent receiver for the estate of defendant Direct Lending Investments LLC ("DLI"), and Direct Lending Income Fund, L.P., Direct Lending Income Feeder Fund, Ltd., DLI Capital, Inc., DLI Lending Agent, LLC, and DLI Assets Bravo, LLC and their successors, subsidiaries and affiliated entities (the "Receivership Entity"). The Receiver Order was the result of a stipulation by defendant DLI and the other entities for the appointment of a permanent receiver.

The Receiver has been granted the full powers of an equity receiver over all funds, property and assets belonging to, being managed by or in the possession of or control of the Receivership Entity. (Receiver Order, Section VI). In addition, among other things, the Receiver Order provides that the Receiver has been granted

specific powers sue, marshal, collect and take possession of the Receivership Entity's property, to take control over the Receivership Entity's bank and brokerage accounts, to investigate and conduct discovery to locate and account for the assets of or managed by the Receivership Entity, and to "take such action as is necessary and appropriate to preserve and take control of and to prevent the dissipation, concealment, or disposition of any assets of or managed by the Receivership Entity." (Receiver Order Section VI.A. and D.)

As the Receiver has begun to familiarize himself with the business operations of the Receivership Entity as well as the assets, he seeks to more specifically define his duties, seeks specific authorization to engage in ordinary course activities without further order of the Court, and seeks approval of his budget for the early months of this case.

The entities comprising the Receivership Entity are operating businesses in that their assets consist of portfolios of loans made by the Receivership Entity to third party borrowers, with loans ranging in size from $1 to $2 million to approximately $200 million. DLI obtained investors for its loan portfolios through two "feeder" funds which were structured as limited partnerships, one covering the United States investors (Direct Lending Income Fund, L.P. ("DLIF")) and one located in the Cayman Islands covering investments made through a related Cayman Islands limited partnership, Direct Lending Income Feeder Fund, Ltd. ("DLIFF.")

In turn, the funds obtained by the feeder funds were loaned directly or indirectly to third party borrowers, and the third party borrowers in turn were generally lenders which made loans or extensions of credit to others (the "subsequent loans"). The subsequent loans became collateral for the funds loaned by DLIF and DLIFF. DLI manages approximately 25 or 26 lending relationships with third party borrowers. When the third party borrower under such a lending relationship defaults, DLI may then cause the loan to be foreclosed on and assume

management and control of the underlying loan and account receivable collateral of the third party borrower.

The Receiver is evaluating the portfolio of loans, which comprise the major assets of the receivership estate.  The Receiver has previously reported that in addition to the concerns regarding the value and collectability of the loans made to Quarterspot detailed in the complaint initiating this action by the SEC, there is another major loan with a value listed on the Receivership Entity books of $192 million to VoIP Guardian Partners I LLC ("VoIP GP") as to which collectability is uncertain in that VoIP GP has filed a voluntary Chapter 7 petition for liquidation. Additionally, the Receiver has learned that other assets held in the portfolio are not well underwritten, documented or maintained, such that issues with respect to valuation and collectability may extend beyond Quarterspot and VoIP GP.  The Receiver intends to file a motion to engage an investment banker to assist him in evaluating the assets.

The Receiver continues to evaluate the financial status of the Receivership Entity. Among other issues with respect to the assets, the status and book value of the loan portfolio in light of the bankruptcy of VoIP GP and issues alleged regarding Quarterspot will hinder any future operations as a going business to solicit new investments and make loans to third parties, as will the lack of adequate infrastructure to operate the business. The Receiver is winding down the onsite business operations of DLI and is evaluating the best manner of administration of the loan portfolio.  The Receiver is not accepting new investor funds or otherwise engaged in active business operations at this time.

Based on the information he has learned to date, the Receiver believes that it is in the best interest of the estate downsize the business operations as quickly as possible and to handle matters that arise in the ordinary course of business relative to the loan portfolios as cost effectively as possible. The Receiver anticipates filing a subsequent motion in the near future regarding his proposed longer terms course

4

of action relative to the loan portfolios.

## III.

## CLARIFICATION RE SCOPE OF RECEIVERSHIP REQUESTED

### A. Relief Requested

In order to execute his duties under the Receivership Order, the Receiver seeks clarification of his duties to confirm that he is authorized to engage in the following activities and take the following actions:

1. To reject leases and executory contracts if not in the best interest of the estate, and to enter into sublease agreements in his business judgment if such agreement would be in the best interest of the estate.

2. To sublease the business premises of the Receivership Entity utilizing the services of a broker to be compensated at market, or below market rates.

3. To compromise or settle claims in the ordinary course of business for amounts in controversy, or discounts, not to exceed $100,000 without further court authority. If outside of the ordinary course of business or for matters exceeding $100,000, the Receiver shall seek further Court authority.

4. To operate the business of the Receivership Entity in his business discretion in amounts not to exceed those set forth in the budget attached hereto as Exhibit "1" through July 31, 2019.

5. To terminate employees and enter into ordinary course severance arrangements.

6. To liquidate or sell assets in the ordinary course of business, including accepting payoffs in the full amount owed, without further Court authority. If the Receiver proposes to sell or liquidate any assets outside of the ordinary course of business, the Receiver shall seek further Court authority.

7. To waive prepayment penalties in his business discretion.

**B. Need for Relief Requested**

**1. The Lease**

The Receiver took over the leased office space of the Receivership Entity upon his appointment on April 1, 2019.  The offices are large and not fully occupied. Additionally, the business operations were designed to operate remotely, so the Receiver does not believe that there is an ongoing need for the office space. He has been in discussions with the landlord and believes that the most cost-effective and beneficial course of action with respect to the lease is to sublease the space for the remainder of the lease term. The landlord is not willing to abate rent or release the Receiver from the balance of the lease term. The Receiver proposes to engage a broker at a rate structure that is at market, or below market rates, to assist in locating a subtenant for the office space so that the estate can realize the value of the remainder of the lease term.

**2. The Business Operations**

Upon the Receiver's appointment, DLI had 16 employees and one temporary/contract employee.  In addition to the management team, the employees include accounting personnel, employees assigned to investor relations who respond to investor inquiries, personnel involved in loan and related collections, and legal personnel. The Receiver has spent the first month in taking possession of the books and records of the Receivership Entity and in evaluating both the assets and ongoing business operations. His focus has been on ascertaining the current status of the various loan portfolios that constitute the primary assets of the estate. The management team has been cooperative and helpful both in assisting with the transition and in handling day to day affairs as they arise.

However, because of the nature of the assets and the fact that the Receiver is not operating the business in the sense of bringing in new investors, the Receiver does not need the same level of staffing as DLI had in place prior to his appointment. Therefore, in addition to moving out of the business space, the

Receiver believes it is appropriate to significantly reduce the number of employees, and he does not believe that any onsite employees are necessary. The Receiver has entered, and intends to enter, into ordinary course severance agreements with employees that he determines are no longer necessary to the business operations.

The Receiver does, however, believe it is necessary to continue to employ certain key employees to assist him in the transfer of knowledge and administration of the existing assets. The Receiver has prepared a budget for the next three months, which is attached hereto as Exhibit "1" (the "Budget"). The Budget includes costs for these key employees, among other costs of operations, during this transition time. The Budget may turn out to exceed actual costs of operations depending on how quickly the transition is made. If the transition will take longer than three months, the Receiver will seek additional Court authority.

### 3. The Loan Portfolio

As the Receiver previously reported to the Court, DLI has foreclosed on some of the loan portfolios which served as security for loans that DLI had made. DLI has employed counsel to help collect the underlying assets collateralizing the loans, consisting primarily of accounts receivable. These portfolios consist of numerous small loans which are in the process of being collected. The Receiver expects that there will be many proposed settlements of the accounts receivable and loan claims the Receiver will be asked to approve.  To the extent further authority or approval of the Court is needed, the Receiver recommends and requests that he be granted immediate settlement authority by the Court to compromise these and similar claims and to provide discounts to resolve the collection of loans and accounts receivable in the ordinary course of the Receivership Entity's business for matters in controversy and for discounts that do not exceed $100,000.  In addition to the inordinate expense that would be involved in obtaining Court approval of individual or even groups of small settlements, in order to effectively settle and collect those claims, the Receiver needs to be able to obtain prompt payment upon

1 acceptance of the settlement proposal or risk the settlement not being completed or
2 paid to the detriment of the estate and its creditors.

3     Additionally, some of the obligors on the loan transactions are seeking to
4 refinance and make an early payout on their obligations. The Receiver seeks
5 authority to accept early payouts in full but to waive prepayment penalties. The
6 Receiver believes that the incentive to obtain early payoffs is increased by this
7 waiver and that the estate will benefit substantially if loan obligations are paid off in
8 full at this time.

9     The Receiver has not yet fully determined the long term strategy with respect
10 to the balance of the loan portfolio but seeks clarification that he has authority to
11 sell or liquidate assets in the ordinary course of business. The Receiver intends to
12 file a motion to seek to employ an investment banker to assist him in the evaluation
13 of the assets.  If he determines to sell any assets outside of the ordinary course of
14 business, he will seek Court authority to do so.

15 **IV.**

16 **THE COURT HAS DISCRETION TO DEFINE THE SCOPE OF**
17 **RECEIVERSHIP**

18     It is well within the Court's authority to grant the relief requested. *See S.E.C.*
19 *v. Hardy*, 803 F.2d 1034, 1037 (9th Cir. 1986) ("[A] district court's power to
20 supervise an equity receivership and to determine the appropriate action to be taken
21 in the administration of the receivership is extremely broad."). Because the
22 "primary purpose of equity receiverships is to promote orderly and efficient
23 administration of the estate . . . for the benefit of creditors," courts routinely
24 establish claims bar dates and claims procedures in receivership actions to identify
25 claimants and creditors and to analyze their claims in a timely and cost-efficient
26 manner. *Id.*; *see also S.E.C. v. Billion Coupons, Inc.*, Nos. 09-00068JMS-LEK, 09-
27 00069JMS-LEK, 2009 WL 2143534, at *4 (D. Haw. July 13, 2009) (citing the
28 court's broad discretion in receivership actions in approving bar date and claims

procedure); *S.E.C. v. Alanar, Inc.*, No. 1:05-cv-01102-DFH-TAB, 2009 WL 1664443, at *3-4 (S.D. Ind. June 12, 2009) (same). Pursuant to this authority, the Receiver believes it is reasonable and necessary that the scope of his duties include the specific matters set forth herein.

### IV.

### NOTICE OF THE HEARING ON THIS MOTION

The Receiver has served notice of the hearing on this Motion on the parties and by mail to the known non-investor creditors of the Receivership Entity. The Receiver has posted the notice of hearing and the Motion on the Receiver's website (https://cases.stretto.com/dli) as well as through the noticing software for investors. (Opus iSymphony Investor Portal). The Receiver has also directed Opus Fund Services, the outside company that provides investors notices under the applicable corporate governance documents, to email the notice of hearing to all investors by May 7, 2019, the earliest date possible for Opus to complete the email service. The Receiver believes this notice complies with the provisions of Local Civil Rule 66-7 to the extent that notice to investors is required and is reasonable, appropriate, and the most cost-effective means of providing notice of the hearing under the circumstances, since there are approximately 975 investors both in the United States and overseas.

### V.

### CONCLUSION

WHEREFORE, the Receiver respectfully requests entry of an order further delineating the scope of the Receiver's duties as set forth herein and for all other appropriate relief.

DATED: May 3, 2019                  DIAMOND McCARTHY LLP


                                    By:  /s/ *Kathy Bazoian Phelps*
                                         Kathy Bazoian Phelps
                                         Proposed Counsel for Bradley D. Sharp
                                         Permanent Receiver

## DECLARATION OF BRADLEY D. SHARP

I, Bradley D. Sharp, declare:

1.    I was appointed Receiver by this Court for defendant Direct Lending Investments LLC ("DLI"), and Direct Lending Income Fund, L.P., Direct Lending Income Feeder Fund, Ltd., DLI Capital, Inc., DLI Lending Agent, LLC, and DLI Assets Bravo, LLC and their successors, subsidiaries and affiliated entities (the "Receivership Entity") by order entered on April 1, 2019.

2.    I submit this Declaration in support of the concurrently filed Motion for for Instructions Regarding the Scope of the Receiver's Duties (the "Motion").

3.    I have personal knowledge of the facts set forth in this Declaration, and, if called to testify, could testify competently thereto.

4.    As Receiver over the Receivership Entity, I have worked diligently to administer the Receivership Estate. My team and I have spent considerable time and resources examining the numerous documents related to the Receivership Entity. I have begun to familiarize myself with the business operations of the Receivership Entity as well as the assets and now seek to more specifically define my duties, as well as to obtain specific authorization to engage in ordinary course activities without further order of the Court, and to obtain approval of my budget for the early months of this case.

5.    The entities comprising the Receivership Entity are operating businesses in that their assets consist of portfolios of loans made by the Receivership Entity to third party borrowers, with loans ranging in size from $1 to $2 million to approximately $200 million.  DLI obtained investors for its loan portfolios through two "feeder" funds which were structured as limited partnerships, one covering the United States investors (Direct Lending Income Fund, L.P. ("DLIF")) and one located in the Cayman Islands covering investments made through a related Cayman Islands limited partnership, Direct Lending Income Feeder Fund, Ltd. ("DLIFF.")

6.     In turn, the funds obtained by the feeder funds were loaned directly or indirectly to third party borrowers, and the third party borrowers in turn were generally lenders which made loans or extensions of credit to others (the "subsequent loans"). The subsequent loans became collateral for the funds loaned by DLIF and DLIFF. DLI manages approximately 25 or 26 lending relationships with third party borrowers. When the third party borrower under such a lending relationship defaults, DLI may then cause the loan to be foreclosed on and assume management and control of the underlying loan and account receivable collateral of the third party borrower.

7.     I am evaluating the portfolio of loans, which comprise the major assets of the receivership estate. I have previously reported that in addition to the concerns regarding the value and collectability of the loans made to Quarterspot detailed in the complaint initiating this action by the SEC, there is another major loan with a value listed on the Receivership Entity books of $192 million to VoIP Guardian Partners I LLC ("VoIP GP") as to which collectability is uncertain in that VoIP GP has filed a voluntary Chapter 7 petition for liquidation. Additionally, I have learned that other assets held in the portfolio are not well underwritten, documented or maintained, such that issues with respect to valuation and collectability may extend beyond Quarterspot and VoIP GP. I intend to file a motion to engage an investment banker to assist me in evaluating the assets.

8.     I continue to evaluate the financial status of the Receivership Entity. Among other issues with respect to the assets, the status and book value of the loan portfolio in light of the bankruptcy of VoIP GP and issues alleged regarding Quarterspot will hinder any future operations as a going business to solicit new investments and make loans to third parties, as will the lack of adequate infrastructure to operate the business. I am winding down the onsite business operations of DLI and am evaluating the best manner of administration of the loan portfolio. I am not accepting new investor funds or otherwise engaged in active

NOTICE OF MOTION AND MOTION FOR INSTRUCTIONS ON SCOPE OF RECEIVER'S DUTIES

business operations at this time.

9.      Based on the information I have learned to date, I believe that it is in the best interest of the estate downsize the business operations as quickly as possible and to handle matters that arise in the ordinary course of business relative to the loan portfolios as cost effectively as possible. I anticipate filing a subsequent motion in the near future regarding my proposed longer terms course of action relative to the loan portfolios.

10.      I took over the leased office space of the Receivership Entity upon his appointment on April 1, 2019.   The offices are large and not fully occupied. Additionally, the business operations were designed to operate remotely, so I do not believe that there is an ongoing need for the office space. I have been in discussions with the landlord and believe that the most cost-effective and beneficial course of action with respect to the lease is to sublease the space for the remainder of the lease term. The landlord is not willing to abate rent or release the estate from the balance of the lease term. I propose to engage a broker who I will pay a fee at market or below market rates to assist in locating a subtenant for the office space so that the estate can realize the value of the remainder of the lease term.

11.      Upon my appointment, DLI had 16 employees and one temporary/contract employee.  In addition to the management team, the employees include accounting personnel, employees assigned to investor relations who respond to investor inquiries, personnel involved in loan and related collections, and legal personnel. I have spent the first month in taking possession of the books and records of the Receivership Entity and in evaluating both the assets and ongoing business operations. My focus has been on ascertaining the current status of the various loan portfolios that constitute the primary assets of the estate. The management team has been cooperative and helpful both in assisting with the transition and in handling day to day affairs as they arise.

12.      However, because of the nature of the assets and the fact that I am not

NOTICE OF MOTION AND MOTION FOR INSTRUCTIONS ON SCOPE OF RECEIVER'S DUTIES

operating the business in the sense of bringing in new investors, I do not need the same level of staffing as DLI had in place prior to my appointment. Therefore, in addition to moving out of the business space, I believe it is appropriate to significantly reduce the number of employees, and I do not believe that any onsite employees are necessary. I have entered, and intend to enter, into ordinary course severance agreements with employees that I determine are no longer necessary to the business operations.

13.    I do, however, believe it is necessary to continue to employ certain key employees to assist me in the transfer of knowledge and administration of the existing assets. I have has prepared a budget for the next three months, which is attached hereto as Exhibit "1" (the "Budget"). The Budget includes costs for these key employees, among other costs of operations, during this transition time. The Budget may turn out to exceed actual costs of operations depending on how quickly the transition is made. If the transition will take longer than three months, I will seek additional Court authority.

14.    As I have previously reported to the Court, DLI has foreclosed on some of the loan portfolios which served as security for loans that DLI had made. DLI has employed counsel to help collect the underlying assets collateralizing the loans, consisting primarily of accounts receivable. These portfolios consist of numerous small loans which are in the process of being collected. I expect that there will be many proposed settlements of the accounts receivable and loan claims I will be asked to approve.  To the extent further authority or approval of the Court is needed, I recommend and requests that I be granted immediate settlement authority by the Court to compromise these and similar claims and to provide discounts to resolve the collection of loans and accounts receivable in the ordinary course of the Receivership Entity's business for matters in controversy and for discounts that do not exceed $100,000. In addition to the inordinate expense that would be involved in obtaining Court approval of individual or even groups of

small settlements, in order to effectively settle and collect those claims, I need to be able to obtain prompt payment upon acceptance of the settlement proposal or risk the settlement not being completed or paid to the detriment of the estate and its creditors.

15.     Additionally, some of the obligors on the loan transactions are seeking to refinance and make an early payout on their obligations. I seeks authority to accept early payouts in full but to waive prepayment penalties. I believe that the incentive to obtain early payoffs is increased by this waiver and that the estate will benefit substantially if loan obligations are paid off in full at this time.

16.     I have not yet fully determined the long term strategy with respect to the balance of the loan portfolio but seeks clarification that I have authority to sell or liquidate assets in the ordinary course of business. I intend to file a motion to seek to employ an investment banker to assist him in the evaluation of the assets. If I determine to sell any assets outside of the ordinary course of business, I will seek Court authority to do so.

17.     There are approximately 975 investors in the Receivership Entity both in the United States and overseas.  I have a website for investors to obtain information regarding the receivership (https://cases.stretto.com/dli). Additionally, Opus iSymphony Investor Portal, has been used by DLI to disseminate information to investors. I have used Opus Fund Services, a third party company which provides notices to investors of information regarding their investments through email under the provisions of the corporate governance documents. I have instructed Opus Fund Services to send email notice to all investors of the Receivership Entity of this Motion, which will be completed by May 7, 2019, the earliest possible date for completion after Opus received the notice of hearing on May 3, 2019.

///
///
///

NOTICE OF MOTION AND MOTION FOR INSTRUCTIONS ON SCOPE OF RECEIVER'S DUTIES

1    I declare under penalty of perjury under the laws of the United States of

2  America that the foregoing is true and correct.

3    Executed on May _3_, 2019, at Los Angeles, California

4

5  _____

6  Bradley D. Sharp
   Permanent Receiver

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION FOR INSTRUCTIONS ON SCOPE OF RECEIVER'S DUTIES

**EXHIBIT 1**

**Direct Lending Investments**
**13 Week Cash Flow Forecast - Excluding Receipts**
Consolidated
As of May 1, 2019
*$ in 000's*

DRAFT - Subject to Change

 **DIRECT LENDING**
INVESTMENTS

| | Week Ending | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 3-May | 10-May | 17-May | 24-May | 31-May | 7-Jun | 14-Jun | 21-Jun | 28-Jun | 5-Jul | 12-Jul | 19-Jul | 26-Jul | |
| | Wk 1 | Wk 2 | Wk 3 | Wk 4 | Wk 5 | Wk 6 | Wk 7 | Wk 8 | Wk 9 | Wk 10 | Wk 11 | Wk 12 | Wk 13 | Total |
| **Disbursements:** | | | | | | | | | | | | | | |
| Payroll | 89 | 87 | 81 | 84 | 95 | 77 | 73 | 77 | 82 | 77 | 73 | 77 | 82 | 1,054 |
| Building Rent & Expenses | 37 | - | - | - | 37 | - | - | - | 37 | - | - | - | 37 | 148 |
| Other Operating (see pg. 2) | 16 | 23 | 12 | 9 | 13 | 26 | 13 | 9 | 13 | 26 | 16 | 9 | 13 | 197 |
| OCP Services (see pg. 3) | 175 | 10 | - | 4 | 158 | 25 | - | - | - | 102 | 15 | - | - | 489 |
| Taxes | - | - | - | - | - | 0 | - | - | - | - | - | - | - | 0 |
| Operating Disbursements | 317 | 120 | 93 | 96 | 303 | 128 | 85 | 86 | 132 | 205 | 104 | 86 | 132 | 1,888 |
| | | | | | | | | | | | | | | |
| Net Cash Flow from Operations | (317) | (120) | (93) | (96) | (303) | (128) | (85) | (86) | (132) | (205) | (104) | (86) | (132) | (1,888) |
| | | | | | | | | | | | | | | |
| Required Funding Request (TBD) [1] | 5,000 | - | - | - | - | - | - | - | - | - | - | - | - | 5,000 |
| | | | | | | | | | | | | | | |
| Receivership Professionals [2]: | | | | | | | | | | | | | | |
| Receiver | 200 | - | - | - | 150 | - | - | - | 115 | - | - | - | 115 | 580 |
| Diamond McCarthy | 200 | - | - | - | 100 | - | - | - | 100 | - | - | - | 100 | 500 |
| BRG | 10 | - | - | - | 25 | - | - | - | 50 | - | - | - | 500 | 585 |
| Stretto | 10 | - | - | - | 25 | - | - | - | 100 | - | - | - | 100 | 235 |
| Collas Crill | 50 | - | - | - | 50 | - | - | - | 50 | - | - | - | 50 | 200 |
| Investment Banker [3] | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| | 470 | - | - | - | 350 | - | - | - | 415 | - | - | - | 865 | 2,100 |
| | | | | | | | | | | | | | | |
| **Net Cash Flow** | $ (5,787) | $ (120) | $ (93) | $ (96) | $ (653) | $ (128) | $ (85) | $ (86) | $ (547) | $ (205) | $ (104) | $ (86) | $ (997) | $ (8,988) |
| | | | | | | | | | | | | | | |
| Cash, Beginning Balance | $ 35,189 | $ 29,402 | $ 29,282 | $ 29,189 | $ 29,092 | $ 28,440 | $ 28,312 | $ 28,226 | $ 28,140 | $ 27,593 | $ 27,388 | $ 27,284 | $ 27,198 | $ 35,189 |
| Net Cash Flow | (5,787) | (120) | (93) | (96) | (653) | (128) | (85) | (86) | (547) | (205) | (104) | (86) | (997) | (8,988) |
| **Cash, Ending Balance** | $ 29,402 | $ 29,282 | $ 29,189 | $ 29,092 | $ 28,440 | $ 28,312 | $ 28,226 | $ 28,140 | $ 27,593 | $ 27,388 | $ 27,284 | $ 27,198 | $ 26,201 | $ 26,201 |

[1] The Receiver is still reviewing requests received for funding of exisiting assets.
[2] Receivership fees and expenses are presented on a monthly accrual basis.
[3] Success fee to be paid upon sale or refinancing closing(s).

**Direct Lending Investments**
**Cash Flow Forecast**
Other Operating Disbursements



| | 3-May Wk 1 | 10-May Wk 2 | 17-May Wk 3 | 24-May Wk 4 | 31-May Wk 5 | 7-Jun Wk 6 | 14-Jun Wk 7 | 21-Jun Wk 8 | 28-Jun Wk 9 | 5-Jul Wk 10 | 12-Jul Wk 11 | 19-Jul Wk 12 | 26-Jul Wk 13 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **GP** | | | | | | | | | | | | | | |
| **General & Administrative** | | | | | | | | | | | | | | |
| Schwab Compliance Technologies, Inc | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| De Lage Landen Financial Services, Inc. | - | 4,000 | - | - | - | 4,000 | - | - | - | 4,000 | - | - | - | 12,000 |
| Smarsh | 1,200 | - | - | - | 1,200 | - | - | - | 1,200 | - | - | - | 1,200 | 4,800 |
| **IT Services & Software** | | | | | | | | | | | | | | |
| Adobe | - | - | 1,500 | - | - | - | 1,500 | - | - | - | 1,500 | - | - | 4,500 |
| Advanced Networks Solutions | - | 7,000 | - | - | - | 7,000 | - | - | - | 7,000 | - | - | - | 21,000 |
| Amazon Web Services | 1,500 | - | - | - | 1,500 | - | - | - | 1,500 | - | - | - | 1,500 | 6,000 |
| Atlassian | - | 50 | - | - | - | 50 | - | - | - | 50 | - | - | - | 150 |
| Broadvoice | - | 1,200 | - | - | - | 1,200 | - | - | - | 1,200 | - | - | - | 3,600 |
| Dropbox | - | 100 | - | - | - | 100 | - | - | - | 100 | - | - | - | 300 |
| Office1 | 300 | - | - | - | 300 | - | - | - | 300 | - | - | - | 300 | 1,200 |
| Send2fax.com | - | 10 | - | - | - | 10 | - | - | - | 10 | - | - | - | 30 |
| Spectrum Business | - | 1,300 | - | - | - | 1,300 | - | - | - | 1,300 | - | - | - | 3,900 |
| TurboBridge | - | 100 | - | - | - | 100 | - | - | - | 100 | - | - | - | 300 |
| **Other Operating Expenses** | | | | | | | | | | | | | | |
| Jerome Alona | 1,000 | - | 1,000 | - | 1,000 | - | 1,000 | - | 1,000 | - | 1,000 | - | 1,000 | 7,000 |
| CS Disco Inc | - | - | 1,000 | - | - | - | 1,000 | - | - | - | 4,500 | - | - | 6,500 |
| Enoch Kim | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 26,000 |
| Robert Half International Inc. | 1,300 | 1,300 | 1,300 | 1,300 | 1,300 | 1,300 | 1,300 | 1,300 | 1,300 | 1,300 | 1,300 | 1,300 | 1,300 | 16,900 |
| | 7,300 | 17,060 | 6,800 | 3,300 | 7,300 | 17,060 | 6,800 | 3,300 | 7,300 | 17,060 | 10,300 | 3,300 | 7,300 | 114,180 |
| **Fund** | | | | | | | | | | | | | | |
| **Collection Expenses** | | | | | | | | | | | | | | |
| Thompson Reuters | 3,000 | - | - | - | - | 3,000 | - | - | - | 3,000 | - | - | - | 9,000 |
| Experian | 100 | - | - | - | - | - | - | - | - | - | - | - | - | 100 |
| **General & Administrative** | | | | | | | | | | | | | | |
| FATCA | 570 | 570 | 570 | 570 | 570 | 713 | 713 | 713 | 713 | 713 | 713 | 713 | 713 | 8,555 |
| **IT Services & Software** | | | | | | | | | | | | | | |
| Box.Net | - | - | 45 | - | - | - | - | 45 | - | - | - | 45 | - | 135 |
| | 3,670 | 570 | 615 | 570 | 570 | 3,713 | 713 | 758 | 713 | 3,713 | 713 | 758 | 713 | 17,790 |
| **Other** | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 65,000 |
| **Total Other Operating Disbursements** | $ 15,970 | $ 22,630 | $ 12,415 | $ 8,870 | $ 12,870 | $ 25,773 | $ 12,513 | $ 9,058 | $ 13,013 | $ 25,773 | $ 16,013 | $ 9,058 | $ 13,013 | $ 196,970 |

DRAFT - Subject to Change

**Direct Lending Investments**
**Cash Flow Forecast**
Ordinary Course Professional Disbursements
*$ in 000's*



| Professional | Description | Approved Monthly Amount | Payment Frequency | Wk 1 3-May | Wk 2 10-May | Wk 3 17-May | Wk 4 24-May | Wk 5 31-May | Wk 6 7-Jun | Wk 7 14-Jun | Wk 8 21-Jun | Wk 9 28-Jun | Wk 10 5-Jul | Wk 11 12-Jul | Wk 12 19-Jul | Wk 13 26-Jul | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Fund** | | | | | | | | | | | | | | | | | |
| Opus Fund Services [1] | Fund Administration | $ 45,000 | Monthly | $ 15 | $ - | $ - | $ - | $ - | $ 15 | $ - | $ - | $ - | $ - | $ 15 | $ - | $ - | $ 45 |
| Millennium Trust Company [1] | Fund Custody | $ 100,000 | Quarterly | 68 | - | - | - | 66 | - | - | - | - | - | - | - | - | 134 |
| Reserve Capital Group, LLC | Legal - Recovery | $ 5,000 | Monthly | 5 | - | - | - | 5 | - | - | - | - | 5 | - | - | - | 15 |
| Saul Ewing Arnstein & Lehr LLP | Legal - Recovery | $ 30,000 | Monthly | 30 | - | - | - | 30 | - | - | - | - | 30 | - | - | - | 90 |
| Stites & Harbison, PLLC | Legal - Collections | $ 1,000 | Monthly | 1 | - | - | - | 1 | - | - | - | - | 1 | - | - | - | 3 |
| The Dushkin Law Firm | Legal - Collections | $ 1,000 | Monthly | 1 | - | - | - | 1 | - | - | - | - | 1 | - | - | - | 3 |
| Harney Westwood & Riegels LLP | Legal - Fund Counsel | $ 10,000 | Monthly | 10 | - | - | - | 10 | - | - | - | - | 10 | - | - | - | 30 |
| Lee and Ko Law | Legal - Fund Counsel | $ 5,000 | Monthly | 5 | - | - | - | 5 | - | - | - | - | 5 | - | - | - | 15 |
| Thompson Coburn LLP | Legal - Fund Counsel | $ 25,000 | Monthly | 25 | - | - | - | 25 | - | - | - | - | 25 | - | - | - | 75 |
| Gibson, Dunn & Crutcher LLP | Legal - Fund Counsel | $ 10,000 | Monthly | 10 | - | - | - | 10 | - | - | - | - | 10 | - | - | - | 30 |
| Moritt Hock & Hamroff LLP | Legal - Walsh Recovery | $ 5,000 | Monthly | 5 | - | - | - | 5 | - | - | - | - | 5 | - | - | - | 15 |
| | | | | 175 | - | - | - | 158 | 15 | - | - | - | 92 | 15 | - | - | 455 |
| **GP** | | | | | | | | | | | | | | | | | |
| Lucas, Horsfall, Murphy & Pindroh, LLP | Accounting | $ 5,000 | Monthly | - | 5 | - | - | - | 5 | - | - | - | 5 | - | - | - | 15 |
| PKC Kuebler, APC | Accounting | $ 1,000 | Monthly | - | - | - | 4 | - | - | - | - | - | - | - | - | - | 4 |
| Constangy, Brooks, Smith & Prophete, LLP | Legal - Employment | $ 5,000 | Monthly | - | 5 | - | - | - | 5 | - | - | - | 5 | - | - | - | 15 |
| | | | | - | 10 | - | 4 | - | 10 | - | - | - | 10 | - | - | - | 34 |
| | | | | $ 175 | $ 10 | $ - | $ 4 | $ 158 | $ 25 | $ - | $ - | $ - | $ 102 | $ 15 | $ - | $ - | $ 489 |

[1] Forecasted amounts paid to Opus and MTC are partially based on the draft 12/31/18 NAV. The fee structure and continued use of services are currently being renegotiated.
Note: Ordinary Course professional disbursements are presented on a monthly accrual basis.
The following professionals have been excluded from the 13 week cash flow forecast as the associated collection has been forecasted as $0.

| BARR Credit Services, Inc. | Legal - Collections | 35% of Recovery | Upon Cash Collection |
|---|---|---|---|
| Eandi Law Group APC | Legal - Collections | 28% of Recovery | Upon Cash Collection |
| Parker, Simon & Kokolis, LLC | Legal - Collections | 20% of Recovery | Upon Cash Collection |

3