KATHY BAZOIAN PHELPS (155564)
*kphelps@diamondmccarthy.com*
DIAMOND MCCARTHY LLP
1999 Avenue of the Stars, Suite 1100
Los Angeles, California 90067-4402
Telephone: (310) 651-2997

CHRISTOPHER D. SULLIVAN (148083)
*csullivan@diamondmccarthy.com*
LESLEY ANNE HAWES (117101)
*lhawes@diamondmccarthy.com*
DIAMOND MCCARTHY LLP
150 California Street, Suite 2200
San Francisco, CA 94111
Phone: (415) 692-5200

*Counsel for Bradley D. Sharp,*
*Permanent Receiver*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION – LOS ANGELES

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Case No. 2:19-cv-02188-DSF-MRW |
| Plaintiff, | **SECOND STATUS REPORT OF PERMANENT RECEIVER BRADLEY D. SHARP [April 10, 2019 through June 24, 2019]** |
| v. | |
| DIRECT LENDING INVESTMENTS LLC, | [No Hearing Set] |
| Defendant. | |

Bradley D. Sharp, the Court-appointed permanent receiver (the "Receiver") for the estate of Direct Lending Investments, LLC ("DLI"), Direct Lending Income Fund, L.P., Direct Lending Income Feeder Fund, Ltd., DLI Capital, Inc., DLI

1

1  Lending Agent, LLC, DLI Assets Bravo, LLC and their successors, subsidiaries and
2  affiliated entities (collectively, the "Receivership Entity") pursuant to the Preliminary
3  Injunction Order and Order Appointing Permanent Receiver issued April 1, 2019
4  ("Receiver Order"), Doc. No. 10, hereby submits his Second Status Report covering
5  the period from April 10, 2019 through June 24, 2019.

6  ### I.   **Operational Issues**

7  ####     A.   Structure of Entities

8  The Receiver's First Status Report (Doc. No. 15) covering the period from the
9  inception of the receivership through April 9, 2019 included an organization chart
10 identifying the known entities comprising the Receivership Entity based on their
11 status as entities explicitly named as a Receivership Entity in the Receiver Order or
12 based on their status as successors, subsidiaries or affiliated entities.   The
13 organization chart prepared by DLI shows the "feeder" and "master" funds DLI
14 advised and the other entities under DLI's control, including (1) DLI Lending Agent,
15 LLC, a Delaware limited liability company previously known as Blackbird Financial
16 Group, LLC, a Delaware limited liability company ("DLI Lending"); (2) DLI Assets
17 Bravo, LLC, a Nevada limited liability company ("DLI Assets Bravo"); and (3) DLI
18 Assets, LLC, a Nevada limited liability company ("DLI Assets").   The following is a
19 summary of those entities and their role in the business enterprise or relationship to
20 the defendant DLI.

21 (1)   DLI:  Defendant DLI is a Securities and Exchange Commission
22 registered investment advisor that advises a private investment fund structure which
23 invests in various companies, instruments and counterparty lending platforms.  The
24 private fund structure is comprised of two "feeder" funds and a "master" fund.  The
25 two "feeder" funds are (1) Direct Lending Income Fund, L.P., a Delaware limited
26 partnership ("DLIF"), and (2) Direct Lending Income Feeder Fund, Ltd., a Cayman
27 Islands Exempted Company ("DLIFF"), both named as a Receivership Entity.   DLI

28

is the general partner and investment manager of DLIF, the U.S. feeder fund, and is the investment manager of DLIFF.

(2)   DLI Capital, Inc.:  DLI Capital, Inc. ("DLI Capital") is a Nevada corporation.  DLI Capital is wholly owned by DLIF and DLIFF.  It is the "master" fund through which investment funds obtained by the two feeder funds were invested, with DLI Capital in turn investing through DLI Assets Bravo and DLI Assets.  DLI Capital is also named as a Receivership Entity.  DLI Capital is also identified as the borrower under separate Loan and Security Agreements with DLIF and DLIFF, each dated as of October 1, 2016, and subsequently amended.  DLI Capital in turn makes equity investments in DLI Assets Bravo and DLI Assets, in both of which DLI Capital is the sole member and owner.

(3)   DLI Assets Bravo:  DLI Assets Bravo is wholly owned by DLI Capital.  The capital investments made by DLI Capital in DLI Assets Bravo were then used by DLI Assets Bravo to make investments.  Those investments by DLI Assets Bravo ultimately generate the payments for investors of DLIF and DLIFF.

(4)   DLI Assets:  DLI Assets is also wholly owned by DLI Capital. DLI Assets holds a portfolio of loans originated by a former DLI investment counterparty, and which loans DLI subsequently acquired in a foreclosure following that counterparty's default.  The loan payments generated from the loans acquired by DLI Assets are an additional source of payments for investors of DLIF and DLIFF.

(5)   DLI Capital Partner, Inc.:  This entity was owned 100% by DLI Capital and formerly owned a 0.01% interest in each of DLI Assets Bravo and DLI Assets, until DLI Capital Partner, Inc. was dissolved as of December 31, 2018.  The purpose of establishing the multi-level structure of ownership through layers of corporations and limited liability companies is still subject to inquiry by the Receiver.

(6)   DLI TC, LLC:  DLI TC, LLC ("DLI TC") is wholly owned by DLIF and is an affiliated entity of the named receivership entities.  DLI TC was

3

established in connection with the Talking Capital investment which is the subject of pending litigation.  DLI TC is a party to litigation in the New York State Supreme Court brought by Forefront Partners, LLC, arising out of the Talking Capital investment, discussed below.

(7)    DLI Lending Agent, LLC:   DLI Lending Agent, LLC is owned 100% by DLI.

B.    <u>Employees</u>:   The Receiver sought approval to enter into separation agreements with employees to reduce overstaffing given the status of the Receivership Entity.  With the authority granted to the Receiver based on the Court's order granting the Receiver's Motion for Instructions re Scope of Receivership (Doc. No. 57) ("Additional Receiver Authority Order"), the Receiver has reduced the number of staff of DLI from 16 to 10 employees with one temporary employee, and entered into separation agreements with the departing staff members.  The Receiver anticipates additional staff reductions over the next month. The Receiver has arranged for the remaining employees to work remotely to allow the Receiver to vacate the DLI leased office premises in Glendale.

C.    <u>Leased Premises</u>:   Pursuant to the authority granted in the Additional Receiver Authority Order, the Receiver has engaged Newmark Knight Frank ("leasing broker") as the Receiver's leasing agent to try to sublease the DLI office space, which should result in significant savings to the estate.  The leasing broker is actively seeking tenants for the space, which would help the Receiver reduce or eliminate the rent expense.

D.    <u>Ordinary Course Settlements/Loan Collections:</u>   The Additional Receiver Authority Order also authorized the Receiver to make compromises of claims and accept discounts of $100,000 or less.  The Receiver has utilized the authority granted and has obtained settlements of approximately ten claims related to the Dealstruck and Quarterspot loan portfolios by which the Receiver has negotiated payment terms to obtain recoveries on loans in default.  The settlements typically

4

involve ongoing monthly payments on the loans potentially with reduced or waiver of interest.    Portions of recoveries on certain of the loans subject to these compromises are included in the receipts reflected in the "Actual v. Budget" financial report ("Financial Report") attached to this Second Status Report as Exhibit "1."

## II.    Assets:  The Loans and Other Assets

A.    Loan Portfolios:  As previously reported, the primary assets of the estate consist of the various investment instruments, loans and loan portfolios into which funds generated through the feeder funds from investors were invested.    The Receiver's initial review of the books and records of the estate indicated there were 26 outstanding investments comprising the primary estate assets.  That number has since been reduced to 20 based on (1) the Receiver's review and analysis of the loan records which indicated certain investments were no longer outstanding and had been paid off shortly before the commencement of the receivership; and (2) post-receivership loan payoffs.

Attached to this Second Status Report as Exhibit "2" is a list identifying each of the remaining 20 investments (and two investments which have been paid off post-receivership), the dollar amount (at par, *i.e.*, face value amount outstanding) of the estate's interest in those portfolios as reflected on the books and records of the Receivership Entity, collections on those portfolios obtained since the commencement of the receivership, and a general summary of the loan portfolio. The investment summary includes a column for "other adjustments," which for investments numbered 1 through 3 related to a write-down of amounts owed.  The positive adjustment related to investment number 10 is an increase in the investment balance based on amounts added for interest paid in kind.  Two of the investments in particular are of uncertain value as the Receiver has previously reported: the Quarterspot investment which was described in the SEC's complaint initiating this

5

action regarding the inaccurate reporting of payments affecting the value and likely collection of those underlying loans; and (b) the VoIP Guardian Partners loan, based on that company's filing of a Chapter 7 liquidation.  The Receiver is evaluating strategies for working with the VoIP Chapter 7 Trustee, Timothy Woo, to coordinate efforts to recover the amounts due on underlying loans made by VoIP that constitute the Receivership Entity's collateral for its loan to VoIP.

The Receiver is collecting certain of the loans in the portfolio directly, and with the assistance of counsel as needed.  The Receiver is making progress through compromises and loan workouts in collecting the Dealstruck and Quarterspot loans. The Receiver is in negotiations with the borrowers on other loans that cannot be disclosed based on issues of confidentiality.

As addressed below, the Receiver has engaged Raymond James as its proposed investment banker, subject to Court approval at a hearing scheduled for July 1, 2019, to assist in evaluating and developing strategies for monetizing the remaining loans held by the estate.  Though its employment has not been approved, and understanding the risk that the Court may not approve its engagement, Raymond James has been evaluating the various loan portfolios and has begun developing preliminary alternatives and recommendations for addressing the assets, including joining the Receiver in meetings scheduled with certain borrowers, and identifying potential interested counterparties for potential portfolio acquisitions.

During the period of this Second Status Report, the Receiver has also investigated documentation concerning loan "participations" entered into pre-receivership by DLI with an entity known as DL Global Ltd. ("DL Global"), an entity organized under the laws of the Cayman Islands.  DL Global representatives have had multiple meetings with the Receiver regarding the particular sets of investments, instruments, and loans in which DL Global claims an interest.  DL Global contends, based on the terms of the loan participation documents, that the loans subject to its participation agreements were sold as absolute sales by the

applicable Receivership Entity, and that DLI has merely the loan administration rights as the holder of record of the loan. DL Global often appears to have purchased a portion of the underlying loans comprising a particular Receivership Entity's loan portfolio with a specific borrower. As discussed below, the Receiver will be filing a motion for instructions by the Court regarding the treatment of the loans subject to the DL Global participation agreements, including seeking authority as appropriate for payments from borrowers to be made directly to DL Global on its share of the loans comprising the loan portfolio of the Receivership Entity to a particular borrower. The Receiver is completing its inquiry regarding DL Global.

B.  <u>Tangible Personal Property</u>:  The investments are not the only assets of the estate. In addition to the cash on hand at the commencement of the receivership, the estate includes personal property and furnishings located at the DLI offices in Glendale, California. The Receiver has inventoried the personal property assets and will seek Court authority to liquidate the assets to the extent the liquidation would be outside the ordinary course of business and/or would exceed the $100,000 limit imposed in the Additional Receiver Authority Order. Though of modest value in comparison to the loans and cash on hand, the Receiver believes the furniture, furnishings and artwork at the DLI offices are valuable. The Receiver anticipates selling those assets, with Court approval as necessary, after the Receiver vacates the premises and a new tenant is located.

C.  <u>Litigation Claims</u>:  The other significant assets of the estate are potential litigation claims. The Receiver and counsel are investigating those potential claims, including potential fraudulent transfer claims and other theories of recovery for the estate, as well as potential claims against, among others, former officers and directors of the Receivership Entity which may be covered by the D&O Insurance Policy. The investigation is in its preliminary stages, and the Receiver will provide additional reporting to the Court on those potential claims when additional information is developed.

**III.    The Creditor Body**

    A.    <u>Investor Summary</u>

The Receiver previously reported from his preliminary review of the records of the Receivership Entity information regarding the number of DLIF and DLIFF investors based on subscriptions from December 1, 2018 through February 1, 2019. The Receiver has since reviewed additional information and has corrected information for the investor count.  The Receiver previously reported the following Net Asset Values as of November 30, 2018, based on the books and records of the Receivership Entity.

|  | NAV at 11/30/2018 | Investor Count |
|---|---|---|
| Onshore | 577,949,793.22 | 898 |
| Offshore | 179,581,078.20 | 54 |
| Total Combined | 757,530,871.42 | 952 |

The Investor Count column in the First Status Report reported new investors only and did not include investors already invested in the funds.  In other words, the dollar amounts for new subscriptions came from more than just the number of investors included in the original column.  The Receiver provides the following corrected and more complete information regarding investor subscriptions during the period from December 1, 2018 through February 1, 2019 and the total investor count for the onshore feeder fund (DLIF) and the offshore feeder fund (DLIFF):

|  | 12/1/18-2/1/19 Subscriptions | New Investor Count | Prior Investor Count | Total Investor Count | Total Subscriptions |
|---|---|---|---|---|---|
| Onshore | **$23,638,525.49** | 19 | 37 | 56 | 60 |
| Offshore | **$10,456,900.00** | 4 | 7 | 11 | 21 |
| Total Combined | $34,095,425.49 | 23 | 44 | 67 | 81 |

    B.    <u>Anticipated Claims Process</u>

8

The Receiver is working with its counsel to develop a proposed set of claims filing procedures to recommend to the Court.   The procedures will include a proposed claims bar date for filing claims and notice procedures for notifying potential creditors and investors of the deadline and procedures for filing a claim with the Receiver's claims administrator, Stretto.  The Court approved the Receiver's employment of Stretto as its claims administrator by its Order entered June 18, 2019, Doc. No. 79.    The Receiver anticipates filing a motion for approval of the proposed claims filing process within the next 30 days.

## IV.   Court Filings to Date

A.   Initial Employment Motions:  The Receiver filed an initial motion for approval to engage Diamond McCarthy LLP as its general receivership counsel, Collas Crill as Cayman Islands counsel, Development Specialists, Inc. as accountants for the estate, including as forensic accountants, Berkeley Research Group as the Receiver's tax accountants, as well as ordinary course professionals and vendors engaged previously by the Receivership Entity, or such others as the Receiver might engage during the case to handle ordinary course loan collections and other similar matters in the ordinary operations of the Receivership Entity ("First Employment Motion").  (Doc. No. 17)   The Receiver subsequently filed a motion to employ Stretto as the Receiver's claims administrator.  (Doc. No. 26)    The Court granted generally the relief sought on the First Employment Motion, with a limit on payments to each ordinary course professional and vendor of $10,000.  (Doc. No. 44).  The Court granted the Stretto motion based on a revised engagement agreement that addressed concerns of the Court regarding the scope of the indemnity and two other provisions.  (Doc. No. 79)

B.   Motion re Scope of Receivership:  The Receiver filed a motion for instructions regarding the scope of the receivership and the Receiver's authority ("First Instruction Motion").  (Doc. No. 33)   The First Instruction Motion sought

authority for the Receiver to address a number of routine receivership administrative issues, including assumption or rejection of executory contracts, authority to engage a broker and sublease the DLI office premises, authority to enter into compromises and settlements involving $100,000 or less and to accept loan payoffs with a waiver of prepayment penalties in the Receiver's discretion, authority to terminate employees and enter into severance agreements, and authority sell property in the ordinary course of business for consideration of $100,000 or less, among other relief. The First Instruction Motion was granted by the Court's Additional Receiver Authority Order.

    C. <u>Motion to Employ Raymond James as Investment Banker</u>: The Receiver has moved for authority to engage Raymond James as his investment banker to assist him in evaluating the investments (the "Raymond James Motion"). (Doc. No. 51)  The Receiver seeks the guidance of Raymond James in proposing strategies to maximize value for the estate from the investments.  The assets are complex and require both the expertise offered by Raymond James as well as the contacts with potential investors and others who may be interested in acquiring the portfolios.  The hearing on the motion is set for July 1, 2019.  The SEC filed a statement of non-opposition to the Raymond James Motion, subject to the modification of the engagement agreement to address the indemnity and arbitration provisions to conform to the Court's ruling on the Stretto employment motion.  In connection with the Raymond James Motion, the Receiver filed an *ex parte* application to file the confidential fee schedule related to the engagement letter agreement under seal based on confidentiality and the adverse impact public disclosure would have on the Receiver's negotiations with third parties concerning the loan portfolios. (Doc. No. 52)  The Court granted the Receiver's request and the fee schedule was filed under seal. (Doc. Nos. 70 and 71)

    D. <u>Other Motions Set for Hearing July 1, 2019</u>:  Two other motions are set for hearing on July 1, 2019, specifically (1) a motion for instructions by the

Receiver concerning the D&O Insurance Policy, and requests for payment of attorneys' fees and costs under the policy by a number of current and former officers and directors of the Receivership Entity ("Insurance Motion") (Doc. No. 49); and (2) a motion to employ two critical professionals, Opus Fund Services (Bermuda) Ltd. and Millennium Trust Company, LLC, to pay them past due amounts, including pre-receivership balances due, and to continue to employ and pay them post-receivership ("Critical Professionals Motion") (Doc. No. 46). The SEC has filed statements of non-opposition to these motions. The Insurance Motion is being opposed by two former DLI officers to the extent the Receiver seeks authority to approve the amount of fees being incurred and paid for those officers under the D&O Insurance Policy since it is a "wasting" policy, the result of which is that funds paid for attorneys' fees and costs of the former officers reduce the available funds for payment of other claims under the policy.

       E.    Additional Anticipated Matters for Instructions and Potential Motions:

       (1)    Attorney-Client Privilege/Work Product Issues: The Receiver under applicable law is the holder of the attorney-client privilege of the Receivership Entity. *Commodity Futures Trading Commission v. Weintraub*, 471 U.S. 343, 105 S.Ct. 1986 (1985). The Receiver has made demand for the client files held by a number of law firms that have represented the Receivership Entity prior to the Receiver's appointment. The files constitute property of the Receivership Entity under applicable law. Former Managing Member Brendan Ross has asserted the attorney-client privilege in response to at least certain of those requests, including in instances in which the Receiver contends the law firm was strictly engaged by the corporate entities and no joint representation is at issue. The Receiver anticipates that a motion may be necessary to request instructions and orders from the Court addressing the privilege issues and the duty of the former law firms to turn over the client files to the Receiver.

(2)   <u>DL Global Payoff Procedures</u>:  The Receiver expects to file a motion in the near future to address (a) DL Global's claim under the participation agreements that it is the owner of all or portions of four outstanding investments, and (b) the procedures for payoffs to be made by the borrowers where DL Global is a participant.  DL Global has specifically requested that payoff funds be paid directly from the borrowers to each of the Receivership Entity and to DL Global based on their respective ownership shares in the loans in question, without the need for all the funds to be first routed through the Receivership Entity for later distribution by the Receivership Entity to DL Global.  The Receiver is evaluating DL Global's position and will request instructions from the Court as to the appropriate treatment of DL Global's asserted interests in the investments/loans under the participation agreements.

(3)   <u>Subpoena Power for the Receiver</u>:  The Receiver Order authorizes the Receiver to conduct discovery and investigate and locate the assets of the receivership estate.  The Receiver Order does not explicitly confer on the Receiver the power to issue subpoenas for both documents and testimony.  The Receiver believes the power to issue such subpoenas will be essential to his investigation and location of assets and evaluation and pursuit of potential litigation claims.  The Receiver anticipates seeking this additional authority by Motion in the near future.

## V.   **Cayman Liquidation Proceeding - DLIFF**

A.   <u>*Ex Parte* Approval to Initiate Liquidation Proceedings in the Cayman Islands</u>:  On May 13, 2019, the Receiver filed an *ex parte* emergency application for authority from the Court to commence a voluntary liquidation proceeding for DLIFF in the Cayman Islands, and for related relief.  The *ex parte* application included a request that the Receiver be authorized to be one of the co-liquidators of DLIFF in the Cayman Islands as the most efficient and cost-effective

way to address the liquidation there.  The Court granted the *ex parte* application by its Order entered May 14, 2019.  (Doc. No. 43)

B.    Status of Cayman Islands Liquidation Proceeding:  After approval by the Court for the Receiver to initiate liquidation proceedings for DLIFF in the Cayman Islands, the Receiver and the joint voluntary liquidator Chris Johnson signed the documents initiating the voluntary liquidation of DLIFF in the Cayman Islands. On June 4, 2019, notice was provided to the known investors and creditors of DLIFF of the voluntary liquidation and of the intention by the co-voluntary liquidators to commence a joint official liquidation in the Grand Court of the Cayman Islands under the applicable law of that jurisdiction.  A copy of the draft petition was circulated to the shareholders and creditors.  No objections were timely made by any interested party.  On June 18, 2019, a petition by the joint liquidators for DLIFF with supporting affidavits was filed with the Grand Court, with a request that the Court there rule on the petition papers without the necessity of a hearing.  The petition is currently under submission.

## VI.   **Financial Results Through June 21, 2019**

The Financial Report, Exhibit "1," provides a summary of the actual receipts and disbursements versus the Receiver's budget filed with the motion on which the Court issued the Additional Receiver Authority Order.  The period covered by the Financial Report begins with the week ending May 3, 2019 and ends the week ending June 21, 2019.  The Financial Report also includes a cumulative summary of the financial results for the first seven weeks of the receivership.

In summary, the receivership estate has accumulated cash on hand as of the week ending June 21, 2019 of **$112,753,000**, which includes funds recovered from bank accounts at the commencement of the case of $35,817,000, and net cash flow since the Receiver was appointed of **$76,936,000**.  The operating disbursements from inception of the receivership through the week ending June 21, 2019 total $878,000

13

which is approximately $350,000 (or 28%) below budget, in part based on the timing of payment of expenses and limitations on payment of expenses to ordinary course professionals imposed by the Court, including payments to various vendors and counsel that were limited to $10,000 per month. *See* Order entered May 14, 2019 (Doc. No. 44).

In addition to normal course loan payments, the Receiver obtained significant loan payments on three investments which contributed to the $76,936,000 in net cash flow during the period. Mepco satisfied the outstanding amount of its loan through a payment of $60 million and a $2.3 million payment by another borrower, Multistream, satisfied that outstanding loan, thus reducing the number of loans remaining in the Receivership Entity loan portfolio to be administered.. Two loans within the Indigo-DLI Holdings portfolio were also partially paid off in the amount of $6.2 million,

## VII.  Communications with Investors

A.   <u>Investor Inquiries</u>:   The Receiver tracks investor inquiries received directly by the Receiver's agents and by counsel as well as responses to the inquiries. The Receiver has received at least 80 inquiries through June 22, 2019, most of which request information on the status of pre-receivership redemption requests, the status of DLI and the related receivership entities, and the timing and procedures for submission and payment of claims.

B.   <u>FAQs:</u>   The Receiver maintains and updates on the Receiver's website for the receivership case a series of "Frequently Asked Questions" and responsive information regarding the impact of the receivership on DLI and the investors' funds, the status of the receivership and the Receiver's activities, the claims process in a receivership and other similar information.

C.   <u>Investor Meetings</u>:   A group of investors has engaged the law firm of Pachulski Stang Ziehl & Jones, LLP. The investor group requested a face-to-

face meeting with the Receiver which the Receiver, other members of DSI, and the Receiver's counsel attended on May 23, 2019.  The Receiver and counsel responded to questions regarding the status of the case, to the extent not confidential, the Receiver's preliminary assessment of the assets of the estate, and the steps the Receiver is taking in the administration of the assets and the receivership.

## VIII. Pending Litigation

A.   *Marcia Kosstrin Trust and Professional Home Improvements, Inc. Retirement Plan v. Direct Lending Investments, LLC et al.,* Case 2:19-cv-02452 ("Proposed Class Action")

On April 1, 2019, the same date the Receiver Order was entered, a class action complaint was filed in this Court by Marcia Kosstrin Trust and Professional Home Improvements, Inc. Retirement Plan against DLI, Brendan Ross, Bryce Mason, Frank Turner, Rodney Omanoff, and QuarterSpot, Inc.  The Receiver through counsel filed a notice of stay of the action based on Section IX of the Receiver Order. The Receiver through his proposed counsel has communicated with proposed class counsel and is evaluating the action.  The stay of the action remains in place, and there has been no activity in the Proposed Class Action since the notice of stay was filed.

B.   *Forefront Partners LLC v. Rodney Omanoff, et al., and Counterclaims,* New York County Supreme Court Index No. 650973/2017 ("Forefront Partners Action")

The Receiver also was notified shortly after his appointment of litigation pending in the New York state court involving DLI.  The Receiver through his proposed counsel filed a notice of stay of the action pursuant to Section IX of the Receiver Order. The Receiver is still investigating the action; however, the plaintiff Forefront Partners LLC ("Forefront") has named DLI TC, LLC, an affiliate of DLI, as a defendant, along with DLI, DLIF, and two VoIP entities, VoIP Guardian

1  Partners I, LLC, which is in a Chapter 7 bankruptcy proceeding, and VoIP Guardian
2  LLC.  DLI TC, LLC filed counterclaims against Forefront Partners LLC.  Also
3  named in the action as nominal defendants are Talking Capital LLC, Talking Capital
4  Partners II, LLC and Talking Capital Partners III, LLC, entities which are also
5  named as Third Party Defendants along with other related Talking Capital entities.

6       On May 8, 2019, the Court's law clerk held a telephonic case status
7  conference, and based on the Receiver's motion to stay and authorities and
8  arguments presented by the Receiver, the hearing was continued to July 9, 2019,
9  effectively placing the litigation in that action on hold until the next hearing.  After a
10 telephonic meet and confer call in which counsel for the Receiver and the SEC
11 participated, the parties were not able to resolve Forefront's request for relief.  On
12 June 19, 2019, Forefront filed a motion to lift the stay of actions in this Court to
13 allow the Forefront Partners Action to continue in litigation in the New York state
14 court. Counsel for the Receiver met in person with counsel for Forefront at counsel's
15 office in San Francisco and discussed the litigation but the parties were unable to
16 resolve the claims or the request that the stay be lifted.  The Receiver, the SEC and
17 Forefront have agreed to continue the hearing date on Forefront's relief from stay
18 motion to July 29, 2019, subject to Court approval of the stipulation.  The Receiver
19 anticipates opposing the Forefront relief from stay motion, and that the SEC as well
20 as Brendan Ross will oppose the motion as well.

21      C.   *American Health Connection, Inc. v. DLI Assets LLC*, Los
22 Angeles Superior Court Case No. BC700599 ("American Health Action")

23      This action is a declaratory relief action arising out of a stipulated judgment in
24 favor of DLI Assets that the plaintiff contends was entered improvidently and/or
25 prematurely.  The Receiver filed a Notice of Stay of the action with a copy of the
26 Receiver Order on April 19, 2019.  The case was set for a non-jury trial on June 28,
27 2019.  In advance of the scheduled trial date, the Court on its own issued an order
28 directing all parties and their counsel to attend a case status conference which it set

16

1  for June 12, 2019.  The parties by stipulation requested that the Court continue the
2  case status conference because of scheduling conflicts of counsel.  In response to the
3  parties' stipulation, the Court issued a minute order continuing the status conference
4  to January 6, 2020.
5
6  Dated: June 28, 2019                    Respectfully submitted,
7
8
9                                                        _____
10                                         BRADLEY D. SHARP
                                           Receiver
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

                                         17

## PROOF OF SERVICE

I am over the age of 18 years and not a party to this action.  My business address is:

DIAMOND McCARTHY LLP, 150 California Street, Suite 2200, San Francisco, CA 94111.

On June 28, 2019, I caused to be served the foregoing document entitled **SECOND STATUS REPORT OF PERMANENT RECEIVER BRADLEY D. SHARP [April 10, 2019 through June 24, 2019]** on all the parties to this action as follows:

__X__   **E-FILING**:  By causing the document to be electronically filed via the Court's CM/ECF system, which effects electronic service on counsel who are registered with the CM/ECF system.

__X__   **ELECTRONIC SERVICE**:  By causing the document to be delivered via email to Nicolas Morgan at nicolasmorgan@paulhastings.com.

__X__   **U.S. MAIL**:  By placing a copy of the document in the U.S. Mail, first class and addressed to the following:

> Nicolas Morgan
> Paul Hastings LLP
> 515 South Flower Street, 25th Floor
> Los Angeles, CA 90071

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on June 28, 2019 at San Francisco, California.

> _/s/  Philip Dobbs_
> Philip Dobbs