KATHY BAZOIAN PHELPS (155564)
kphelps@diamondmccarthy.com
DIAMOND MCCARTHY LLP
1999 Avenue of the Stars, Suite 1100
Los Angeles, California 90067-4402
Telephone: (310) 651-2997

CHRISTOPHER D. SULLIVAN (148083)
csullivan@diamondmccarthy.com
LESLEY ANNE HAWES (117101)
lhawes@diamondmccarthy.com
DIAMOND MCCARTHY LLP
150 California Street, Suite 2200
San Francisco, CA 94111
Phone: (415) 692-5200

*Counsel for Bradley D. Sharp,
Permanent Receiver*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION – LOS ANGELES

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>DIRECT LENDING INVESTMENTS LLC,<br><br>Defendant. | Case No. 2:19−cv−02188−DSF−MRW<br>Hon. Dale S. Fischer<br><br>**NOTICE OF MOTION AND MOTION OF RECEIVER FOR ORDER (1) APPROVING AND CONFIRMING SALE OF THREE LOAN PORTFOLIOS, AND RELATED BIDDING PROCEDURES AND DEADLINES; (2) PAYMENT OF RAYMOND JAMES & ASSOCIATES, INC. FEES; AND (3) FORM AND/OR LIMITATION OF NOTICE UNDER LOCAL CIVIL RULE 66-7; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**[DECLARATIONS OF SHARP AND** |

1

1
2
3
4
5
6
7

**KAUFFMAN FILED CONCURRENTLY]**

Date:     September 23, 2019
Time:     1:30 PM
Dept.:    Courtroom 7D
Place:    United States District Court
          Western Division
          350 West 1st Street,
          Los Angeles, CA 90012

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

    PLEASE TAKE NOTICE THAT on September 23, 2019, at 1:30 p.m. in Courtroom 7D of the above-entitled Court, located at 350 West 1st Street, Los Angeles, CA 92701-4516, Bradley D. Sharp, the Court-appointed permanent receiver (the "Receiver"), will and hereby does make this Motion for Order (1) Approving and Confirming Sale of Three Loan Portfolios, and Related Bidding Procedures and Deadlines; (2) Payment of Raymond James & Associates, Inc. Fees; and (3) Form and/or Limitation of Notice Under Local Civil Rule 66-7 (the "Motion").  By this Motion, the Receiver seeks the following relief:

    1.     An order (a) approving and confirming the sales of each of three loan portfolios, referred to as the Dealstruck Portfolio, the Biz2Credit Portfolio, and the LoanHero Portfolio (collectively, "Whole Loan Portfolios")[1] to the Successful Bidders making the highest and best bids for the Whole Loan Portfolios obtained through a bidding and auction overbid process set forth in the Bidding Procedures attached as Exhibit "1" to the Declaration of Adam Kauffman in support of this Motion, or to the Back Up Bidders for the Whole Loan Portfolios if the Successful Bidders (as those terms are defined in the Bidding Procedures) fail to perform, and

25
26
27
28

---

[1] The Whole Loan Portfolios include portfolios of term loans and lines of credit (Dealstruck Portfolio), merchant credit advances/future receivables sales agreements (Biz2Credit Portfolio), and unsecured consumer point-of-sale loans (LoanHero Portfolio).  They are referred to for convenience as "loans" and all of the portfolios in question involved ultimate borrowers that may be individuals or small businesses.

NOTICE OF MOTION AND MOTION TO APPROVE AND CONFIRM SALES OF WHOLE LOAN PORTFOLIOS AND OTHER RELIEF

(b) approving the related Bidding Procedures employed by the Receiver and its investment banker to sell the Whole Loan Portfolios, and the use of modified private sale procedures, under 28 U.S.C. section 2001(b) and 2004, as reasonable and appropriate under the circumstances for good cause shown by this Motion and supporting pleadings;

2.     An order authorizing the Receiver to pay his Court-approved investment banker, Raymond James & Associates, Inc. ("RJA") for its services in connection with the sale of the three Whole Loan Portfolios for the fees associated with the disposition of the three Whole Loan Portfolios pursuant to its previously approved engagement agreement, approved by the Court's order entered July 2, 2019 (Doc. No. 87)[2] to be paid from the receivership estate's sale proceeds; and

3.     An order authorizing the form of notice on this Motion provided to interested parties, creditors, and investors, who are potential creditors of the estate, by the Receiver (a) serving the Motion and related moving papers on all parties to the action, (b) serving by mail a notice of hearing on the Motion to all known creditors pursuant to Local Civil Rule 66-7, (c) posting a copy of the Motion on the Receiver's website for the case at https://cases.stretto.com/dli; and (d) causing the Receiver's Court-approved claims agent, Bankruptcy Management Solutions dba Stretto, to provide by email a copy of the notice of hearing on the Motion to all known investors through its email service to investors in Direct Lending Income Fund, L.P. ("Domestic Feeder Fund") and Direct Lending Income Feeder Fund, Ltd. ("Off Shore Feeder Fund"), the receivership entities through which investments were obtained.

---

[2]  The confidential fee schedule setting forth the amount of the RJA fees related to specific assets has been filed under seal as confidential, and based on the detriment to the estate in negotiating and selling the assets if the specific fee information were made public.  If requested by the Court, the Receiver can provide a calculation of the fees for in camera inspection when the Successful Bids have been identified through the sale process.

NOTICE OF MOTION AND MOTION TO APPROVE AND CONFIRM SALES OF WHOLE LOAN PORTFOLIOS AND OTHER RELIEF

Pursuant to the authority granted to the Receiver by the Court's July 2, 2019 Order (Doc. No. 87), beginning on August 1, 2019, the Receiver began offering for sale the three Whole Loan Portfolios through its Court-approved investment banker, RJA. Because of the size and nature of the Whole Loan Portfolios, the Receiver, in the exercise of his business judgment, informed through consultation with RJA, concluded that time is of the essence in selling the Whole Loan Portfolios and that in order to maximize value for these portfolios, the Receiver had to offer them for sale, solicit bids, conduct an auction with an opportunity for overbidding if the Receiver was able to generate more than one qualified bid for the portfolios, present the sales for Court approval and confirmation and close the sales within approximately 60 days. The Receiver therefore implemented the sale and Bidding Procedures attached as Exhibit "1" to the Declaration of Adam Kauffman and explained in the Kauffman Declaration and Memorandum of Points and Authorities filed in support of this Motion.

By this Motion, the Receiver seeks approval of the Bidding Procedures, and approval and confirmation of the sales produced through the process to obtain buyers for the Whole Loan Portfolios. The Successful Bidders, and any Backup Bidders, will be identified in a subsequent filing by the Receiver at least one week prior to the scheduled hearing on the Motion. In summary, the sale and Bidding Procedures and request for confirmation of the sale to the Successful Bidders and Backup Bidders, if any, include the following procedures:

- Receiver through RJA began offering the Whole Loan Portfolios for sale, soliciting bids, and providing an opportunity for potential bidders to conduct due diligence on August 1, 2019, and subject to written Bidding Procedures available to all potential bidders on or about August 13, 2019.

- Qualified Bidders, as defined in the Bidding Procedures, may obtain

NOTICE OF MOTION AND MOTION TO APPROVE AND CONFIRM SALES OF WHOLE LOAN PORTFOLIOS AND OTHER RELIEF

access to due diligence materials through a Virtual Data Room on the condition that they execute a confidentiality agreement (NDA) to review the details and documents concerning the loans and extensions of credit included in the Whole Loan Portfolios.  Bidders must execute a standard Asset Purchase Agreement ("APA") providing for the sale of the Whole Loan Portfolios on an "as is, where is" and non-recourse basis as detailed in the APA.

- Bids for the Whole Loan Portfolios are due on August 29, 2019.  The Receiver will accept for review bids for the entirety of each of the three Whole Loan Portfolios offered for sale, and bidders must bid separately for each portfolio.

- If multiple Qualified Bids are received for any of the Whole Loan Portfolios or for the three Whole Loan Portfolios collectively, then the Receiver may conduct an auction on September 5, 2019 at which those Qualified Bidders may present overbids in increments generally of up to $50,000 or 5% of the previous highest bid, or such other increments as the Receiver in his discretion may choose to implement.

- The availability of the Whole Loan Portfolios for sale will be advertised in the Wall Street Journal, West Coast publication, by August 15, 2019, and the ad will be available in both a print and on-line edition of that publication; and RJA has issued notices targeted to a contact list of more than 60 lenders, investors, collection agencies, loan services companies and other parties who are believed to have potential interest in purchasing these portfolios, culled from its extensive contact list, advising that the Whole Loan Portfolios were being offered for sale, that the due diligence period was open, and that August 29, 2019 is the deadline for submission of bids for the Whole

Loan Portfolios.  The Motion with the Bidding Procedures will also be posted on the Receiver's website for the receivership.

- Bidders have been advised that any objections to the sale under the bidding procedures or the conduct of the auction must be filed by September 9, 2019.

- By no later than September 16, 2019, one week prior to the scheduled hearing on this Motion, the Receiver will file a Notice and Statement of Sale Results with the Court.  The Notice and Statement of Sale Results will advise the Court and interested parties of (a) the bids received as of August 29, 2019, (b) the results of any auction, (c) whether any objections were received and the Receiver's response to those objections, (d) details regarding the Successful Bids, and Backup Bids, if any, for the sales of the Whole Loan Portfolios, including confirming to the Court that to the best of the Receiver's knowledge and belief the Successful Bidders and Backup Bidders are good faith purchasers for the highest and best values reasonably realizable for the sale of the assets in question.

- The Receiver reserves the right to withdraw any or all of the Whole Loan Portfolios at any time, for any reason or for no reason, in the Receiver's sole discretion.

The Receiver submits that for the reasons detailed in the declarations and memorandum filed in support of the Motion, good cause exists to modify the sale procedures and requirements for confirmation of private sales of property by a receiver under 28 U.S.C. sections 2001(b) and 2004, that appropriate and reasonable notice of the sale of the Whole Loan Portfolios and an opportunity for interested parties to bid for these assets has been provided, and that the sale procedures and sales to the highest Successful Bidders, and Backup Bidders should be approved and

NOTICE OF MOTION AND MOTION TO APPROVE AND CONFIRM SALES OF WHOLE LOAN PORTFOLIOS AND OTHER RELIEF

confirmed as requested to obtain the best available value for these assets, minimize expenses associated with the sale or with multiple motions or hearings on the proposed sales, and maximize the net amounts realized for the receivership estate and its creditors.

The Motion is made following the Receiver's communications with counsel for the Securities and Exchange Commission under Local Rule 7-3, and the Receiver anticipates that the SEC will not oppose the Motion, subject to review of the Motion and supporting papers. There are numerous interested parties served with the Motion, making a pre-filing conference with the other interested parties impracticable.

This Motion is based upon this Notice, the following Memorandum of Points and Authorities, the concurrently filed Declaration of Bradley D. Sharp and Declaration of Adam Kauffman, the separate notice of hearing on the Motion, the subsequent Statement and Notice regarding the sale results and related pleadings to be filed on or before September 16, 2019, and upon such further oral argument, testimony and evidence as may be received at the hearing on this matter.

PLEASE TAKE FURTHER NOTICE that pursuant to Local Rule 7-9, any party who opposes the Motion must, not later than 21 days before the date of the hearing on the motion, serve upon all other parties and file with the Clerk either (a) the evidence upon which the opposing party will rely in opposition to the motion and a brief but complete memorandum which shall contain a statement of all the reasons in opposition thereto and the points and authorities upon which the opposing party will rely, or (b) a written statement that that party will not oppose the motion.

//
//
//
//
//
//

NOTICE OF MOTION AND MOTION TO APPROVE AND CONFIRM SALES OF WHOLE LOAN
PORTFOLIOS AND OTHER RELIEF

1  Evidence presented in all opposing papers shall comply with the requirements of

2  L.R. 7-6, 7-7 and 7-8.

3

4  DATED: August 13, 2019           DIAMOND McCARTHY LLP

5
                                   By:  /s/ Christopher D. Sullivan
6                                       Christopher D. Sullivan
7                                       Counsel for Bradley D. Sharp,
                                        Permanent Receiver
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION TO APPROVE AND CONFIRM SALES OF WHOLE LOAN
PORTFOLIOS AND OTHER RELIEF

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................1

II.   FACTS SUPPORTING RELIEF .................................................................1

III.  THE GOAL OF PRESERVATION OF THE ESTATE AND THE
      COURT'S BROAD DISCRETION TO APPROVE MODIFIED SALE
      PROCEDURES FOR SALES OF PERSONAL PROPERTY
      WARRANT APPROVAL OF THE BIDDING PROCEDURES AND
      CONFIRMATION OF THE SALES PRODUCED BY THOSE
      PROCEDURES. ...........................................................................................6

      A.    The Court Can Approve Modified Sale Procedures for the Sale of
            Personal Property. ..........................................................................6

      B.    The Modified Sale Procedures Are Appropriate Under the
            Circumstances and Meet the Goals of Notice, An Opportunity to
            Bid and An Opportunity to Maximize Value.................................8

IV.   NOTICE OF THE HEARING ON THIS MOTION SHOULD BE
      DEEMED APPROPRIATE AND SUFFICIENT .........................................10

V.    CONCLUSION ..........................................................................................11

NOTICE OF MOTION AND MOTION TO APPROVE AND CONFIRM SALES OF WHOLE LOAN
PORTFOLIOS AND OTHER RELIEF

# TABLE OF AUTHORITIES

**Cases**

*Consumer Financial Protection Bureau v. Pension Funding, LLC,*
2017 WL 10562570 (C.D. Cal. May 31, 2017).........................................7

*In re First Alliance Mortgage Co.,*
269 B.R. 428 (C.D. Cal. 2001) .................................................................11

*SEC v. Morriss,*
2014 WL 1347528 (E.D. Mo. April 2, 2014)...........................................7

*SEC v. Wang,*
2015 WL 12656907 (C.D. Cal. Aug. 25, 2015) ........................................7

*Securities and Exchange Commission v. Black,*
163 F.3d 188 (3rd Cir. 1998) ...................................................................7

*Securities and Exchange Commission v. Elliot,*
953 F.2d 1560 (11th Cir. 1992) ................................................................7

*Securities and Exchange Commission v. Hardy,*
803 F.2d 1034 (9th Cir. 1986) ..................................................................7

*Tanzer v. Huffines,*
412 F.2d 221 (3d Cir. 1969) .....................................................................6

*United States v. Branch Coal Corp.,*
390 F.2d 7 (3rd Cir. 1968) .......................................................................7

**Statutes**

11 U.S.C. § 102(1)(A) ..............................................................................11

28 U.S.C. § 2001(b) .............................................................................3, 6, 9

28 U.S.C. § 2004..................................................................................6, 7

**Rules**

Fed. R. Civ. P. 5(a) ...................................................................................10

Fed. R. Civ. P. 5(c) ...................................................................................10

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

On April 1, 2019, this Court entered the Preliminary Injunction Order and Order Appointing Permanent Receiver ("Receiver Order"), Doc. No. 10, appointing Bradley D. Sharp ("Receiver") as permanent receiver for the estate of defendant Direct Lending Investments LLC ("DLI"), and Direct Lending Income Fund, L.P., Direct Lending Income Feeder Fund, Ltd., DLI Capital, Inc., DLI Lending Agent, LLC, and DLI Assets Bravo, LLC and their successors, subsidiaries and affiliated entities (the "Receivership Entity").

The Receiver has been granted the full powers of an equity receiver over all funds, property and assets belonging to, being managed by or in the possession of or control of the Receivership Entity.  (Receiver Order, Section VI).  In addition, among other things, the Receiver Order provides that the Receiver has been granted specific powers to sue, marshal, collect, and take possession of the Receivership Entity's property, and to "take such action as is necessary and appropriate to preserve and take control of and to prevent the dissipation, concealment, or disposition of any assets of or managed by the Receivership Entity."  (Receiver Order Section VI.A. and D.)

### II.   FACTS SUPPORTING RELIEF

The entities comprising the Receivership Entity are operating for the current purpose of monitoring and supervising their primary assets, which consist of portfolios of loans made by the Receivership Entity to third party borrowers.  DLI obtained investors for its loan portfolios through two "feeder" funds which were structured as limited partnerships, one covering the United States investors (the Domestic Feeder Fund) and one located in the Cayman Islands covering investments made through a related Cayman Islands limited partnership (the Offshore Feeder Fund).

In turn, the investments obtained by the feeder funds were transferred to DLI Capital, Inc., the "master fund" and then to other Receivership Entities, primarily DLI Assets Bravo, LLC ("DLI Assets Bravo") which loaned or invested the funds directly or indirectly to third parties.   The third party borrowers were generally lenders which made loans or extensions of credit to others (the "subsequent loans"). The subsequent loans generally constitute collateral for the loans by DLI Assets Bravo or were acquired by DLI Assets Bravo.   The Receivership Entities also purchased loans and extensions of credit made directly to consumers and small businesses (the "whole loans") and hold four portfolios of whole loans originated by third party entities, three of which the Receiver seeks to sell pursuant to this Motion.

The Receiver has previously reported to the Court in his First Status Report filed April 12, 2019 (Doc. No. 15) the Receiver's preliminary findings and information regarding the assets and investor amounts listed on the Receivership Entity books and records.  The books and records show total combined investments through February 1, 2019 in DLIF and DLIFF of approximately $791 million and loans with an aggregate value on the Receivership Entity books and records of approximately $755 million. The Receiver is still in the process of evaluating and assessing the accuracy of these figures.   The issues concerning the value and collectability of the Quarterspot and VoIP Guardian Partners I, LLC, totaling over $200 million on par value on the Receivership Entity books when the Receiver was appointed, has also been addressed in prior filings.

DLI Assets Bravo holds portfolios of loans originated by three entities, Dealstruck Funding 3, LLC (the "Dealstruck Portfolio"), Biz2Credit (the "Biz2Credit Portfolio"), and LoanHero (the "LoanHero Portfolio") (collectively, the "Whole Loan Portfolios").   The Whole Loan Portfolios had an aggregate par amount owed of approximately $29.8 million as of June 30, 2019, which includes

NOTICE OF MOTION AND MOTION TO APPROVE AND CONFIRM SALES OF WHOLE LOAN PORTFOLIOS AND OTHER RELIEF

approximately $7 million in par amount of loans or extensions of credit in collection in one of the Whole Loan Portfolios.  The portfolios all involve small business or consumer lending, including term loans and lines of credit (Dealstruck Portfolio), merchant credit advances/future receivables sales agreements (Biz2Credit Portfolio), and unsecured consumer point-of-sale loans (LoanHero Portfolio).

Pursuant to the Court's July 2, 2019 Order granting the Receiver's motion to employ RJA and to market and sell assets, the Receiver was authorized by the Court "to list and market for sale or other disposition the portfolio of loans comprising the primary assets of the receivership estate by selling the loans separately, in combination, or in bulk based on the advice of RJA and the Receiver's business judgment; to negotiate and document one or more agreements for the disposition or sale of the portfolio of loans as appropriate; and to execute such agreements for the disposition or sale disposition of the portfolio of loans, subject to the Receiver seeking and obtaining Court approval for the specific agreements for disposition or sale of these assets upon motion and with notice and an opportunity for hearing by the interested parties."

The Receiver, with the advice and consultation of the professionals at RJA, has offered the Whole Loan Portfolios for sale in the manner described in the Bidding Procedures and in this Motion, and with a timetable for prompt confirmation of the sale and closing after entry of a sale confirmation order, as the best means and timetable to maximize value for the estate from these portfolios. The Whole Loan Portfolios, compared to the remainder of the loan and investment assets, are relatively small in terms of the size of the portfolios even at par value, and considering that loans with a par amount of approximately one-quarter of the outstanding amount for the aggregate value of the three portfolios being in default. Based on the Receiver's and RJA's experience, there is a limited pool of buyers for

NOTICE OF MOTION AND MOTION TO APPROVE AND CONFIRM SALES OF WHOLE LOAN PORTFOLIOS AND OTHER RELIEF

the Whole Loan Portfolios in light of the relatively small size of the portfolios, the number of loans comprising each of the portfolios, the relatively low-dollar value of the individual loans, the delinquency rates in one of the portfolios, and other facts and circumstances.  Time as a result is significant in achieving value for these portfolios as no new loans are being added to these portfolios so each month the value of the loans in the portfolios declines through scheduled payments, prepayments, or other factors, including defaults.  Prompt disposition of the assets is thus essential, and any buyers for the Whole Loan Portfolios will want to close the sale and obtain the assets purchased for their accounts as soon as possible.

By the Court's prior order, the Receiver has been authorized to enter into sale contracts for the sales of these assets, subject to Court approval.  Further, as set forth below, the statutes governing the sales of personal property by a receiver allow the Court flexibility in modifying the sale procedures as appropriate under the circumstances.  Based on the sale and bidding process described in the Motion, the Bidding Procedures, this memorandum and the supporting declarations, the Receiver now seeks approval of the specific agreements to sell each of the Whole Loan Portfolios to the Successful Bidders, or Backup Bidders, if any, based on the highest and best bids received for each of the Whole Loan Portfolios from the bids received by August 29, 2019, or if multiple Qualified Bids are received and an auction is conducted on September 5, 2019, based on the highest and best bids received at the auction.  The Receiver expects to enter into one or more Asset Purchase Agreements for the "as is, where is" and nonrecourse sale of the Whole Loan Portfolios based on the outcome of the bidding process and any auction that may be conducted prior to the sale confirmation hearing on this Motion on September 23, 2019.

At least one week prior to the hearing on this Motion, the Receiver will provide the Court and interested parties the identity of the party or parties which

submit the Successful Bid(s), the amount to be paid for the purchase of the Whole Loan Portfolios, or the individual portfolios if separate Successful Bids are accepted for sales of the portfolios individually, and other details in support of the approval and confirmation of the sale of the Whole Loan Portfolios at the hearing on this Motion.  In the interests of maximizing value for these portfolios and minimizing expense, and consistent with the Receiver's authority by the July 2, 2019 Order to enter into sale contracts, the Receiver has proposed this compressed process of approving the bidding process/sale procedures and confirming the sales produced through this process, as time is critical to closing and transferring these portfolios to the ultimate buyers.

The Receiver has previously advised the Court that the Receivership Entity has a limited number of personnel, and does not have sufficient trained personnel necessary to monitor, manage, collect, and enforce the loans comprising the loan portfolios on an ongoing basis.  The value of the loan portfolios may be in jeopardy until the loans are sold, refinanced, or otherwise disposed of because of the lack of sufficient trained personnel, issues noted above as to certain the loan portfolios discovered by the Receiver; and the risks and potential volatility in the value of the loan portfolios depending on the financial activities of the third party borrowers, and the borrowers under the subsequent loans, as well as developments in the broader economy, which may particularly affect the assets in the Whole Loan Portfolios.

Each of the Whole Loan Portfolios is subject to a Court-approved fee for RJ upon disposition.  The Receiver requests that upon approval of the sales by the Court and closing by the purchasers, the Court authorize the Receiver to pay RJ the fees and out of pocket expenses due under the confidential fee schedule.

### III. THE GOAL OF PRESERVATION OF THE ESTATE AND THE COURT'S BROAD DISCRETION TO APPROVE MODIFIED SALE PROCEDURES FOR SALES OF PERSONAL PROPERTY WARRANT APPROVAL OF THE BIDDING PROCEDURES AND CONFIRMATION OF THE SALES PRODUCED BY THOSE PROCEDURES.

The July 2, 2019 Order authorized the Receiver to enter into sale agreements for the disposition of the loan and investment portfolios, subject to Court approval of the specific sales.  The Receiver seeks approval of the sales of the three Whole Loan Portfolios and approval of the modified sale procedures for the sales of these unique and difficult assets as the highest and best value likely to be achieved for these assets.

### A.     The Court Can Approve Modified Sale Procedures for the Sale of Personal Property.

A receiver in a federal receivership is authorized to sell personal property under the procedures of 28 U.S.C. §§ 2001 and 2004.  *See Tanzer v. Huffines*, 412 F.2d 221, 222 (3d Cir. 1969).  Section 2004 provides that:  "Any personal property sold under order or decree of any court of the United States shall be sold in accordance with Section 2001 of this title, *unless the court orders otherwise*."   28 U.S.C. § 2004 (emphasis added).

Section 2001 sets forth the procedures to be followed for the sale of real property by a receiver which vary depending on whether the sale is by public sale (section 2001(a)) or by private sale (section 2001(b)).   The real property sale procedures include procedures for publishing notice of the proposed sale, appointing appraisers in the case of a private sale, providing at least 10 days' notice of the sale and an opportunity for overbidding prior to confirmation of a private sale, and a requirement that a private sale price be not less than 2/3 the amount of the average value of the property based on three appraisals. *See* 28 U.S.C. §§ 2001 and 2002.

With respect to personal property sales, the Court has more flexibility, and

courts often find cause to deviate from the statutory requirements of §§ 2001, 2002, and 2004.  *See SEC v. Wang*, 2015 WL 12656907 at *3 (C.D. Cal. Aug. 25, 2015) (court has discretion to waive statutory requirements for personal property sales; parties may by consent waive requirements for real property sales); *Consumer Financial Protection Bureau v. Pension Funding, LLC,* 2017 WL 10562570 at *1 (C.D. Cal. May 31, 2017) (court approves waiver of statutory requirements for sale of participatory interest in a loan); *SEC v. Morriss*, 2014 WL 1347528 at *1 (E.D. Mo. April 2, 2014) (citing limited pool of potential purchasers, nature of the interest in the private company being sold and other factors, court approves receiver's sale of interest in company outside statutory requirements).

The District Court has wide latitude in adopting a procedure for the sale of personal property and except in cases where abuse is shown, appellate courts will not disturb the exercise of the District Court's discretion in setting the terms and conditions for a judicial sale or the confirmation thereof.  *See United States v. Branch Coal Corp.*, 390 F.2d 7 (3rd Cir. 1968) *cert. den. Sun Protection Co. v. U.S.*, 391 U.S. 966, 88 S. Ct. 2034, 20 L.Ed. 2d 878 (1968).  Except in cases of abuse, appellate courts will not disturb the exercise of the District Court's discretion in setting the terms and conditions for a judicial sale or the confirmation thereof.  *Id.*

The discretion granted in connection with sales of assets is consistent with the broad discretion accorded to the Court sitting in equity in receivership proceedings to make orders concerning the administration and supervision of the estate that will promote equity, efficiency and cost-effectiveness in the estate's administration.  *See generally Securities and Exchange Commission v. Hardy*, 803 F.2d 1034, 1037 (9th Cir. 1986) ("[A] district court's power to supervise an equity receivership and to determine the appropriate action to be taken in the administration of the receivership is extremely broad").  *See also Securities and Exchange Commission v. Black*, 163 F.3d 188, 199 (3rd Cir. 1998); *Securities and Exchange Commission v. Elliot*, 953

F.2d 1560 (11th Cir. 1992)**.**

**B.** **The Modified Sale Procedures Are Appropriate Under the Circumstances and Meet the Goals of Notice, An Opportunity to Bid and An Opportunity to Maximize Value.**

The Receiver through RJA has provided both broad and targeted notice of the offer to sell the Whole Loan Portfolios. Since August 1, 2019, RJA has sent targeted emails to a contact list of more than 60 lenders, investors, collection agencies, loan services companies and other parties who are believed to have potential interest in purchasing these portfolios, culled from its extensive contact list, advising that the Whole Loan Portfolios were being offered for sale, that the due diligence period was open, and that August 29, 2019 is the deadline for submission of bids for the Whole Loan Portfolios. By August 15, 2019, the Receiver will publish notice of the proposed sale of the portfolios and the bidding deadline of August 29, 2019 in the Wall Street Journal, West Coast edition newspaper, where the ad will appear in both a print and on-line edition of the paper. The Motion with the Bidding Procedures will also be posted on the Receiver's website for the receivership.

Based on RJA's extensive experience and expertise as set forth in the Kauffman Declaration, there are limited numbers of buyers who would have an interest in acquiring these asset portfolios. The assets do not involve traditional bank or commercial loans. Individual loan/credit extension amounts are relatively small and many are unsecured. The broad notice of the opportunity to bid for the transactions through newspaper and on-line published notice coupled with direct marketing by RJA to a relevant universe of contacts with the financial ability, knowledge of the market, and potential interest in acquiring loan and credit assets of this type is the most efficient, cost-effective and likely means of locating buyers for these assets. In addition, notice of this Motion and the bidding opportunity is

8

being broadly disseminated more than 35 days in advance of the hearing on the Motion to creditors and investors and posted on the Receiver's website for the case, providing additional broad and public notice of the chance to purchase these assets by interested parties.

Notice to likely buyers is also the most reasonable, cost-effective and efficient way for market forces to test and determine the value of these portfolios. These assets cannot be readily "appraised"; the value is a function of the outstanding "par" amount owed on the portfolios coupled with a buyer's assessment of the collectability of the underlying credit facilities, after taking into the servicing costs and the risks associated with small business/consumer loans of this type.  The difficulty in locating any qualified valuation experts for these portfolios as well as time delay and inordinate expense that would be incurred by the estate while the value of the portfolios decreases each month make obtaining appraisals impractical and of little utility in any event.  The market will determine the value of the portfolios, along with the Receiver's business judgment with the advice of RJA and their experience to assess the offers made when bids are received, and to reach a conclusion as to whether the estate will be better off selling the portfolios, or retaining and administering them based on the bid amounts received.

The bidding procedures also build in an opportunity for overbidding at an auction for qualified bidders to submit overbids to increase the amounts offered for the portfolios.  All qualified bidders are notified through the bidding procedures that there will be overbidding if multiple qualified bids are received, and of the date, time and place for the overbidding/auction session.  This is consistent with the overbidding process contemplated in section 2001(b).

The timing of the auction, and setting of the sale confirmation hearing on this Motion, are also designed to provide a fair notice and opportunity for hearing on the proposed sales.  They provide the time necessary for the Receiver to file with the

NOTICE OF MOTION AND MOTION TO APPROVE AND CONFIRM SALES OF WHOLE LOAN PORTFOLIOS AND OTHER RELIEF

Court specific and detailed information regarding the results of the bidding and sale process, while allowing the sale to be confirmed and the sale closed as soon as possible after the conclusion of any auction, and potentially by the end of September within roughly 30 days of the bid deadline.

For all the reasons set forth herein and in the declarations in support of this Motion, the Receiver requests the Court's approval of the bidding procedures and confirmation of the specific sales produced by these procedures.

## IV.   NOTICE OF THE HEARING ON THIS MOTION SHOULD BE DEEMED APPROPRIATE AND SUFFICIENT

The Receiver has served notice of the hearing on this Motion on the parties and by mail to the known non-investor creditors of the Receivership Entity.  The Receiver has posted the notice of hearing and the Motion on the Receiver's website (https://cases.stretto.com/dli).  The Receiver has also directed Stretto, his Court-approved claims agent, to email the notice of hearing to all investors by August 16, 2019, the earliest date possible for Stretto to complete the email service.  The Receiver believes this notice complies with the provisions of Local Civil Rule 66-7 to the extent that notice to investors is required.  The Receiver requests that the Court approve this form of notice as reasonable, appropriate, and the most cost-effective means of providing notice of the hearing under the circumstances, since there are approximately 975 investors both in the United States and overseas, and to the extent necessary, to approve the notice given as reasonable, limited notice appropriate under the circumstances and in the interests of time and cost.  This Court, as a court of equity supervising the receivership estate, may make appropriate administrative orders governing the receivership, including limitations on and changes in notice and other procedures.  *See* F.R. Civ. P. 5(a) and (c) (authorizing the court to modify service procedures when numerous defendants are involved in litigation).  In addition, pursuant to Local Civil Rule 66-8, a receiver is directed to administer receivership estates in a manner "as nearly as possible in

accordance with the practice in the administration of estates in bankruptcy."  Orders limiting notice when the Bankruptcy Code or Rules would otherwise require notice to all creditors are routinely granted in bankruptcy cases to promote the expeditious and economical administration of bankruptcy estates.  *See In re First Alliance Mortgage Co.*, 269 B.R. 428, 442 (C.D. Cal. 2001) (referencing in *dicta* in the court's recitation of facts the bankruptcy court's order limiting notice issued in that case); 11 U.S.C. section 102(1)(A) (defining the phrase "after notice and a hearing" to mean "after such notice as is appropriate in the particular circumstances, and such opportunity for hearing as is appropriate in the particular circumstances").

## V.   CONCLUSION

WHEREFORE, the Receiver respectfully requests entry of an order granting the relief set forth in the Motion and proposed order submitted with the Motion.

DATED: August 13, 2019          DIAMOND McCARTHY LLP


By:   /s/ *Christopher D. Sullivan*
        Christopher D. Sullivan
        Counsel for Bradley D. Sharp
        Permanent Receiver

NOTICE OF MOTION AND MOTION TO APPROVE AND CONFIRM SALES OF WHOLE LOAN PORTFOLIOS AND OTHER RELIEF