KATHY BAZOIAN PHELPS (155564)
*kphelps@diamondmccarthy.com*
DIAMOND MCCARTHY LLP
1999 Avenue of the Stars, Suite 1100
Los Angeles, California 90067-4402
Telephone: (310) 651-2997

CHRISTOPHER D. SULLIVAN (148083)
*csullivan@diamondmccarthy.com*
LESLEY ANNE HAWES (117101)
*lhawes@diamondmccarthy.com*
DIAMOND MCCARTHY LLP
150 California Street, Suite 2200
San Francisco, CA 94111
Phone: (415) 692-5200

*Counsel for Bradley D. Sharp,*
*Permanent Receiver*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION – LOS ANGELES

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>DIRECT LENDING INVESTMENTS LLC,<br><br>Defendant. | Case No. 2:19-cv-02188-DSF-MRW<br>Hon. Dale S. Fischer<br><br>**DECLARATION OF ADAM KAUFFMAN IN SUPPORT OF MOTION OF RECEIVER FOR ORDER (1) APPROVING AND CONFIRMING SALE OF THREE LOAN PORTFOLIOS, AND RELATED BIDDING PROCEDURES AND DEADLINES; (2) PAYMENT OF RAYMOND JAMES & ASSOCIATES, INC. FEES; AND (3) FORM AND/OR LIMITATION OF NOTICE UNDER LOCAL CIVIL RULE 66-7**<br><br>Date:   September 23, 2019<br>Time:   1:30 PM |

1
KAUFFMAN DECL. ISO MOTION TO APPROVE AND CONFIRM SALES OF WHOLE LOAN PORTFOLIOS AND OTHER RELIEF

|     |     |
| --- | --- |
|     | Dept.: Courtroom 7D<br>Place: United States District Court<br>Western Division<br>350 West 1st Street,<br>Los Angeles, CA 90012 |

I, Adam Kauffman, declare and state:

1. I am employed as a Managing Director within the Recapitalization and Restructuring- Investment Banking Group of Raymond James & Associates, Inc. ("RJA").

2. I have personal knowledge of the facts set forth in this Declaration, and, if called to testify, could testify competently thereto.

3. I submit this Declaration in support of the Receiver's Motion for Order (1) Approving and Confirming Sale of Three Loan Portfolios, and Related Bidding Procedures and Deadlines; (2) Payment of Raymond James & Associates, Inc. Fees; and (3) Form and/or Limitation of Notice Under Local Civil Rule 66-7 (the "Motion").

4. I lead a team at RJA handling the engagement to advise Bradley D. Sharp, the permanent receiver ("Receiver") on the disposition of assets of Direct Lending Investments, LLC ("DLI") and its related and affiliates entities. RJA has a dedicated restructuring investment banking group with extensive experience advising corporations, creditors' committees, trustees, and other constituents in complex situations involving underperforming businesses facing difficult financial conditions and/or liquidity crises. Restructuring investment bankers at RJA have advised on, or been involved with, numerous restructuring-related or distressed transactions, including, without limitation, sale, restructuring, financing, financial opinion, and special advisory transactions, involving more than $100 billion in liabilities. The RJA team is also comprised of investment bankers from our dedicated specialty finance sector coverage group. These professionals have decades of advisory and capital raising experience in sectors relevant to DLI.

5. The Receiver selected RJA because RJA's professionals have both extensive expertise and experience in providing investment banking services to distressed companies and to trustees, creditors, purchasers, bondholders, and other constituencies in-court and out-of-court proceedings, as well as a deep knowledge within the specialty finance universe.

6. I have worked for RJA for over 15 years and have completed over 60 distressed sale, restructuring advisory and private placement transactions throughout North America and abroad. My work with RJA has included advising private and publicly traded companies or their constituent stakeholders on capital raising or restructuring solutions across a variety of industries. I previously worked as a consultant to the World Bank Group and for five years at Ernst & Young in its Corporate Restructuring group. My background and experience in bankruptcy and receivership matters as well as familiarity with and experience in debt and equity transactions across various industries including specialty finance allows me to provide helpful expertise in advising the Receiver on the disposition of the loans and extensions of credit in this case, since the loans comprising the Receivership Entity's portfolio involve companies in a number of different industries and in some instances overseas interests or assets.

7. I am one of the members of the team at RJA who is assisting the Receiver in marketing and selling three loan portfolios, referred to as the Dealstruck Portfolio, the Biz2Credit Portfolio, and the LoanHero Portfolio (collectively, "Whole Loan Portfolios"). The Whole Loan Portfolios include portfolios of term loans and lines of credit (Dealstruck Portfolio), merchant credit advances/future receivables sales agreements (Biz2Credit Portfolio), and unsecured consumer point-of-sale loans (LoanHero Portfolio). They are referred to for convenience as "loans" and all of the portfolios in question involve ultimate borrowers that may be individuals or small businesses.

8. Attached to this declaration as Exhibit "1" is a copy of the Bidding Procedures developed for the sale of the Whole Loan Portfolios.

9. Beginning on August 1, 2019, RJA began sending e-mail notifications of the availability of the Whole Loan Portfolios for sale to prospective interested parties. Bids for the Whole Loan Portfolios are due on August 29, 2019. Bids are required to be made for each portfolio separately. If multiple Qualified Bids are received for any of the Whole Loan Portfolios, then the Receiver may conduct an auction on September 5, 2019 at which those Qualified Bidders may present overbids in increments generally of up to $50,000 or 5% of the previous highest bid, or such other increments as the Receiver in his discretion may choose to implement.

10. The Whole Loan Portfolios had an aggregate par amount owed of approximately $29.8 million as of June 30, 2019, which includes approximately $7 million in par amount of loans or extensions of credit in collection in one of the Whole Loan Portfolios.

11. Although we will approach a wide universe of potential buyers, the pool of likely bidders will be more limited in light of the relatively small size of the portfolio, the number of loans comprising the portfolio, the relatively low-dollar value of the individual loans, the delinquency rates in one of the portfolios, and other facts and circumstances. No new loans are being added to these portfolios so each month the value of the loans in the portfolios declines through scheduled payments, prepayments, or other factors, including defaults. RJA has recommended and organized a compressed process of approving the bidding process/sale procedures and confirming the sales produced through this process as time is critical to closing and transferring these portfolios to the ultimate buyers while the portfolios are still of a size to garner interest and create a value maximizing auction environment.

12. The Receiver through RJA will provide both broad and targeted notice of the offer to sell the Whole Loan Portfolios. Members of the RJA team have considerable expertise, and extensive dialogue, with investors, brokers, businesses, and others actively seeking investment opportunities of this nature. RJA also maintains various proprietary databases of thousands of investment groups that it uses to develop its target contact lists. Drawing on this expertise, in combination with a consideration of particular characteristics of the Whole Loan Portfolios, RJA has developed a targeted contact list of lenders, investors, collection agencies, loan services and other parties who are believed to have potential interest in purchasing these portfolios. Since commencing the sale notification on August 1, 2019, RJA has directly contacted over 60 prospective parties. Parties who express interest in this opportunity are provided an NDA (non-disclosure agreement). Upon entering into an NDA, investors are able to gain access to a Virtual Data Room, which contains detailed information on the underlying loans, investment performance and history of the Whole Loan Portfolios. .

13. Based on my experience and that other members on the team handling the sale of the Whole Loan Portfolio, the broad notice of the opportunity to bid for the transactions through newspaper and on-line published notices coupled with direct marketing by RJA to a relevant universe of prospects with the financial ability, knowledge of the market, and potential interest in acquiring loan and credit assets of this type is the most efficient, cost-effective and likely means of locating buyers for these assets.

14. The bidding procedures also build in an opportunity for overbidding at an auction for qualified bidders to submit overbids to increase the amounts offered for the portfolios. All qualified bidders are notified through the bidding procedures that there will be overbidding if multiple qualified bids are received, and of the date, time and place for the overbidding/auction session.

15. My team and I believe that the procedures being employed to market and sell the Whole Loan Portfolios, including the timetable for bidding and closing the sale after the Court hearing on the sale motion, are appropriate procedures to conduct a value maximizing auction, taking into account the nature of the loans, the costs associated with maintaining and accounting for the Whole Loan Portfolios, and the diminishing value and interest from prospective buyers the longer the delay in closing the sale.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 12th day of August 2019 at New York, New York.

_____
ADAM KAUFFMAN

# EXHIBIT 1

Case 2:19-cv-02188-DSF-MRW Document 105-2 Filed 08/13/19 Page 7 of 17 Page ID #:1583

IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

SECURITIES AND EXCHANGE COMMISSION,
 Plaintiff,

v.

DIRECT LENDING INVESTMENTS, LLC,
 Defendant.

Case No. 2:19-cv-2188 DSF (MRWx)

**BIDDING PROCEDURES FOR SALE OF WHOLE LOAN ASSETS**

On March 22, 2019, the Securities and Exchange Commission filed a complaint commencing an action against Direct Lending Investments, LLC ("**DLI**") in the United States District Court for the Central District of California (**"Court"**), Case No. 2:19-cv-2188 DSF (MRWx) (the "SEC Action").  On April 1, 2019, the Court in the SEC Action issued a Preliminary Injunction Order and Order Appointing Permanent Receiver ("Receiver Order"), appointing Bradley D. Sharp as permanent receiver (**"Receiver"**) for DLI, and for Direct Lending Income Fund, L.P., Direct Lending Income Feeder Fund, Ltd., DLI Capital, Inc., DLI Lending Agent, LLC, and DLI Assets Bravo, LLC (referred to herein as the "Company") and their successors, subsidiaries and affiliated entities.

The Company's assets include, among other assets, (1) a portfolio of loans or other extensions of credit originated by Dealstruck Funding 3, LLC (the "Dealstruck Portfolio"); (2) a portfolio of loans or other extensions of credit originated by Biz2Credit (the "Biz2Credit Portfolio"); and (3) a portfolio of loans or other extensions of credit originated by LoanHero (the "LoanHero Portfolio") (collectively, the **"Assets"**).  The aggregate par amount of the Assets in the three Portfolios is ~$29.8 million at June 30th, 2019 inclusive of ~$7.0million of loans in collection in one Portfolio.  The specific loans and extensions of credit included in each of the Dealstruck Portfolio, Biz2Credit Portfolio, and LoanHero Portfolio comprising the Assets being offered for sale pursuant to these Bidding Procedures are set forth in the Dealstruck Portfolio Schedule, the Biz2Credit Portfolio Schedule and the LoanHero Schedule which will be provided to interested prospective bidders who execute the confidentiality agreement as set forth below to become a Qualified Bidder and gain access to the Data Room as defined below.  All Assets will be sold only "as is, where is" without representations or warranties and on a nonrecourse basis.  Subject to Court approval of these procedures and approval of the sale of the Assets at a hearing to be conducted on September 23, 2019, unless adjourned or continued as set forth in these Bidding Procedures, the Company, through the Receiver, is soliciting bids for the Assets and will seek Court approval and confirmation of the sale of the Assets to the Successful Bidder, or the Backup Bidder, as those terms are defined below, in accordance with these **Bidding Procedures.** Any bidding and sale of the Assets pursuant to the Bidding Procedures shall be referred to as a "**Transaction**," regardless of the form it takes.

Pursuant to an Order of the Court in the SEC Action entered July 2, 2019 (Doc. 87), the Receiver has been authorized to list and market for sale these loan portfolios by selling the loans separately, in combination, or in bulk; to negotiate, document and execute agreements for the sale of the loan portfolios, subject to the Receiver seeking and obtaining Court approval for the specific agreements for disposition or sale of the assets upon motion and with notice and an opportunity for hearing by interested parties. Order (Doc. 87), para. 2.B.

**THE SUBMISSION OF A BID IN CONNECTION WITH THE OFFER FOR SALE OF THESE ASSETS IS DEEMED TO CONSTITUTE CONSENT BY THE BIDDER TO BE BOUND TO ALL TERMS AND CONDITIONS OF THESE BID PROCEDURES.**

ANY PARTY INTERESTED IN BIDDING ON THE ASSETS SHOULD CONTACT THE RECEIVER'S INVESTMENT BANK, RAYMOND JAMES & ASSOCIATES, INC.:

1. Adam Kauffman, (416) 777-7145, adam.kauffman@raymondjames.com
2. Rory Keenan (212) 885-1807, rory.keenan@raymondjames.com

### Summary of Important Dates

| | |
|---|---|
| **Sale Process commencement** | **August 1, 2019** |
| Motion to Approve Bidding/Auction Procedures and Sale of Assets to Successful Bidder(s), or Backup Bidder(s) | To be filed on or about August 12, 2019 |
| Deadline to object to conduct of Auction and designation of Successful Bidders, and adequate assurance, subject to Court approval | September 9, 2019 (two weeks prior to the date of hearing on the Sale Approval Motion) |
| **Bid Deadline** | **August 29, 2019 at 5:00 p.m. Los Angeles time** |
| **Auction** | **September 5, 2019 at 10 a.m. Los Angeles time** |
| Notice and Statement Regarding Successful Bidder(s), or Backup Bidder(s) | To be filed September 16, 2019 |
| **Sale Hearing** | **September 23, 2019 at 1:30 p.m. Los Angeles time** |
| **Sale Closing** | **[As soon as practicable after Sale Hearing and not later than five business days after Court approval of the sale of Assets]** |

9

1. **Assets to Be Sold**

The Receiver is offering for sale each Portfolio of Assets. Potential Bidders (as defined below) may bid on any or all of the Portfolios of Assets, however each bid must be for the entirety of each portfolio. Potential Bidders are required to submit a separate bid for each portfolio.

2. **Participation Requirements**

Any person or entity that wishes to participate in the bidding process for the Assets (each, a "**Potential Bidder**") must first become a "**Qualifying Bidder**." To become a Qualifying Bidder (and thus be able to conduct due diligence and gain access to the Company's confidential electronic data room concerning the Assets (the "**Data Room**")), a Potential Bidder must submit to the Receiver and his advisors Raymond James & Associates, Inc. ("Raymond James"):

(a) documentation identifying the interested party, its principals, and the representatives thereof who are authorized to appear and act on their behalf for all purposes regarding the contemplated Transaction;

(b) an executed confidentiality agreement in form and substance reasonably satisfactory to the Receiver, which by its terms will inure to the benefit of the Successful Bidder(s);

(c) a statement and other factual support demonstrating to the Receiver's sole satisfaction that the interested party has a bona fide interest in consummating a Transaction; and

(d) sufficient information, as determined solely by the Receiver, to allow the Receiver to determine that the interested party has, or can obtain, the financial wherewithal and any required internal corporate, legal or other authorizations to close a Transaction.

Each Potential Bidder shall comply with all reasonable requests for information and due diligence by the Receiver, or his advisors regarding the ability of such Potential Bidder, as applicable, to consummate its contemplated Transaction.

3. **Court Jurisdiction**

Any Potential Bidders and Qualifying Bidders shall: (a) be deemed to have waived any right to a jury trial in connection with, and consented and submitted to the exclusive jurisdiction of the Court over, any actions or proceedings arising from or relating to the Bidding Procedures, the respective Transaction proposed by each such party, the Auction (as defined below) and the construction and enforcement of the contemplated Transaction documents of such parties; (b) bring any such action or proceeding in the Court; and (c) be deemed to have consented to the Court entering a final judgment determining any such action or proceeding and that such final judgment in any such action or proceeding, including all appeals, shall be conclusive and may be enforced in other jurisdictions (including any foreign jurisdictions) by suit on the judgment or in any other manner provided by applicable law.

### 4. Form of Agreement

Potential Bidders intending to submit bids must include with their bids an asset purchase agreement (a "**Purchase Agreement**"). The Purchase Agreement shall be in the form of the Purchase Agreement included in the Data Room and include a redline marked against the form Purchase Agreement that shows all changes to the Purchase Agreement.

### 5. Due Diligence

The Receiver will provide any Qualifying Bidder with reasonable access to the Company's Data Room and any other available additional information that the Receiver believes to be reasonable and appropriate under the circumstances. All additional due diligence requests shall be directed to **Raymond James,** the Receiver's investment bank.

The due diligence period shall extend through and including the Bid Deadline. The Receiver may, but shall not be obligated to, in its reasonable discretion, furnish any due diligence information after the Bid Deadline.

The Receiver reserves the right, in his reasonable discretion, to withhold or limit access to any due diligence information that the Receiver determines is business-sensitive or otherwise not appropriate for disclosure to a Qualifying Bidder. Notwithstanding any pre-receivership limitations, including, without limitation, any non-disclosure, confidentiality or similar provisions relating to any due diligence information, the Receiver shall be authorized to provide due diligence information to Qualifying Bidders provided that such Qualifying Bidders have delivered an executed confidentiality agreement in form and substance acceptable to the Receiver. The Receiver, the Company and its receivership estate, and Raymond James, are not responsible for, and shall have no liability with respect to, any information obtained by, or provided to, any Qualifying Bidders in connection with the Bidding Procedures and a contemplated Transaction.

### 6. Bid Requirements

To be deemed a "**Qualifying Bid**," a bid must be received from a Qualifying Bidder on or before the Bid Deadline and satisfy each of the following requirements, as determined by the Receiver (each, a "**Bid Requirement**"):

(a) be in writing;

(b) fully disclose the identity of the Qualifying Bidder (and any other party participating in the bid) and provide the contact information of the specific person(s) whom the Company or its advisors should contact in the event that the Receiver has any questions or wish to discuss the bid submitted by the Qualifying Bidder;

(c) set forth the purchase price to be paid by such Qualifying Bidder in adequate detail solely acceptable to the Receiver;

(d) provide for an all cash purchase, paid in full at closing;

11

(e) specify the Portfolio(s) of Assets that are included in the bid;

(f) state that such Qualifying Bidder's offer is formal, binding and unconditional and is irrevocable until fifteen (15) business days after the closing of the sale of the Assets;

(g) state that the Qualifying Bidder is offering to purchase the assets "as is, where is" without representations or warranties and on a nonrecourse basis.

(h) state that such Qualifying Bidder is financially capable of consummating the Transaction contemplated by the bid, is not subject to any financing contingency(ies) and provide written evidence in support thereof;

(i) contain such financial and other information to allow the Receiver to make a reasonable determination as to the Qualifying Bidder's financial and other capabilities to close the transactions contemplated by the proposal;

(j) a commitment to close the Transaction within five (5) business days after entry of an order of the Court approving the sale to the Successful Bidder;

(k) not request or entitle such Qualifying Bidder to any break-up fee, termination fee, expense reimbursement or similar type of fee or payment;

(l) not contain any contingencies of any kind, including, without limitation, contingencies related to financing, internal approval or due diligence;

(m) contain a written acknowledgement and representation that the Qualifying Bidder (i) has had an opportunity to conduct any and all due diligence regarding the Assets, (ii) has relied solely upon its own independent review, investigation and/or inspection of any documents and other information in making its Qualifying Bid, and (iii) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Assets, or the completeness of any documents or other information provided in connection with the Bidding Procedures and the proposed Transaction;

(n) provides for the Qualifying Bidder to serve as a backup bidder (the "**Back-Up Bidder**") if the Qualifying Bidder's bid is the next highest and best bid (the "**Back-Up Bid**") after the Successful Bid (as defined below), as determined by the Receiver;

(o) includes written evidence of authorization and approval from the Qualifying Bidder's board of directors (or comparable governing body) with respect to the submission, execution, and delivery of the Purchase Agreement;

(p) provides a good faith cash deposit (the "**Deposit**") in an amount equal to ten percent (10%) of the purchase price provided for in the Purchase Agreement (or such additional amount as may be determined by the Company in its reasonable discretion) to be deposited, prior to the Bid Deadline, with an escrow agent

**12**

selected by the Company (the "**Escrow Agent**") pursuant to the escrow agreement to be provided by the Company to the Qualifying Bidders (the "**Escrow Agreement**"); and

(q) provides for liquidated damages in the event of the Qualifying Bidder's breach of, or failure to perform under, the modified Purchase Agreement equal to the amount of the Deposit, which modified Purchase Agreement, redlined to show all changes, shall be submitted with the bid as required by Section 4 of these Bidding Procedures.

The Receiver reserves the right to negotiate with any Qualifying Bidder in advance of the Auction to cure any deficiencies in a bid that is not initially deemed a Qualifying Bid.

Each Qualifying Bidder submitting a bid shall be deemed to: (a) acknowledge and represent that it is bound by all of the terms and conditions of the Bidding Procedures.

7. **Bid Deadline**

A Qualifying Bidder that desires to make a bid shall deliver a written and electronic copy of its bid in both PDF and MS-WORD format to the Notice Parties so as to be received on or before August 29, 2019 (the "**Bid Deadline**"); *provided* that the Receiver may extend the Bid Deadline without further order of the Court. To the extent that the Bid Deadline is extended for all parties, the Receiver shall file a notice on the docket of these (cases) indicating the same. **Any party that does not submit a bid by the Bid Deadline (including as extended in accordance with the prior two sentences) will not be allowed to (a) submit any offer after the Bid Deadline, or (b) participate in the Auction.**

8. **Evaluation of Qualifying Bids**

The Receiver shall make a determination regarding whether a timely submitted bid from a Qualifying Bidder is a Qualifying Bid. In the event that a bid is determined not to be a Qualifying Bid, the Qualifying Bidder shall be notified by the Receiver and shall have until the commencement of the Auction to modify its bid to increase the purchase price or otherwise improve the terms of the Qualifying Bid; *provided* that any Qualifying Bid may be improved at the Auction as set forth herein.

Prior to commencing the Auction, the Receiver shall determine, in his sole discretion, which of the Qualifying Bids, at such time, is the highest or best bid for purposes of constituting the opening bid of the Auction (the "**Baseline Bid**" and the Qualifying Bidder submitting the Baseline Bid, the "**Baseline Bidder**"), and shall notify all Qualifying Bidders with Qualifying Bids of the Baseline Bid no later than the opening of the Auction.

9. **Auction**

If the Receiver timely receives one or more Qualifying Bids for any of the Assets, then the Receiver shall conduct an auction (the "**Auction**"). Following the Auction, the Receiver will determine, in its sole discretion, which Qualifying Bid is the highest or best bid for the Assets, which will be determined by considering, among other things, the following non-binding factors:

13

(a) the terms of the Purchase Agreement requested by each bidder; (b) the extent to which such terms are likely to delay closing of the Sale, the cost to the Company and its receivership estate of such modifications or delay, and any incremental financing being offered to accommodate any delay; the total consideration to be received by the Company and its receivership estate; (d) the Transaction structure and execution risk, including conditions to, timing of and certainty of closing, termination provisions, availability of financing and financial wherewithal to meet all commitments, and required governmental or other approval; (e) the net benefit to the Company's receivership estate; (f) the impact on employees, creditors, and contract counterparties; and (g) any other factors the Receiver may reasonably deem relevant.

The Auction shall be governed by the following procedures:

(a) the Auction shall commence on **September 5, 2019** (the "**Auction Date**"), at the Los Angeles offices of Development Specialists, Inc. at 10 a.m. Los Angeles time;

(b) only Qualifying Bidders with Qualifying Bids (collectively, the "**Auction Bidders**") shall be entitled to make any subsequent bids at the Auction;

(c) the Auction Bidders shall appear in person at the Auction, or through a duly authorized representative;

(d) only the Company through its Receiver, the Auction Bidders, together with the professional advisors to each of the foregoing parties, may attend the Auction;

(e) the Receiver and his professional advisors shall direct and preside over the Auction, which shall be transcribed;

(f) the Auction Bidders shall confirm that they have not engaged in any collusion with respect to the Bidding Procedures, the Auction or the Sale;

(g) bidding shall commence at the amount of the Baseline Bid, and the Auction Bidders may submit successive bids in increments of up to $50,000 and 5% of the current highest and best bid (or Baseline Bid for the first round) (the "**Bid Increment**"); *provided* that: (i) each such successive bid must be a Qualifying Bid. The Receiver reserves the right to modify the Bid Increment during the course of the Auction shall do so on the record at the Auction;

(h) the Auction may include individual negotiations with any of the Auction Bidders, but all bids shall be made on the record and in the presence of all of the Auction Bidders;

(i) all material terms of the bid that is deemed to be the highest and best bid for each round of bidding shall be fully disclosed to the Auction Bidders, and the Receiver shall use reasonable efforts to clarify any and all questions that the Auction Bidders may have regarding the Receiver's announcement of the then-current highest and best bid;

(j) the Receiver and his professional advisors may employ and announce at the

**14**

        Auction additional procedural rules that are reasonable under the circumstances (*e.g.*, the amount of time allotted to make subsequent bids) for conducting the Auction, provided that such rules are (i) not inconsistent with any applicable order of the Court entered in connection with these cases, and
(ii) disclosed to the Auction Bidders;

(k)    each Auction Bidder shall (i) be deemed to have waived any right to a jury trial in connection with, and consented and submitted to the exclusive jurisdiction of the Court over, any actions or proceedings arising from or relating the Bidding Procedures, the Sale, the Auction and the construction and enforcement of the contemplated transaction documents of the Auction Bidders, (ii) bring any such action or proceeding in the Court, and (iii) be deemed to have consented to the Court entering a final judgment determining any such action or proceeding and that such final judgment in any such action or proceeding, including all appeals, shall be conclusive and may be enforced in other jurisdictions (including any foreign jurisdictions) by suit on the judgment or in any other manner provided by applicable law;

(l)    Auction Bidders shall have the right to make additional modifications to their respective Purchase Agreements in conjunction with each Qualifying Bid submitted in each round of bidding during the Auction, provided that (i) any such modifications on an aggregate basis and viewed in whole, shall not, in the Receiver's sole discretion be less favorable to the Company and its estates than the terms of the Auction Bidders' respective Purchase Agreements and (ii) each Qualifying Bid shall constitute an irrevocable offer and shall be binding on the Auction Bidder submitting such bid until such party shall have submitted a subsequent Qualifying Bid at the Auction or the conclusion of the Sale Hearing, whichever occurs sooner, unless such bid is selected as the Successful Bid or the Back-Up Bid, which shall remain binding as provided for herein;

(m)    the Receiver shall have the right to request any additional financial information that will allow the Receiver to make a reasonable determination as to an Auction Bidder's financial and other capabilities to consummate the transactions contemplated by their proposal, as may be amended during the Auction, and any further information that the Receiver may believe is reasonably necessary to clarify and evaluate any bid made by an Auction Bidder during the Auction;

(n)    upon the conclusion of the Auction, the Receiver shall determine, subject to Court approval, the offer or offers for the Assets that is or are the highest or best from among the Qualifying Bids submitted at the Auction (the "**Successful Bid**"). In making this decision, the Receiver shall consider among other things, the amount of the purchase price, the likelihood of the bidder's ability to close a transaction and the timing thereof, the nature and impact of any variances from the form Purchase Agreement requested by each bidder, and the net benefit to the Company's receivership estate. The bidder submitting such Successful Bid shall become the "**Successful Bidder**," and shall have such rights and responsibilities of the purchaser as set forth in the subject Purchase Agreement, as applicable. The Receiver may, in its reasonable discretion, designate Back-Up Bids (and the

15

corresponding Back-Up Bidders) to purchase the Assets in the event that the Successful Bidder does not close the Sale; and

(o) prior to the Sale Hearing, the Successful Bidder shall complete and execute all agreements, contracts, instruments and other documents evidencing and containing the terms and conditions upon which the Successful Bid was made.

**THE SUBMISSION OF A BID IN CONNECTION WITH THE OFFER FOR SALE OF THESE ASSETS IS DEEMED TO CONSTITUTE CONSENT BY THE BIDDER TO BE BOUND TO ALL TERMS AND CONDITIONS OF THESE BID PROCEDURES.**

**THE SUCCESSFUL BID AND ANY BACK-UP BIDS SHALL CONSTITUTE AN IRREVOCABLE OFFER AND BE BINDING ON THE SUCCESSFUL BIDDER AND THE BACK-UP BIDDER, RESPECTIVELY, FROM THE TIME THE BID IS SUBMITTED UNTIL TWO (2) BUSINESS DAYS AFTER THE SALE HAS CLOSED. EACH QUALIFYING BID THAT IS NOT THE SUCCESSFUL BID OR BACK-UP BID SHALL BE DEEMED WITHDRAWN AND TERMINATED AT THE CONCLUSION OF THE SALE HEARING.**

### 10. Sale Hearing

The Successful Bid and any Back-Up Bid will be subject to approval by the Court. The hearing to approve such Successful Bid and any Back-Up Bid (the "**Sale Hearing**") shall take place, subject to the Court's availability, on September 23, 2019. The Sale Hearing may be adjourned by the Receiver or the Court from time to time without further notice to creditors or other parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing, by filing a notice of the continuance with the Court, or by posting a notice on the receivership website for the Company's receivership case at https://cases.stretto.com/dli. **For the avoidance of doubt, by no later than the time of announcement of the Baseline Bid for the Auction, the Receiver may determine to withdraw the Assets or any subset thereof, from the Auction and sale process, and adjourn the Sale Hearing with respect to these Assets on the terms set forth herein.**

At the Sale Hearing, the Receiver on behalf of the Company will seek entry of an order that, among other things: (i) authorizes and approves the Sale to the Successful Bidder (and, if applicable the Back-Up Bidder), pursuant to the terms and conditions set forth in the applicable Purchase Agreement executed by the Successful Bidder (and, if applicable the Back-Up Bidder), and that the Assets being transferred in such transaction shall be transferred; (ii) unless otherwise ordered by the Court, directing that all Encumbrances on the Assets that are sold shall attach to the cash proceeds generated from the sale of such Assets in the same order of priority as they existed prior to the consummation of such sale; and (iii) finding that the Successful Bidder, as applicable, is a good faith purchaser..

### 11. Back-Up Bidder

Notwithstanding any of the foregoing, in the event that the Successful Bidder fails to close the Sale no later than five (5) business days following the approval of the sale by the Court (or such date as may be extended by the Receiver and with the agreement of the Back-Up

Bidder), the Back-Up Bid will be deemed to be the Successful Bid, the Back-Up Bidder will be deemed to be the Successful Bidder, and the Receiver on behalf of the Company will be authorized, but not directed, to close the Sale to the Back-Up Bidder subject to the terms of the Back-Up Bid without the need for further order of the Court and without the need for further notice to any interested parties, as soon as practicable, but not later than ten (10) business days following the approval of the sale by the Court .

### 12. Return of Deposits

All Deposits shall be returned to each bidder not selected by the Receiver as the Successful Bidder or the Back-Up Bidder no later than three (3) business days following the conclusion of the Sale Hearing. The deposit of the Successful Bidder or, if the Sale is closed with the Back-Up Bidder, the deposit of the Back-Up Bidder, shall be applied to the purchase price for the Sale. If the Successful Bidder (or, if the Sale is to be closed with the Back-Up Bidder, then the Back-Up Bidder) fails to consummate the Sale because of a breach or failure to perform on the part of such bidder, then, subject to the terms of the Purchase Agreement the Company and its receivership estate shall be entitled to retain the Deposit of the Successful Bidder (or, if the Sale is to be closed with the Back-Up Bidder, then the Back-Up Bidder) as part of the damages resulting to the Company and its receivership estate for such breach or failure to perform.

### 13. Notice Parties

The term "**Notice Parties**" as used in these Bidding Procedures shall mean: (i) the Company through its permanent receiver Bradley D. Sharp ("Receiver"), bsharp@dsiconsulting.com; (ii) counsel to the Receiver for the Company, Christopher D. Sullivan of Diamond McCarthy LLP, csullivan@diamondmccarthy.com, (415) 692-5200, (iii) investment banking advisor to the Company, Raymond James & Associates, Inc. (Attn: Adam Kauffman, adam.kauffman@raymondjames.com, (416) 777-7145 and Rory Keenan rory.keenan@raymondjames.com, (212) 885-1807)

### 14. Reservation of Rights

Notwithstanding any of the foregoing, the Receiver reserves Company the right to modify these Bidding Procedures at or prior to the Auction, including, without limitation, to extend the deadlines set forth herein, modify bidding increments, waive terms and conditions set forth herein with respect to any or all potential bidders (including, without limitation, the Bid Requirements), impose additional terms and conditions with respect to any or all Potential Bidders, adjourn or cancel the Auction at or prior to the Auction, and adjourn the Sale Hearing.