KATHY BAZOIAN PHELPS (155564)
*kphelps@diamondmccarthy.com*
DIAMOND MCCARTHY LLP
1999 Avenue of the Stars, Suite 1100
Los Angeles, California 90067-4402
Telephone: (310) 651-2997

CHRISTOPHER D. SULLIVAN (148083)
*csullivan@diamondmccarthy.com*
LESLEY ANNE HAWES (117101)
*lhawes@diamondmccarthy.com*
DIAMOND MCCARTHY LLP
150 California Street, Suite 2200
San Francisco, CA 94111
Phone: (415) 692-5200

*Counsel for Bradley D. Sharp,*
*Permanent Receiver*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION – LOS ANGELES

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Case No. 2:19–cv–02188–DSF–MRW<br>Hon. Dale S. Fischer |
| Plaintiff, | **NOTICE OF MOTION AND MOTION OF RECEIVER FOR ORDER (1) APPROVING STIPULATION WITH TRUSTEE OF VOIP GUARDIAN PARTNERS I, LLC CONCERNING ALLOWANCE OF SECURED CLAIM AND PAYMENT OF ADMINISTRATIVE EXPENSES AND OTHER CLAIMS FROM COLLATERAL; AND (2) APPROVING FORM AND/OR LIMITATION OF NOTICE UNDER LOCAL CIVIL RULE 66-7; MEMORANDUM OF POINTS AND** |
| v. | |
| DIRECT LENDING INVESTMENTS LLC, | |
| Defendant. | |

1

**AUTHORITIES**

**[DECLARATION OF SHARP FILED CONCURRENTLY]**

Date:    September 16, 2019
Time:    1:30 PM
Dept.:   Courtroom 7D
Place:   United States District Court
         Western Division
         350 West 1st Street,
         Los Angeles, CA 90012

PLEASE TAKE NOTICE THAT on September 16, 2019, at 1:30 p.m. in Courtroom 7D of the above-entitled Court, located at 350 West 1st Street, Los Angeles, CA 92701-4516, Bradley D. Sharp, the Court-appointed permanent receiver (the "Receiver"), will and hereby does make this Motion for Order: (1) Approving Stipulation with VoIP Guardian Partners I, LLC Concerning Allowance of Secured Claim and Payment of Administrative Expenses and Other Claims from Collateral; and (2) Approving Form and/or Limitation of Notice under Local Civil Rule 66-7 (the "Motion").

By this Motion, the Receiver seeks an order authorizing the Receiver to enter into the Stipulation Between Chapter 7 Trustee and Receiver for the Estate of Direct Lending Income Fund LP for Allowance of Claim and Payment of the Estate's Administrative Fees and Expenses and Unsecured Claims from Secured Collateral ("VoIP Stipulation"), a true and correct copy of which is attached as Exhibit "1" to the Declaration of Bradley D. Sharp filed in support of this Motion. In summary, the VoIP Stipulation provides for (1) allowance of the secured claim of Direct Lending Income Fund LP ("DLIF") in the amount of $203,459,871.69 ("DLIF Secured Claim"); (2) that the Receiver and the VoIP Chapter 7 Trustee

have a common interest in Chapter 7 Trustee pursuing claims for recovery of the "Wholesale Telecom Accounts Receivable" ("telecom receivables") which comprise the primary assets of the VoIP estate and the collateral securing the DLIF Secured Claim; and (3) to induce the Trustee to pursue collection, recovery and enforcement of the telecom receivables, the Receiver has agreed, subject to Court approval of the VoIP Stipulation, to "carve out" from the DLIF collateral proceeds amounts necessary to pay the administrative expenses of the Chapter 7 VoIP estate and 30% of the amount of the allowed claims of general unsecured creditors of the VoIP bankruptcy estate.  Under the VoIP Stipulation, the Receiver reserves the right to review and oppose requests for allowance and/or payment of the fees and costs of the Chapter 7 estate professionals and to review and object to the allowance of proofs of claim filed in the Chapter 7 VoIP bankruptcy.

The Receiver seeks approval of the VoIP Stipulation as a fair, reasonable, and equitable resolution of potentially competing and overlapping efforts to recover on the telecom receivables comprising the primary assets of the VoIP estate and the primary assets securing the DLIF Secured Claim.  The Stipulation resolves any dispute over the allowance of the claim in the VoIP estate, and provides an efficient and cost-effective means of marshalling and recovering value from the telecom receivables through the Chapter 7 Trustee's collection efforts, as the representative of the company that generated the receivables who has the available records and is in the best position to recover the amounts owed to VoIP.

The Receiver also moves the Court for an order authorizing the form of notice on this Motion provided to interested parties, creditors, and investors, who are potential creditors of the estate, by the Receiver (a) serving the Motion and related moving papers on all parties to the action and on the Chapter 7 Trustee for VoIP; (b) serving by mail a notice of hearing on the Motion to all known creditors pursuant to Local Civil Rule 66-7l (c) posting a copy of the Motion on the

Receiver's website for the case at https://cases.stretto.com/dli; and (d) causing Bankruptcy Management Solutions dba Stretto ("Stretto") to provide by email a copy of the notice of hearing on the Motion to all known investors through email service to investors pursuant to the applicable governing documents for Direct Lending Income Fund, L.P. ("Domestic Feeder Fund") and Direct Lending Income Feeder Fund, Ltd. ("Off Shore Feeder Fund").

The Motion is made following the Receiver's communications with counsel for the Securities and Exchange Commission under Local Rule 7-3, and the Receiver is advised that the SEC generally does not oppose the Motion. A judgment of liability has been entered against the sole defendant Direct Lending Investments, LLC, which is under the supervision and control of the Receiver, making a conference with that entity unnecessary. There are numerous interested parties served with the Motion, making a pre-filing conference with the other interested parties impracticable.

This Motion is based upon this Notice, the following Memorandum of Points and Authorities, the concurrently filed Declaration of Bradley D. Sharp, the separate notice of hearing on the Motion, and upon such further oral argument, testimony and evidence as may be received at the hearing on this matter.

PLEASE TAKE FURTHER NOTICE that pursuant to Local Rule 7-9, any party who opposes the Motion must, not later than 21 days before the date of the hearing on the motion, serve upon all other parties and file with the Clerk either (a) the evidence upon which the opposing party will rely in opposition to the motion and a brief but complete memorandum which shall contain a statement of all the reasons

//
//
//
//
//
//

NOTICE OF MOTION AND MOTION OF RECEIVER FOR ORDER APPROVING STIPULATION
WITH TRUSTEE OF VOIP

1  in opposition thereto and the points and authorities upon which the opposing party

2  will rely, or (b) a written statement that that party will not oppose the motion.

3

4  DATED: August 16, 2019          DIAMOND McCARTHY LLP

5
                                   By:  /s/ Christopher D. Sullivan
6                                       Christopher D. Sullivan
                                        Counsel for Bradley D. Sharp,
7                                       Permanent Receiver

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
NOTICE OF MOTION AND MOTION OF RECEIVER FOR ORDER APPROVING STIPULATION
WITH TRUSTEE OF VOIP

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    STATEMENT OF FACTS**

On April 1, 2019, this Court entered the Preliminary Injunction Order and Order Appointing Permanent Receiver ("Receiver Order"), Doc. No. 10, appointing Bradley D. Sharp ("Receiver") as permanent receiver for the estate of defendant Direct Lending Investments LLC ("DLI"), and Direct Lending Income Fund, L.P., Direct Lending Income Feeder Fund, Ltd., DLI Capital, Inc., DLI Lending Agent, LLC, and DLI Assets Bravo, LLC and their successors, subsidiaries and affiliated entities (the "Receivership Entity").

The Receiver has been granted the full powers of an equity receiver over all funds, property and assets belonging to, being managed by, or in the possession of or control of the Receivership Entity. (Receiver Order, Section VI). In addition, among other things, the Receiver Order provides that the Receiver has been granted specific powers to sue, marshal, collect, and take possession of the Receivership Entity's property, to take control over the Receivership Entity's bank and brokerage accounts, to investigate and conduct discovery to locate and account for the assets of or managed by the Receivership Entity, and to "take such action as is necessary and appropriate to preserve and take control of and to prevent the dissipation, concealment, or disposition of any assets of or managed by the Receivership Entity." (Receiver Order Section VI.A. and D.)

The entities comprising the Receivership Entity include investment "feeder" funds that generated investment funds that were used by other receivership entities to make loans to third parties who then used the funds to make loans to others. The primary estate assets are loan and investment portfolios ranging from $1 million to approximately $200 million in par value at origination.

One of the largest loan/investment portfolios is a portfolio of loans or extensions of credit to VoIP Guardian Partners I, LLC ("VoIP"). In March 2019,

1

1   shortly before the receivership commenced, VoIP filed a voluntary petition for
2   relief under Chapter 7 of the Bankruptcy Code, initiating a liquidation proceeding.
3   Timothy Yoo is the Chapter 7 Trustee of the VoIP bankruptcy estate.

4        Under the VoIP Stipulation, the Chapter 7 Trustee has stipulated to the
5   allowance of DLIF's secured claim in the amount of $203,459,871.69 ("DLIF
6   Secured Claim") based on the proof of claim filed by the Receiver.  The primary
7   collateral securing DLIF's claim is listed in the VoIP bankruptcy schedules as
8   "Wholesale Telecom Accounts Receivable" and the schedules also list a significant
9   claim against an entity in the Netherlands of over $34 million, also part of the
10  collateral securing the DLIF Secured Claim.   Though VoIP indicates the face
11  amount of its accounts receivable exceeds $192 million, it indicates over $159
12  million of the accounts receivable are of "doubtful" collectability.

13       The Receivership Entity's transactions with VoIP were the subject of an
14  internal investigation commenced by the Receivership Entity with counsel prior to
15  the receivership, as was reported to investors by letters issued in the spring of 2019
16  within the two months preceding the Receiver's appointment.  A large percentage
17  of the telecom receivables according to the Receivership Entity's records are owed
18  by overseas entities, including entities located in Germany, the United Kingdom,
19  Spain and other locations.   The Receiver has analyzed the information available
20  regarding the receivables from the Receivership Entity records, and believes the
21  collectability and value of the telecom receivables is highly uncertain, as the VoIP
22  bankruptcy schedules themselves reflect since they characterize almost 75% of the
23  receivables as of doubtful collectability.  The fact that VoIP filed a Chapter 7
24  petition in liquidation, instead of seeking to reorganize through Chapter 11,
25  supports the doubt about the potential recovery from this portfolio.

26       The Receivership Entity is not operating as a going concern but is winding
27  down its operations and is not accepting new investments.  The Receivership Entity

28

does not have the infrastructure and personnel to cost-effectively investigate the documentation and information necessary to collect these telecom receivables, particularly those overseas.  The Chapter 7 Trustee, on the other hand, has stepped into the shoes of the company that generated the telecom receivables and that allegedly has a substantial tort claim of over $34 million against a company in the Netherlands. The Chapter 7 Trustee of VoIP is thus in the better position to immediately and cost-effectively assess the receivables, continue the collection of the tort claim, assess the telecom receivables, and initiate immediate collection efforts for those that appear to have some reasonable prospects for recovery.

Subject to Court approval, the Receiver has entered into the VoIP Stipulation which includes four key terms:

1.    The Chapter 7 Trustee has stipulated to the allowance of the DLIF Secured Claim of over $203 million.

2.    The Receiver has agreed that he and the Chapter 7 Trustee have a common interest in collecting the telecom receivables and will share information and documents, and coordinate strategies to effectuate the collections.

3.    The Receiver anticipates the Chapter 7 Trustee will be primarily responsible for collection of the VoIP telecom receivables, and has agreed to compensate the Chapter 7 VoIP estate for those efforts by paying from the proceeds of the collateral securing the DLIF Secured Claim (a) the Chapter 7 administrative expenses; and (b) 30% of the allowed amount of the unsecured claims of the estate. The VoIP bankruptcy schedules, signed by VoIP's sole member under penalty of perjury, list approximately $157,000 in general unsecured claims, not including the amount of any claim by Forefront Partners LLC that is the subject of pending litigation in the New York Supreme Court (*Forefront Partners LLC v. Rodney Omanoff, et. al.,* Index No. 650973/2017).

4.    The Receiver reserves rights to review and oppose motions for

NOTICE OF MOTION AND MOTION OF RECEIVER FOR ORDER APPROVING STIPULATION
WITH VOIP TRUSTEE

1 approval and payment of fees and expenses of the Chapter 7 professionals, and to

2 review and object to proofs of claim filed in the VoIP bankruptcy.

3     In the Receiver's informed business judgment, the VoIP Stipulation best

4 serves the interests of creditors and investors in this receivership estate in

5 maximizing the likelihood and amount of collections from the VoIP assets securing

6 the DLIF Secured Claim. The Chapter 7 Trustee's expenses and the 30% payment

7 of allowed general unsecured claims in that estate are less than the expenses, delays

8 and risks entailed in the Receiver or another third party attempting to assume

9 collection of the telecom receivables and pursue the VoIP tort claim, if pursuit of

10 that claim by anyone other than the representative of the estate of VoIP were even

11 practically and legally possible.

12     The Receiver has obtained a copy of the claims register for claims filed in the

13 VoIP bankruptcy case, a copy of which is attached to the Sharp Declaration as

14 Exhibit "3."   The register shows that in addition to the secured and contingent

15 unsecured claims filed for the Receivership Entity, unsecured claims were filed by

16 (a) Lloyds of London in an unstated amount; (b) HILF Telecom in the amount of

17 $461,873.28 which will require further investigation and potential objection; and (c)

18 Forefront Partners, LLC, arising out of the pending New York Supreme Court

19 action, in the amount of $25 million. Based on the claims asserted in the Forefront

20 litigation in New York, the Forefront claim is founded on alleged "profits" lost by

21 Forefront when VoIP allegedly wrongfully started a competing business. Given the

22 financial circumstances of VoIP, the questions regarding the amount and

23 collectability of a substantial amount of its telecom receivables, it is highly doubtful

24 that VoIP had any significant "profits" as the foundation for the Forefront claim,

25 much less to support Forefront have a claim for its portion of those profits in the

26 amount of $25 million. The VoIP Stipulation allows the Receiver to object to each

27 of these claims as the Receiver may determine is warranted.

28

The Stipulation protects the receivership by granting the Receiver the opportunity to review and object to the fees, expenses and claims in the Chapter 7 estate.  Further, the sole source of payment for the Chapter 7 expenses and general unsecured claims will be the recoveries made by the Chapter 7 Trustee, which protects the receivership estate from incurring significant out-of-pocket costs with a highly uncertain upside while providing incentives to the Chapter 7 Trustee to pursue the telecom receivables and other claims efficiently and cost-effectively to generate funds for the unsecured creditors and ultimately for the receivership estate.

**II.   THE BEST INTERESTS OF THE ESTATE ARE SERVED BY APPROVAL OF THE PROPOSED VOIP STIPULATION.**

**A. The Receiver Order Grants the Receiver Full Power Over the Receivership Estate**

The Receiver Order charges the Receiver with the power and duty to "collect and take custody, control, possession, and charge of all funds, assets, collateral, . . . . and other real and personal property, wherever located, of or managed by the Receivership Entity, with full power to sue, foreclose, marshal, collect, receive, and take into possession all such property" and to "take such action as is necessary and appropriate to preserve and take control of and to prevent the dissipation, concealment, or disposition of any assets of or managed by the Receivership Entity." (Receiver Order, Sections VI.A and D.)

**B. The VoIP Stipulation Is in the Best Interests of the Estate**

The Receiver believes in his business judgment that the VoIP Stipulation is fair, reasonable, and in the best interest of the receivership estate. The VoIP Stipulation offers the receivership estate and its creditors the best means of obtaining value from the telecom receivables and other assets of the VoIP estate comprising the collateral for the DLIF Secured Claim.   There are limited alternatives for the

collection of these assets, and allowing the Chapter 7 Trustee, who can pursue the tort claim on behalf of VoIP and has full access to the underlying records, files, contacts and other information necessary to pursue the telecom receivables is far more likely to produce recoveries for this estate for all the practical and legal reasons described.

As to the receivership, the principal purpose of a receivership is to marshal the estate's assets for the benefit of aggrieved investors and other creditors of the receivership entity. *See Securities and Exchange Commission v. Hardy*, 803 F.2d 1034, 1058 (9th Cir. 1986). Receivership courts, like bankruptcy courts, have discretion to approve settlements of disputed claims to receivership assets. *See, e.g., Richie Capital Mgmt., v. Kelley*, 785 F.3d 273, 278 (8th Cir. 2015).

There are no "federal rules [that] prescribe a particular standard for approving settlements in the context of an equity receivership; instead a district court has wide discretion to determine what relief is appropriate." *Gordon v. Dadante*, 336 F. App'x 540, 549 (6th Cir. 2009). Nonetheless, in this Circuit, the Court must consider the following factors in examining a proposed settlement: the probability of success in the litigation; the difficulties, if any, to be encountered in the matter of collection; the complexity and expense of the litigation; and the paramount interests of creditors, giving proper deference to their reasonable views regarding the proposed compromise. *Securities and Exchange Commission v. Ruderman*, No. CV 09-02974, 2011 WL 5857452, at *3 (C.D. Cal. Nov. 21, 2011).) "Although the Court may not simply 'rubber-stamp' the decision to enter into a settlement, it need not conduct an exhaustive investigation, hold a mini-trial on the merits of the claims sought to be compromised, or require that the settlement be the best that could possibly be achieved." *Id.*

This Court is instructed by Local Rule 66-8 to look to bankruptcy courts for guidance in the receivership context (L.R. 66-8). In the context of the approval of

6

the VoIP Stipulation, the reference to bankruptcy requires the Court to review the proposed agreement in the context of both the requirements for approval of a so-called "carve out" agreement, and the standards for approval of a compromise or settlement in federal equity receiverships.

A Chapter 7 trustee in bankruptcy is generally directed not to administer assets that are fully or over-encumbered by secured claims because the secured creditor generally has rights and remedies that allow the secured creditor to liquidate the collateral, and administration of those assets by the Chapter 7 trustee would only benefit the trustee and professionals. *See In re KVN Corp.*, 514 B.R. 1, 8 (9th Cir. B.A.P. 2014). However, the presumption against administering encumbered assets is overcome where the trustee can show a meaningful recovery will be obtained by general unsecured creditors. *Id.* (presumption can be rebutted where trustee has fulfilled his basic duties, there are prospects for a meaningful distribution to unsecured creditors, and the terms of the carve-out agreement, by which a portion of the value of the secured creditor's collateral is being carved out in favor of the bankruptcy estate, have been fully disclosed). All of these criteria are met in the VoIP Stipulation as necessary for the agreement to be approved in the bankruptcy case.

The Ninth Circuit has held that "[b]efore approving a settlement agreement, the bankruptcy court is charged with considering the 'fairness, reasonableness, and adequacy' of the agreement." *United States v. Edwards*, 595 F.3d 1004, 1012 (9th Cir. 2010) (citations omitted.) Because compromises are favored in bankruptcy actions, courts generally give deference to a trustee's business judgment and approve settlements negotiated in good faith and which are "reasonable, fair, and equitable." *Ruderman*, 2011 WL 585752, at *3, *see* L.R. 66-8. This is consistent with the goal of both receiverships and liquidation bankruptcy actions: the preservation and fair distribution of the liquidated assets. *Janvey v. Alquire*, No. 3:09-cv-0724, 2014 WL

1   12654910 at *17 (N.D. Tex. July 30, 2014).

2       The settlement at issue was negotiated in good faith and is "reasonable, fair,

3   and equitable." In the Receiver's business judgment, entering into an agreement that

4   provides the Chapter 7 Trustee the ability and incentive to try to collect the telecom

5   receivables is the best practical and cost-effective solution to maximize the potential

6   recoveries from this portfolio, which by VoIP's admission in its schedules has

7   largely doubtful collectability. Allowing the VoIP Trustee to pursue the tort claim in

8   the Netherlands is similarly the most effective way to achieve potential recoveries for

9   creditors and investors in this receivership.

10      The Receiver and the Chapter 7 Trustee have agreed to share information

11  pursuant to a common interest agreement, and the Receiver will be able to coordinate

12  collection efforts with the Trustee as a result. The Receiver will also have the ability

13  to monitor and object, if appropriate, to the fees and costs incurred as well as to the

14  unsecured claims filed in the VoIP estate to protect the receivership estate from

15  excessive administrative expense or improper claims. However, the Chapter 7

16  Trustee is an experienced fiduciary, dealing with the Receiver as another fiduciary,

17  providing additional assurance that the interests of the receivership creditors will be

18  taken into account in the efforts to maximize recoveries from the assets. The

19  Receiver believes in his judgment that the VoIP Stipulation is beneficial for the

20  receivership and its creditors, and the most likely alternative to produce meaningful

21  recoveries for this receivership estate from the VoIP assets.

22  **III.   NOTICE OF THE HEARING ON THIS MOTION SHOULD BE**

23        **DEEMED APPROPRIATE AND SUFFICIENT**

24      The Receiver has served notice of the hearing on this Motion on the parties

25  and by mail to the known non-investor creditors of the Receivership Entity and on

26  the Chapter 7 Trustee of the VoIP estate. The Receiver has posted the notice of

27  hearing and the Motion on the Receiver's website (https://cases.stretto.com/dli) as

28

8

1  well as through the noticing software for investors.   The Receiver has also directed
2  Stretto to email the notice of hearing to all investors by August 20, 2019.   The
3  Receiver believes this notice complies with the provisions of Local Civil Rule 66-7
4  to the extent that notice to investors is required.  The Receiver requests that the Court
5  approve this form of notice as reasonable, appropriate, and the most cost-effective
6  means of providing notice of the hearing under the circumstances, since there are
7  approximately 975 investors both in the United States and overseas, and to the extent
8  necessary, to approve the notice given as reasonable, limited notice appropriate under
9  the circumstances and in the interests of time and cost.

10        This Court, as a court of equity supervising the receivership estate, may make
11  appropriate administrative orders governing the receivership, including limitations on
12  and changes in notice and other procedures.   *See* F.R. Civ. P. 5(a) and (c)
13  (authorizing the court to modify service procedures when numerous defendants are
14  involved in litigation).  In addition, pursuant to Local Civil Rule 66-8, a receiver is
15  directed to administer receivership estates in a manner "as nearly as possible in
16  accordance with the practice in the administration of estates in bankruptcy."  Orders
17  limiting notice when the Bankruptcy Code or Rules would otherwise require notice
18  to all creditors are routinely granted in bankruptcy cases to promote the expeditious
19  and economical administration of bankruptcy estates.   *See In re First Alliance*
20  *Mortgage Co.*, 269 B.R. 428, 442 (C.D. Cal. 2001) (referencing in dicta in the court's
21  recitation of facts the bankruptcy court's order limiting notice issued in that case); 11
22  U.S.C. section 102(1)(A) (defining the phrase "after notice and a hearing" to mean
23  "after such notice as is appropriate in the particular circumstances, and such
24  opportunity for hearing as is appropriate in the particular circumstances").

25  //
26  //
27  //
28

9

NOTICE OF MOTION AND MOTION OF RECEIVER FOR ORDER APPROVING STIPULATION
WITH VOIP TRUSTEE

## IV.  CONCLUSION

WHEREFORE, the Receiver respectfully requests an order approving the VoIP Stipulation and other relief as requested in the Motion.

DATED: August 16, 2019             DIAMOND McCARTHY LLP


                                    By:  /s/ *Christopher D. Sullivan*
                                         Christopher D. Sullivan
                                         Counsel for Bradley D. Sharp
                                         Permanent Receiver

NOTICE OF MOTION AND MOTION OF RECEIVER FOR ORDER APPROVING STIPULATION WITH VOIP TRUSTEE