KATHY BAZOIAN PHELPS (155564)
LESLEY ANNE HAWES (117101)
*lhawes@diamondmccarthy.com*
DIAMOND MCCARTHY LLP
150 California Street, Suite 2200
San Francisco, CA 94111
Phone: (415) 692-5200

CHRISTOPHER D. SULLIVAN (148083)
*csullivan@diamondmccarthy.com*
LESLEY ANNE HAWES (117101)
*lhawes@diamondmccarthy.com*
DIAMOND MCCARTHY LLP
150 California Street, Suite 2200
San Francisco, CA 94111
Phone: (415) 692-5200

*Counsel for Bradley D. Sharp,*
*Permanent Receiver*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION – LOS ANGELES

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Case No. 2:19−cv−02188−DSF−MRW<br>Hon. Dale S. Fischer |
| Plaintiff, | **NOTICE OF MOTION AND MOTION FOR INSTRUCTIONS REGARDING ATTORNEY-CLIENT PRIVILEGE AND RECEIVER'S ACCESS TO FILES CLAIMED TO BE PRIVILEGED; AND APPROVING FORM AND/OR LIMITATION OF NOTICE UNDER LOCAL CIVIL RULE 66-7; MEMORANDUM OF POINTS AND AUTHORITIES** |
| v. | |
| DIRECT LENDING INVESTMENTS LLC, | |
| Defendant. | |
| | Date:   September 16, 2019<br>Time:   1:30 PM<br>Dept.:   Courtroom 7D<br>Place:  United States District Court |

Western Division
350 West 1st Street,
Los Angeles, CA 90012

PLEASE TAKE NOTICE THAT on September 16, 2019, at 1:30 p.m. in Courtroom 7D of the above-entitled Court, located at 350 West 1st Street, Los Angeles, CA 92701-4516, Bradley D. Sharp, the Court-appointed permanent receiver (the "Receiver"), will and hereby does make this Motion for Instructions Regarding Attorney Client Privilege and Receiver's Access to Files Claimed to Be Privileged; and Approving Form and/or Limitation of Notice Under Local Civil Rule 66-7 (the "Motion"). By this Motion, the Receiver seeks the following relief:

1.      An order confirming that the Receiver holds and has the power to assert or waive all the attorney-client privilege rights of Direct Lending Investments, LLC, Direct Lending Income Fund, L.P., Direct Lending Income Feeder Fund, Ltd., DLI Capital, Inc., DLI Lending Agent, LLC, and DLI Assets Bravo, LLC, and their successors, subsidiaries, and affiliated entities.[1]

2.      An order confirming that the Receiver is authorized to obtain copies of all client files and documents in the possession of any law firm that represented one or more of the Receivership Entities as set forth in any engagement letter in possession of any one or more of the Receivership Entities or as otherwise evidenced by the files of the Receivership Entities, including without limitation files for matters in which any of the Receivership Entities was a joint client with Brendan Ross.

3.      An order confirming that Brendan Ross was not a client of, and holds no attorney-client privilege in his individual capacity with regard to, any communications with a law firm that represented one or more of the Receivership Entities and in which he is not personally identified as a client of such law firm in

[1] The above listed entities shall be referred to collectively as the "Receivership Entity" or "Receivership Entities."

its engagement agreement.

4.     An order confirming that the Receiver is authorized to review any client files or attorney-client communications made for any matter in which a Receivership Entity and Brendan Ross were jointly represented by a single law firm on the same matter as set forth in the engagement agreement of the law firm.

5.     An order confirming that except as otherwise provided under applicable law, including without limitation California Evidence Code § 962 and applicable federal law, the Receiver shall not disclose attorney-client communications or attorney work product to any third party outside the scope of the joint representation with respect to matters in which one or more of the Receivership Entities was jointly represented by counsel together with Brendan Ross, unless Brendan Ross consents to the disclosure.

6.     An order confirming that Brendan Ross waived any attorney-client privilege, or work product privilege, over any communication or document stored on Mr. Ross's mobile device or personal email account that Mr. Ross provided to counsel for DLI.

7.     An order confirming that Ross and any other person or entity not a Receivership Entity waived any right of attorney-client privilege, or work product privilege, over any communication or document that he/it sent through a DLI email account or stored on a computer system or electronic storage device owned, managed, in the possession of, or under the control any of the Receivership Entities.

8.     An order approving the form of notice on the Motion provided to interested parties, creditors, and investors, who are potential creditors of the estate, by the Receiver (a) serving the Motion and related moving papers on all parties to the action and on the known law firms whose files are the subject of the Motion; (b) serving by mail a notice of hearing on the Motion to all known creditors pursuant to Local Civil Rule 66-7; (c) posting a copy of the Motion on the Receiver's website

for the case at https://cases.stretto.com/dli; and (d) causing Bankruptcy Management Solutions dba Stretto to provide by email a copy of the notice of hearing on the Motion to all known investors through its email service regularly used to provide notices and documents to investors pursuant to the applicable governing documents for Direct Lending Income Fund, L.P. ("Domestic Feeder Fund") and Direct Lending Income Feeder Fund, Ltd. ("Off Shore Feeder Fund"), as sufficient notice and opportunity for hearing on the Motion under the circumstances.

The Motion is made following the Receiver's communications with counsel for the Securities and Exchange Commission under Local Rule 7-3, and the Receiver is advised that the SEC generally does not oppose the Motion. Defendant DLI, the only other party to the action has consented to entry of a bifurcated judgment as to liability but not damages, and given the Receiver's appointment over the defendant, defendant DLI has no practical interest in the relief sought distinct from the Receiver. There are numerous interested parties served with the Motion, making a pre-filing conference with the other interested parties impracticable.

This Motion is based upon this Notice, the following Memorandum of Points and Authorities, the concurrently filed Declaration of Bradley D. Sharp and Declaration of Chris Sullivan, the separate notice of hearing on the Motion under Local Rule 66-7, and upon such further oral argument, testimony and evidence as may be received at the hearing on this matter.

PLEASE TAKE FURTHER NOTICE that pursuant to Local Rule 7-9, any party who opposes the Motion must, not later than 21 days before the date of the hearing on the motion, serve upon all other parties and file with the Clerk either (a) the evidence upon which the opposing party will rely in opposition to the motion and a brief but complete memorandum which shall contain a statement of all the reasons in opposition thereto and the points and authorities upon which the opposing party will rely, or (b) a written statement that that party will not oppose the motion.

1  Evidence presented in all opposing papers shall comply with the requirements of

2  L.R. 7-6, 7-7 and 7-8.

3

4  DATED: August 16, 2019          DIAMOND McCARTHY LLP

5                                  By:  /s/Christopher D. Sullivan

6                                       Christopher D. Sullivan
                                        Attorneys for Bradley D. Sharp, Permanent
7                                       Receiver

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## TABLE OF CONTENTS

I. INTRODUCTION ..................................................................................................... 1

II. FACTS SUPPORTING RELIEF ............................................................................ 2

    A. The Receiver Order .................................................................................. 2

    B. Client Files held by the Receivership Entity's outside lawyers ............ 2

        1. Law Firms representing the Receivership Entity ......................... 2

        2. The Receiver seeks client files ................................................... 4

        3. Ross objects to the Receiver's request for privileged information ................................................................................... 5

        4. Brendan Ross and DLI are jointly represented by a law firm for the Talking Capital litigation. .......................................... 5

    C. The Receivership Entity's Electronic information systems and applicable policies and procedures ........................................................ 6

        1. The Receivership Entity's Electronic Information Systems ........ 6

        2. DLI Employee Handbook ........................................................... 6

        3. DLI Compliance Manual ............................................................ 8

        4. DLI Employee Affirmations of Acceptance of Employee Handbook and Compliance Manual .......................................... 9

        5. Ross Employee Confidentiality Agreement ............................... 9

    D. Ross stores potentially privileged materials on the computer systems of the Receivership Entity ...................................................... 10

        1. Robin Hill Services .................................................................. 10

        2. Ross personal files ................................................................... 12

        3. Ross mobile phone and personal email .................................... 13

III. ARGUMENT AND AUTHORITIES .................................................................. 14

    A. The Receiver owns and controls the privilege of the Receivership Entity. ..................................................................................................... 14

    B. In representation of an entity, the privilege belongs to the corporate client, not to a company shareholder or officer. ................... 15

    C. California law obligates the law firms to provide the Receiver with all client files, including work product. ........................................ 16

    D. The Receiver is entitled to receive and review files subject to a joint representation agreement. .............................................................. 17

i

E.    Ross has waived any privilege claim for any information or communications stored on Receivership Entity servers or email systems. ...............................................................................19

F.    Ross Waived Any Personal Attorney-Client Privilege for Any Information He Voluntarily Provided to DLI. .......................................23

IV.    CONCLUSION ................................................................................25

# TABLE OF AUTHORITIES

Page(s)

<u>Cases</u>

*Am. Mut. Liab. Ins. Co. v. Superior Court*,
  38 Cal.App.3d 579, (2013) .................................................................................. 18

*Clarke v. Am. Commerce Nat'l Bank*,
  974 F.2d 127 (9th Cir. 1992) ............................................................................ 3, 5

*Commodity Futures Trading Commission v. Standard Forex, Inc.*,
  882 F. Supp. 40 (E.D.N.Y. 1995) ...................................................................... 14

*Commodity Futures Trading Commission v. Weintraub*,
  471 U.S. 343 (1985) ........................................................................................... 14

*In re Asia Global Crossing, Ltd.*,
  322 B.R. 247 (Bankr. S.D.N.Y. 2005) .......................................................... 20, 21

*Griffith v. Davis*,
  161 F.R.D. 687 (C.D. Cal. 1995) ....................................................................... 18

*Gusman v. Comcast Corp.*,
  298 F.R.D. 592 (S.D. Cal. 2014) .......................................................................... 3

*Hall CA-NV, LLC v. Ladera Development, LLC*,
  No. 3:18-cv-00124-RCJ-CBC, 2018 U.S. Dist. LEXIS 203257, 2018 WL 6272890,
  (D. Nev. Nov. 30, 2018) ..................................................................................... 18

*Holmes v. Petrovich Development Co., LLC*,
  191 Cal.App.4th 1047 (2011) ........................................................................ 19, 20

*In re First Alliance Mortgage Co.*,
  269 B.R. 428 (C.D. Cal. 2001) ........................................................................... 25

*In re High-Tech Employee Antitrust Litig*,
  No. 11-CV-2509-LHK-PSG, 2013 WL 772668 (N.D. Cal. Feb. 28, 2013) ........... 21

*In re Hotels Nevada, LLC*,
  458 B.R. 560 (Bankr. D. Nev. 2011) .................................................................. 18

*In re Jaeger*,

213 B.R. 578 (Bankr. C.D. Cal. 1997) ................................................. 18

*In re Taproot Systems, Inc.*,
2013 WL 3505621 (Bankr. E.D.N.C. July 11, 2013).............................. 18

*Koo v. Rubio's Restaurant*,
109 Cal.App.4th 719 (2003) .................................................................. 16

*La Jolla Cove Motel & Hotel Apartments, Inc. v. Superior Court*,
121 Cal.App.4th 793 (2004) .................................................................. 16

*Nowell v. Superior Court for Los Angeles Cty.*,
223 Cal.App.2d 652 (1963) ................................................................... 18

*Polycast Technology Corp. v. Uniroyal, Inc.*,
125 F.R.D. 47 (S.D.N.Y. 1989)............................................................. 15

*Roush v. Seagate Tech., LLC*,
150 Cal.App.4th 210, (2007) ................................................................ 18

*Securities and Exchange Commission v. Elfindepan, S.A.*,
169 F. Supp. 2d 420 (M.D.N.C. 2001)................................................... 14

*Securities and Exchange Commission v. Ryan*,
747 F. Supp. 2d 355 (N.D.N.Y. 2010) .................................................. 15

*TBG Insurance Services v. Superior Court*,
96 Cal.App.4th 443 (2002) ................................................................... 20

*Tennenbaum v. Deloitte & Touche*,
77 F.3d 337 (9th Cir. 1996) .................................................................. 23

*United States v. Plache*,
913 F.2d 1375 (9th Cir. 1990) .............................................................. 24

Statutes

11 U.S.C. § 102(1)(A) ............................................................................ 25

California Bus. & Prof. Code § 6068(m)............................................... 17

California Evidence Code § 912(a) ................................................. 22, 23

California Evidence Code § 962............................................... 2, 17, 18, 19

NOTICE OF MOTION AND MOTION FOR INSTRUCTIONS

Rules

Cal. Rules Prof. Conduct 1.13(a) ................................................................ 15

Cal. Rules Prof. Conduct 1.13(g) ............................................................... 16

Cal. Rules Prof. Conduct 3-600 ................................................................. 15

Cal. Rules Prof. Conduct, 1.4(a)(3) ........................................................... 16

California Rule of Professional Conduct 1.4 ............................................. 16

California Rules of Professional Conduct 1.7, 1.8.2, 1.8.6, and 1.8.7 ...... 15

F.R. Civ. P. 5(a) and (c) ............................................................................ 25

Other Authorities

Restatement (Third) of the Law Governing Lawyers § 75 (2000) ............. 18

Cal. State Bar Form. Opn. 1994-134 ......................................................... 16

Cal. State Bar Form. Opn. 1995-127 ......................................................... 17

NOTICE OF MOTION AND MOTION FOR INSTRUCTIONS

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.   INTRODUCTION

On April 1, 2019, this Court entered the Preliminary Injunction Order and Order Appointing Permanent Receiver ("Receiver Order"), Doc. No. 10, appointing Bradley D. Sharp ("Receiver") as permanent receiver for the estate of defendant Direct Lending Investments LLC ("DLI"), and Direct Lending Income Fund, L.P., Direct Lending Income Feeder Fund, Ltd., DLI Capital, Inc., DLI Lending Agent, LLC, and DLI Assets Bravo, LLC and their successors, subsidiaries and affiliated entities (collectively the "Receivership Entity").

After entry of the Receiver Order, the Receiver began investigating the business of the Receivership Entity and the allegations in the original complaint, among others. The Receiver sought copies of the client files, communications, and work product possessed by certain law firms that represented DLI in business and litigation matters. Before the law firms responded, DLI's sole owner and former Chief Executive Officer, Mr. Brendan Ross ("Ross"), objected to the production of client files to the Receiver on the ground that he had an attorney-client privilege with each such law firm because he was personally a client and jointly represented, or because his personal privilege was indistinguishable from the privilege of DLI. In his objection, Ross further requested the return of personal material Ross turned over to DLI from his cell phone and Gmail account on the ground it was privileged.

The Receiver seeks instruction from the Court on the scope and applicability of the attorney-client privilege, waiver of such privilege, and approval and instruction regarding a process for holding, reviewing, and utilizing information subject to the attorney client-privilege. The Court's instruction is necessary to allow the Receiver to gain complete access to the Receivership Entity's client files to which he is entitled in the performance of his duties, and to protect the Receiver's decisions and the rights of interested parties, including the pre-receivership counsel holding these files in light of Ross's objection.

## II.   FACTS SUPPORTING RELIEF

### A.   The Receiver Order

The Receiver is granted the full powers of an equity receiver over all funds, property and assets belonging to, being managed by or in the possession of or control of the Receivership Entity.[2] The Receiver Order provides that "the Receivership Entity and its officers, agents, servants, employees and attorneys, and any other persons who are in custody, possession or control of any assets, collateral, books, personal computers, records, papers or other property of or managed by any of the entities in receivership, shall forthwith give access to and control of such property to the permanent receiver."[3] All attorneys for the Receivership Entity are ordered to "cooperate with and assist the permanent receiver and shall take no action, . . .  to interfere in any manner, directly or indirectly, with the custody, possession, management, or control by the permanent receiver of the funds, assets, collateral, premises, and choses in action described above."[4]

### B.   Client Files held by the Receivership Entity's outside lawyers

#### 1.   *Law Firms representing the Receivership Entity*

Prior to the appointment of the Receiver, the Receivership Entity engaged law firms to advise and represent it in business transactions, civil litigation, collections, and government investigations.[5] These law firms communicated with and rendered advice to employees and officers of the Receivership Entity, and collected and obtained documents and information from the Receivership Entity necessary for their representation.

The Receivership Entity engaged attorneys through written engagement agreements. These engagement letters specified both the scope and purpose of the

---

[2] Receiver Order, Section VI.
[3] Receiver Order, Section VII.
[4] Receiver Order, Section X.
[5] Sharp Decl. ¶8.

engagement and identified the client. Except for the engagement letter with Kasowitz Benson Torres LLP, dated April 5, 2017 discussed in section II. B. 4 below, *infra*, the engagement letters between DLI and each law firm listed a Receivership Entity as the client and did not include Mr. Ross as a listed client.[6] These include the following:[7]

- Paul Hastings LLP engagement dated July 13, 2016 with Direct Lending Income Fund L.P.

- Paul Hastings LLP engagement dated March 27, 2017 with Direct Lending Investments, LLC

- Gibson Dunn & Crutcher LP engagement dated August 11, 2016 with Direct Lending Investments LLC.

- Mintz Levin engagement dated September 23, 2016 with Direct Lending Income Fund, L.P.

- Thompson Coburn LLP engagement dated December 9, 2016 with Direct Lending Income Fund, L.P.

- Kasowitz Benson Torres LLP engagement dated February 7, 2019 with Direct Lending Investments, LLC, Direct Lending Income Fund, L.P., and Direct Lending Income Feeder Fund Ltd.

- Wilkie Farr & Gallagher LLP engagement dated October 5, 2016 with

---

[6] To avoid the inadvertent disclosure or waiver of attorney client privilege, the Receiver submitted redacted copies of the engagement letters. *See* Exhs. 1-9 to Sharp Decl. However, attorney engagement and retainer agreements are generally not considered privileged. "The Ninth Circuit has repeatedly held retainer agreements are not protected by the attorney-client privilege or work product doctrine." *Gusman v. Comcast Corp.*, 298 F.R.D. 592, 599 (S.D. Cal. 2014) (collecting cases). Communications between attorney and client that concern "the identity of the client, the amount of the fee, the identification of payment by case file name, and the general purpose of the work performed are usually not protected from disclosure by the attorney-client privilege." *Clarke v. Am. Commerce Nat'l Bank*, 974 F.2d 127, 129 (9th Cir. 1992). The Receiver will submit the complete engagement letters for *in camera* review, under seal, or in any other manner if requested by the Court.

[7] *See* Sharp Decl. ¶9 & Exhs. 1-8.

---

3

Direct Lending Investments, LLC

- Jones Day engagement of February 20, 2018 with Direct Lending Investments, LLC and DLI Assets Bravo, LLC

Most of these engagement agreements contain disclaimers stating that the law firm does not represent other affiliated entities, officers, directors, or shareholders, etc. For example, the engagement agreements of Paul Hastings, Gibson Dunn & Crutcher LP, Mintz Levin, Wilkie Farr & Gallagher LLP, and Jones Day contain assorted provisions stating that the law firm is not representing entities such as affiliate entities, parent entities, subsidiaries, officers, directors, shareholders, or partners, etc.[8] The engagement agreements of Thompson Coburn LLP and the February 7, 2019 engagement agreement of Kasowitz Benson Torres LLP, do not contain such a clause but simply identify the particular entity that is a client.[9] None of the above agreements list Ross or any other individual as a client.[10]

## 2.    *The Receiver seeks client files*

After his appointment, the Receiver through his counsel sought copies of client files, communications, and work product in the possession of certain law firms that were pre-receivership counsel to the Receivership Entity to facilitate performance of his duties.[11] The Receiver sought such files to: (a) better understand the terms, conditions, and background of business transactions of the Receivership Entity; and (b) understand the claims, defenses, and procedural facts of various litigation matters.[12] The Receiver's access to these files will significantly help him discharge his duties under the Receiver Order.[13]

---

[8] Sharp Decl. Exhs. 1-4, 7-8.

[9]  Sharp Decl. Exhs. 5-6

[10] *See* Sharp Decl. Exhs. 1-8.

[11] Sharp Decl. ¶10; Sullivan Decl. ¶4.

[12] Sharp Decl. ¶12.

[13] Subject to and in compliance with any instruction of the Court issued on this Motion, the Receiver expects to seek client files from additional law firms as needed.

### 3. Ross objects to the Receiver's request for privileged information.

Brendan Ross ("Ross"), the former officer, manager, and sole member of DLI, objected to the law firms' production of client files to the Receiver based on an attorney-client privilege that he claimed to hold individually.[14] Ross claimed a personal attorney-client privilege arising from his status as the "founder and at all times sole owner of DLI" and because Ross and DLI are "closely intertwined and share a unity of interest."[15] Because of Ross's objection, the law firms have not complied with the Receiver's request.

### 4. Brendan Ross and DLI are jointly represented by a law firm for the Talking Capital litigation.

To date, the Receiver has identified only one engagement letter that reflects a joint representation of the Receivership Entity and Ross individually: an April 5, 2017 engagement agreement with Kasowitz Benson Torres, LLP on behalf of Brendan Ross, DLI TC, LLC, Direct Lending Investments, LLC, and Direct Lending Income Fund, L.P. as clients.[16] They engaged the law firm to represent all of them in connection with the case described in the engagement letter as *Talking Capital LLC, et. al. v. Omanoff, et al.*, Index No. 650973/2017, currently pending in the Supreme Court of the State of New York, County of New York (the "*Talking Capital litigation*").[17] Ross did not sign the letter.

The *Talking Capital litigation* is ongoing. When the Receiver requested client files from Kasowitz Benson Torres, LLP, Ross objected to the law firm's production of client files to the Receiver based on his attorney-client privilege as a

---

[14] Sullivan Decl. ¶5-6; Exh. 1 to Sullivan Decl., at 1.

[15] *Id.*

[16] Sharp Decl. Exh. 9.

[17] According to the Second Amended Complaint, filed on Feb. 13, 2019, the style of the case is: *Forefront Partners LLC v. Rodney Omanoff, et. al., and DLI TC, LLC v. Forefront Partners LLC, et. al.*

party to a joint representation. The law firm has not complied with the Receiver's request.  Although the Receiver has not learned of other engagements listing Ross as a joint client if such engagements exist, the Receiver will treat them in the same manner as the *Talking Capital litigation* joint representation.

## C.   The Receivership Entity's Electronic information systems and applicable policies and procedures

### 1.   The Receivership Entity's Electronic Information Systems

The Receivership Entity has possession, custody, and control of multiple information technology systems, including an email domain "@dirlend.com", and a hosted cloud storage platform provided by a third-party vendor called Egnyte and administered by DLI's outside information technology consultant Advanced Networks. DLI pays a monthly invoice to Advanced Networks for services, including the cost of its cloud storage service, email, and other services.[18]

In addition, since February 2016, DLI has implemented an email archiving system through a third-party vendor, Smarsh, Inc., for regulatory compliance purposes. Advanced Networks also oversees systems to backup and to track electronic files stored on its Egnyte cloud storage.[19]

These and other electronically stored information systems are under the control of the Receivership Entity and employees of DLI hold administrator level access to these systems allowing them to review any email in the company or any file created by a user of the company's systems at any time.[20]

### 2.   DLI Employee Handbook

DLI has an employee handbook, titled the Direct Lending Investments, LLC Employee Handbook, which was last updated in October 2017. [21] The Handbook

---

[18] Sharp Decl. ¶5.

[19] Sharp Decl. ¶¶5-6;

[20] Sharp Decl. ¶5.

[21] Sharp Decl. Exh. 13 (the "Handbook").

NOTICE OF MOTION AND MOTION

informs employees that they have no expectation of privacy, confidentiality, or privilege in any communication, document, or other information stored or transmitted using DLI's information technology resources and that all such files and communications belong to DLI.[22]

The Handbook defines DLI's "Technology Resources" to include any electronic media, any "means of electronic communication" including personal computers, laptop computers, tablets, electronic mail, mobile phones, and other handheld devices. The Handbook contains a lengthy series of warnings regarding the use of such "Technology Resources" on pages 20-25, including the following:

a. "DLI's Technology Resources are to be used by employees during working time only for the purpose of conducting Company business."

b. "All messages sent and received, including personal messages, and all data and information stored on DLI's Technology Resources (including on its electronic mail system, voicemail system, or computer systems) are Company property regardless of the content."

c. "DLI reserves the right to access all of its Technology Resources including its computers, voicemail, and electronic mail systems, at any time, in its sole and absolute discretion."

d. "Employees should understand, therefore, that they have no right of privacy with respect to any messages or information created, collected, or maintained on DLI's Technology Resources, including personal information or messages."

e. "DLI may, at its discretion, inspect all files or messages on its Technology Resources at any time for any reason and without notice. DLI may also monitor its Technology Resources at any time and without prior notice in order to confirm compliance with its policies,

---

[22] Sharp Decl. ¶18.

NOTICE OF MOTION AND MOTION

for purposes of legal proceedings, to investigate misconduct, to locate information, or for any other business purpose."

f.   "Passwords and login credentials do not confer any right of privacy upon any employee of DLI."

g.   "Deleting or erasing information, documents, or messages maintained on DLI's Technology Resources, in most cases, does not completely destroy such information, documents, or messages. . .. employees who delete or erase information or messages may not assume that such information or messages are confidential or ever were confidential."

h.   "DLI reserves the right to advise appropriate legal authorities of any violation of law by an employee."

i.   "[E]mployees should have no expectation of privacy whatsoever in any message, files, data, document, facsimile, telephone conversation, social media post, conversation or message, or any other kind of information or communications transmitted to, received or printed from, or stored or recorded on the company's electronic information and communications systems."

DLI's Handbook also informs employees that the company backs up and archives electronic mail, that each document stored on a company computer has a history that shows which users have accessed the document, and that internet use is recorded and periodically monitored.[23]

### 3.   *DLI Compliance Manual*

DLI has a compliance manual, titled the Direct Lending Investments, LLC Compliance Manual, which was last updated in October 2017.[24] The Compliance

---

[23] Handbook at 21.

[24] Sharp Decl. Ex. 14 ("Compliance Manual").

NOTICE OF MOTION AND MOTION

Manual informs employees that DLI must comply with applicable laws and rules regarding the preservation of email and other records and that it has implemented procedures and systems to retain electronic files and email communications.[25] The Compliance Manual explains that all DLI emails will be archived and subject to review, including through spot checking, key word searching, and other kinds of monitoring, and that DLI uses Smarsh, Inc. to archive all email communications. The Compliance Manual also informs employees that business related text message must be forwarded to the employee's email.[26]

### 4.      DLI Employee Affirmations of Acceptance of Employee Handbook and Compliance Manual

SEC rules and regulations impose numerous compliance requirements for registered investment advisors, including Rule 204-2 of the Investment Advisors Act of 1940, which requires registered investment advisors such as DLI to retain written communications, including emails, relating to their business activities. DLI's compliance program required employees to affirm receipt of certain compliance documents. DLI utilizes Schwab Compliance Technologies ("Schwab CT"), an online secure service, to hold various compliance related documents and to track its employees' affirmations of acceptance and compliance.[27] Schwab CT can create a report of employee affirmations. Attached as Exhibit "15" to the Sharp Declaration is an excerpt of a report generated from the Schwab CT compliance program showing that Brendan Ross affirmed that he received and reviewed the Employee Handbook and Compliance Manual.[28]

### 5.      Ross Employee Confidentiality Agreement

The files of DLI contain an executed Employee Confidentiality Agreement

---

[25] Compliance Manual at 73, 75-82.

[26] Compliance Manual at 67-68, 73.

[27] Sharp Decl. ¶¶17, 19.

[28] Sharp Decl. ¶19 & Exh. 15.

NOTICE OF MOTION AND MOTION

between Brendan Ross and Direct Lending Investments, LLC, dated January 1, 2015[29] by which Ross agreed that confidential information relating to DLI and its business belonged to DLI. He further agreed that in addition to his obligations under the Handbook, he would comply with all policies and procedures related to information technology security and access. Ross also agreed that DLI had the right at any time to request that he provide access to all DLI property including any cell phone or smartphone or email messages.[30]

### D. Ross stores potentially privileged materials on the computer systems of the Receivership Entity

#### 1. Robin Hill Services

Beginning in the fall of 2016, DLI and an entity called Robin Hill Services, LLC had a service agreement by which Robin Hill Services, LLC was to perform various administrative services for DLI.[31] Certain employees of DLI also served as employees of Robin Hill Services. The financial records of the Receivership Entity suggest that certain employees received checks from both DLI and Robin Hill Services, but the records do not reflect that hours worked for DLI and Robin Hill Services were specifically tracked or used to allocate salary payments.[32]

The dual employees worked in DLI's office space, used DLI phone systems and computers, and often used DLI email accounts. DLI's information technology service providers set up shared folders in DLI's cloud storage in Egnyte for these employees to store files related to Robin Hill Services.[33]

The Robin Hill Services agreement states that DLI (referred to in the agreement as the "Company") and Robin Hill Services (identified as the

---

[29] Sharp Decl. ¶21 & Exh. 18.
[30] Sharp Decl. Exh. 18 at 5-6.
[31] Sharp Decl. ¶13 and Exh. 10.
[32] Sharp Decl. ¶13.
[33] Sharp Decl. ¶¶13-14.

NOTICE OF MOTION AND MOTION

"Contractor") intend to act as independent contractors (Section 1.1) but grants supervision and control to the Company [Section 1.2] as a practical matter over the business:

> Company shall be responsible for all issues related to the aspects of its investment management services business. Company shall also be responsible for and shall have complete authority, responsibility, supervision and control over the provision of all products provided to or services performed for clients and customers, but Contractors shall be responsible for the specific items provided for in this Agreement. All investment management services shall be provided and performed exclusively by or under the supervision of Company personnel.[34]

*See also* Section 4.1(d) ("Contractor agrees that Company and only Company, through its responsible managing officers and other employees, will perform the functions of Company's primary investment management services.").[35]

The 2017 audited financial statement of DLI and its affiliated entities prepared by PKC Kuebler APC describes the "related party" management service provider and states "All services to be provided by RHS are to be performed exclusively by or under the supervision of Company personnel."[36]

The Robin Hill Services agreement expressly grants DLI in its discretion upon termination of the agreement the right to "retain copies of financial and accounting records relating to the investment management services provided by Company." (Section 6.1). The Robin Hill Services agreement also contains an express grant of access to records in favor of DLI:

> Section 6.2.   Access to Records.   During the term of this Agreement,

---

[34] Sharp Decl. Exh. 10 at 2.
[35] *Id*. at 3.
[36] Sharp Decl. Exh. 19, at 15.

NOTICE OF MOTION AND MOTION

and thereafter, **Company or its designee shall have reasonable access during normal business hours to Company's and Contractor's records**, including, **but not limited to**, records of collections, expenses, and disbursements as kept by Contractor in performing Contractor's obligations under this Agreement, **and Company may copy any or all of such records**. . . .[37] [Emphasis added.]

Robin Hill Services, acting through "dual employees" shared with DLI, has engaged attorneys and law firms on matters in which DLI is not a client. At least some communications with these law firms used the dual employees' DLI email addresses. These dual employees also stored information and other records created in connection with legal representations of Robin Hill within the Robin Hill folders on DLI's cloud storage service. All these files and emails are available to DLI's employees with administrator access.

### 2. *Ross personal files*

Brendan Ross stored personal information on DLI's computer systems. DLI's IT vendor set up a series of shared folders on DLI's cloud storage for Mr. Ross to store personal financial and legal information. The folders used to store Mr. Ross's personal information are accessible to other DLI employees, including those with administrator access and to DLI's outside IT vendor.[38]

Ross retained lawyers and law firms to represent him individually or to jointly represent him and other business entities he owns that are not designated as Receivership Entities, including Robin Hill Services, LLC and Robin Hill Investments, LLC. Ross has stored information and other records created in connection with legal representations of Ross or these other outside entities within folders on DLI's cloud storage service. All these files and emails are available to

---

[37] Sharp Decl. Exh. 10 at 6.

[38] Sharp Decl. ¶¶ 5, 14.

NOTICE OF MOTION AND MOTION

DLI's employees with administrator access and to its IT vendor.[39]

### 3. *Ross mobile phone and personal email*

In December 2018, one of DLI's investment counterparties called VoIP Guardian Partners I, LLC ("VoIP Guardian"), failed to make an interest payment to DLI. In January 2019, DLI determined that VoIP Guardian was in default of its agreement and that it appeared unlikely to make further payments to DLI.[40]

In February 2019, DLI prepared a letter to its investors reporting that it engaged Kasowitz Benson Torres LLP "to assist in an investigation of VOIP Guardian and its obligors and to pursue potential litigation."[41] DLI's engagement letter with Kasowitz Benson Torres LLP did not include any representation of any officer, owner, manager, or employee of any of the listed entities.[42] DLI also reported its concerns to the U.S. Attorney's Office.

Ross turned over to DLI material on his Apple iPhone X that DLI purchased for Brendan Ross.[43]  Under applicable Employee Handbook policies, the fact DLI paid for the iPhone X made that device a DLI technology resource.[44]  Mr. Ross also provided access to his Gmail account, which was copied and provided to DLI.[45] After Ross turned over his emails and messages on his iPhone X to DLI, DLI loaded the electronic information gathered from the Apple iPhone X into an electronic discovery platform already in use by DLI for storing other electronic information for use in litigation and responding to government investigations. DLI also loaded the contents of Mr. Ross's Gmail account into this database. DLI then

---

[39] Sharp Decl. ¶¶ 5, 14.
[40] Sharp Decl. Exh. 16.
[41] Sharp Decl. ¶¶15, 20 & Exhs. 16.
[42] Sharp Decl. ¶15 & Exh. 6.
[43] Sharp Decl. ¶15-16 & Exhs. 11-12.
[44] Employee Handbook at 20-21.
[45] Sharp Decl. ¶15.

NOTICE OF MOTION AND MOTION

commenced an internal review of certain of its investments and reported that investigation to its investors through a March 19, 2019 letter.[46] DLI informed its investors that it self-reported its findings to the SEC.

The SEC commenced an investigation that resulted in the filing of the complaint here against DLI. In its Complaint, the SEC referenced emails from Ross to investment counterparties at QuarterSpot from Ross's personal email account.[47]

## III.  ARGUMENT AND AUTHORITIES

### A.  The Receiver owns and controls the privilege of the Receivership Entity.

Upon creation of a receivership, an equity receiver is deemed to be the holder of all the attorney-client privileges of the entities subject to the receivership because the receiver takes over management and control of the Receivership Entity.  *See Commodity Futures Trading Commission v. Weintraub*, 471 U.S. 343, 349 (1985) ("[W]hen control of a corporation passes to new management, the authority to assert and waive the corporation's attorney-client privilege passes as well."). The law also vests the Receiver with power to waive the privilege, a power that could not vest if the Receiver did not hold the privilege. *See Securities and Exchange Commission v. Elfindepan, S.A.*, 169 F. Supp. 2d 420 (M.D.N.C. 2001) (receiver can waive attorney-client privilege on behalf of companies subject to receivership); *Commodity Futures Trading Commission v. Standard Forex, Inc.*, 882 F. Supp. 40, 44 (E.D.N.Y. 1995).

In the Receiver Order, the Court granted the Receiver the "full powers of an equity receiver" and authorized the Receiver to collect, control and take possession of all the assets of the Receivership Entity, consistent with the Order appointing

---

[46] Sharp Decl. Exh. 17.

[47] Complaint, ECF No. 1, ¶¶37-46.

him and the law applicable to equity receiverships.[48]  In particular, "the Receivership Entity and . . . **attorneys**, and any other persons who are in custody possession or control of any assets, collateral, books, personal computers, records, papers or other property of or managed by any of the entities in receivership," must give access to and control of such property to Mr. Sharp.[49]  Client files held by law firms that represented the Receivership Entity fall within this provision, and the Receiver is entitled to seek these files. *Securities and Exchange Commission v. Ryan*, 747 F. Supp. 2d 355, 368 (N.D.N.Y. 2010); *Securities and Exchange Commission v. Bravata*, No. 09-12950, 2011 WL 606745at*1 (E.D. Mich. February 11, 2011); *Polycast Technology Corp. v. Uniroyal, Inc.*, 125 F.R.D. 47, 49 (S.D.N.Y. 1989) (as to files in possession of former counsel for an entity, the entity holds the attorney-client privilege, not any individual officer formerly employed by the entity).

## B.    In representation of an entity, the privilege belongs to the corporate client, not to a company shareholder or officer.

The California Rules of Professional Conduct make clear that: "A lawyer employed or retained by an organization shall conform his or her representation to the concept that the client is the organization itself, acting through its duly authorized directors, officers, employees, members, shareholders, or other constituents overseeing the particular engagement."  Cal. Rules Prof. Conduct 1.13(a).[50] The Rule explains that constituents within the organization are not deemed to be clients automatically and instead, representation of such individuals typically requires evaluation of the lawyer's duties under other Rules, including California Rules of Professional Conduct 1.7, 1.8.2, 1.8.6, and 1.8.7 as well as

---

[48] Receiver Order, Section VI.

[49] Receiver Order, Section VII.

[50] Formerly Cal. Rules Prof. Conduct 3-600 (effective through 10/31/2018).

NOTICE OF MOTION AND MOTION

consent by an official or body of the organizational client *other* than the individual. Cal. Rules Prof. Conduct 1.13(g), former Rule 3-600(E).

An attorney representing an organization does not create an attorney-client relationship with its officers, managing agents, or others acting in a representative capacity on behalf of the organization merely by the attorney's engagement to represent the organization alone. *La Jolla Cove Motel & Hotel Apartments, Inc. v. Superior Court*, 121 Cal.App.4th 793, 784 (2004) ("In representing a corporation, an attorney's client is the *corporate entity*, not individual shareholders or directors, and the individual shareholders or directors cannot presume that corporate counsel is protecting their interests").[51]

Ross has claimed without reference to supporting facts that he holds the privilege belonging to DLI because he "was the sole Managing Member and principal of DLI" and thus shared a unity of interest.[52] But without more, mere ownership alone is insufficient.[53]

## C. California law obligates the law firms to provide the Receiver with all client files, including work product.

California requires attorneys to tender client files upon request. California Rule of Professional Conduct 1.4 requires a member of the California State Bar to "promptly compl[y] with reasonable requests for information and copies of significant documents when necessary and to keep clients so informed." Cal. Rules Prof. Conduct, 1.4(a)(3).[54] The law firms also have an obligation to turn over work

---

[51] *See also Koo v. Rubio's Restaurant*, 109 Cal.App.4th 719, 731 (2003) (attorney for corporation represents corporation not officers or shareholders personally); *Skarbrevik v. Cohen, England & Whitfield*, 231 Cal.App.3d 692, 704 (1991) ("Counsel's direct duty is to the client corporation, not to the shareholders individually")

[52] Ex. A to Sullivan Declaration (Ross letter dated April 4, 2019 at 1).

[53] *See* n. 52, *supra*.

[54] S*ee also* Cal. State Bar Form. Opn. 1994-134, ("[t]he client is entitled to constant access to the file at all times during the representation.") (internal citations omitted).

NOTICE OF MOTION AND MOTION

product.[55] Additionally, California Bus. & Prof. Code § 6068(m) obligates attorneys to "respond promptly to reasonable status inquiries of clients and to keep clients reasonably informed of significant developments in matter which the attorney has agreed to provide legal services."

Importantly, no law firm has objected to providing client files and have only withheld such files to allow the Court to resolve the attorney-client privilege objections expressed by Ross. Upon an order of this Court confirming that the Receiver holds all privileges belonging to the Receivership Entity, the Receiver expects that each law firm subject to a request will provide all requested client files, but reserves the right to seek further relief from the Court in the event any firm refuses to make a production consistent with California law and the Court's orders.

**D.    The Receiver is entitled to receive and review files subject to a joint representation agreement.**

The Receivership is not a third party or a new entity but is the successor to DLI and the other Receivership Entities.  Like a trustee in bankruptcy, where a joint representation exists between an entity that later becomes a Receivership Entity and a person or entity not subject to the receivership, the Receivership Entity is treated as one of the clients with all the rights of a joint client.

Clients that enter a joint representation are equally entitled to see all communications exchanged between the lawyer and the other jointly represented party. California Evidence Code § 962 explains that no privilege exists within the joint representation:

Where two or more clients have retained or consulted a lawyer upon a

---

[55] *See* Cal. State Bar Form. Opn. 1995-127 (client file includes work product and may include items not reduced to writing if ignorance of such information may result in prejudice to client); San Diego Bar Ass'n Form. Opn. 1997 (attorney may not withhold work product "reasonably necessary" to client's representation); Bar Ass'n of San Francisco Form. Opn. 1990-1 (attorney may not withhold work product against a client when doing so would reasonably foreseeably prejudice the client's representation).

1  matter of common interest, none of them, nor the successor in interest of

2  any of them, may claim a privilege under this article as to a

3  communication made in the course of that relationship when such

4  communication is offered in a civil proceeding between one of such

5  clients (or his successor in interest) and another of such clients (or his

6  successor in interest).[56]

7  Thus, "[w]here two or more persons engage an attorney to represent all of them, the

8  privilege is waived as between the parties, but it remains as to strangers." *Nowell v.*

9  *Superior Court for Los Angeles Cty.*, 223 Cal.App.2d 652,657 n.4 (1963); *In re*

10  *Jaeger*, 213 B.R. 578, 588 (Bankr. C.D. Cal. 1997) ("Where an attorney represents

11  joint clients, confidences must be shared.").[57]

12  Except in the circumstances addressed in California Evidence Code §962,

13  joint clients do each have the right to assert the attorney-client privilege to protect

14  privileged communications from disclosure to outsiders.[58]  But one joint client

15

16  [56] *See also* Restatement (Third) of the Law Governing Lawyers § 75 (2000) (stating

17  that communications in a joint representation are not privileged in a subsequent
averse proceeding.)

18  [57] *See, also In re Hotels Nevada, LLC*, 458 B.R. 560, 571 (Bankr. D. Nev. 2011)

19  (collecting cases recognizing "the content of joint communications belongs equally
to the clients"); *Hall CA-NV, LLC v. Ladera Development, LLC*, No. 3:18-cv-00124-

20  RCJ-CBC, 2018 U.S. Dist. LEXIS 203257, 2018 WL 6272890, at *25,  (D. Nev.
Nov. 30, 2018) (holding that one client could not prevent disclosure of its

21  communications to lawyers in a joint representation because "it is widely recognized

22  that the joint representation exception [allowing all now-adverse jointly represented
clients to access their lawyers' file] applies to all communications made by a co-

23  client to the joint attorney – regardless of whether both parties are present when the
communications occur."); *In re Taproot Systems, Inc.*, 2013 WL 3505621 at *3

24  (Bankr. E.D.N.C. July 11, 2013) (construing the common interest doctrine under

25  California law); *Griffith v. Davis*, 161 F.R.D. 687, 693 (C.D. Cal. 1995)
"(communications among joint clients and their counsel are not privileged in disputes

26  between the joint clients, but are protected from disclosure to others.")

27  [58] *Roush v. Seagate Tech., LLC*, 150 Cal.App.4th 210, 223, (2007); *see also Am. Mut.*
*Liab. Ins. Co. v. Superior Court*, 38 Cal.App.3d 579, 590–96, (2013), as corrected

28  (Mar. 27, 2013).

18

cannot prevent the other joint client from having access to privileged material within the scope of the joint representation, which Ross's privilege assertion in part attempts to do.

The Receiver seeks instruction confirming that he may access the client files held by Kasowitz Benson in a joint representation with Ross in the *Talking Capital litigation*, subject to the limitation that without the consent of Ross as the other jointly represented party, the Receiver cannot waive the privilege associated with such files held by any jointly represented parties that are not Receivership Entities except in the circumstances set forth in California Evidence Code § 962 or as provided by other applicable federal law.

**E.     Ross has waived any privilege claim for any information or communications stored on Receivership Entity servers or email systems.**

Under California law, employees have no reasonable expectation of privacy nor any right to claim an attorney client privilege over any personal information or communications stored on an employer's computer or email systems if the employer's handbook explains that work computer and email systems are for work purposes and subject to employer review.

In *Holmes v. Petrovich Development Co.*, LLC,[59] the California Court of Appeal rejected an employee's assertion of attorney-client privilege over emails sent from her work computer to her personal attorney. The Court of Appeals held that an employee's communication is not privileged:

> (1) when the electronic means used belongs to the defendant [employer]; (2) the defendant has advised the plaintiff that communications using electronic means are not private, may be monitored, and may be used only for business purposes; and (3) the

---

[59] *Holmes v. Petrovich Development Co., LLC*, 191 Cal.App.4th 1047 (2011).

NOTICE OF MOTION AND MOTION

plaintiff is aware of and agrees to these conditions.[60]

The Court of Appeal found that the employee's decision to use her employer's computer after she was advised that it: (i) was not private, (ii) was for company business, and (iii) was accessible by her employer rendered her communications "not confidential" and were instead  "akin to consulting her attorney in one of defendants' conference rooms, in a loud voice, with the door open, yet unreasonably expecting that the conversation overheard by Petrovich [defendant] would be privileged."[61]

The Court of Appeal further rejected the employee's justifications for her belief in confidentiality including use of private password, practice of deleting emails after sending, and the "operational reality" that there was "no access or auditing of employee's computers."[62] The employee had been warned that the company could monitor emails, told her she had no expectation of privacy, and could not reasonably believe her emails were private simply because the company "had never enforced its computer monitoring policy."[63]

Federal courts in California applying federal law often following the four-factor test in *In re Asia Glob. Crossing, Ltd.*, 322 B.R. 247 (Bankr. S.D.N.Y. 2005):

> (1) does the corporation maintain a policy banning personal or other
> objectionable use, (2) does the company monitor the use of the
> employee's computer or e-mail, (3) do third parties have a right of
> access to the computer or e-mails, and (4) did the corporation notify the
> employee, or was the employee aware, of the use and monitoring

---

[60] *Id*. at 1068.

[61] *Id*.

[62] *Id*. at 1068-1069.

[63] *Id*. at 1071; *see also TBG Insurance Services v. Superior Court* 96 Cal.App.4th 443 (2002) (holding an employer handbook provision defeated an employee's expectation of privacy).

1  policies?[64]

2  Here, DLI's Employee Handbook expressly and repeatedly informed

3  employees that that they have no right of privacy or confidentiality for any

4  information stored or sent on a DLI computer system or message system. The DLI

5  Handbook broadly defines company Technology Resources to include all manner of

6  electronic device, including mobile devices, and specifies repeatedly that such

7  resources are for business use and that the company has the right to access all

8  information on any company system. The Handbook warns employees that "All

9  messages sent and received, including personal messages, and all data and

10  information stored on DLI's Technology Resources (including on its electronic mail

11  system, voicemail system, or computer systems) are Company property regardless

12  of the content."[65] DLI repeatedly warns employees that it has the right to access,

13  monitor, and inspect all of the content on its technology resources at any time and

14  that employees have "no right of privacy" in any personal information or personal

15  messages on DLI's technology resources.[66] DLI further warns employees that it can

16  investigate information stored on its systems to investigate misconduct and that no

17  password or credential can confer any right on any employee. DLI's employees also

18  consent to monitoring by DLI of their computer, communication and even social

19  media activity.[67]

20  DLI's employees, including Ross, affirmed their agreement to the Employee

21  Handbook and Compliance Manual through the Schwab CT platform. Ross's

22  agreement to the Handbook and Compliance Manual, among other documents, are

_____

24  [64] *In re Asia Glob. Crossing, Ltd.*, 322 B.R. at 255. *See, e.g. In re High-Tech

25  Employee Antitrust Litig*, No. 11-CV-2509-LHK-PSG, 2013 WL 772668, at *6 (N.D. Cal. Feb. 28, 2013).

26  [65] Handbook at 21.

27  [66] *Id*. at 21.

28  [67] *Id*. at 20-23, 25-26.

_____

21

recorded on the Schwab CT platform and reported in its reports.[68] Ross's Confidentiality Agreement likewise expresses his consent to DLI's ownership and right of access to information.

DLI makes use of the rights set out above by archiving all email, copying all email to an e-discovery platform, maintaining backup systems for its cloud storage system, and empowering several employees to hold administrator access to all its electronic resources.

In the face of DLI's lengthy and detailed instructions and warnings to its personnel and its practice of backing up and searching that information, any information located on DLI's computer or messaging systems is now the property of the Receiver. No employee, especially not Ross, the former CEO, or other person employed by DLI, can claim a personal attorney-client privilege over information or communications on DLI's technology resources. All files used by Robin Hill Services employees stored on DLI's cloud storage system or sent through DLI's email system are the property of DLI, and Robin Hill Services does not have any attorney-client privilege over any such information.

Similarly, Ross has waived any right of attorney-client privilege on any information or communication sent through DLI's email or put on DLI's cloud storage system. All such activity was subject to DLI's Employee Handbook and its accompanying warnings. Moreover, when Ross arranged for a DLI employee to have access to personal material to assist him with personal tasks, he was on notice that such material was subject to DLI's Employee Handbook and would be accessible to DLI's employees with administrator access, its outside IT vendor, and to DLI generally.  Ross's decision to make material accessible to DLI or its employees, who were not within the scope of the attorney-client privilege, eliminated any claim of privilege.  *See, e.g.,* California Evidence Code § 912(a),

_____

[68] Sharp Decl. Exh. 15, at 3, 23.

1    discussed further below.

2         The Receiver seeks an order that Ross nor non-Receivership entity can claim

3    attorney-client privilege over any information stored on a Receivership Entity

4    Technology Resource as defined in the Handbook, and that the Receiver is entitled

5    to review any such materials stored on a Receivership Entity Technology Resource.

6         **F.     Ross Waived Any Personal Attorney-Client Privilege for Any**

7              **Information He Voluntarily Provided to DLI.**

8         Ross has no attorney-client privilege as to any communications made on his

9    company paid Apple iPhone X because it is a DLI Technology Resource subject to

10   the terms in the DLI Employee Handbook. Ross also has no attorney-client

11   privilege as to the contents of his iPhone or Gmail account because he disclosed the

12   contents of both, and so waived any such rights.

13        Under California law, to preserve the attorney-client privilege, the holder of

14   the privilege must not voluntarily disclose the privileged communication to

15   someone outside the privilege. California Evidence Code § 912(a) codifies the

16   privilege waiver as where the:

17        holder of the privilege, without coercion, has disclosed a significant part

18        of the communication or has consented to disclosure made by anyone.

19        Consent to disclosure is manifested by any statement or other conduct of

20        the holder of the privilege indicating consent to the disclosure, including

21        failure to claim the privilege in any proceeding in which the holder has

22        the legal standing and opportunity to claim the privilege.

23        The test for waiver under federal law similarly focuses on an objective

24   determination of "the holder's disclosure of privileged communications to someone

25   outside the attorney-client relationship, not the holder's intent to waive the

26   privilege." *Tennenbaum v. Deloitte & Touche*, 77 F.3d 337, 340–41 (9th Cir. 1996)

27   (citing cases). A voluntary disclosure of privileged information operates to waive

28   the privilege and inadvertence of disclosure does not prevent waiver as a matter of

law. *United States v. Plache*, 913 F.2d 1375, 1379 (9th Cir. 1990) (Defendant waived privilege by voluntarily disclosing legal advice in grand jury testimony).

Ross voluntarily provided materials from his iPhone, including access to his Gmail account, to DLI in connection with DLI's investigation into possible fraud by VoIP Guardian, one of DLI's investment counterparties. If the iPhone or Gmail account include communications between Ross and an attorney for which Ross holds an attorney-client privilege, Ross has waived that privilege by the voluntary act of providing his iPhone and Gmail account information so that persons outside that privilege, namely DLI's outside lawyers and DLI's in-house attorneys, have access to those communications. Further, communications related to DLI or its business are not subject to a personal attorney client privilege held by Ross nor a reasonable expectation of privacy by Ross.

## III.  NOTICE OF THE HEARING ON THIS MOTION SHOULD BE DEEMED APPROPRIATE AND SUFFICIENT

The Receiver has served notice of the hearing on this Motion on the parties and by mail to the known non-investor creditors of the Receivership Entity and on the law firms whose client files have been requested by the Receiver.  The Receiver has posted the notice of hearing and the Motion on the Receiver's website (https://cases.stretto.com/dli) as well as through the noticing software for investors. The Receiver has transitioned the responsibility for service of investor notices from Opus to Stretto, the Receiver's Court-approved claims agent.  The Receiver has directed Stretto to email the notice of hearing to all investors by no later than August 20, 2019.  The Receiver believes this notice complies with the provisions of Local Civil Rule 66-7 to the extent that notice to investors is required.  The Receiver requests that the Court approve this form of notice as reasonable, appropriate, and the most cost-effective means of providing notice of the hearing under the circumstances, since there are approximately 975 investors both in the United States and overseas, and to the extent necessary, to approve the notice given as reasonable,

NOTICE OF MOTION AND MOTION

1  limited notice appropriate under the circumstances and in the interests of time and

2  cost.  This Court, as a court of equity supervising the receivership estate, may make

3  appropriate administrative orders governing the receivership, including limitations on

4  and changes in notice and other procedures.  *See* F.R. Civ. P. 5(a) and (c)

5  (authorizing the court to modify service procedures when numerous defendants are

6  involved in litigation).  In addition, pursuant to Local Civil Rule 66-8, a receiver is

7  directed to administer receivership estates in a manner "as nearly as possible in

8  accordance with the practice in the administration of estates in bankruptcy."  Orders

9  limiting notice when the Bankruptcy Code or Rules would otherwise require notice

10  to all creditors are routinely granted in bankruptcy cases to promote the expeditious

11  and economical administration of bankruptcy estates.  *See In re First Alliance*

12  *Mortgage Co.*, 269 B.R. 428, 442 (C.D. Cal. 2001) (referencing in *dicta* in the court's

13  recitation of facts the bankruptcy court's order limiting notice issued in that case); 11

14  U.S.C. § 102(1)(A) (defining the phrase "after notice and a hearing" to mean "after

15  such notice as is appropriate in the particular circumstances, and such opportunity for

16  hearing as is appropriate in the particular circumstances").

## IV.   CONCLUSION

17

18         WHEREFORE, the Receiver respectfully requests entry of an order for relief

19  as detailed in the Motion, and for all other relief determined to be appropriate by the

20  Court under the circumstances.

21  DATED: August 16, 2019            DIAMOND McCARTHY LLP

22

23                                    By:  /s/ *Christopher D. Sullivan*

24                                    Christopher D. Sullivan
                                      Counsel for Bradley D. Sharp
25                                    Permanent Receiver

26

27

28