KATHY BAZOIAN PHELPS (155564)
*kphelps@diamondmccarthy.com*
DIAMOND MCCARTHY LLP
1999 Avenue of the Stars, Suite 1100
Los Angeles, California 90067-4402
Telephone: (310) 651-2997

CHRISTOPHER D. SULLIVAN (148083)
*csullivan@diamondmccarthy.com*
STACEY L. PRATT (124892)
*stacey.pratt@diamondmccarthy.com*
DIAMOND MCCARTHY LLP
150 California Street, Suite 2200
San Francisco, CA 94111
Phone: (415) 692-5200

*Counsel for Bradley D. Sharp,*
*Permanent Receiver*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION – LOS ANGELES

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>DIRECT LENDING INVESTMENTS LLC,<br><br>Defendant. | Case No. 2:19−cv−02188−DSF−MRW<br><br>**SIXTH STATUS REPORT OF PERMANENT RECEIVER BRADLEY D. SHARP [April 24, 2020 through June 30, 2020] WITH EXHIBITS**<br><br>[No Hearing Set] |

Bradley D. Sharp, the Court-appointed permanent receiver (the "Receiver") for the estate of Direct Lending Investments, LLC ("DLI"), Direct Lending Income Fund, L.P., Direct Lending Income Feeder Fund, Ltd., DLI Capital, Inc., DLI Lending Agent, LLC, DLI Assets Bravo LLC, and their successors, subsidiaries and affiliated entities (collectively, the "Receivership Entities") pursuant to the Preliminary Injunction Order and Order Appointing Permanent Receiver issued April 1, 2019 ("Receiver Order") (Doc. No. 10), hereby submits his Sixth Status Report generally covering the period from April 24, 2020 through June 30, 2020.

## I.       Summary Overview

In his last report filed on May 1, 2020 (Doc. No. 262), the Receiver reported that he had secured Court approval to enter into a partial settlement agreement and term sheet for a forbearance agreement with Kountable Borrower, LLC and Kountable, Inc.  Unfortunately, the completion of the agreements with these counter-parties was impacted by the COVID-19 developments, and were delayed.  But despite these challenges, since the last report was filed, the Receiver completed this settlement, and successfully moved for Court approval of a forbearance agreement in furtherance of ongoing efforts to resolve this outstanding portfolio position.

Also, in the last status report, the Receiver also noted that he obtained Court approval to enter into a settlement and final forbearance agreements based on term sheets reached with DLI Properties, LLC, Liberty Fund, LLC, DL Global, Ltd., and Quanta Finance, LLC.  Since then, the Receiver worked toward implementing the settlement and negotiating the final forbearance agreements, including provisions for the receivership estate to provide a revolving loan to DLI Properties, LLC and Liberty Fund, LLC, which was at that time estimated to be in an amount of approximately $5 million.  The DLI Properties, LLC and Liberty Fund, LLC forbearance agreements were recently filed and the transaction closed as of July 3, 2020.  The Receiver will be filing a motion for authority to increase the size of the revolving loan to an amount of up to $7.5 million.

Although the Receiver continues to make every attempt to maximize the recovery with respect to the investments described above, and on the remaining assets that are still being actively managed, the anticipated and actual collections on the active portfolio positions have not materially changed the Receiver's overall outlook for recovery.

The Receiver and his professionals believe they can estimate an overall return on the portfolio investments valued at par (i.e., face value amount outstanding) by DLI at $789.6 million dollars as of March 31, 2019. After considering amounts collected to date (since appointment) by the Receiver and the likely range of future collections, the Receiver and his team estimate a low range of return on the liquidation of the investments of $215 million (or about 27% of the March 31, 2019 par value) and a high range of $265 million (or about 34%), both before expenses. Of course, these are only the best estimates available and are not certain. The ultimate return to investors will be increased by the $31.7 million in cash on hand at the time of the appointment of the Receiver and any proceeds of litigation to be filed by the Receiver, reduced by operating costs, administrative fees, and expenses, and impacted by allowed non-investor claims.

The Receiver continues to investigate the underlying reasons for the magnitude of the loss in the value of the investments and to explore the possibilities to recover some of the losses through litigation. The Receiver has secured pre-litigation tolling agreements with a number of parties to preserve potential claims where the Receiver's counsel identified possible statute of limitations issues arising prior to April 30, 2020, and secured extensions to certain tolling agreements. The Receiver has started discussions about a settlement process with one major third party service provider to the DLI Entities and expects to make progress in confirming the final details for that settlement process soon.

The Receiver is continuing to direct the preparation of a more comprehensive forensic analysis and accounting for the sources and uses of funds by the DLI

Receivership Entities, with a detailed analysis of the funding of specific investments and the actual returns to the DLI Receivership Entities.  It is anticipated that this comprehensive analysis will be completed in the third quarter.

As noted in the prior report, the Court set a bar date for the filing of claims, requiring claims to be filed no later than July 7, 2020.  The Receiver is reviewing and compiling the filed claims, and is working with certain attorneys for investors to discuss the process for developing a claims procedure protocol and a claims distribution methodology.  In addition, counsel for the Receiver anticipates meeting and conferring with other claimants and preparing objections to certain claims, as appropriate, and in accordance with the claims procedure process.  The claims process will permit the Receiver to shift into the next stages necessary to wind down the DLI Receivership Entities, and to formulate and seek Court approval of a distribution plan.

## II.   Update on Operational Issues

A. <u>Employees</u>:   With the authority granted to the Receiver in the Additional Receiver Authority Order, since June 24, 2019 the Receiver has reduced the number of staff of DLI to five employees, and entered into separation agreements with certain of the departing staff members.  Further departures are anticipated as the operations continue to wind down.  By mid-August, the Receiver anticipates the number of staff will be reduced to four employees.  The remaining employees of DLI have continued to work remotely.

B. <u>Opus Fund Services (Bermuda) Ltd**.** ("Opus")/Bankruptcy Management Solutions dba Stretto</u>:   The Receiver terminated the services of Opus effective September 26, 2019, and the Receiver's Court-approved claims agent Bankruptcy Management Solutions dba Stretto ("Stretto") has taken primary responsibility for communications with investors.  (www.stretto.com.)  Opus continues to maintain records and provide the Receiver access to its portal.

C. <u>Extension of Ordinary Course Authority:</u>   On May 4, 2020, the Receiver filed a motion seeking multiple items of relief, including an order extending the Receiver's authority to employ vendors and professionals in the ordinary course of the receivership, subject to the less than $10,000 per month limit on payment of professionals for the period of April 24, 2020 through the week ending July 24, 2020, as well as an order authorizing the Receiver to employ and pay ordinary course professionals, including accountants and attorneys previously employed in the ordinary course of the Receivership Entity's business.  (Doc. No. 264.)  The motion also sought authority for the Receiver to operate the receivership estate and pay receivership expenses in accordance with two 13-week budgets covering receivership expenses through the week ending July 24, 2020 (the "April 2020-July 2020 Budgets"), and sought approval of a vendor/professional contract with Elite Discovery, Inc., a data management and e-discovery platform vendor. (*Id.*)  The motion granting the relief sought was approved by the Court's order issued May 26, 2020 ("Ordinary Course Extension Order").  (Doc. No. 269.)

Attached hereto as Exhibit "1" is a copy of a Budget Summary for the period covering July 24, 2020 – October 23, 2020.  Attached hereto as Exhibit "2" is the Receiver's Standardized Fund Accounting Report for the Reporting Period of April 1, 2020 to June 30, 2020.

D. <u>Ordinary Course Settlement Update</u>: With the authority and powers of the Receiver set forth in the Court's order granting the Receiver's Motion for Instructions re Scope of Receivership (Doc. No. 57), the Receiver is authorized to make compromises of claims <u>and</u> accept discounts of $100,000 or less.  Based on that order, as well as the Ordinary Course Extension Orders of October 2, 2019, and January 8, 2020, the Receiver has obtained settlements of approximately 21 claims related to certain of the loan portfolios.  The settlements include discounted payoffs and negotiated structured repayment agreements as the Receiver endeavors to

maximize recoveries on loans in default.  The settlements typically involve ongoing monthly payments on the loans potentially with reduced or waiver of interest.

## III.      Assets:  The Loans and Other Assets

A. <u>Loan Portfolios</u>:  The primary assets of the estate consist of the various investment instruments, loans, and loan portfolios into which funds generated from investors through the feeder funds were invested.  The Receiver's initial review of the books and records of the estate indicated that there were 26 outstanding investments comprising the primary estate assets.  The number of outstanding investment/loan portfolios is now 13, based on: (1) the Receiver's review and analysis of the loan records, which indicated certain investments were no longer outstanding and had been paid off shortly before the commencement of the receivership; (2) post-receivership loan payoffs; (3) three whole loan portfolio sales; (4) the Court's approval of a restructuring transaction/settlement for six additional investments; and (5) the Receiver's resolution of outstanding issues arising from Morrison Oil, LLC, an entity that is in a separate receivership proceeding.

It should be noted, however, that there are now only about seven (7) active material relationships with investment parties which the Receiver and his team are managing.  In addition, as noted above, the Receiver was recently able to complete a complex settlement and restructuring transaction where the Court approved the Receiver entering into final agreements based on term sheets submitted with the motions, but which were difficult to finalize due to recent developments.  Special creditors' rights counsel, Goldberg Kohn, has had primary responsibility for representing the Receiver in that negotiation, and in negotiating other possible transactions and working with DLI's counterparties in the difficult current economic environment.  The Receiver continues to move towards the liquidation of the investment portfolio positions and reducing the amount of management required.

(1)     <u>Current Schedule of Loans/Investments</u>

As in the prior report, the Receiver is maintaining confidential the identity of

the specific borrowers on the list of loan/investment portfolios.  Attached to this Sixth Status Report as Exhibit "3" is an updated list identifying the status of each of the investments, including those that have been paid off after the receivership, and the remaining unsatisfied loans/investments (the "Loan/Investment Schedule").  The Loan/Investment Schedule includes the par dollar amount of the estate's interest in those portfolios as reflected on the books and records of the Receivership Entities, collections on those portfolios obtained since the commencement of the receivership, and a general summary of the loan/investment portfolio.  The Loan/Investment Schedule includes a column for "other adjustments," which for investments numbered 1, 2, 3, and 5 related to a write-down of amounts owed.  The positive adjustment related to Investment J is an increase in the investment balance based on amounts added for interest paid in kind.  The adjustment to Investment M reflects a write-down after the completion of a refinancing transaction as approved by the Court in January.  The adjustment related to Investment R reflects a restructuring/settlement with respect to this investment.  As indicated in the prior report, two of the investments in particular are of uncertain value:  the QuarterSpot investment (investment 2), which was described in the SEC's complaint initiating this action, involved the inaccurate reporting of payments affecting the value and likely collection of those underlying loans; and b) the VoIP Guardian Partners loan (investment 22), based on that company's filing of a Chapter 7 liquidation and other factors.  In the interests of confidentiality, only the loans/investments that have been paid off or sold, and the QuarterSpot and VoIP loans, which have been the subject of public filings, are identified by name.

Of the 13 remaining outstanding loan and investment portfolios, most are in some form of financial distress or subject to disputes that may affect the timing and extent of recoveries on those portfolios.

(2) Status of Loan/Investment Portfolio

Since the last report, the Receiver, his portfolio team, his investment bankers

1  with Raymond James & Associates ("RJA"), and his counsel, including creditors'

2  rights specialists at Goldberg Kohn, have continued to analyze the outstanding

3  loan/investment portfolios to prepare strategies to monetize the portfolios and

4  maximize value for the estate.

5  When the Receiver was initially appointed on April 1, 2019, the estate had

6  cash on hand of $31.7 million.  Since the Receiver's appointment through June 26,

7  2020, the Receiver has recovered an additional $170.94 million in portfolio

8  collections (excluding fund collected on behalf of and either reserved for or remitted

9  to third parties).

10  The remaining loan/investment portfolios that have not been paid off or sold

11  had a par value on the Receivership Entities books of $575.4 million as of May 31,

12  2020.  However, as noted in the prior report, each of the remaining loan/investment

13  portfolios have a number of issues that make recovery of all or a large portion of the

14  outstanding balances challenging.

15  For example, although the par value of the VoIP loan on the Receivership

16  Entities' books as of March 31, 2020 is approximately $202.6 million, the Receiver

17  is not expecting a recovery of nearly the amount of the outstanding balance, as there

18  are substantial questions and concerns regarding collection of the underlying foreign

19  telecommunications accounts receivable. VoIP is in a Chapter 7 bankruptcy, which

20  fact alone reflects the challenges in collection.  In addition, the collection of

21  approximately $22 million from VoIP receivables continues to depend on the

22  outcome of proceedings in the Netherlands, as the funds are subject to a criminal

23  investigation of Rodney Omanoff and others for money laundering and other

24  criminal claims.  Other portfolios are structured with limited guarantees by the

25  principals, and in other portfolios, the value of the underlying collateral is highly

26  uncertain or speculative.

27  Without providing individualized loan/portfolio assessments, it remains the

28  Receiver's general assessment, as informed by his professional advisors, that

recoveries on the remaining loan/investment portfolios are likely to be far less than the $789.6 million stated on the receivership books and records as of March 31, 2019.   The Receiver and his professional advisors continue to estimate that the total recoveries to date (since appointment) and future recoveries on the loan/investment portfolio in place as of March 31, 2019, will range between a low of $215 million and a high of $265 million.

During this week, the Receiver will have filed extensions for the 2019 tax reporting, and will provide the 2019 Schedule K-1s to all investors by September 15, 2020.

B. <u>Tangible Personal Property</u>:  As noted in the prior report, the Receiver inventoried the artwork and other assets which remain in subtenant's possession or in storage.  The Receiver filed a motion for Court approval to liquidate the artwork and to approve proposed sale procedures, as the liquidation would be outside the ordinary course of business.  On June 1, 2020, the Receiver filed a Statement of Sales Results and Request for Approval and Confirmation of Sales in Support of an Order Approving Sale of Artwork.  (Doc. No. 271.)  That same day, the Court entered its order granting the motion.  (Doc. No. 272.)

C. <u>Litigation Claims</u>:  As stated in the prior report, the other potential assets of the estate are prospective litigation claims.  The full extent of these claims is the subject of investigation, and the potential value of these claims to the estate has not yet been fully quantified.  The investigation of potential litigation has continued since the Receiver's Fifth Report.

The Receiver and counsel have identified possible litigation targets, outlined possible legal and other theories of recovery, and entered into confidential tolling agreements with a number of potential defendants.  In the course of the investigative process, they have now issued approximately sixty (60) subpoenas to third parties for the production of records -- including subpoenas to legal, accounting, valuation professionals, and financial institutions.  Counsel continue to review the databases of

9

DLI documents, and the documents and records produced to date.  Serving these subpoenas, and voluntary productions by other entities, have resulted in the production of in excess of 750,000 pages of documents to date.  The Receiver continues to receive further productions from third parties, and the review process of these voluminous productions is ongoing.

As of this date, the Receiver's counsel has participated in extensive meetings and undertaken witness interviews involving more than fourteen (14) persons employed by or affiliated with DLI.   Many discussions have taken place on multiple days.  In addition, counsel has spoken to many investors and discussed the circumstances related to how these investors decided to invest with DLI and what representations were made to them.

The Receiver and counsel are continuing to pursue actively these factual investigations, which will likely include additional interviews of witnesses and analysis of additional documents and records that are produced by third parties in response to the subpoenas issued.  Further investigation of the facts and circumstances may produce information relevant to the basis to assert claims or may provide evidence of defenses to the claims precluding or limiting their assertion.

As outlined in the last report, the Receiver and his professionals continue to advance their comprehensive analysis of the factual and legal foundation for potential claims, and legal issues germane to the evaluation of such claims and defenses, including statute of limitations issues, potential application of the discovery rule, and choice of law considerations.  This work product and the active work, which is ongoing, will provide the basis for recommendations concerning whether or not to initiate litigation against potential defendants to pursue recoveries for the benefit of the receivership estate, investors, and creditors.  As reported in the last report, the Receiver has now entered into confidential tolling agreements with a number of key parties where counsel identified a possible statute of limitations period that may have expired before April 30, 2020.  The Receiver has also secured

extensions of certain of the earlier tolling agreements.  These tolling agreements, and extensions, will allow the Receiver and his counsel to further investigate and analyze potential claims, while continuing the investigation effort and undertaking the forensic accounting analysis described above.

To advance the Receiver's goal of resolving potential claims against third parties where possible without the expense of litigation, the Receiver has engaged in preliminary discussions with a significant third-party service provider to the DLI Entities and its counsel concerning the parameters of a settlement protocol.  It is anticipated that certain investors, represented by counsel, may also participate in this process subject to appropriate confidentiality agreements.  The protocol would generally involve an informal and confidential exchange of information over a limited period of time, culminating in a mediation with a qualified mediator acceptable to the Receiver.  It is expected that the Receiver will reach an agreement on the settlement protocol soon and that this process will continue into the next reporting period.

The Receiver anticipates discussing with the Diamond McCarthy firm the potential to pursue specific litigation claims on behalf of the DLI Receivership Entities on a contingency fee basis, or possibly modified contingency fee engagements, to maximize the value of possible litigation claims to the receivership estate, while minimizing the risk of out-of-pocket legal expenses that would arise from pursuing affirmative litigation on an hourly basis.  Any such fee arrangement would be subject to court approval.

In addition to this representation, the Receiver, in his capacity as U.S. Joint Official Liquidator ("JOL") in the Cayman liquidation proceeding, and the Cayman JOL Christopher D. Johnson, have agreed that it would be most efficient and cost-effective for a single law firm to pursue claims on behalf of the U.S. Receivership Entities, and the off-shore feeder fund, Direct Lending Feeder Fund, Ltd. ("DLIFF".)  The two JOLs have now submitted a conflict resolution protocol for

approval in the Cayman liquidation proceeding, which is an important step to confirming the engagement of a single law firm to pursue joint claims.  They have further agreed to seek Court approval for the Receiver's counsel Diamond McCarthy to serve as counsel for the JOLs for the limited purpose of investigation and evaluation of potential claims of DLIFF under United States law.  The Receiver anticipates he will seek Court approval of the protocol and the Diamond McCarthy engagement after the outcome of the request for approval in the Cayman liquidation proceeding.

In addition, during this period, the Receiver has continued to respond to requests for information from governmental entities and has actively coordinated with DLI insurers related to these and other insurance issues.

## IV.     Court Filings April 2020 Through June 2020

A. <u>Motions Related to Loan/Investment Portfolios</u>

During this period, the Receiver filed one motion related to recoveries and monetization of the loan/investment portfolios, as well as related pleadings.

On March 6, 2020, the Receiver moved for an order approving a partial settlement and term sheet for a forbearance agreement with Kountable Borrower, LLC and Kountable, Inc.  (Doc. No. 229.)   On April 3, 2020, the Court entered an order approving the settlement terms, and authorizing the Receiver to enter into a forbearance agreement.  (Doc. No. 247.)   On May 1, 2020, the Receiver filed a further motion, seeking approval of the forbearance agreement.  (Doc. 260.)   On May 26, 2020, the Court entered its order granting that motion.  (Doc. No. 270.)  Although the ongoing coronavirus situation has created uncertainty regarding the collection efforts underlying the transaction, Kountable has been successful to some degree with collections, and the Receiver remains hopeful that the estate will recover $4.5 million or more out of the $10.6 million of the position's pre-receivership par value for the Kountable loans.

During the prior reporting period, the Receiver filed a motion for approval of a

settlement and forbearance term sheets with DLI Properties, LLC, Liberty Fund, LLC, DLI Global, Ltd., and Quanta Finance, LLC.  (Doc. No. 226.)  The Court entered an order on March 26, 2020 granting the motion, authorizing the Receiver to enter into the final forbearance agreements and take additional actions necessary to implement the settlement, including making additional revolving loans in an additional amount of approximately $5 million with Strategic Acquisitions, Inc., through Liberty Fund, LLC and DLI Properties, LLC.  (Doc. No. 245.)  As noted above, the parties recently finalized the remaining documentation and closed these transactions on July 3, 2020.  The Receiver expects to have filed, or to file soon, a motion for authority to increase the maximum amount of the revolving loan to $7.5 million.

B. <u>Motions Concerning Administration of the Estate and the Receiver's Powers</u>

On March 30, 2020, the Receiver moved for an order seeking approval of the sale of seven pieces of artwork owned by the receivership estate, pursuant to bidding procedures to be approved by the Court.  (Doc. No. 238.)  On June 1, 2020, the Receiver filed a statement of sales results and request for approval and confirmation of sales in support of an order approving the sale.  (Doc. No. 271.)  That same day, the Court entered its order approving the sale.  (Doc. No. 272.)

The Receiver filed a further motion for approval and payment of fees of the Receiver, his counsel, and accountants on April 16, 2020. (Doc. No. 255.)  On May 18, 2020, the Court entered its order granting that motion.  (Doc. No. 267.)

On May 4, 2020, the Receiver filed a motion for an order for approval of budgets through the week ending July 24, 2020, extension of authority for the receiver's employment and payment of ordinary course professionals, including accountants and attorneys previously employed in the ordinary course of the Receivership Entity's business, and to continue the Elite Discovery, Inc. contract, and authorizing payments in furtherance of these agreements.  (Doc. No. 264.)

The Court approved the employment of Stretto as claims administrator by its order entered June 18, 2019.  (Doc. No. 79.)  Since then, the Receiver has been working to coordinate the claims procedures and allowance in the United States receivership with the separate claims procedures followed in the Cayman Islands regarding the Cayman Islands feeder fund, Direct Lending Income Feeder Fund, Ltd. ("DLIFF".)

On July 17, 2019, the Court entered its order granting in part the motion of the Receiver for instructions regarding the primary Directors & Officers Liability Policy (the "D&O Policy") and its proceeds and demands for payment of attorney's fees and costs by various insureds. (Doc. No. 97.)  By a stipulated order entered November 26, 2019, the Receiver and the Securities and Exchange Commission agreed to extend the order to authorize the Receiver to request the insurance carrier to pay and to authorize payment from proceeds of the D&O Policy with excess amounts covered by other insurers, and to modify the stay of Section IX of the receiver order (Doc. No. 10) to lift the stay to the extent necessary to allow the primary insurance carrier to pay proceeds from the D&O Policy and take other necessary actions.  (Doc. No. 182.)  The Court has entered orders authorizing payment of insurance proceeds pursuant to this prior authorization during this period.  (*See* Doc. No.  274.)

C. Claims Procedure Motion

On April 9, 2020, the Court entered its order granting the Receiver's claims procedure motion.  (Doc. No.  251.)  A copy of that order is attached hereto as Exhibit "4".

In entering this order, the Court established July 7, 2020 at 11:59 pm (prevailing Pacific time), as the bar date for the filing of claims by investors and creditors of the U.S. Receivership Entities, and administrative claimants of the receivership estate.  The Court also approved the form and manner of notice, and the proof of claim form.  (*See* Doc. No. 253.)   The claim procedures are summarized in the Notice of Bar Date and Procedure for Submitting a Proof of Claim Form, which

may be viewed on the Receiver's claims administrator, Stretto's, website at https://case.stretto.com/dli/civildocket.  Pursuant to those procedures, all claims were to be submitted by July 7, 2020 at 11:59 (prevailing Pacific time), through the methods outlined in the notice and Proof of Claim Form.

Since the last report, the Receiver has received comments and requests for clarification of the claims procedures and proof of claim form from various investors and investors' counsel, and responded to those comments and requests through his counsel and claims administrator, Stretto.   Where appropriate, information regarding the claims procedures has been updated on Stretto's website.

By mid-July 2020 the Receiver should have greater insight into the scope of the claims being made against the receivership estate, and the total amount.  As outlined in the notice, the Receiver will issue deficiency notices, and objections to individual claims, as appropriate, which may further reduce the claims that will participate in a distribution plan.  The Receiver also will be working with counsel for certain interested investors, and potentially other investors, to discuss the claims distribution methodologies and the procedures for approval of a distribution plan that the Receiver will consider and evaluate to best determine what plan he believes will be the most fair and equitable in this case.  The form of the proposed distribution plan has yet to be determined, and will be the subject of a further motion for the Court's approval.

To provide guidance regarding formulation of the distribution plan, the Receiver and his team are in the process of preparing a comprehensive report regarding the forensic analysis of the portfolio positions that has been ongoing for many months.  It is anticipated that this report will be issued in the third quarter of 2020.

D. Additional Anticipated Matters for Instructions and Potential Motions

As noted above, in addition to his status as Receiver of the U.S. Receivership Entities, the Receiver is also the U.S. JOL in the Cayman liquidation proceeding.  In

that capacity, the Receiver, together with his Cayman JOL Christopher D. Johnson, seek to enter into a Conflict Management Protocol to address and resolve certain potential conflicts arising out of the Receiver's dual role.  Entry into that Protocol is subject to approval by both the Cayman court and the receivership court.  While the JOLs have filed their request for approval in the Cayman court, and the request remains pending at this time, the Receiver anticipates filing a motion for approval of the Protocol in the receivership court once the Cayman court has entered an order approving the Protocol.  In addition, in this same motion, the Receiver anticipates requesting that the Court approve the JOLs' retention of Diamond McCarthy for the limited purpose of representing the JOLs with respect to investigation and evaluation of potential litigation claims the off-shore feeder fund, DLIFF, may have under United States law.

        E.    Anticipated Motions Addressing Restructuring and Settlement

        The Receiver continues to work actively to recover the balance on the remaining loan and investment portfolios.  The deteriorating economic climate created by the coronavirus epidemic during this quarter has rendered the outcome of these efforts uncertain at this time.  Subject to ongoing discussions, the Receiver may reach restructuring or settlement agreements with other counterparties during this quarter, or thereafter.  If successful, the Receiver will file motions for approval of those agreements.

**V.    Communications with Investors**

        A.    Investor Inquiries:  The Receiver continues to track investor inquiries received directly by the Receiver's agents and by counsel, as well as responses to the inquiries.  The Receiver continues to review and respond to investor inquiries, written and oral, and the Receiver's website for the case: https://cases.stretto.com/dli includes copies of case filings and other materials of interest to keep investors informed regarding the status of the case and the Receiver's activities. The Receiver's counsel continues to actively engage with the firm of Pachulski Stang

Ziehl & Jones LLP, counsel for a group of investors, and other prospective investor counsel, in response to their inquiries for updates on the case status and assets.

B.  <u>FAQs</u>:  The Receiver's website for the case also includes a series of "Frequently Asked Questions" and responsive information regarding the impact of the receivership on DLI and the investors' funds, the status of the receivership, and the Receiver's activities, the claims process in a receivership, and other similar information.  The Receiver continues to periodically update the FAQs to address new issues or actions that may be of interest to investors as the case progresses.

## VI.   Pending Litigation

A.   *Marcia Kosstrin Trust and Professional Home Improvements, Inc. Retirement Plan v. Direct Lending Investments, LLC, et al*., Case 2:19-cv-02452 ("Proposed Class Action")

As previously reported, on the same date the Receiver Order was entered, a class action complaint was filed in this Court by Marcia Kosstrin Trust and Professional Home Improvements, Inc. Retirement Plan against DLI, Brendan Ross, Bryce Mason, Frank Turner, Rodney Omanoff, and QuarterSpot, Inc. The Receiver, through counsel, filed a notice of say of the action based on Section IX of the Receiver Order.  The stay of the action remains in place, and there has been no further activity in the Proposed Class Action since the notice of stay was filed.

B.   *Forefront Partners, LLC v. Rodney Omanoff, et al., and Counterclaims*, New York County Supreme Court Index No. 650973/2017 ("Forefront Partners Action")

On June 19, 2019, the Plaintiff in the Forefront Partners Action filed a motion in this Court to lift the stay of actions under the Receiver Oder. (Doc. No. 81.)  The Court denied that motion by its order entered July 17, 2019 (Doc. No. 96).  The parties to the Forefront Partners Action entered into a stipulation approved by the New York Court that stays the Forefront Partners Action as to the claims, cross-claims and claims against Brendan Ross, DLI TC, LLC, Direct Lending Investments,

1 | LLC, Direct Lending Income Fund, L.P., VoIP Guardian Partners I, LLC are stayed
2 | until such time as the receivership and/or the VoIP bankruptcy are resolved.

3 |      C.    *American Health Connection, Inc. v. DLI Assets LLC*, Los Angeles
4 | Superior Court Case No. BC700599 ("American Health Action")

5 |      As previously reported, the American Health Action is a declaratory relief
6 | action arising out of a stipulated judgment in favor of DLI Assets that the plaintiff
7 | contends was entered improvidently and/or prematurely.  The Receiver filed a Notice
8 | of Stay of the action with a copy of the Receiver Order on April 19, 2019.  A status
9 | conference was held on January 6, 2020, and the court issued a minute order
10 | continuing the status conference to May 5, 2020.

12 | Dated: July 10, 2020                       Respectfully submitted,

                                        BRADLEY D. SHARP
                                        Receiver

Exhibit 1

**Direct Lending Investments**
**13 Week Cash Flow Forecast: CONSOLIDATED - Excluding Receipts**
As of July 10, 2020
*USD in 000's*

| | Week Ending | | | | | | | | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | 31-Jul Wk 1 | 7-Aug Wk 2 | 14-Aug Wk 3 | 21-Aug Wk 4 | 28-Aug Wk 5 | 4-Sep Wk 6 | 11-Sep Wk 7 | 18-Sep Wk 8 | 25-Sep Wk 9 | 2-Oct Wk 10 | 9-Oct Wk 11 | 16-Oct Wk 12 | 23-Oct Wk 13 | Total |
| **Disbursements:** | | | | | | | | | | | | | | |
| Payroll [1] | $38 | $32 | $43 | $28 | $29 | $34 | $29 | $28 | $29 | $34 | $29 | $28 | $29 | $411 |
| Other Operating (see pg. 4) | 30 | 3 | 7 | 3 | 20 | 3 | 7 | 3 | 15 | 3 | 7 | 3 | 15 | 119 |
| OCP Services (see pg. 5) | 19 | - | - | - | 28 | 19 | 38 | - | 28 | 19 | - | - | 28 | 177 |
| Taxes | - | - | - | - | - | - | - | 4 | - | - | - | - | - | 4 |
| Operating Disbursements | 87 | 35 | 50 | 31 | 76 | 56 | 74 | 35 | 71 | 56 | 36 | 31 | 71 | 711 |
| | | | | | | | | | | | | | | |
| Required Funding Request (TBD) | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| | | | | | | | | | | | | | | |
| Professionals: [2] | | | | | | | | | | | | | | |
| Bradley D. Sharp / DSI | - | - | - | - | 370 | - | - | - | 350 | - | - | - | 300 | 1,020 |
| Diamond McCarthy | - | - | - | - | 250 | - | - | - | 250 | - | - | - | 250 | 750 |
| BRG | - | - | - | - | 45 | - | - | - | 45 | - | - | - | 10 | 100 |
| Stretto | - | - | - | - | 15 | - | - | - | 15 | - | - | - | 10 | 40 |
| Chris Johnson (Cayman JOL) | - | - | - | - | 105 | - | - | - | 105 | - | - | - | 105 | 315 |
| Alston & Bird LLP (Cayman JOL Counsel) | - | - | - | - | 35 | - | - | - | 35 | - | - | - | 35 | 105 |
| Collas Crill (Cayman JOL Counsel) | - | - | - | - | 75 | - | - | - | 75 | - | - | - | 75 | 225 |
| Goldberg Kohn LTD | - | - | - | - | 175 | - | - | - | 175 | - | - | - | 175 | 525 |
| Raymond James [3] | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Total Professionals | - | - | - | - | 1,070 | - | - | - | 1,050 | - | - | - | 960 | 3,080 |
| | | | | | | | | | | | | | | |
| **Total Disbursements** | **($87)** | **($35)** | **($50)** | **($31)** | **($1,146)** | **($56)** | **($74)** | **($35)** | **($1,121)** | **($56)** | **($36)** | **($31)** | **($1,031)** | **($3,791)** |
| | | | | | | | | | | | | | | |
| Cash, Beginning Balance (Book) | $194,000 | $193,913 | $193,878 | $193,828 | $193,797 | $192,650 | $192,595 | $192,521 | $192,485 | $191,364 | $191,308 | $191,272 | $191,241 | $194,000 |
| Less: Disbursements | (87) | (35) | (50) | (31) | (1,146) | (56) | (74) | (35) | (1,121) | (56) | (36) | (31) | (1,031) | (3,791) |
| **Cash, Ending Balance (Book)** | $193,913 | $193,878 | $193,828 | $193,797 | $192,650 | $192,595 | $192,521 | $192,485 | $191,364 | $191,308 | $191,272 | $191,241 | $190,209 | $190,209 |

---

[1] Payroll expenses exclude $100K of accrued and unpaid PTO as of 7/10/20 for remaining employees.  Should the Receiver pursue additional headcount reductions, the amount forecast for this budget period will also include the corresponding accrued and unpaid PTO for terminated employees.

[2] Professionals fees and expenses are presented on a monthly accrual basis.

[3] RJA fees are not budgeted for as the timing and amount of the fees are directly correlated with the sale or refinancing closing(s) of portfolio assets, and the total fees to RJA for its services under the IB Engagement are capped at $4M. Current RJA fees paid to date total to $2.748M.

**Direct Lending Investments**
**13 Week Cash Flow Forecast: DOMESTIC ENTITIES - Excluding Receipts**
As of July 10, 2020
*USD in 000's*

| Week Ending | 31-Jul Wk 1 | 7-Aug Wk 2 | 14-Aug Wk 3 | 21-Aug Wk 4 | 28-Aug Wk 5 | 4-Sep Wk 6 | 11-Sep Wk 7 | 18-Sep Wk 8 | 25-Sep Wk 9 | 2-Oct Wk 10 | 9-Oct Wk 11 | 16-Oct Wk 12 | 23-Oct Wk 13 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Disbursements:** | | | | | | | | | | | | | | |
| Payroll [1] | $38 | $32 | $43 | $28 | $29 | $34 | $29 | $28 | $29 | $34 | $29 | $28 | $29 | $411 |
| Other Operating | 30 | 3 | 7 | 3 | 20 | 3 | 7 | 3 | 15 | 3 | 7 | 3 | 15 | 119 |
| OCP Services | 19 | - | - | - | 28 | 19 | 34 | - | 28 | 19 | - | - | 28 | 173 |
| Taxes | - | - | - | - | - | - | - | 4 | - | - | - | - | - | 4 |
| Operating Disbursements | 87 | 35 | 50 | 31 | 76 | 56 | 70 | 35 | 71 | 56 | 36 | 31 | 71 | 707 |
| | | | | | | | | | | | | | | |
| Required Funding Request (TBD) | - | | | | | | | | | | | | - | - |
| | | | | | | | | | | | | | | |
| Professionals: [2] | | | | | | | | | | | | | | |
| Bradley D. Sharp / DSI | - | - | - | - | 350 | - | - | - | 330 | - | - | - | 285 | 965 |
| Diamond McCarthy | - | - | - | - | 250 | - | - | - | 250 | - | - | - | 250 | 750 |
| BRG | - | - | - | - | 45 | - | - | - | 45 | - | - | - | 10 | 100 |
| Stretto | - | - | - | - | 15 | - | - | - | 15 | - | - | - | 10 | 40 |
| Goldberg Kohn LTD | - | - | - | - | 175 | - | - | - | 175 | - | - | - | 175 | 525 |
| Raymond James [3] | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Total Professionals | - | - | - | - | 835 | - | - | - | 815 | - | - | - | 730 | 2,380 |
| | | | | | | | | | | | | | | |
| **Total Disbursements** | **($87)** | **($35)** | **($50)** | **($31)** | **($911)** | **($56)** | **($70)** | **($35)** | **($886)** | **($56)** | **($36)** | **($31)** | **($801)** | **($3,087)** |
| | | | | | | | | | | | | | | |
| Cash, Beginning Balance (Book) | $195,200 | $195,113 | $195,078 | $195,028 | $194,997 | $194,085 | $194,030 | $193,959 | $193,924 | $193,038 | $192,982 | $192,946 | $192,914 | $195,200 |
| Less: Disbursements | (87) | (35) | (50) | (31) | (911) | (56) | (70) | (35) | (886) | (56) | (36) | (31) | (801) | (3,087) |
| **Cash, Ending Balance (Book)** | **$195,113** | **$195,078** | **$195,028** | **$194,997** | **$194,085** | **$194,030** | **$193,959** | **$193,924** | **$193,038** | **$192,982** | **$192,946** | **$192,914** | **$192,113** | **$192,113** |

[1] Payroll expenses exclude $100K of accrued and unpaid PTO as of 7/10/20 for remaining employees. Should the Receiver pursue additional headcount reductions, the amount forecast for this budget period will also include the corresponding accrued and unpaid PTO for terminated employees.

[2] Professionals fees and expenses are presented on a monthly accrual basis.

[3] RJA fees are not budgeted for as the timing and amount of the fees are directly correlated with the sale or refinancing closing(s) of portfolio assets, and the total fees to RJA for its services under the IB Engagement are capped at $4M. Current RJA fees paid to date total to $2.748M.

**Direct Lending Investments**
**13 Week Cash Flow Forecast: FOREIGN ENTITY (DLIFF) - Excluding Receipts**
As of July 10, 2020
*USD in 000's*

| | Week Ending | | | | | | | | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | 31-Jul Wk 1 | 7-Aug Wk 2 | 14-Aug Wk 3 | 21-Aug Wk 4 | 28-Aug Wk 5 | 4-Sep Wk 6 | 11-Sep Wk 7 | 18-Sep Wk 8 | 25-Sep Wk 9 | 2-Oct Wk 10 | 9-Oct Wk 11 | 16-Oct Wk 12 | 23-Oct Wk 13 | Total |
| **Disbursements:** | | | | | | | | | | | | | | |
| Payroll | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Other Operating | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| OCP Services (see below) | - | - | - | - | - | - | 4 | - | - | - | - | - | - | 4 |
| Taxes | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Operating Disbursements | - | - | - | - | - | - | 4 | - | - | - | - | - | - | 4 |
| | | | | | | | | | | | | | | |
| Required Funding Request (TBD) | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| | | | | | | | | | | | | | | |
| Professionals: [1] | | | | | | | | | | | | | | |
| Bradley D. Sharp (Cayman JOL) | - | - | - | - | 20 | - | - | - | 20 | - | - | - | 15 | 55 |
| Chris Johnson (Cayman JOL) | - | - | - | - | 105 | - | - | - | 105 | - | - | - | 105 | 315 |
| Alston & Bird LLP (Cayman JOL Counsel) | - | - | - | - | 35 | - | - | - | 35 | - | - | - | 35 | 105 |
| Collas Crill (Cayman JOL Counsel) | - | - | - | - | 75 | - | - | - | 75 | - | - | - | 75 | 225 |
| Total Professionals | - | - | - | - | 235 | - | - | - | 235 | - | - | - | 230 | 700 |
| | | | | | | | | | | | | | | |
| **Total Disbursements** | - | - | - | - | **($235)** | - | **($4)** | - | **($235)** | - | - | - | **($230)** | **($704)** |
| | | | | | | | | | | | | | | |
| Cash, Beginning Balance (Book) | ($1,200) | ($1,200) | ($1,200) | ($1,200) | ($1,200) | ($1,435) | ($1,435) | ($1,439) | ($1,439) | ($1,674) | ($1,674) | ($1,674) | ($1,674) | ($1,200) |
| Less: Disbursements | - | - | - | - | (235) | - | (4) | - | (235) | - | - | - | (230) | (704) |
| **Cash, Ending Balance (Book)** | ($1,200) | ($1,200) | ($1,200) | ($1,200) | ($1,435) | ($1,435) | ($1,439) | ($1,439) | ($1,674) | ($1,674) | ($1,674) | ($1,674) | ($1,904) | ($1,904) |

**OCP Services**

| | | | | | | | | | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Millennium Trust Company | - | - | - | - | - | - | 4 | - | - | - | - | - | - | 4 |
| Total OCP Services | - | - | - | - | - | - | $4 | - | - | - | - | - | - | $4 |

[1] Professionals fees and expenses are presented on a monthly accrual basis.

**Direct Lending Investments**
**13 Week Cash Flow Forecast: Other Operating Disbursements - Consolidated**
As of July 10, 2020

| | 31-Jul Wk 1 | 7-Aug Wk 2 | 14-Aug Wk 3 | 21-Aug Wk 4 | 28-Aug Wk 5 | 4-Sep Wk 6 | 11-Sep Wk 7 | 18-Sep Wk 8 | 25-Sep Wk 9 | 2-Oct Wk 10 | 9-Oct Wk 11 | 16-Oct Wk 12 | 23-Oct Wk 13 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **GP** | | | | | | | | | | | | | | |
| **General & Administrative** | | | | | | | | | | | | | | |
| BizFilings | $ 500 | - | - | - | $ 500 | - | - | - | $ 500 | - | - | - | $ 500 | $ 2,000 |
| Insurance | - | - | - | - | 5,000 | - | - | - | - | - | - | - | - | 5,000 |
| **IT Services & Software** | | | | | | | | | | | | | | |
| Adobe | - | - | 150 | - | - | - | - | 150 | - | - | - | 150 | - | 450 |
| Advanced Networks Solutions | 15,000 | - | 3,800 | - | - | - | 3,800 | - | - | - | 3,800 | - | - | 26,400 |
| Atlassian | - | - | 15 | - | - | - | - | 15 | - | - | - | 15 | - | 45 |
| Broadvoice | - | 200 | - | - | - | - | 200 | - | - | - | 200 | - | - | 600 |
| Corodata | - | - | 60 | - | - | - | - | 60 | - | - | - | 60 | - | 180 |
| Dropbox | 100 | - | - | - | - | 100 | - | - | - | 100 | - | - | - | 300 |
| Send2fax.com | - | - | 10 | - | - | - | 10 | - | - | - | 10 | - | - | 30 |
| TurboBridge | - | - | 65 | - | - | - | - | 65 | - | - | - | 65 | - | 195 |
| | 15,600 | 200 | 4,100 | - | 5,500 | 100 | 4,010 | 290 | 500 | 100 | 4,010 | 290 | 500 | 35,200 |
| **Fund** | | | | | | | | | | | | | | |
| **General & Administrative** | | | | | | | | | | | | | | |
| BizFilings | 500 | - | - | - | 500 | - | - | - | 500 | - | - | - | 500 | 2,000 |
| **Other Operating Expenses** | | | | | | | | | | | | | | |
| Enoch Kim | - | - | - | - | 7,500 | - | - | - | 7,500 | - | - | - | 7,500 | 22,500 |
| Lien Solutions | 8,548 | - | - | - | 600 | - | - | - | 600 | - | - | - | 600 | 10,348 |
| Vervent Inc. fka First Associates | 2,500 | - | - | - | 2,500 | - | - | - | 2,500 | - | - | - | 2,500 | 10,000 |
| Total Professionals | 11,548 | - | - | - | 11,100 | - | - | - | 11,100 | - | - | - | 11,100 | 44,848 |
| | | | | | | | | | | | | | | |
| **Other** | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 39,000 |
| **Total Other Operating Disbursements** | $30,148 | $3,200 | $7,100 | $3,000 | $19,600 | $3,100 | $7,010 | $3,290 | $14,600 | $3,100 | $7,010 | $3,290 | $14,600 | $119,048 |

**Direct Lending Investments**
**13 Week Cash Flow Forecast: Ordinary Course Professionals - Consolidated**
As of July 10, 2020
*USD in 000's*

| Professional | Description | Requested/ Approved Amount | Payment Frequency | 31-Jul Wk 1 | 7-Aug Wk 2 | 14-Aug Wk 3 | 21-Aug Wk 4 | 28-Aug Wk 5 | 4-Sep Wk 6 | 11-Sep Wk 7 | 18-Sep Wk 8 | 25-Sep Wk 9 | 2-Oct Wk 10 | 9-Oct Wk 11 | 16-Oct Wk 12 | 23-Oct Wk 13 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Fund** | | | | | | | | | | | | | | | | | |
| Millennium Trust Company | Fund Custody | $37,500 | Quarterly | - | - | - | - | - | - | $ 38 | - | - | - | - | - | - | $ 38 |
| Saul Ewing Arnstein & Lehr LLP | Legal - Recovery | $10,000 | Monthly | - | - | - | - | 8 | - | - | - | 8 | - | - | - | 8 | 23 |
| Parker, Simon & Kokolis, LLC [1] | Legal - Collections | $100,000 | Monthly | - | - | - | - | 10 | - | - | - | 10 | - | - | - | 10 | 30 |
| BARR Credit Services, Inc. [1] | Legal - Collections | $100,000 | Monthly | - | - | - | - | 10 | - | - | - | 10 | - | - | - | 10 | 30 |
| | | | | - | - | - | - | 28 | - | 38 | - | 28 | - | - | - | 28 | 120 |
| **GP** | | | | | | | | | | | | | | | | | |
| Lucas, Horsfall, Murphy & Pindroh, LLP | Accounting | $3,000 | Monthly | 1 | - | - | - | - | 1 | - | - | - | 1 | - | - | - | 3 |
| Constangy, Brooks, Smith & Prophete, LLP | Legal - Employment | $5,000 | Monthly | 1 | - | - | - | - | 1 | - | - | - | 1 | - | - | - | 3 |
| Elite Discovery | Documents Management | $30,000 | Monthly | 17 | - | - | - | - | 17 | - | - | - | 17 | - | - | - | 51 |
| | | | | 19 | - | - | - | - | 19 | - | - | - | 19 | - | - | - | 57 |
| | | | | **$19** | - | - | - | **$28** | **$19** | **$38** | - | **$28** | **$19** | - | - | **$28** | **$177** |

[1] Budgeted amounts **include** out-of-pocket expenses and contingency collections fees.

Exhibit 2

Bradley D. Sharp, Receiver
Development Specialists, Inc.
333 South Grand Avenue Suite 4100
Los Angeles, CA 90071
(213) 617-2717

# STANDARDIZED FUND ACCOUNTING REPORT

## CIVIL - RECEIVERSHIP FUND

Consolidated Direct Lending Investments Receivership Entities [1]

Civil Court Docket No. 2:19−cv−02188−DSF−MRW

Reporting Period 4/1/2020 to 6/30/2020

**Note 1**: Direct Lending Investments, LLC, Direct Lending Income Fund, L.P., Direct Lending Income Feeder Fund, Ltd., DLI Capital, Inc., DLI Lending Agent, LLC, DLI Assets Bravo, LLC, and their successors, subsidiaries and affiliated entities have been consolidated and are collectively referred to in this report as the "Consolidated Direct Lending Investments Receivership Entities."

STANDARDIZED FUND ACCOUNTING REPORT for Consolidated Direct Lending Investments Receivership Entities - Cash Basis
Receivership; Civil Court Docket No. 2:19−cv−02188−DSF−MRW
Reporting Period 4/1/2020 to 6/30/2020

| Fund Accounting (See Instructions): | | Detail | Subtotal | Grand Total |
|---|---|---|---|---|
| Line 1 | **Beginning Balance (As of 4/1/2020):** | | | $          189,884,153 |
| | *Increases in Fund Balance:* | | | |
| Line 2 | **Business Income** | 7,287,744 | | |
| Line 3 | **Cash and Securities** | - | | |
| Line 4 | **Interest/Dividend Income** | 50,276 | | |
| Line 5 | **Business Asset Liquidation** | 271,691 | | |
| Line 6 | **Personal Asset Liquidation** | - | | |
| Line 7 | **Third-Party Litigation Income** | - | | |
| Line 8 | **Miscellaneous - Other** | - | | |
| | **Total Funds Available (Lines 1 - 8):** | | 7,609,711 | 197,493,865 |
| | *Decreases in Fund Balance:* | | | |
| Line 9 | **Disbursements to Investors** | - | | |
| Line 10 | **Disbursements for Receivership Operations:** | | | |
| *Line 10a* | *Disbursements to Receiver or Other Professionals* | 1,477,831 | | |
| *Line 10b* | *Business Asset Expenses* | 1,834,144 | | |
| *Line 10c* | *Personal Asset Expenses* | - | | |
| *Line 10d* | *Investment Expenses* | - | | |
| *Line 10e* | *Third-Party Litigation Expenses* | - | | |
| | 1. Attorney Fees | - | | |
| | 2. Litigation Expenses | - | | |
| | *Total Third-Party Litigation Expenses* | - | | |
| *Line 10f* | *Tax Administrator Fees and Bonds* | - | | |
| *Line 10g* | *Federal and State Tax Payments* | - | | |
| | **Total Disbursements for Receivership Operations** | | 3,311,974 | |
| Line 11 | **Disbursements for Distribution Expenses Paid by the Fund:** | | | |
| *Line 11a* | *Distribution Plan Development Expenses:* | | | |
| | 1. Fees: | | | |
| | Fund Administrator | - | | |
| | Independent Distribution Consultant (IDC) | - | | |
| | Distribution Agent | - | | |
| | Consultants | - | | |
| | Legal Advisers | - | | |
| | Tax Advisers | - | | |
| | 2. Administrative Expenses | - | | |
| | 3. Miscellaneous | - | | |
| | *Total Plan Development Expenses* | - | | |
| *Line 11b* | *Distribution Plan Implementation Expenses:* | | | |
| | 1. Fees: | | | |
| | Fund Administrator | - | | |
| | IDC | - | | |
| | Distribution Agent | - | | |
| | Consultants | - | | |
| | Legal Advisers | - | | |
| | Tax Advisers | - | | |
| | 2. Administrative Expenses | - | | |
| | 3. Investor Identification: | - | | |
| | Notice/Publishing Approved Plan | - | | |
| | Claimant Identification | - | | |
| | Claims Processing | - | | |
| | Web Site Maintenance/Call Center | - | | |
| | 4. Fund Administrator Bond | - | | |
| | 5. Miscellaneous | - | | |
| | 6. Fed Acct. for Investor Restitution (FAIR) Reporting Expenses | - | | |
| | *Total Plan Implementation Expenses* | - | | |
| | **Total Disbursements for Distribution Expenses Paid by the Fund** | | - | |

STANDARDIZED FUND ACCOUNTING REPORT for Consolidated Direct Lending Investments Receivership Entities - Cash Basis
Receivership; Civil Court Docket No. 2:19−cv−02188−DSF−MRW
Reporting Period 4/1/2020 to 6/30/2020

| | | | | | |
|---|---|---|---|---|---|
| **Line 12** | **Disbursements to Court/Other:** | | | | |
| *Line 12a* | *Investment Expenses/Court Registry Investment System (CRIS) Fees* | - | | | |
| *Line 12b* | *Federal Tax Payments* | - | | | |
| | **Total Disbursements to Court/Other** | | - | | |
| | **Total Funds Disbursed (Line 9 - 12)** | | | $ | 3,311,974 |
| **Line 13** | **Ending Balance (As of 6/30/2020):** | | | $ | 194,181,891 |

**Note:** Transfers between the accounts of the consolidated entities on this report are not included in the schedules contained herein.

| | | Detail | Subtotal | Grand Total | |
|---|---|---|---|---|---|
| **Line 14** | **Ending Balance of Fund - Net Assets** | | | | |
| *Line 14a* | Cash & Cash Equivalents | | | $ | 194,181,891 |
| *Line 14b* | Investments | | | | TBD |
| *Line 14c* | Other Assets or Uncleared Funds | | | | TBD |
| | **Total Ending Balance of Fund - Net Assets** | | | $ | 194,181,891 |

| | | Detail | Subtotal | Grand Total |
|---|---|---|---|---|
| **OTHER SUPPLEMENTAL INFORMATION:** | | | | |
| | *Report of Items NOT To Be Paid by the Fund:* | | | |
| **Line 15** | **Disbursements for Plan Administration Expenses Not Paid by the Fund:** | | | |
| *Line 15a* | *Plan Development Expenses Not Paid by the Fund:* | | | |
| | 1. Fees: | | | |
| | Fund Administrator | | | |
| | IDC | | | |
| | Distribution Agent | | | |
| | Consultants | | | |
| | Legal Advisers | | | |
| | Tax Advisers | | | |
| | 2. Administrative Expenses | | | |
| | 3. Miscellaneous | | | |
| | *Total Plan Development Expenses Not Paid by the Fund* | | | |
| *Line 15b* | *Plan Implementation Expenses Not Paid by the Fund:* | | | |
| | 1. Fees: | | | |
| | Fund Administrator | | | |
| | IDC | | | |
| | Distribution Agent | | | |
| | Consultants | | | |
| | Legal Advisers | | | |
| | Tax Advisers | | | |
| | 2. Administrative Expenses | | | |
| | 3. Investor Identification: | | | |
| | Notice/Publishing Approved Plan | | | |
| | Claimant Identification | | | |
| | Claims Processing | | | |
| | Web Site Maintenance/Call Center | | | |
| | 4. Fund Administrator Bond | | | |
| | 5. Miscellaneous | | | |
| | 6. FAIR Reporting Expenses | | | |
| | *Total Plan Implementation Expenses Not Paid by the Fund* | | | |
| *Line 15c* | *Tax Administrator Fees & Bonds Not Paid by the Fund* | | | |
| | **Total Disbursements for Plan Administration Expenses Not Paid by the Fund** | | | |
| **Line 16** | **Disbursements to Court/Other Not Paid by the Fund** | | | |
| *Line 16a* | *Investment Expenses/CRIS Fees* | | | |
| *Line 16b* | *Federal Tax Payments* | | | |
| | **Total Disbursements to Court/Other Not Paid by the Fund** | | | |
| **Line 17** | **DC & State Tax Payments** | | | |

STANDARDIZED FUND ACCOUNTING REPORT for Consolidated Direct Lending Investments Receivership Entities - Cash Basis
Receivership; Civil Court Docket No. 2:19−cv−02188−DSF−MRW
Reporting Period 4/1/2020 to 6/30/2020

| | | |
|---|---|---|
| **Line 18** | **No. of Claims:** | |
| *Line 18a* | *# of Claims Received This. Reporting Period* [1] | 1,011 |
| *Line 18b* | *# of Claims Received Since Inception of Fund* [2] | 1,038 |
| **Line 19** | | |
| *Line 19a* | *# of Claimants/Investors Paid This Reporting Period* | 0 |
| *Line 19b* | *# of Claimants/Investors Paid Since Inception of Fund* | 0 |

[1] Total represents 1,010 claims filed with the domestic entities and 1 claim filed with the foreign entity.
[2] Total represents 1,010 claims filed with the domestic entities and 28 claims filed with the foreign entity.

Receiver:

By: _____
(Signature)

___Bradley D. Sharp___
(Printed Name)

_____Receiver_____
(Title)

Date: ___July 9, 2020___

# Exhibit 3

**DIRECT LENDING** INVESTMENTS

**Investment Portfolio Summary (Positions as of 5/31/20)**

*($ in millions)*

| # | Investment | Form of Investment | Collateral | Initial Inv. Date | Maturity Date | 3/31/2019 Par Debt Amount | Interim Paydown | Other Adjs | 5/31/2020 Par Debt Amount |
|---|---|---|---|---|---|---|---|---|---|
| 1 | Dealstruck Funding 3, LLC | Whole Loans. 12-16 foreclosure on LLC | Small balance commercial loans and lines of credit | 11/19/2014 | N/A | $4.9 | ($2.3) | ($2.6) | - |
| 2 | Quarterspot | Whole Loans | Small balance commercial loans | 8/1/2013 | N/A | $2.4 | ($0.6) | ($1.5) | $0.3 |
| 3 | LoanHero | Whole Loans. 12-17 foreclosure on asset-based facility | Unsecured indirect consumer loans | 4/30/2015 | N/A | $11.0 | ($7.8) | ($3.3) | - |
| 4 | Investment D | Whole Loans | Small balance commercial real estate | 7/31/2015 | N/A | $1.4 | (0.08) | (0.82) | $0.5 |
| 5 | Biz2Credit | Whole Loans | Merchant cash advances | 3/7/2014 | N/A | $12.1 | ($1.2) | ($10.9) | - |
| 6 | Investment F | Corporate Term Loan | N/A | 8/30/2018 | On demand | $2.0 | - | - | $2.0 |
| 7 | Investment G | Asset-Based Facility | Purchase order finance | 3/1/2017 | 1/1/2022 | $8.6 | (0.42) | - | $8.2 |
| 8 | Investment H | Corporate Term Loan | All assets lien over entity (no pledge of stock) | 2/1/2016 | 12/31/2021 | $98.7 | ($36.1) | - | $62.6 |
| 9 | Investment I | Second Lien Asset-Based Facility | Unsecured indirect consumer loans | 4/30/2015 | 1/24/2023 | $85.3 | - | - | $85.3 |
| 10 | Investment J | First Lien Corporate Term Loan | Mineral rights for 6 oil and gas wells | 6/19/2017 | 6/1/2019 | $4.1 | $0.0 | $0.7 | $4.8 |
| 11 | Investment K | Corporate Term Loan | Accounts receivable, purchase orders and charge orders | 4/25/2017 | 3/31/2018 | $9.6 | ($0.0) | - | $9.5 |
| 12 | Investment L | Corporate Term Loan | Litigation finance | 10/9/2018 | 10/5/2021 | $27.4 | - | - | $27.4 |
| 13 | Investment M | Asset-Based Facility | Litigation finance | 5/1/2017 | 5/1/2022 | $62.0 | ($6.5) | ($53.5) | $2.0 |
| 14 | Investment N | Asset-Based Facility | Accounts receivable, purchase order finance and movie film finance | 9/1/2015 | 3/14/2023 | $69.3 | - | - | $69.3 |
| 15 | Fast Pay Partners, LLC | Second Lien Asset-Based Facility | Accounts receivable (digital media) | 3/16/2018 | 9/19/2020 | $19.8 | ($19.8) | - | - |
| 16 | Investment P | Asset-Based Facility | Accounts receivable (digital media) | 12/7/2018 | 12/7/2020 | $14.0 | - | - | $14.0 |
| 17 | Future Payment Portfolio LLC (Multistream Capital) | Asset-Based Facility | Structured settlements | 12/14/2018 | 11/30/2021 | $2.3 | ($2.3) | - | - |
| 18 | Investment R | Asset-Based Facility | 1 distressed commercial real estate property (1 parcel) and 1 note backed by a VC investment in a cloud-based billing service company | 12/22/2016 | 12/22/2021 (Maturity date extension option of 2 years) | $25.9 | ($6.2) | $1.8 | $21.5 |
| 19 | Investment S | Second Lien Asset-Based Facility | Residential real estate (Fix and Flip) | 7/17/2017 | 5/30/2021 | $9.8 | ($0.7) | - | $9.1 |
| 20 | Investment T | Second Lien Asset-Based Facility | Residential real estate (Fix and Flip) | 7/31/2015 | 7/31/2020 | $56.3 | - | - | $56.3 |
| 21 | Origin SPE, LLC (Mepco) | Second Lien Asset-Based Facility | Vehicle service contract loans | 5/18/2017 | 5/1/2022 | $59.9 | ($59.9) | - | - |
| 22 | VoIP Guardian Partners 1, LLC | Asset-Based Facility | Accounts receivable (international telecommunication) | 10/1/2015 | 9/1/2020 | $202.6 | - | - | $202.6 |
| | **Total** | | | | | **$789.6** | **($143.9)** | **($70.2)** | **$575.4** |

Exhibit 4

1
2
3
4
5
6
7
8
9
10
11

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Case No. CV 19−2188 DSF (MRWx) |
| Plaintiff, | **ORDER GRANTING MOTION OF RECEIVER FOR ENTRY OF ORDER:** |
| v. | **(1) ESTABLISHING BAR DATE FOR U.S. RECEIVERSHIP ENTITIES;** |
| DIRECT LENDING INVESTMENTS LLC, | **(2) APPROVING FORM AND MANNER OF NOTICE;** |
| Defendant. | **(3) APPROVING PROOF OF CLAIM (INTEREST) FORM AND SUMMARY PROCEDURES; AND** |
| | **(4) APPROVING FORM AND/OR LIMITATION OF NOTICE UNDER LOCAL CIVIL RULE 66-7 [DOCKET# 224]** |

Before the Court is the Motion of the Receiver for an Order: (1) Establishing

Bar Date for U.S. Receivership Entities; (2) Approving Form and Manner of Notice;

(3) Approving Proof of Claim (Interest) Form and Summary Procedures; and (4)

Approving Form and/or Limitation of Notice Under Local Civil Rule 66-7

("Motion") [Dck# 224].  The Court, having reviewed and considered the Motion and all supporting pleadings and papers, and oppositions or responses to the Motion, if any, and good cause appearing,

IT IS ORDERED that:

1.  The Motion, together with the exhibits, instructions, and other attachments is granted and approved.

2.  <u>Claims Bar Date</u>:  The Court establishes July 7, 2020, at 11:59 pm (prevailing Pacific Time) as the deadline ("Bar Date") for Claimants to submit a completed and signed Proof of Claim (Interest) form under penalty of perjury, together with any supporting documentation, against one or more of the U.S. Receivership Entities.  This Bar Date applies to investors and creditors of the U.S. Receivership Entities and administrative claimants of the receivership estate.

3.  The claims procedure, including the Notice of Bar Date and Procedure for Submitting a Proof of Claim Form (the "Notice of Bar Date") and Proof of Claim (Interest) Form, attached to the Sharp Declaration as Exhibits 1 and 2, are approved substantially in the form attached to the Motion.

4.  All Claimants who believe they are owed money by, or are entitled to a distribution from, the receivership estate must submit a completed and signed Proof of Claim (Interest) form by the Bar Date, in accordance with the instructions on the Proof of Claim (Interest) Form.

5.  The Bar Date and procedures shall not apply to holders of Claims based on professional services provided and fees and costs incurred after April 1, 2019 by the Receiver and his professionals for the benefit of the receivership estate ("Professional Claimants"), and Professional Claimants are not required to submit a Proof of Claim (Interest) form and the Court will continue to address those claims in accordance with prior or future court orders.  Claims and interests among and between the Receivership Entities ("Intercompany Receivership Claims") are preserved without the requirement of the filing of a Proof of Claim (Interest) form at

this time. Any such Claims will be subject to a Court-approved distribution plan.

5. **Notice by Regular Mail or Email**: The Receiver must serve all known potential Claimants, to the extent the Claimant has a known email address, or alternatively, by regular mail if the Claimant does not have a known email address and has a known mailing address, with the Bar Date Notice, and Proof of Claim (Interest) Form. The Receiver must provide such notice within 30 days after entry of the Bar Date Order.

6. **Notice by Publication**: The Receiver must publish the Bar Date Notice in the following general circulation newspaper on two days at least one week apart and at least 30 days prior to the Bar Date: the *Los Angeles Times* or a newspaper of similar circulation.

7. **Procedures for Submitting and Determining Proofs of Claim (Known Investor Claimants)**: All known investors in the U.S. Receivership Entities must be provided with an <u>Exhibit A</u> attached to their Proof of Claim (Interest) Form which contains a record of investment activity with the U.S. Receivership Entities. If on review, the information on the <u>Exhibit A</u> provided is accurate, the investor Claimant must sign the Attestation in the Proof of Claim (Interest) Form, confirming the amounts, and return the signed form to the Receiver's claims agent, but no documents will be required to be submitted by the investor Claimant. If the investor Claimant believes any of the information contained in Exhibit A is inaccurate, the Claimant must return the signed Proof of Claim (Interest) Form and provide with the form the correct information and supporting documentation.

8. **Procedures for Submitting and Determining Proofs of Claim (Investor Claimants Not Known to the Receiver)**: For investor Claimants' whose information is not known to the Receiver, and who do not receive an <u>Exhibit A</u>, the investor Claimant must submit to the Receiver's claims agent a completed, signed Proof of Claim (Interest) Form by the Bar Date, together with, at a minimum, the following information from the investor Claimant to validate the claim:

a.  Name of the fund in which the Claimant invested;

b.  A complete identification of the Claimant's subscription contributions, including funding date, effective date, and amount for each contribution;

c.  A complete identification of the redemptions/distributions requested by the investor Claimant, including request date, effective date, and amount for each redemption/distribution;

d.  A complete identification of all redemptions/distributions paid, including funding date, effective date, and amount for each redemption/distribution; and

e.  A true and correct copy of all documents supporting or evidencing the investments and the other required information listed above.

9.  <u>Approved Methods for Submission of Proofs of Claim (Interest)</u>: Except as otherwise provided by order of this Court, or provided herein, each Claimant must properly complete and sign a Proof of Claim (Interest) Form, under penalty of perjury, must be timely submitted to one of the following (i) via E-Claim Filing: link to webpage; (ii)  via Email: TeamDLI@Stretto.com; or (iii) DLI Claims Processing Center, c/o Stretto, 410 Exchange, Suite 100, Irvine, CA 92602.

10.  <u>Effect of Failure to Submit Proof of Claim (Interest) Form Before Bar Date</u>:  If any Claimant required to submit a Proof of Claim (Interest) Form fails to return the form as required by this Order in a timely manner, the effect of such failure will be that the Claimant waives and any Claim against or Interest in the U.S. Receivership Entities and the receivership estate.  Any Proof of Claim (Interest) Form received after the Bar Date will be forever barred, estopped, and disallowed and a Claimant asserting such claims or interests shall not have standing to object to any distribution plan proposed by the Receiver and shall not receive any distribution from the receivership estate.  Further, the Receiver shall have no further obligation to provide notices on account of the Claim and the receivership estate is forever discharged from any and all indebtedness or liability with respect to such Claim.

11.  <u>Additional Information</u>:  If at any time after receiving the Proof of Claim

(Interest) Form the Receiver determines that additional information is needed to assess and process a Claim, the Receiver is authorized to contact the Claimant (or counsel if one is designated) by telephone, email, or mail to request such additional information.

12. <u>Notice of Deficiency</u>:  Prior to filing an objection with the Court seeking to disallow a Claim, the Receiver may, in his sole and absolute discretion, send to a Claimant (and to counsel if one is designated) to such address or email address as provided in the Proof of Claim (Interest) Form, a written notice of deficiency that specifically identifies the information required to assess and process the Claim.  The notice of deficiency shall provide that the Claim will be disallowed, if the additional information is not provided to the Receiver within 30 calendar days of the date of the notice of deficiency.

13. <u>Receiver's Claim Objections</u>:   The Receiver and Claimants are directed to work in good faith to resolve any disputes about the Claim before submitting them to the Court for determination.  For any Claims that the Receiver believes are objectionable, the Receiver is directed to communicate first with the Claimant informally, stating the basis of his objection, and to try to reach resolution of any disputes.  If the Receiver is unable to resolve disputes about a Claim, the Receiver shall file a written objection to the Claim that includes (i) a detailed statement of the factual basis and legal basis for the objection, (ii) copies of any documents or other writing or other evidence upon which the Receiver relies in support of his objection; and (iii) identifies the portion of the Claim he believes is unobjectionable and should be allowed.  There shall be no deadline by which the Receiver may file objections to Claims.

14. <u>Court Ruling on Determinations and Objections</u>:  The Claimant's response to the Receiver's Claim objection shall be filed with the Court, with a copy served on the Receiver and his counsel, within 30 days of the date on which the Receiver filed his written objection to the Claim.  The Receiver shall have 30 days to file and serve

his reply. The Receiver shall set a hearing on the objection to the Claim concurrent with the filing of his written objection to the Claim, with the hearing to be scheduled at least 14 days after the deadline for the Claimant to file his reply.

15. <u>Limitation on Discovery and Motion Practice</u>: Prior to the Receiver's filing of an objection to a Claim, no discovery, motion practice, or other litigation relating to the Claim shall occur unless the Claimant and the Receiver agree, or if the Receiver does not agree, the Claimant first seeks and obtains leave of this Court, upon a showing of good cause, and substantial need, for such relief. If discovery and/or motion practice is allowed by the Court, then the Receiver shall have a reciprocal right to conduct discovery or engage in motion practice.

16. <u>Consent to Jurisdiction</u>: Submission of a Proof of Claim (Interest) form in this case constitutes consent to the jurisdiction of this Court for all purposes and constitutes agreement to be bound by its decisions, including without limitation, a determination as to the extent, validity, priority, and amount of any Claim asserted against the receivership estate. The submission of a Proof of Claim (Interest) form shall constitute consent to be bound by the decisions of the Court as to the classification, treatment, and payment of the Claim as a Court-approved distribution plan.

17. <u>Authority to Compromise and Settle</u>: The Receiver shall have the authority to compromise and settle any Claim or resolve any notice of deficiency, at any time, as appropriate, without further order of this Court, where the value of the Claim is less than $100,000 and/or the amount discounted or given up by the estate in the compromise is $100,000 or less. The Receiver, in his discretion, may file a motion seeking Court approval of any compromise or settlement of a Claim. All parties to this proceeding are directed to cooperate with the Receiver to the maximum extent possible to achieve a swift resolution of disputes concerning Claims without the need for determination by the Court.

18. <u>Reservation of Rights</u>: Nothing herein shall prejudice or limit any right of

1  the Receiver to dispute, or assert offsets or defenses, as to the extent, validity, or

2  priority, or otherwise, against amounts asserted in any Claim, including but not

3  limited to the manner in which accounts will be aggregated and Claims classified,

4  treated, and paid under a Court-approved distribution plan.  Nothing contained herein

5  is intended to preclude or limit the Receiver from objecting to any Claim on any

6  grounds.  Subject to approval by the Court, the Receiver retains the sole and absolute

7  right to propose a plan of distribution.

8       19.      The form of notice on the Motion provided to interested parties,

9  creditors, and investors, who are potential creditors of the estate, by the Receiver (a)

10 serving the Motion and related moving papers on all parties to the action; (b) serving

11 by mail a notice of hearing on the Motion to all known creditors pursuant to Local

12 Civil Rule 66-7; (c) posting a copy of the Motion on the Receiver's website for the

13 case at https://cases.stretto.com/dli; and (d) causing Bankruptcy Management

14 Solutions dba Stretto to provide by email a copy of the notice of hearing on the

15 Motion to all known investors through its email service regularly used to provide

16 notices and documents to investors pursuant to the applicable governing documents

17 for Direct Lending Income Fund, L.P. and Direct Lending Income Feeder Fund, Ltd.,

18 is approved and deemed sufficient notice and opportunity for hearing on the Motion

19 under the circumstances.

20      IT IS SO ORDERED.

21  DATED:  April 9, 2020

22                                    _____
                                      Honorable Dale S. Fischer
23                                    UNITED STATES DISTRICT JUDGE