:KATHY BAZOIAN PHELPS (155564)
*kphelps@diamondmccarthy.com*
DIAMOND MCCARTHY LLP
1999 Avenue of the Stars, Suite 1100
Los Angeles, California 90067-4402
Telephone: (310) 651-2997

CHRISTOPHER D. SULLIVAN (148083)
*csullivan@diamondmccarthy.com*
STACEY L. PRATT (124892)
*stacey.pratt@diamondmccarthy.com*
DIAMOND MCCARTHY LLP
150 California Street, Suite 2200
San Francisco, CA 94111
Phone: (415) 692-5200

*Counsel for Bradley D. Sharp,*
*Permanent Receiver*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION – LOS ANGELES

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>DIRECT LENDING INVESTMENTS LLC,<br><br>Defendant. | Case No. 2:19−cv−02188−DSF−MRW<br>Hon. Dale S. Fischer<br><br>**DECLARATION OF BRADLEY D. SHARP IN SUPPORT OF RECEIVER'S MOTION FOR:**<br><br>**(1) APPROVAL OF CLAIMS STIPULATION WITH DLIFF JOINT LIQUIDATOR; AND**<br><br>**(2) AUTHORITY TO MAKE INTERIM DISTRIBUTION TO DLIFF** |

1
DECLARATION OF B. SHARP ISO MOTION FOR APPROVAL OF CLAIMS STIPULATION WITH
DLIFF JOINT LIQUIDATOR; AND AUTHORITY TO MAKE INTERIM DISTRIBUTION TO DLIFF

Date: December 21, 2020
Time: 1:30 p.m.
Dept.: Courtroom 7D
Place: United States District Court
Western Division
350 West 1st Street,
Los Angeles, CA 90012

I, Bradley D. Sharp, declare:

1. I am the Permanent Receiver appointed by this Court for the estate of Direct Lending Investments LLC, Direct Lending Income Fund, L.P., Direct Lending Income Feeder Fund, Ltd., DLI Capital, Inc., DLI Lending Agent, LLC, and DLI Assets Bravo, LLC, and their successors, subsidiaries and affiliated entities ("Receivership Entity") pursuant to the Preliminary Injunction and Permanent Receiver Order entered on April 1, 2019. I am also one of the joint official liquidators ("JOLs") of Direct Lending Income Feeder Fund, Ltd. (in official liquidation pursuant to an order of the Grant Court of the Cayman Islands entered July 25, 2019.

2. This declaration is submitted in support of the Receiver's Motion For: (1) Approval of Claims Stipulation with DLIFF Joint Liquidator; and (2) Authority to Make Interim Distribution to DLIFF ("Motion").

3. I have personal knowledge of the facts set forth below, and if, called to testify, could competently testify thereto.

4. I, with the assistance of my professionals, have conducted a thorough evaluation of the pre-Receivership activities in this case. I have run a claims process and have undertaken a review of the claims submitted and the impact of different distribution models on the creditor body to assist me in fashioning a distribution plan in this case that I believe is equitable under the circumstances.

5. Concurrent with the Motion, I am also seeking Court approval of a

proposed Distribution Plan. The Distribution Plan recommends a priority of distributions from the funds in the receivership estate in the following order: Administrative Claims (Class 1); Priority Claims (Class 2); the claim of the joint liquidators of Direct Lending Income Feeder Fund, Ltd. ("DLIFF") (Class 3) to be shared on a *pro rata* basis with the claim of Direct Lending Income Fund, L.P. ("DLIF"), with the proceeds of the DLIF claim to be distributed to DLIF Administrative Claimants and DLIF Investors (Classes 4A and 4B); Unsecured Creditor Claims (Class 5); Indemnity Claims (Class 6); and Counterparty Claims (Class 7).

6. The Distribution Plan proposes a distribution to the joint liquidators of DLIFF (Class 3) and DLIF Administrative Claimants and DLIF Investors (Classes 4A and 4B) based upon the allocation agreed to pursuant to the terms of the Claims Allowance Stipulation, a copy of which is attached hereto as Exhibit "1" (the "Claims Stipulation"). By the Motion, I seek approval of the Claims Stipulation and also seek authority to make an interim distribution to DLIFF in the amount of $ 10 million from the collateral of DLIF and DLIFF ("DLIFF Interim Distribution")

7. Class 3 in the Distribution Plan consists of the DLIFF claim sets forth in the Claims Stipulation. Distribution on account of Class 3 shall be made only after Classes 1 and 2 have been paid in full or sufficient reserves are held to ensure payment in full to Classes 1 and 2.

8. DLIFF, a Cayman Islands exempted company incorporated on June 15, 2016, is the offshore investment entity that solicited overseas investor funds. Prior to a restructuring of the fund structure managed by DLI in October 2016, all domestic and foreign investors invested through DLIF, which then invested its funds in DLI Assets Bravo LLC ("DLIAB"), and DLI Assets. In October 2016, DLI moved to a two-feeder fund structure with the formation of DLIFF, the offshore fund, along with DLIF serving as the onshore fund. DLI Capital acted as the Master Fund, through

which investor funds raised by DLIF and DLIFF were contributed and deployed. DLI formed DLIFF to solicit investments from non-United States investors. The funds invested by the Feeder Funds were contributed by DLI Capital to its wholly owned subsidiary DLI Assets, and later to DLIAB, another subsidiary. These funds were ultimately loaned to third-party borrowers and the third-party borrowers in turn were generally lenders which made loans or extensions of credit to others (the "subsequent loans").

9. The debt capital contributed under the new structure was formalized in two Loan and Security Agreements each dated as of October 1, 2016 ("LSA"), one with DLIF as lender and one with DLIFF as lender, and with Millennium Trust Company, LLC as the custodian for the benefit of each of the lenders. Under each of the LSAs, the Feeder Funds agreed to lend money to DLI Capital as borrower under a revolving loan facility. DLI Capital contributed the funds loaned as equity capital to two subsidiaries DLI Assets and DLIAB, and those entities made loans to third party borrowers generally on a secured basis. The LSAs by their terms granted DLIF and DLIFF security interests in the loans and equity investments made by DLI Capital. The collateral for the loans under the LSAs is described as all the "Collateral Assets" of DLI Capital, including all the loans made and collateral received by DLI Capital, along with DLI Capital's ownership interests in any subsidiaries, funds in a control deposit account for the deposit of the underlying loan payments received by DLI Capital, and all other assets of DLI Capital.

10. DLIF and DLIFF also entered into an Intercreditor Agreement dated as of September 30, 2016, which provided for the lenders DLIF and DLIFF to have *pari passu* rights in the loans made to DLI Capital. The *pari passu* rights were stated to extend to the notes in favor of DLIF and DLIFF by DLI Capital, the collateral for the notes, and all payments and collections or proceeds of enforcement of the loans received by either DLIF or DLIFF.

11. In its order entered May 14, 2019 (Doc. No. 43), this Court authorized me and Christopher D. Johnson to accept appointment as joint voluntary liquidators of DLIFF and/or joint official liquidators of DLIFF under the supervision of the Grand Court of the Cayman Islands ("Cayman Court"). With control of DLIFF's controlling shareholder, DLI, in my capacity as Receiver, I exercised the rights of DLI to place DLIFF into voluntary liquidation by passing a unanimous special resolution. Christopher D. Johnson and I were appointed as joint voluntary liquidators. As joint voluntary liquidators, on June 18, 2019, Mr. Johnson and I filed a petition to place DLIFF's liquidation under the supervision of the Cayman Court.

12. On July 25, 2019, the Cayman Court ordered that DLIFF's liquidation (the "Cayman Liquidation") continue under the supervision of the Cayman Court and that Mr. Johnson and I be appointed as Joint official Liquidators ("JOLs").

13. On August 22, 2019, the JOLs sent a notice to the creditors and shareholders of DLIFF of a meeting of creditors and contributories. Creditors were asked to submit a proof of debt form to the JOLs in advance of the meeting. All claims against and interests in DLIFF are to be pursued directly in the Cayman Liquidation, in accordance with the laws of the Cayman Islands

14. I, in my capacity as U.S. Joint Official Liquidator in the Cayman Liquidation, and Mr. Johnson, the Cayman JOL, agreed to a conflict resolution protocol (the "Protocol") that was submitted to the Cayman Court and was approved by that court on July 16, 2020. This Court subsequently also approved the Protocol. (Doc No. 293). The Protocol addressed potential conflict that might arise between the two proceedings, including allocation of the claim amounts as between DLIFF and DLIF.

15. The Claims Stipulation was negotiated pursuant to the Protocol, and I did not participate in the negotiation of the stipulation on behalf of the JOLs and DLIFF. I acted on behalf of DLIF in negotiating the Claims Stipulation and Mr. Johnson

negotiated the terms of the Claim Stipulation on behalf of DLIFF. The primary purpose of the Claims Stipulation is to fix the relative allocation of proceeds to be paid under the Distribution Plan between Class 3 and Class 4.

16. In addition to fixing claims as between Class 3 and Class 4, the Claims Stipulation requests authority to make an interim distribution of $10 million to the JOLs of DLIFF. I make this request to ensure that the claims administration process that is running in parallel for DLIFF in the Cayman Islands is not disrupted if there is delay or litigation over the distribution methodology proposed for creditors and investors of DLIF pursuant to a proposed rising tide methodology.

17. The interim distribution amount distributed to DLIFF may be materially higher if the Distribution Plan is approved that has been filed concurrently with this Motion and I am authorized to make the proposed interim distribution pursuant to the terms of the Plan. If approval of the proposed Plan is delayed or disallowed, I nevertheless propose to pay from the secured collateral of the Feeder Funds the DLIFF Interim Distribution and to also reserve DLIF's *pro rata* share of the collateral, or $23,730,414 (the DLIF Reserve"), to ensure that a ratable amount of the collateral is preserved for DLIF Investors pending approval of the Distribution Plan

18. I am currently holding about $200 million of cash on hand, and all of those funds with the exception of $6,262,500 derived from $5,870,161 of cash on hand at the date of the Receivership, $119,127 from office sublease rents, $94,979 from sale of office assets, $77,048 from interest income, $81,135 from vendor refunds and $20,050 from employee salary reimbursements, are the collateral of DLIFF and DLIF.

19. Based upon the cash I currently hold and the relative allocation as between Class 3 and Class 4 (31% and 69% respectively), the amount of the interim distribution is sufficiently small that it will not under any scenario prejudice the rights of Class 4, regardless of the ultimate method of distribution approved by this Court.

Both the DLIFF Interim Distribution and the DLIF Reserve would be paid from the collateral of DLIF and DLIFF so no other rights of any creditor would be impaired.

20. I believe in my business judgment that the proposed Claims Stipulation, a true and copy of which is attached hereto as Exhibit "1," is fair, reasonable, and in the best interests of the Receivership Estate. The Claims Stipulation provides for the allowance of the claim of DLIFF and DLIF pursuant to the terms of the LSA. The dollar amount of the claims is based on the net amount that DLIFF and DLIF, respectively, invested into the Master Fund. The LSA by its terms granted DLIFF and DLIF security interests in the loans and equity investments made by DLI Capital.

21. Entering into the DLIFF Claims Stipulation is a reasonable settlement and resolution of the allocation of the available funds in the Receivership Estate as between DLIF and DLIFF. The proposed settlement resolves any disputes relating to allocation as between the two Feeder Funds and provides certainty as to the priority of distributions. Any litigation regarding these issues would be time consuming and expensive, draining the assets of the estate. The proposed settlement will avoid the uncertainty and expense of litigation.

22. The Claims Stipulation additionally reaches an agreement regarding the handling of any proceeds of litigation commenced by the Receiver on behalf of the Master Fund or any other Receivership Entity other than DLIFF or DLIF – *i.e.*, that such proceeds will be shared ratably based on the amounts of the DLIF Claim and the DLIFF Claim. The Claims Stipulation also addresses the allocation of proceeds of any DLIF Avoidance Actions arising from transfers made by DLIF. Such proceeds shall be allocated exclusively to Class 4B DLIF investors pursuant to the Distribution Plan and shall not be subject to the ratable distribution contemplated in the Claims Stipulation. The Claims Stipulation leaves open the allocation of assets, including any proceeds of litigation, that belong solely to either DLIFF or DLIF, other than as described herein. Such assets, if any, shall be subject to distribution pursuant to a

separate agreement or otherwise through the course of the Receivership and/or the Cayman Liquidation.

23. The Claims Stipulation further allows the DLIFF funds to be distributed to the non-U.S. investors that invested through DLIFF pursuant to Cayman law through the Cayman Liquidation.

24. Other than the DLIFF Interim Distribution, the Claims Stipulation is contingent upon approval of the Distribution Plan, a key component of which provides for distribution to both Feeder Funds on a *pro rata* basis following payment of administrative and priority claims. DLIFF and DLIF share a secured interest in most of the funds as their collateral. The Distribution Plan provides that DLIF and DLIFF will share *pro rata* in the funds in the estate after payment of the administrative and priority claims (other than DLIF Administrative Claims which will be borne exclusively by DLIF Investors). They hold secured positions in most of the funds that are currently on hand and available for distribution. I believe that the DLIFF Claims Stipulation, which provides for all funds that are pooled in the Qualified Settlement Fund to be distributed pursuant to the priorities set forth in the Plan, is fair and equitable.

25. I also believe that the DLIFF Interim Distribution to be paid irrespective of whether the Distribution Plan is approved, is fair and reasonable given the relatively small amount of the proposed interim distribution ($10 million as compared to the $200 million of cash on hand). The proposed interim distribution of $10 million to be paid to DLIFF along with a matching *pro rata* DLIF Reserve will be paid from the collateral of those two secured creditors. I will hold sufficient cash reserves to pay Administrative and Priority claims in full, and the proposed junior class of unsecured creditors does not hold an interest in the collateral at this time. Accordingly, I believe that no other claimant's interests will be adversely impacted by the proposed DLIFF Interim Distribution.

26. The DLIFF Interim Distribution allows for important milestones in the liquidation of DLIFF regardless of the progress on the approval of the Distribution Plan (it is possible that certain DLIF creditors may contest). I understand that under Cayman law, the allocation between and among investors and creditors is likely to be more complicated than the corresponding distribution to DLIF investors under U.S. law and may be subject to significant litigation. While the claims adjudication process has commenced in the Cayman Liquidation, it will not be in a position to make further material progress without the funding that will be provided by the DLIFF Interim Distribution. If there is a delay in approval of the Distribution Plan, I believe it would be inequitable to delay the claims adjudication process for DLIFF because of disputes among the investors in DLIF.

27. The split between DLIFF and DLIF based on the net amount invested by the Funds into the Master Fund is approximately 31% to 69%. Even if I reserved in full the Administrative, Priority and Creditor Claims pending Court approval of the Distribution Plan, there would still be $148.7 million of available cash for distribution, and DLIFF's portion of those funds would be $45.4 million. I therefore believe that the proposed DLIFF Interim Distribution of $10 million is reasonable under the circumstances and will not impair any other parties' rights to distribution.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on November 19, 2020 in San Juan Capistrano, California.

_____
Bradley D. Sharp

# Exhibit 1

## CLAIMS ALLOWANCE STIPLULATION

This Claims Allowance Stipulation ("**Stipulation**") is entered into between (1) Bradley D. Sharp as court-appointed receiver (the "**Receiver**") for the estate (the "**Receivership Estate**") of Direct Lending Investments, LLC ("**DLI**"), Direct Lending Income Fund, L.P. ("**DLIF**"), Direct Lending Income Feeder Fund, Ltd. ("**DLIFF**"), DLI Capital, Inc., DLI Lending Agent, LLC, DLI Assets Bravo LLC, and their successors, subsidiaries and affiliated entities (collectively, the "**Receivership Entities**") as more fully set forth in the Preliminary Injunction Order and Order Appointing Permanent Receiver issued on April 1, 2019 ("**Receiver Order**"), entered in the case of Securities and Exchange Commission v. Direct Lending Investments LLC ("**Receivership Case**"), Central District of California, Case No. 2:19-cv-02188-DSF-MRW ("**District Court**"); and (2) Christopher D. Johnson in his capacity as one of the joint official liquidators ("**JOLs**") of DLIFF. Mr. Sharp and Mr. Johnson, in their capacities as expressed above, are sometimes collectively referred to as the "**Parties**."

## RECITALS

A.  DLIFF is a Cayman Islands registered exempted company, incorporated on June 15, 2016 for the principal stated purpose of making investments (through DLI Capital, Inc. and its subsidiaries including DLI Assets, LLC ("**Assets**") and DLI Assets Bravo, LLC ("**Bravo**") (collectively, the "**Master Fund**") in entities holding or originating short-term loans, lines of credit, receivables, real estate loans, portfolios of loans, intellectual property interests, real estate assets, consumer loans and other tangible and intangible assets, across a variety of industries (all such investments and their proceeds, the "**Investments**").

B.  DLI is the general partner and investment manager of DLIF and is the investment manager of DLIFF, which entities acted as "feeder" funds soliciting investment from third parties and then investing those funds in equity and debt instruments in the Master Fund. (Together DLIF and DLIFF are sometimes hereinafter referred to collectively as the "**Feeder Funds**.") DLIF solicited investment from persons domiciled in the United States; DLIFF solicited investment from persons domiciled outside of the United States. The Master Fund used these funds to make equity contributions to its subsidiaries, Assets and Bravo, which invested the funds in the Investments..

C.  The Feeder Funds' investments into the Master Fund were made under (i) secured debt documents and (ii) equity subscription documents. Each of DLIF's and DLIFF's secured

LEGAL02/39866369v5

debt claims are each perfected by a first-priority perfected security interests in all of the assets of the Master Fund, which includes all of the assets of Assets and Bravo (the "**Collateral**"), including the approximately $200 million cash currently held thereby ("**Master Fund Cash on Hand**"). The Feeder Funds' relative rights to the Collateral under the secured debt documents are governed by an intercreditor agreement (the secured debt documents and the intercreditor agreement, together, the "**Loan Documents**.")  As of the date of the commencement of the Receivership Case, funds in the amount of $703,037.57 were held in the name of DLIFF, which funds were turned over to the JOLs to be used in the administration of the DLIFF Cayman Liquidation (defined below) and have been excluded from DLIFF's claims against the Receivership Entities.

D. Pursuant to the Receiver Order, Mr. Sharp was appointed as federal equity receiver over the Receivership Entities. The Receivership Entities not including DLIFF shall hereinafter be referred to as the "U.S. Receivership Entities."

E. A qualified settlement fund ("**QSF**") was established as of the date of entry of the Receivership Order by operation of law pursuant to Internal Revenue Service Reg. §1.468B-2(k)(2). The Receiver has filed a QSF tax return for the period of April 1, 2019 through December 31, 2019, consistent with the provisions of Treasury Regulation § 1.468B(1)(c) and based on his understanding that criteria mandating the establishment of a QSF were present in the Receivership Case.

F. On May 14, 2019, following an order from the District Court dated the same day, Mr. Sharp, on behalf of DLI, passed a unanimous written resolution to place DLIFF in voluntary liquidation. The voluntary liquidators (Mr. Johnson and Mr. Sharp) subsequently filed an application by way of petition in the Grand Court of the Cayman Islands (the "**Cayman Court**") under Cause No. FSD 108 of 2019 (NSJ) for the liquidation to continue under the supervision of the Cayman Court.  Pursuant to an order of the Cayman Court on July 25, 2019, the liquidation of DLIFF ("**Cayman Liquidation**") is to be continued under the supervision of the Cayman Court, and Mr. Johnson and Mr. Sharp were appointed as the JOLs of DLIFF.

G. The Parties have entered into, and the Cayman Court and District Court have each approved, a Protocol dated July 25, 2019 (the "**Protocol**"). The Protocol identifies certain areas where Mr. Sharp, in his role as Receiver would, in the absence of the Protocol, potentially be placed in a conflict of interest with respect to his role as a JOL of DLIFF.  One of the areas

LEGAL02/39866369v5

identified relates to DLIFF's interest in the Master Fund and other Receivership Entities, including the determination of DLIFF's distribution in the Receivership Case. The Protocol provides that with respect to these issues Mr. Sharp is recused as an official liquidator of DLIFF and Mr. Johnson shall have the sole and exclusive right and power to act on behalf of DLIFF. For purposes of this Stipulation, Mr. Sharp has been recused from his role as a JOL of DLIFF, Mr. Johnson has acted as the sole liquidator for DLIFF, and Mr. Sharp has continued to act for and on behalf of all Receivership Entities other than DLIFF.

H. Subject to approval of this Stipulation by the Cayman Court and District Court, Mr. Sharp (as Receiver) and Mr. Johnson (as JOL), have determined to resolve DLIFF's claim relative to the claims of the DLIF investors against the Receivership Entities and the Collateral as set forth herein.

## CLAIMS STIPULATION

**1  Court Approval**

1.1 This Stipulation, other than Section 3.6 below, is subject to approval in both the District Court and the Cayman Court (collectively, the "**Courts**"). Section 3.6 of this Stipulation shall be effective upon approval of this Stipulation by the District Court. The Receiver shall file a motion for approval of this Stipulation with the District court concurrently with the Receiver's filing of a motion to approve a distribution plan (the "**Distribution Plan**"). Mr. Johnson, as liquidator of DLIFF, shall file an application seeking the approval of this Stipulation promptly after consultation with the liquidation committee appointed in the Cayman Liquidation.

1.2 The Stipulation shall be deemed to be effective following its approval by both Courts and the approval of the Distribution Plan in the District Court and, with the exception of Section 3.6 below, shall have no binding or enforceable legal effect until approved in its entirety and in its current form by both Courts (the "**Effective Date**"). Section 3.6 shall become effective upon approval of this Stipulation by the District Court irrespective of whether the District Court approves the Distribution Plan.

1.3 In the event of a subsequent order vacating, modifying, or amending any order approving the Stipulation, such order shall not rescind or nullify any action taken pursuant to this Stipulation as of the date of such order.

## 2  Stipulation of Feeder Fund Claim Amounts

2.1  The Parties acknowledge and agree that DLIF invested $359,589,934 of net cash into the Master Fund (the "**DLIF Claim**") and DLIFF invested $158,197,708 of net cash into the Master Fund (the "**DLIFF Claim**").

2.2  The Parties stipulate that the DLIF Claim and DLIFF Claim (together, the "**Feeder Fund Claims**") are each secured by the Collateral.

2.3  As of the Effective Date, each of the Feeder Fund Claims shall be allowed in full against the Receivership Estate.

2.4  The Receiver contemplates that the Distribution Plan will provide for direct distribution to the investors of DLIF pursuant to the methodology approved by the Court rather than a lump sum payment to the entity DLIF, while the distribution to DLIFF will be paid to the JOLs for administration and distribution to the DLIFF investors by the JOLs in the Cayman Liquidation pursuant to Cayman law.

## 3  Distribution from the Receivership Estate

3.1  The Receiver shall propose a Distribution Plan in the Receivership case that contains the following provisions:

    3.1.1  The assets of the Receivership Entities (the "**Receivership Assets**"), including the Collateral and the proceeds thereof and any proceeds of litigation brought on behalf of the Master Fund or any other Receivership Entity other than DLIFF or DLIF, regardless of whether such proceeds constitute Collateral, shall be distributed pursuant to the terms of the Distribution Plan.

    3.1.2  The Distribution Plan, which shall incorporate the terms of this Stipulation, shall provide for the distribution of the Receivership Assets in the following order of priority: *first*, to the expenses of the administration of the Receivership Case attributable to the Receivership Entities (other than those expenses incurred solely by DLIFF in the Cayman Liquidation which shall be paid from the Cayman Liquidation as approved by the Cayman Court or those expenses incurred by the Receiver solely on behalf of DLIF as determined in his discretion which shall be paid from distributions that would have otherwise been paid to investors of DLIF), including legal and accounting fees along with expenses to preserve the

LEGAL02/39866369v5

value of assets, and including payment of any taxes due on property and/or income of property of the Receivership Entities incurred during the pendency of the Receivership Case; *second*, to priority claims, if any remain and are approved; *third*, until the Feeder Fund Claims are paid in full, to DLIFF on account of the DLIFF Claim and to the allowed claims of investors in DLIF on account of the DLIF Claim, *pro rata* based on the amount that each of the DLIFF Claim and DLIF Claim bear to the Feeder Fund Claims; and with all other claims being paid in lower priority than the foregoing listed claims.

3.1.3   With the exception of Section 3.1.4 below, this Stipulation shall not impact, and does not determine, the distribution of assets, including any proceeds of litigation, that belong solely to either DLIFF or DLIF. Such assets, if any, shall be subject to distribution pursuant to a separate agreement or otherwise through the course of the Receivership and/or the Cayman Liquidation.

3.1.4   Proceeds of any DLIF avoidance actions arising from transfers made by DLIF shall be allocated exclusively to DLIF investors pursuant to the Distribution Plan and shall not be subject to the ratable distribution contemplated in this Stipulation.

3.2   The funds distributed to DLIFF pursuant to this Stipulation (the "**DLIFF Distribution**") shall be distributed to the JOLs and shall be held by the JOLs for administration and distribution in the Cayman Liquidation in accordance with the laws of the Cayman Islands.

3.3   DLIFF's creditors and stakeholders shall not be allowed duplicate claims in the Receivership Case and shall not receive a distribution directly in the Receivership Case.

3.4   Claims allowance for the investors and creditors of the U.S. Receivership Entities will be made in accordance with U.S. law, and shall not be paid from the DLIFF Distribution.

3.5   The Receiver and the JOLs will consult and coordinate prior to the making of any distributions to creditors or shareholders of DLIFF or the U.S. Receivership Entities to, among other things, ensure that creditors or shareholders are unable to recover twice for the same claim.

3.6   The Receiver shall make an interim distribution from the QSF to DLIFF in the amount of $10 million (the "**DLIFF Interim Distribution**") within 5 days of Court approval of this Stipulation by both Courts and shall be made notwithstanding a delayed ruling or adverse ruling on the Receiver's motion to approve the Distribution Plan. The DLIFF Interim Distribution actually paid shall be deducted from any total distribution amounts owed to DLIFF.

4   Variation

4.1   This Stipulation may not be waived, amended, or modified in any way except in writing, signed by both Mr. Johnson, as JOL of DLIFF and Mr. Sharp as the receiver of the U.S. Receivership Entities, and approved and authorized by the Courts. Notice of any proposed amendment or modification of this Stipulation shall be provided to all Parties hereto by the Party seeking the amendment.

**IN WITNESS WHEREOF**, the Parties hereto have executed this Agreement as at the dates set out below:

_____
Bradley D. Sharp, solely in his capacity as
Permanent Receiver of Direct Lending Investments, LLC,
Direct Lending Income Fund, L.P.,
Direct Lending Income Feeder Fund, Ltd.,
DLI Capital, Inc., DLI Lending Agent, LLC, and
DLI Assets Bravo, LLC (In Receivership)
and their successors, subsidiaries and affiliated entities

Date: 11-19-2020

_____
Christopher D. Johnson, solely in his capacity
as Joint Official Liquidator of
Direct Lending Income Feeder Fund, Ltd. (in Official Liquidation)

Date: November 19th, 2020