KATHY BAZOIAN PHELPS (155564)
*kphelps@diamondmccarthy.com*
DIAMOND MCCARTHY LLP
1999 Avenue of the Stars, Suite 1100
Los Angeles, California 90067-4402
Telephone: (310) 651-2997

CHRISTOPHER D. SULLIVAN (148083)
*csullivan@diamondmccarthy.com*
STACEY L. PRATT (124892)
*stacey.pratt@diamondmccarthy.com*
DIAMOND MCCARTHY LLP
150 California Street, Suite 2200
San Francisco, CA 94111
Phone: (415) 692-5200

*Counsel for Bradley D. Sharp,*
*Permanent Receiver*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION – LOS ANGELES

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Case No. 2:19−cv−02188−DSF−MRW |
| Plaintiff, | **SEVENTH STATUS REPORT OF PERMANENT RECEIVER BRADLEY D. SHARP [July 1, 2020 through November 30, 2020] WITH EXHIBITS** |
| v. | |
| DIRECT LENDING INVESTMENTS LLC, | [No Hearing Set] |
| Defendant. | |

1

Bradley D. Sharp, the Court-appointed permanent receiver (the "Receiver") for the estate of Direct Lending Investments, LLC ("DLI"), Direct Lending Income Fund, L.P. ("DLIF"), Direct Lending Income Feeder Fund, Ltd. ("DLIFF"), DLI Capital, Inc., DLI Lending Agent, LLC, DLI Assets Bravo LLC, and their successors, subsidiaries and affiliated entities (collectively, the "Receivership Entities") pursuant to the Preliminary Injunction Order and Order Appointing Permanent Receiver issued April 1, 2019 ("Receiver Order") (Doc. No. 10), hereby submits his Seventh Status Report generally covering the period from July 1, 2020 through November 30, 2020.

## I.        Summary Overview

The Receiver and his team have made substantial progress since the Sixth Status Report filed in July.  First, the Receiver filed a series of motions that, if approved by the Court, will pave the way for a $150 million interim distribution for DLIF and DLIFF.  DLIF's portion of the interim distribution will be used primarily to distribute funds to investors in DLIF.[1]  The portion of the interim distribution made to DLIFF, the off-shore Cayman Islands feeder fund, will allow the liquidation of DLIFF to move forward more quickly and efficiently.[2]

In particular, on November 20, 2020, the Receiver filed his motion seeking Court approval of his proposed Distribution Plan (Doc. No. 321.) The Court previously set July 7, 2020 as the claims bar date. The Receiver has undertaken a review of the claims submitted and the Distribution Plan divides the claims among classes and recommends a priority of distribution from the Receivership Estate funds.  A hearing to consider the Receiver's Distribution Plan and interim

---

[1]  Full details on the proposed distribution are available in the Distribution Plan itself, Doc. No. 321.

[2]  If the Distribution Plan and motion or the $150 million interim distribution are not approved, the Receiver separately seeks authority to make a $10 million distribution to DLIFF to provide funding for its liquidation.

distribution of $150 million is scheduled for December 21, 2020.

Along with the motion and the Distribution Plan, the Receiver filed a motion for approval of a claims stipulation with the DLIFF Cayman JOL and a proposed interim distribution of $10 million to DLIFF if the larger $150 million interim distribution is not approved.  (Doc. No. 318). The claims stipulation was negotiated pursuant to the conflicts resolution protocol and fixes the relative allocation of distributions under the Distribution Plan between DLIFF and DLIF. Under the proposed distribution plan, Class 3 claims consists solely of the DLIFF claim set forth in the claims stipulation, which will be shared *pro rata* with Class 4 claims of DLIF Investors.

Second, the Receiver filed a comprehensive Receiver's Report, after the Receiver completed his investigation and accounting of the pre-Receivership business activities of the Receivership Entities as well as the sources and uses of the cash paid into the Receivership Entities. The results of the investigation are detailed in the Report Regarding the Investigation of the Receivership Entities' Business Conduct and Recommendations Regarding Distributions ("Report") filed on November 20, 2020 (Doc. No. 320.) The Report provides the Court and interested parties with the Receiver's conclusions regarding the facts and circumstances that led to the substantial losses of investor funds and establishes the basis for the structure of the Receiver's proposed Distribution Plan.

Third, the Receiver continues to make substantial progress with his ongoing efforts to monetize the remaining investments in the portfolio.  The Receiver also filed a motion for authorization to enter into an agreement on behalf of receivership entities DLI Assets Bravo, LLC ("DLI Assets Bravo") and DLI Lending Agent, LLC, to accept an early $12.6 million payoff of the outstanding balance of $14 million owed by FPP Sandbox LLC ("FPP Sandbox") to DLI Assets Bravo, with a waiver of FFP Sandbox's required 30-day prior written notice to pay, and waiver of

1   any contractual prepayment fees and attorney's fees.  The Court approved the payoff

2   by an Order entered September 18, 2020.  (Doc. No. 297.)  The estate has since

3   received the $12.6 million in cash in full satisfaction of the payoff obligation.

4         In addition, the Receiver filed a motion for authorization to enter into a

5   confidential settlement regarding the purchase of outstanding debt on Investment L

6   in exchange for a significant upfront payment in the amount of $12 million (less

7   legal fees of the buyer) and release of all claims of counterparties in Investment L

8   (Doc. No. 302), which the Court approved by an Order entered November 12, 2020.

9   (Doc. No. 311.)

10        The Receiver has cash on hand of about approximately $225.6 million, with

11  about $475,000 of that owing to DL Global.   The Receiver has now recovered

12  almost $194 million in portfolio collections.

13        The Receiver previously had obtained Court approval to enter into a settlement

14  and final forbearance agreements based on term sheets reached with DLI Properties,

15  LLC ("DLIP"), Liberty Fund, LLC ("Liberty"), DL Global, Ltd., and Quanta

16  Finance, LLC.  (Doc. No. 226.)  The Receiver worked toward implementing the

17  settlement and negotiating the final forbearance agreements, including provisions for

18  the receivership estate to provide a revolving loan to DLIP and Liberty, which was at

19  that time estimated to be in an amount of approximately $5 million.  The DLIP and

20  Liberty forbearance agreements were filed and the transaction closed as of July 3,

21  2020.  The Receiver subsequently filed a motion for authority to increase the size of

22  the revolving loan to an amount of up to $7.5 million, which the Court approved by

23  an Order entered August 3, 2020.  (Doc. No. 291.)

24        Certain properties secured under these loan facilities are subject to first lien

25  mortgages held by a third party.  The receivership stands in a second lien position

26  with respect to these properties.  Some of this first lien debt has gone into default, and

27  the first lienholder indicated it will be sending notices of default in the near future,

28

1   and will no longer grant extensions. Therefore, the Receiver determined that the

2   estate is best served by protecting the estate's equity interest (or junior deeds of trust)

3   to maximize their return by paying off certain first lien mortgages.  On October 9,

4   2020, the Receiver filed a motion for further discretion to refinance first lien debt on

5   properties within the DLIP and Liberty facilities in an amount up to $5 million.  (Doc.

6   No. 300.)  The Court granted this motion by its Order entered November 4, 2020.

7   (Doc. 310.)

8        Although the Receiver continues to make every attempt to maximize the

9   recovery with respect to the investments described above, and on the remaining

10  assets that are still being actively managed, the anticipated and actual collections on

11  the active portfolio positions have not materially changed the Receiver's overall

12  outlook for recovery.

13       The Receiver and his professionals believe they can estimate an overall return

14  on the portfolio investments valued at par (i.e., face value amount outstanding) by

15  DLI at $789.6 million dollars as of March 31, 2019.  After considering amounts

16  collected to date (since appointment) by the Receiver and the likely range of future

17  collections, the Receiver and his team estimate a low range of return on the

18  liquidation of the investments of $215 million (or about 27% of the March 31, 2019

19  par value) and a high range of $265 million (or about 34%), both before expenses.

20  Of course, these are only the best estimates available and are not certain.  The

21  ultimate return to investors will be increased by the $31.7 million in cash on hand at

22  the time of the appointment of the Receiver and any proceeds of litigation filed by

23  the Receiver, reduced by operating costs, administrative fees, and expenses, and

24  impacted by allowed non-investor claims.  The Receiver has concluded that there are

25  third parties whose conduct were substantial contributing factors leading to losses in

26  the value of the investments.

27       The Receiver is continuing to explore the possibilities to recover some of the

28

200929 DLI Receiver Seventh Status          5
Report:989050_1

1  losses through litigation and pre-suit settlement efforts.  The Receiver has secured

2  pre-litigation tolling agreements with a number of parties to preserve potential claims

3  where the Receiver's counsel identified possible statute of limitations issues arising

4  prior to April 30, 2020, and secured extensions to certain tolling agreements.  The

5  Receiver has reached an agreement with the audit firm Deloitte & Touche LLP to

6  pursue a settlement process, including selecting a team of well-qualified

7  mediators.  Certain investors and their lawyers will also participate in the process

8  subject to confidentiality agreements.  It is expected that this process will unfold over

9  the coming months as information is exchanged between the parties pursuant to the

10  settlement protocol.

11      The Receiver has also engaged in preliminary discussions with another

12  significant third-party service provider to the DLI Entities and its counsel concerning

13  the parameters of a settlement protocol with this service provider.

14      Since the last report, Receiver also filed a complaint against a major service

15  DLI provider, the valuation firm Duff & Phelps, LLP, and that case is pending in the

16  Central District of California.  *Bradley D. Sharp, as the Permanent Receiver of the*

17  *Estate of Direct Lending Investments, LLC, et al. vs. Duff & Phelps, LLC,* Case 2:20-

18  cv-08069.

19      As outlined in the last Report, the Receiver, in his capacity as U.S. Joint

20  Official Liquidator ("JOL") in the Cayman liquidation proceeding, and the Cayman

21  JOL Christopher D. Johnson, have agreed that it would be most efficient and cost-

22  effective for a single law firm, Diamond McCarthy, to pursue claims on behalf of the

23  U.S. Receivership Entities, and the off-shore feeder fund, Direct Lending Feeder

24  Fund, Ltd.  ("DLIFF".)  The two JOLs' conflict resolution protocol was approved in

25  the Cayman liquidation proceeding, and this Court also approved the protocol and

26  the Diamond McCarthy engagement (Doc. No. 290.)

27      Finally, the former CEO of DLI Brendan Ross was arrested by the FBI

28

200929 DLI Receiver Seventh Status        6
Report:989050_1

following a grand jury indictment of ten counts of wire fraud filed July 30, 2020. *U.S. v. Brendan Ross aka Brandon Rosen*, Case No. 2:20-cr-00327-CSF, United States District Court, Central District of California, Indictment. The SEC has also filed a civil complaint against Ross alleging Ross defrauded investors and seeking disgorgement of all funds received from his illegal conduct and civil penalties. *SEC v. Brendan Matthew Ross*, Case No. 2:20-cv-07202, United States District Court, Central District of California. The Receiver's team provided non-privileged information and documents to government prosecutors as required by properly issued subpoenas during the course of the investigations.

## II.      Update on Operational Issues

A. <u>Employees</u>:   With the authority granted to the Receiver in the Additional Receiver Authority Order, since June 24, 2019 the Receiver has reduced the number of staff of DLI to three employees, and entered into separation agreements with certain of the departing staff members.  Further departures are anticipated as the operations continue to wind down.  The remaining employees of DLI have continued to work remotely.

B. <u>Extension of Ordinary Course Authority</u>:

On November 13, 2020, the Receiver filed a motion seeking multiple items of relief, including an order extending the Receiver's authority to employ vendors and professionals in the ordinary course of the receivership, subject to the less than $10,000 per month limit on payment of professionals for the period of July 25, 2020 through the week ending January 31, 2021, as well as an order authorizing the Receiver to employ and pay ordinary course professionals, including accountants and attorneys previously employed in the ordinary course of the Receivership Entity's business.  (Doc. No. 314.)  The motion also seeks authority for the Receiver to operate the receivership estate and pay receivership expenses in accordance with the budget covering receivership expenses for the period of October 24, 2020

through January 31, 2021 ("Budget"), and sought approval of a vendor/professional contract with Elite Discovery, Inc., a data management and e-discovery platform vendor. (*Id*.) The hearing on that motion is scheduled for December 14, 2020.

Attached hereto as Exhibit "1" is a copy of the Budget for the period covering October 24, 2020 through January 31, 2021. Attached hereto as Exhibit "2" is the Receiver's Standardized Fund Accounting Report for the Reporting Period of July 1, 2020 through September 30, 2020.

C. <u>Ordinary Course Settlement Update</u>: With the authority and powers of the Receiver set forth in the Court's order granting the Receiver's Motion for Instructions re Scope of Receivership (Doc. No. 57), the Receiver is authorized to make compromises of claims <u>and</u> accept discounts of $100,000 or less. Based on that order, as well as the Ordinary Course Extension Orders of October 2, 2019, and January 8, 2020, the Receiver has obtained settlements of approximately 21 claims related to certain of the loan portfolios. The settlements include discounted payoffs and negotiated structured repayment agreements as the Receiver endeavors to maximize recoveries on loans in default. The settlements typically involve ongoing monthly payments on the loans potentially with reduced or waiver of interest.

**III.    Assets:  The Loans and Other Assets**

A. <u>Loan Portfolios</u>:  The primary assets of the estate consist of the various investment instruments, loans, and loan portfolios into which funds generated from investors through the feeder funds were invested. The Receiver's initial review of the books and records of the estate indicated that there were 26 outstanding investments comprising the primary estate assets. The number of loans with par debt balances remaining is now 14, based on: (1) the Receiver's review and analysis of the loan records, which indicated certain investments were no longer outstanding and had been paid off shortly before the commencement of the receivership; (2) post-receivership loan payoffs; (3) three whole loan portfolio sales; (4) the Court's

200929 DLI Receiver Seventh Status Report:989050_1

8

approval of a restructuring transaction/settlement for seven additional investments; and (5) the Receiver's resolution of outstanding issues arising from Morrison Oil, LLC, an entity that is in a separate receivership proceeding, and with Walsh Electrical Contracting, an entity that filed for bankruptcy.

It should be noted, however, that there are now only about seven (7) active material relationships with investment parties which the Receiver and his team are managing. In connection with Investment S and Investment T, the Receiver and his team are now significantly involved in monitoring the counterparties' day-to-day business operations and financial management and is expected to continue to be involved in assisting the CRO as the CRO manages these operations through Q3 2021 or until maximum recovery is realized for the estate. As approved by the court and related parties, DLI agreed to advance funds on a line of credit to Investments S & T for the completion of properties and operating costs of the real estate liquidation process. The Receiver continues to spend significant time monitoring those advances and recovery for the receivership estate which includes reporting obligations to DLG and updating monthly. The Receiver and his team also spent significant time facilitating the closing of approximately $20 million in real estate sales and supervising the rehabilitation of multiple properties to complete requisite work and prepare for their ultimate sale. .  Special creditors' rights counsel, Goldberg Kohn, has had primary responsibility for representing the Receiver in negotiating possible transactions and working with DLI's counterparties in the difficult current economic environment.  The Receiver continues to move towards the liquidation of the investment portfolio positions and reducing the amount of management required.

(1)   Current Schedule of Loans/Investments

As in the prior report, the Receiver is maintaining confidential the identity of the specific borrowers on the list of loan/investment portfolios.  Attached to this Seventh Status Report as Exhibit "3" is an updated list identifying the status of each

200929 DLI Receiver Seventh Status      9
Report:989050_1

of the investments, including those that have been paid off after the inception of the receivership, and the remaining unsatisfied loans/investments (the "Loan/Investment Schedule"). The Loan/Investment Schedule includes the par dollar amount of the estate's interest in those portfolios as reflected on the books and records of the Receivership Entities, collections on those portfolios obtained since the commencement of the receivership, and a general summary of the loan/investment portfolio. The Loan/Investment Schedule includes a column for "other adjustments," which for investments numbered 1, 2, 3, 4, and 5 related to a write-down of amounts owed. The positive adjustment related to Investment J is an increase in the investment balance based on amounts added for interest paid in kind. The adjustment to Investment M reflects a write-down after the completion of a refinancing transaction as approved by the Court in January. The adjustment related to Investment P is due to the discount of the recovery of $12.6 million on a loan with a $14 million par value. Investment R reflects a restructuring/settlement with respect to this investment. As indicated in the prior report, two of the investments in particular are of uncertain value: the QuarterSpot investment (investment 2), which was described in the SEC's complaint initiating this action, involved the inaccurate reporting of payments affecting the value and likely collection of those underlying loans; and b) the VoIP Guardian Partners loan (investment 22), based on that company's filing of a Chapter 7 liquidation and other factors. In the interests of confidentiality, only the loans/investments that have been paid off or sold, and the QuarterSpot and VoIP loans, which have been the subject of public filings, are identified by name.

Of the 14 loans with par debt balances remaining, most are in some form of financial distress or subject to disputes that may affect the timing and extent of recoveries on those portfolios.

(2) <u>Status of Loan/Investment Portfolio</u>

Since the last report, the Receiver, his portfolio team, his investment bankers with Raymond James & Associates ("RJA"), and his counsel, including creditors' rights specialists at Goldberg Kohn, have continued to analyze the outstanding loan/investment portfolios to prepare strategies to monetize the portfolios and maximize value for the estate.

When the Receiver was initially appointed on April 1, 2019, the estate had cash on hand of $31.7 million.  Since the Receiver's appointment through September 30, 2020, the Receiver has recovered an additional $193.9 million in portfolio collections (excluding funds collected on behalf of and either reserved for or remitted to third parties).

The remaining loan/investment portfolios that have not been paid off or sold had a par value on the Receivership Entities books of $553.2 million as of October 31, 2020.  However, as noted in the prior report, each of the remaining loan/investment portfolios has a number of issues that make recovery of all or a large portion of the outstanding balances challenging.

For example, although the par value of the VoIP loan on the Receivership Entities' books as of September 30, 2020 is approximately $202.6 million, the Receiver is not expecting a recovery of nearly the amount of the outstanding balance, as there are substantial questions and concerns regarding collection of the underlying foreign telecommunications accounts receivable. VoIP is in a Chapter 7 bankruptcy, which fact alone reflects the challenges in collection.  In addition, the collection of approximately $22 million from VoIP receivables continues to depend on the outcome of proceedings in the Netherlands, as the funds are subject to a criminal investigation of Rodney Omanoff and others for money laundering and other criminal claims.  Other portfolios are structured with limited guarantees by the principals, and in other portfolios, the value of the underlying collateral is highly uncertain or speculative.

Without providing individualized loan/portfolio assessments, it remains the Receiver's general assessment, as informed by his professional advisors, that recoveries on the remaining loan/investment portfolios are likely to be far less than the $789.6 million stated on the receivership books and records as of March 31, 2019.   The Receiver and his professional advisors continue to estimate that the total recoveries to date (since appointment) and future recoveries on the loan/investment portfolio in place as of March 31, 2019, will range between a low of $215 million and a high of $265 million.

B. <u>Litigation Claims</u>:  As stated in the prior report, the other potential assets of the estate are prospective litigation claims.  The full extent of these claims is the subject of investigation, and the potential value of these claims to the estate has not yet been fully quantified.  The investigation of potential litigation has continued since the Receiver's Sixth Report.

The Receiver and counsel have identified possible litigation targets, outlined possible legal and other theories of recovery, and entered into confidential tolling agreements with a number of potential defendants.  In the course of the investigative process, they have now issued approximately sixty (60) subpoenas to third parties for the production of records -- including subpoenas to legal, accounting, valuation professionals, and financial institutions.  Counsel continues to review the databases of DLI documents, and the documents and records produced to date.  Serving these subpoenas, and voluntary productions by other entities, have resulted in the production of in excess of 750,000 pages of documents to date.  The Receiver continues to receive further productions from third parties, and the review process of these voluminous productions is ongoing.

As outlined in the last report, the Receiver and his professionals continue to advance their comprehensive analysis of the factual and legal foundation for potential claims, and legal issues germane to the evaluation of such claims and

1  defenses, including statute of limitations issues, potential application of the discovery

2  rule, and choice of law considerations.  This work product and the active work,

3  which is ongoing, will provide the basis for recommendations concerning whether or

4  not to initiate litigation against potential defendants to pursue recoveries for the

5  benefit of the receivership estate, investors, and creditors.

6       As reported in the last report, the Receiver has now entered into confidential

7  tolling agreements with a number of key parties where counsel identified a possible

8  statute of limitations period that may have expired before April 30, 2020.  The

9  Receiver has also secured extensions of certain of the earlier tolling agreements.

10 These tolling agreements, and extensions, will allow the Receiver and his counsel to

11 further investigate and analyze potential claims, while continuing the investigation

12 effort and undertaking the forensic accounting analysis described above.

13      On September 3, 2020, the Receiver filed a civil complaint in the Central

14 District of California against a significant third-party service provider, valuation firm

15 Duff & Phelps, LLC.  *Bradley D. Sharp, as the Permanent Receiver of the Estate of*

16 *Direct Lending Investments, LLC, et al. vs. Duff & Phelps, LLC,* Case 2:20-cv-

17 08069.  This complaint alleges claims against Duff & Phelps, LLC for professional

18 negligence, gross negligence, aiding and abetting breach of fiduciary duty, negligent

19 misrepresentation, and breach of contract.  Duff & Phelps, LLC has filed a motion to

20 dismiss which is set for hearing on January 25, 2021.

21      To promote the goal of resolving potential claims against third parties where

22 possible without the expense of litigation, the Receiver has reached an agreement

23 with the audit firm Deloitte & Touche LLP to pursue a settlement process, including

24 selecting a team of well-qualified mediators.  Certain investors and their lawyers will

25 also participate in the process subject to confidentiality agreements.  It is expected

26 that this process will unfold over the coming months as information is exchanged

27 between the parties pursuant to the settlement protocol.

28 200929 DLI Receiver Seventh Status     13

The Receiver has also engaged in preliminary discussions with another significant third-party service provider to the DLI Entities and its counsel concerning the parameters of a settlement protocol with this service provider.  Although these discussions are ongoing, it is anticipated that the Receiver and this service provider will engage in a settlement process along the lines outlined above, and that certain groups of investors and their lawyers will also participate subject to confidentiality agreements.

The Receiver anticipates discussing with the Diamond McCarthy firm the potential to pursue specific litigation claims on behalf of the DLI Receivership Entities on a contingency fee basis, or possibly modified contingency fee engagements, to maximize the value of possible litigation claims to the receivership estate, while minimizing the risk of out-of-pocket legal expenses that would arise from pursuing affirmative litigation on an hourly basis.  Any such fee arrangement would be subject to court approval.

In addition, during this period, the Receiver has continued to respond to requests for information from governmental entities and has actively coordinated with DLI insurers related to these and other insurance issues.

## IV.      Court Filings July 2020 Through November 2020

A. Motions Related to Loan/Investment Portfolios

During this period, the Receiver filed three motions related to recoveries and monetization of the loan/investment portfolios, as well as related pleadings.

During the prior reporting period, the Receiver filed a motion for approval of a settlement and forbearance term sheets with DLI Properties, LLC, Liberty Fund, LLC, DLI Global, Ltd., and Quanta Finance, LLC.  (Doc. No. 226.)  The Court entered an order on March 26, 2020 granting the motion, authorizing the Receiver to enter into the final forbearance agreements and take additional actions necessary to implement the settlement, including making additional revolving loans in an

1    additional amount of approximately $5 million with Strategic Acquisitions, Inc.,

2    through Liberty Fund, LLC and DLI Properties, LLC.  (Doc. No. 245.)  As noted

3    above, the parties finalized the remaining documentation and closed these

4    transactions on July 3, 2020.

5         On July 10, 2020, the Receiver filed a motion for authority to increase the

6    maximum amount of the revolving loan to $7.5 million.  (Doc. No. 281.)  This

7    motion was granted by an Order entered August 3, 2020.  (Doc. No. 291.)  As noted

8    above, on October 9, 2020, the Receiver filed a motion for further discretion to

9    refinance first lien debt on certain properties up to the amount of $5 million in order

10   to implement the settlement.  (Doc. No. 300.)  The Court granted that motion by its

11   Order entered November 4. 2020. (Doc. No. 310.)

12        On August 28, 2020, the Receiver filed a motion for approval of a settlement

13   with FPP Sandbox and FPP Capital, LLC, and an early payoff letter.  (Doc. No. 294.)

14   The motion requested approval of a reduced $12.6 million payoff of the outstanding

15   $14.0 million balance of outstanding loans made by receivership entity DLI Assets

16   Bravo.  On September 18, 2020, the Court entered an Order approving the

17   settlement.  (Doc. No. 297.)

18        On October 16, 2020, the Receiver also filed a motion for approval of a

19   confidential settlement for the purchase of the outstanding debt on Investment L

20   (investment 12) through an assumption and assignment.  (Doc. No. 302.)  On

21   November 12, 2020, the Court entered an Order approving the settlement.  (Doc. No.

22   311.)

23   B. Motions Concerning Administration of the Estate and the Receiver's

24        Powers

25        The Receiver filed a motion for approval and payment of fees of the Receiver,

26   his counsel, and accountants on July 1, 2020 for the period of January 1, 2020

27   through March 31, 2020.  (Doc. No. 270.)  On July 29, 2020, the Court entered its

28

1   Order granting that motion.  (Doc. No. 288.)

2        On October 8, 2020, the Receiver filed a further motion for approval and

3   payment of fees of the Receiver, his counsel, and accountants for the period of April

4   1, 2020 through June 30, 2020 and for the payment of Stretto's fees and expenses

5   from April 9, 2019 through June 30, 2020.  (Doc. No. 298.)  The Court granted that

6   motion by its Order entered November 4, 2020.  (Doc. No. 309.)

7        On November 13, 2020, the Receiver filed a further motion for approval and

8   payment of fees of the Receiver, his counsel, and accountants, and  Stretto for the

9   period of July 1, 2020 through September 30, 2020.  (Doc. No. 314.)  The hearing on

10  that motion is scheduled for December 14, 2020.

11       As noted above, on November 13, 2020, the Receiver filed a further motion

12  for an order for approval of the budget through the week ending January 31, 2021,

13  extension of authority for the Receiver's employment and payment of ordinary

14  course professionals, including accountants and attorneys previously employed in the

15  ordinary course of the Receivership Entity's business, in amounts less than $10,000

16  per month per professional firm, and to continue the Elite Discovery, Inc. contract,

17  and authorizing payments in furtherance of these agreements. (Doc. No. 316.)

18  With this motion, the Receiver has moved from the 13-week budgeting forecast that

19  has been used in the past to a monthly budget.  This motion is set for hearing on

20  December 14, 2020.

21       As noted above, in addition to his status as Receiver of the U.S. Receivership

22  Entities, the Receiver is also the U.S. JOL in the Cayman liquidation proceeding.  In

23  that capacity, the Receiver, together with his Cayman JOL Christopher D. Johnson,

24  entered into a Conflict Management Protocol to address and resolve certain potential

25  conflicts arising out of the Receiver's dual role.  The JOLs's request for approval in

26  the Cayman court was granted, and on July 30, 2020, the Receiver filed a motion for

27  approval of the Protocol in the receivership court, in conjunction with a request that

28

1   the Court approve the JOLs's retention of Diamond McCarthy for the limited

2   purpose of representing the JOLs with respect to investigation and evaluation of

3   potential litigation claims the off-shore feeder fund, DLIFF, may have under United

4   States law.  (Doc. No. 289.)   On August 25, 2020, the Court entered its Order

5   granting the motion.  (Doc. No. 293.)

6           The Court approved the employment of Stretto as claims administrator by its

7   order entered June 18, 2019.  (Doc. No. 79.)  Since then, the Receiver has been

8   working to coordinate the claims procedures and allowance in the United States

9   receivership with the separate claims procedures followed in the Cayman Islands

10  regarding DLIFF.

11          On July 17, 2019, the Court entered its order granting in part the motion of the

12  Receiver for instructions regarding the primary Directors & Officers Liability Policy

13  (the "D&O Policy") and its proceeds and demands for payment of attorney's fees and

14  costs by various insureds. (Doc. No. 97.)  By a stipulated order entered November

15  26, 2019, the Receiver and the Securities and Exchange Commission agreed to

16  extend the order to authorize the Receiver to request the insurance carrier to pay and

17  to authorize payment from proceeds of the D&O Policy with excess amounts covered

18  by other insurers, and to modify the stay of Section IX of the receiver order (Doc.

19  No. 10) to lift the stay to the extent necessary to allow the primary insurance carrier

20  to pay proceeds from the D&O Policy and take other necessary actions.  (Doc. No.

21  182.)  The Court has entered a further Order authorizing payment of insurance

22  proceeds pursuant to this prior authorization during this period.  (*See* Doc. No. 286.)

23   C. Claims Procedure and Distribution Plan Motions

24          On April 9, 2020, the Court entered its order granting the Receiver's claims

25  procedure motion  establishing July 7, 2020 at 11:59 pm (prevailing Pacific time), as

26  the bar date for the filing of claims by investors and creditors of the U.S.

27  Receivership Entities, and administrative claimants of the receivership estate  (Doc.

28

No. 251.)  The Court also approved the form and manner of notice, and the proof of claim form.  (*See* Doc. No. 253.)   The claim procedures are summarized in the Notice of Bar Date and Procedure for Submitting a Proof of Claim Form, which may be viewed on Stretto's, website at https://case.stretto.com/dli/civildocket.  A total of 1,180 claims were submitted to Stretto.

During this period, the Receiver worked with counsel for certain interested investors, and potentially other investors, to discuss the claims distribution methodologies and the procedures for approval of a distribution plan. Through this claims process and extensive forensic analysis of the portfolio positions, the Receiver has formulated a proposed Distribution Plan, and on November 20, 2020, filed a motion for approval of the plan.  (Doc. No. 321.)  The motion is set for hearing on December 21, 2020.  The motion sets forth the Receiver's rationale for his detailed plan for equitable distribution of the assets of the receivership entities.  The motion seeks: 1) approval of the Distribution Plan; 2) approval of application of the Rising Tide distribution methodology with respect to DLIF Investor claims; and 3) approval of an interim $150 million distribution, as set forth in the proposed Distribution Plan.  Allowed claims are categorized in seven classes and are payable pursuant to the priorities specified in the Distribution Plan.

Pursuant to the terms in the Distribution Plan, the Receiver has proposed a deadline of 90 days from the date of entry of an order approving the Distribution Plan to file objections to claims. The Receiver anticipates filing objections to a number of claims, particularly with respect to indemnity claims and counter-party claims filed against the Receivership Entities. To provide guidance regarding formulation and the distribution methodology of the Distribution Plan, the Receiver and his team also completed and finalized the comprehensive Report regarding the forensic analysis of the portfolio positions that has been ongoing for many months. This Report was filed with the Court on November 20, 2020.   (Doc. No. 320.)  The

primary objectives of the Report are to: (1) identify the sources and uses of investor funds; (2) reach a conclusion with respect to whether fraud was a cause of the losses; (3) establish the factual basis on which to structure the most equitable distribution plan in this case; and (4) determine the amount received for the personal benefit of Brendan Ross.

E.   Anticipated Motions Addressing Restructuring and Settlement

The Receiver continues to work actively to recover the balance on the remaining loan and investment portfolios.  The deteriorating economic climate created by the coronavirus pandemic that has continued into this quarter has rendered the outcome of these efforts uncertain at this time.  Subject to ongoing discussions, the Receiver may reach restructuring or settlement agreements with other counterparties during this quarter, or thereafter.  If successful, the Receiver will file motions for approval of those agreements.

## V.   Communications with Investors

A.   Investor Inquiries:  The Receiver continues to track investor inquiries received directly by the Receiver's agents and by counsel, as well as responses to the inquiries.  The Receiver continues to review and respond to investor inquiries, written and oral, and the Receiver's website for the case: https://cases.stretto.com/dli includes copies of case filings and other materials of interest to keep investors informed regarding the status of the case and the Receiver's activities. The Receiver's counsel continues to actively engage with the firm of Pachulski Stang Ziehl & Jones LLP, counsel for a group of investors, and other prospective investor counsel, in response to their inquiries for updates on the case status and assets.

B.   FAQs:  The Receiver's website for the case also includes a series of "Frequently Asked Questions" and responsive information regarding the impact of the receivership on DLI and the investors' funds, the status of the receivership, and the Receiver's activities, the claims process in a receivership, and other similar

200929 DLI Receiver Seventh Status Report:989050_1

19

1 information.  The Receiver continues to periodically update the FAQs to address new

2 issues or actions that may be of interest to investors as the case progresses.

3 **VI.      Pending Litigation**

4        A.      *Marcia Kosstrin Trust and Professional Home Improvements, Inc.*

5 *Retirement Plan v. Direct Lending Investments, LLC, et al.*, Case 2:19-cv-02452

6 ("Proposed Class Action")

7        As previously reported, on the same date the Receiver Order was entered, a

8 class action complaint was filed in this Court by Marcia Kosstrin Trust and

9 Professional Home Improvements, Inc. Retirement Plan against DLI, Brendan Ross,

10 Bryce Mason, Frank Turner, Rodney Omanoff, and QuarterSpot, Inc. The Receiver,

11 through counsel, filed a notice of stay of the action based on Section IX of the

12 Receiver Order.  The stay of the action remains in place, and there has been no

13 further activity in the Proposed Class Action since the notice of stay was filed.

14        B.      *Forefront Partners, LLC v. Rodney Omanoff, et al., and Counterclaims*,

15 New York County Supreme Court Index No. 650973/2017 ("Forefront Partners

16 Action")

17        On June 19, 2019, the Plaintiff in the Forefront Partners Action filed a motion

18 in this Court to lift the stay of actions under the Receiver Oder. (Doc. No. 81.)  The

19 Court denied that motion by its order entered July 17, 2019 (Doc. No. 96).  The

20 parties to the Forefront Partners Action entered into a stipulation approved by the

21 New York Court that stays the Forefront Partners Action as to the claims, cross-

22 claims and claims against Brendan Ross, DLI TC, LLC, Direct Lending Investments,

23 LLC, Direct Lending Income Fund, L.P., VoIP Guardian Partners I, LLC are stayed

24 until such time as the receivership and/or the VoIP bankruptcy are resolved.

25        C.      *American Health Connection, Inc. v. DLI Assets LLC*, Los Angeles

26 Superior Court Case No. BC700599 ("American Health Action")

27        As previously reported, the American Health Action is a declaratory relief

28

action arising out of a stipulated judgment in favor of DLI Assets that the plaintiff contends was entered improvidently and/or prematurely. The Receiver filed a Notice of Stay of the action with a copy of the Receiver Order on April 19, 2019. A status conference was held on January 6, 2020, and the court issued a minute order continuing the status conference to May 5, 2020.

     D. *Alfred Jackson, et al. v. Deloitte & Touche, LLP, Deloitte Tax, LLP, and Opus Fund Services (USA) LLC*, Los Angeles Superior Court Case No. 20GDCV00419 ("Jackson Action")

     On April 28, 2020, a group of investors (the "Jackson investors") filed suit in Los Angeles Superior Court against Deloitte & Touche, LLP, Deloitte Tax, LLP, and Opus alleging claims for misrepresentation. Opus removed the case to the Central District of California, and filed a motion to compel arbitration. On July 31, 2020, the Receivership Court issued an order denying the motion to compel arbitration, and remanding the case to state court. A case management conference is scheduled in this case for February 9, 2021.

     E. *Bradley D. Sharp, as the Permanent Receiver of the Estate of Direct Lending Investments, LLC, et al. vs. Duff & Phelps, LLC,* Case 2:20-cv-08069 ("Duff & Phelps Action")

     On September 3, 2020, the Receiver filed suit in the Central District of California against Duff & Phelps, LLC ("Duff & Phelps") alleging claims for professional negligence, gross negligence, aiding and abetting breach of fiduciary duty, negligent misrepresentation, and breach of contract. Duff & Phelps filed a motion to dismiss which is set for hearing on January 25, 2021.

Dated: December _2_, 2020           Respectfully submitted,

                                     _____

                                     BRADLEY D. SHARP
                                     Receiver

# EXHIBIT 1

**Direct Lending Investments**
**Cash Flow Forecast: DOMESTIC ENTITIES - Excluding Receipts**
As of October 24, 2020
*USD in 000's*

| | 10/24/2020 - 10/31/2020 | Nov. 2020 | Dec. 2020 | Jan. 2021 | Total |
|---|---|---|---|---|---|
| **Disbursements:** | | | | | |
| Payroll [1] | $ 29 | $ 120 | $ 132 | $ 112 | $ 394 |
| Other Operating (see pg. 2) | 13 | 26 | 26 | 39 | 104 |
| OCP Services (see pg. 3) | 88 | 39 | 77 | 39 | 243 |
| Operating Disbursements | 131 | 185 | 235 | 190 | 741 |
| | | | | | |
| Required Funding Request | - | - | - | - | - |
| | | | | | |
| Professionals: [2] | | | | | |
| Bradley D. Sharp / DSI | - | 250 | 250 | 250 | 750 |
| DSI - Investment T [3] | - | 275 | 350 | 350 | 975 |
| Diamond McCarthy - General | - | 150 | 150 | 150 | 450 |
| Diamond McCarthy - Litigation | - | 300 | 300 | 300 | 900 |
| Diamond McCarthy - Expert Consultants | - | 45 | 45 | 45 | 135 |
| BRG | - | 40 | 10 | 12 | 62 |
| Stretto | - | 20 | 20 | 20 | 60 |
| Goldberg Kohn LTD | - | 175 | 150 | 125 | 450 |
| Raymond James [4] | - | - | - | - | - |
| Total Professionals | - | 1,255 | 1,275 | 1,252 | 3,782 |
| | | | | | |
| **Total Disbursements** | $ (131) | $ (1,440) | $ (1,510) | $ (1,442) | $ (4,523) |
| | | | | | |
| Cash, Beginning Balance (Book) | $ 207,961 | $ 207,831 | $ 206,390 | $ 204,880 | $ 207,961 |
| Less: Disbursements | (131) | (1,440) | (1,510) | (1,442) | (4,523) |
| **Cash, Ending Balance (Book)** | $ 207,831 | $ 206,390 | $ 204,880 | $ 203,438 | $ 203,438 |

Note: This cash forecast excludes all activity for Direct Lending Income Feeder Fund, Ltd ("DLIFF"). Professional fees incurred by DLIFF are subject to review by the Liquidation Committee and ultimately approval by the Cayman court.
[1] Payroll expenses exclude $75K of accrued and unpaid PTO as of 10/31/20. Should the Receiver pursue additional headcount reductions, the amount forecasted for this budget period will also include the corresponding accrued and unpaid PTO for terminated employees. December 2020 payroll expenses include $38K in severance pay. January 2021 payroll expenses include 5 weeks of payroll.
[2] Professionals fees and expenses are presented on a monthly accrual basis.
[3] DSI is assisting the CRO in the supervision of the counterparty's day-to-day business operations and financial management. Additionally, DSI will perform forensic accounting analysis and evaluation of all Investment T and related entities business activities to identify possible litigation claims. To date, the counterparty has reimbursed DLI $150,000 for a portion of these professional fees and is expected to reimburse an additional $150,000 by the end of Q4 2020.
[4] RJA fees are not budgeted for as the timing and amount of the fees are directly correlated with the sale or refinancing closing(s) of portfolio assets, and the total fees to RJA for its services under the IB Engagement are capped at $4M. Current RJA fees paid to date total to the maximum $4M.

**Direct Lending Investments**
**Cash Flow Forecast: Other Operating Disbursements**
As of October 24, 2020

| | 10/24/2020 - 10/31/2020 | Nov. 2020 | Dec. 2020 | Jan. 2021 | Total |
|---|---|---|---|---|---|
| **GP** | | | | | |
| **General & Administrative** | | | | | |
| BizFilings | $ 500 | $ 500 | $ 500 | $ 500 | $ 2,000 |
| Insurance | - | - | - | 10,000 | 10,000 |
| **IT Services & Software** | | | | | |
| Adobe | - | 150 | 150 | 150 | 450 |
| Advanced Networks Solutions | - | 3,500 | 3,500 | 3,500 | 10,500 |
| Atlassian | - | 12 | 12 | 12 | 36 |
| Broadvoice | - | 105 | 85 | 85 | 275 |
| Corodata | - | 60 | 60 | 60 | 180 |
| Dropbox | 100 | 100 | 100 | 100 | 400 |
| Send2fax.com | - | 10 | 10 | 10 | 30 |
| TurboBridge | - | 65 | 65 | 65 | 195 |
| Total GP Expenses | 600 | 4,502 | 4,482 | 14,482 | 24,066 |
| **Fund** | | | | | |
| **General & Administrative** | | | | | |
| BizFilings | 500 | 500 | 500 | 500 | 2,000 |
| **Other Operating Expenses** | | | | | |
| Enoch Kim | 7,500 | 7,500 | 7,500 | 7,500 | 30,000 |
| Lien Solutions | 1,500 | 1,500 | 1,500 | 1,500 | 6,000 |
| Total Fund Expenses | 9,500 | 9,500 | 9,500 | 9,500 | 38,000 |
| **Other** | 3,000 | 12,000 | 12,000 | 15,000 | 42,000 |
| **Total Other Operating Disbursements** | $ 13,100 | $ 26,002 | $ 25,982 | $ 38,982 | $ 104,066 |

**Direct Lending Investments**
**Cash Flow Forecast: Ordinary Course Professionals**
As of October 24, 2020
*USD in 000's*

| Professional | Description | Requested/ Approved Amount | Payment Frequency | 10/24/2020 - 10/31/2020 | Nov. 2020 | Dec. 2020 | Jan. 2021 | Total |
|---|---|---|---|---|---|---|---|---|
| **Fund** | | | | | | | | |
| Millennium Trust Company | Fund Custody | $37,500 | Quarterly | $   40 | $   - | $   38 | $   - | $   78 |
| Saul Ewing Arnstein & Lehr LLP | Legal - Recovery | $10,000 | Monthly | 10 | - | - | - | 10 |
| Parker, Simon & Kokolis, LLC [1] | Legal - Collections | $100,000 | Monthly | 5 | 5 | 5 | 5 | 20 |
| BARR Credit Services, Inc. [1] | Legal - Collections | $100,000 | Monthly | 2 | 2 | 2 | 2 | 8 |
| | | | | 57 | 7 | 45 | 7 | 116 |
| **GP** | | | | | | | | |
| Lucas, Horsfall, Murphy & Pindroh, LLP | Accounting | $3,000 | Monthly | 1 | 1 | 1 | 1 | 4 |
| Constangy, Brooks, Smith & Prophete, LLP | Legal - Employment | $5,000 | Monthly | - | 1 | 1 | 1 | 3 |
| Elite Discovery | Documents Management | $30,000 | Monthly | 30 | 30 | 30 | 30 | 120 |
| | | | | 31 | 32 | 32 | 32 | 127 |
| | | | | $   88 | $   39 | $   77 | $   39 | $   243 |

_____

[1] Budgeted amounts **include** out-of-pocket expenses and contingency collections fees.

# EXHIBIT 2

Bradley D. Sharp, Receiver
Development Specialists, Inc.
333 South Grand Avenue Suite 4100
Los Angeles, CA 90071
(213) 617-2717

# STANDARDIZED FUND ACCOUNTING REPORT

## CIVIL - RECEIVERSHIP FUND

Consolidated Direct Lending Investments Receivership Entities [1]

Civil Court Docket No. 2:19−cv−02188−DSF−MRW

Reporting Period 7/1/2020 to 9/30/2020

**Note 1**: Direct Lending Investments, LLC, Direct Lending Income Fund, L.P., Direct Lending Income Feeder Fund, Ltd., DLI Capital, Inc., DLI Lending Agent, LLC, DLI Assets Bravo, LLC, and their successors, subsidiaries and affiliated entities have been consolidated and are collectively referred to in this report as the "Consolidated Direct Lending Investments Receivership Entities."

STANDARDIZED FUND ACCOUNTING REPORT for Consolidated Direct Lending Investments Receivership Entities - Cash Basis
Receivership; Civil Court Docket No. 2:19−cv−02188−DSF−MRW
Reporting Period 7/1/2020 to 9/30/2020

| Fund Accounting (See Instructions): | | Detail | Subtotal | Grand Total |
|---|---|---|---|---|
| Line 1 | **Beginning Balance (As of 7/1/2020):** | | | $ 194,181,891 |
| | *Increases in Fund Balance:* | | | |
| Line 2 | **Business Income** | 6,238,511 | | |
| Line 3 | **Cash and Securities** | - | | |
| Line 4 | **Interest/Dividend Income** | 23,886 | | |
| Line 5 | **Business Asset Liquidation** | 12,933,897 | | |
| Line 6 | **Personal Asset Liquidation** | - | | |
| Line 7 | **Third-Party Litigation Income** | - | | |
| Line 8 | **Miscellaneous - Other** | - | | |
| | **Total Funds Available (Lines 1 - 8):** | | 19,196,295 | 213,378,186 |
| | *Decreases in Fund Balance:* | | | |
| Line 9 | **Disbursements to Investors** | - | | |
| Line 10 | **Disbursements for Receivership Operations:** | | | |
| Line 10a | *Disbursements to Receiver or Other Professionals* | 1,291,902 | | |
| Line 10b | *Business Asset Expenses* | 1,649,796 | | |
| Line 10c | *Personal Asset Expenses* | - | | |
| Line 10d | *Investment Expenses* [1] | 7,059,592 | | |
| Line 10e | *Third-Party Litigation Expenses* | - | | |
| | 1. Attorney Fees | - | | |
| | 2. Litigation Expenses | - | | |
| | *Total Third-Party Litigation Expenses* | - | | |
| Line 10f | *Tax Administrator Fees and Bonds* | - | | |
| Line 10g | *Federal and State Tax Payments* | 4,800 | | |
| | **Total Disbursements for Receivership Operations** | | 10,006,090 | |
| Line 11 | **Disbursements for Distribution Expenses Paid by the Fund:** | | | |
| Line 11a | *Distribution Plan Development Expenses:* | | | |
| | 1. Fees: | | | |
| | Fund Administrator | - | | |
| | Independent Distribution Consultant (IDC) | - | | |
| | Distribution Agent | - | | |
| | Consultants | - | | |
| | Legal Advisers | - | | |
| | Tax Advisers | - | | |
| | 2. Administrative Expenses | - | | |
| | 3. Miscellaneous | - | | |
| | *Total Plan Development Expenses* | - | | |
| Line 11b | *Distribution Plan Implementation Expenses:* | | | |
| | 1. Fees: | | | |
| | Fund Administrator | - | | |
| | IDC | - | | |
| | Distribution Agent | - | | |
| | Consultants | - | | |
| | Legal Advisers | - | | |
| | Tax Advisers | - | | |
| | 2. Administrative Expenses | - | | |
| | 3. Investor Identification: | | | |
| | Notice/Publishing Approved Plan | - | | |
| | Claimant Identification | - | | |
| | Claims Processing | - | | |
| | Web Site Maintenance/Call Center | - | | |
| | 4. Fund Administrator Bond | - | | |
| | 5. Miscellaneous | - | | |
| | 6. Fed Acct. for Investor Restitution (FAIR) Reporting Expenses | - | | |
| | *Total Plan Implementation Expenses* | - | | |
| | **Total Disbursements for Distribution Expenses Paid by the Fund** | | - | |

STANDARDIZED FUND ACCOUNTING REPORT for Consolidated Direct Lending Investments Receivership Entities - Cash Basis
Receivership; Civil Court Docket No. 2:19−cv−02188−DSF−MRW
Reporting Period 7/1/2020 to 9/30/2020

| | | Detail | Subtotal | Grand Total |
|---|---|---|---|---|
| **Line 12** | **Disbursements to Court/Other:** | | | |
| Line 12a | Investment Expenses/Court Registry Investment System (CRIS) Fees | - | | |
| Line 12b | Federal Tax Payments | - | | |
| | **Total Disbursements to Court/Other** | | - | |
| | **Total Funds Disbursed (Line 9 - 12)** | | | $ 10,006,090 |
| **Line 13** | **Ending Balance (As of 9/30/2020):** | | | $ 203,372,096 |

**Note:** Transfers between the accounts of the consolidated entities on this report are not included in the schedules contained herein.

| | | Detail | Subtotal | Grand Total |
|---|---|---|---|---|
| **Line 14** | **Ending Balance of Fund - Net Assets:** | | | |
| Line 14a | Cash & Cash Equivalents | | | $ 203,372,096 |
| Line 14b | Investments | | | TBD |
| Line 14c | Other Assets or Uncleared Funds | | | TBD |
| | **Total Ending Balance of Fund - Net Assets** | | | $ 203,372,096 |

**OTHER SUPPLEMENTAL INFORMATION:**

| | | Detail | Subtotal | Grand Total |
|---|---|---|---|---|
| | ***Report of Items NOT To Be Paid by the Fund:*** | | | |
| **Line 15** | **Disbursements for Plan Administration Expenses Not Paid by the Fund:** | | | |
| Line 15a | Plan Development Expenses Not Paid by the Fund: | | | |
| | 1. Fees: | | | |
| | Fund Administrator | | | |
| | IDC | | | |
| | Distribution Agent | | | |
| | Consultants | | | |
| | Legal Advisers | | | |
| | Tax Advisers | | | |
| | 2. Administrative Expenses | | | |
| | 3. Miscellaneous | | | |
| | Total Plan Development Expenses Not Paid by the Fund | | | |
| Line 15b | Plan Implementation Expenses Not Paid by the Fund: | | | |
| | 1. Fees: | | | |
| | Fund Administrator | | | |
| | IDC | | | |
| | Distribution Agent | | | |
| | Consultants | | | |
| | Legal Advisers | | | |
| | Tax Advisers | | | |
| | 2. Administrative Expenses | | | |
| | 3. Investor Identification: | | | |
| | Notice/Publishing Approved Plan | | | |
| | Claimant Identification | | | |
| | Claims Processing | | | |
| | Web Site Maintenance/Call Center | | | |
| | 4. Fund Administrator Bond | | | |
| | 5. Miscellaneous | | | |
| | 6. FAIR Reporting Expenses | | | |
| | Total Plan Implementation Expenses Not Paid by the Fund | | | |
| Line 15c | Tax Administrator Fees & Bonds Not Paid by the Fund | | | |
| | **Total Disbursements for Plan Administration Expenses Not Paid by the Fund** | | | |
| **Line 16** | **Disbursements to Court/Other Not Paid by the Fund:** | | | |
| Line 16a | Investment Expenses/CRIS Fees | | | |
| Line 16b | Federal Tax Payments | | | |
| | **Total Disbursements to Court/Other Not Paid by the Fund** | | | |
| **Line 17** | **DC & State Tax Payments** | | | |

STANDARDIZED FUND ACCOUNTING REPORT for Consolidated Direct Lending Investments Receivership Entities - Cash Basis
Receivership; Civil Court Docket No. 2:19−cv−02188−DSF−MRW
Reporting Period 7/1/2020 to 9/30/2020

| | | |
|---|---|---|
| **Line 18** | **No. of Claims:** | |
| *Line 18a* | *# of Claims Received This. Reporting Period [2]* | 177 |
| *Line 18b* | *# of Claims Received Since Inception of Fund [3]* | 1,215 |
| **Line 19** | | |
| *Line 19a* | *# of Claimants/Investors Paid This Reporting Period* | 0 |
| *Line 19b* | *# of Claimants/Investors Paid Since Inception of Fund* | 0 |

[1] Total represents advances made to counterparties and are expected to be recovered.
[2] Total represents 175 claims filed with the domestic entities and 2 claim filed with the foreign entity.
[3] Total represents 1,185 claims filed with the domestic entities and 30 claims filed with the foreign entity.

Receiver:

By: _____
(Signature)

Bradley D. Sharp_____
(Printed Name)

Receiver_____
(Title)

Date: ___October 15, 2020_____

# EXHIBIT 3

**DIRECT LENDING INVESTMENTS**

**Investment Portfolio Summary (Positions as of 10/31/20)**

*($ in millions)*

| # | Investment | Form of Investment | Collateral | Initial Inv. Date | Maturity Date | 3/31/2019 Par Debt Amount | Interim Advances/ (Paydown) | Other Adjs | 10/31/2020 Par Debt Amount |
|---|---|---|---|---|---|---|---|---|---|
| 1 | Dealstruck Funding 3, LLC | Whole Loans. 12-16 foreclosure on LLC | Small balance commercial loans and lines of credit | 11/19/2014 | N/A | $4.9 | ($2.3) | ($2.6) | - |
| 2 | Quarterspot | Whole Loans | Small balance commercial loans | 8/1/2013 | N/A | $2.4 | ($0.6) | ($1.6) | $0.2 |
| 3 | LoanHero | Whole Loans. 12-17 foreclosure on asset-based facility | Unsecured indirect consumer loans | 4/30/2015 | N/A | $11.0 | ($7.8) | ($3.3) | - |
| 4 | Investment D | Whole Loans | Small balance commercial real estate | 7/31/2015 | N/A | $1.4 | ($0.1) | ($0.8) | $0.6 |
| 5 | Biz2Credit | Whole Loans | Merchant Cash Advances | 3/7/2014 | N/A | $12.1 | ($1.2) | ($10.9) | - |
| 6 | Investment F | Corporate Term Loan | N/A | 8/30/2018 | On demand | $2.0 | - | - | $2.0 |
| 7 | Investment G | Asset-Based Facility | Purchase order finance | 3/1/2017 | 1/1/2022 | $8.6 | ($0.7) | - | $7.9 |
| 8 | Investment H [1] | Corporate Term Loan | All assets lien over entity (no pledge of stock) | 2/1/2016 | 12/31/2021 | $103.8 | ($36.1) | - | $67.6 |
| 9 | Investment I [1] | Second Lien Asset-Based Facility | Unsecured indirect consumer loans | 4/30/2015 | 1/24/2023 | $89.7 | - | - | $89.7 |
| 10 | Morrison Oil, LLC | First Lien Corporate Term Loan | Mineral rights for 6 oil and gas wells | 6/19/2017 | 6/1/2019 | $4.1 | $0.0 | ($4.2) | - |
| 11 | Investment K | Corporate Term Loan | Accounts receivable, purchase orders and charge orders | 4/25/2017 | 3/31/2018 | $9.6 | ($0.0) | - | $9.5 |
| 12 | Investment L | Corporate Term Loan | Litigation finance | 10/9/2018 | 10/5/2021 | $27.4 | - | - | $27.4 |
| 13 | Investment M | Asset-Based Facility | Litigation finance | 5/1/2017 | 5/1/2022 | $62.0 | ($6.5) | ($53.5) | $2.0 |
| 14 | Investment N | Asset-Based Facility | Accounts receivable, purchase order finance and movie film finance | 9/1/2015 | 3/14/2023 | $69.3 | ($0.5) | - | $68.8 |
| 15 | Fast Pay Partners, LLC | Second Lien Asset-Based Facility | Accounts receivable (digital media) | 3/16/2018 | 9/19/2020 | $19.8 | ($19.8) | - | - |
| 16 | FPP Sandbox LLC | Asset-Based Facility | Accounts receivable (digital media) | 12/7/2018 | 12/7/2020 | $14.0 | (12.60) | (1.40) | - |
| 17 | Future Payment Portfolio LLC (Multistream Capital) | Asset-Based Facility | Structured settlements | 12/14/2018 | 11/30/2021 | $2.3 | ($2.3) | - | - |
| 18 | Investment R | Asset-Based Facility | 1 distressed commercial real estate property (1 parcel) and 1 note backed by a VC investment in a cloud-based billing service company | 12/22/2016 | 12/22/2018 (Maturity Date Extension option of 2 years) | $25.9 | ($6.2) | $2.6 | $22.3 |
| 19 | Investment S | Second Lien Asset-Based Facility | Residential real estate (Fix and Flip) | 7/17/2017 | 5/30/2021 | $9.8 | $3.3 | - | $13.1 |
| 20 | Investment T | Second Lien Asset-Based Facility | Residential real estate (Fix and Flip) | 7/31/2015 | 7/31/2020 | $56.3 | ($5.8) | - | $50.5 |
| 21 | Origin SPE, LLC (Mepco) | Second Lien Asset-Based Facility | Vehicle service contract loans | 5/18/2017 | 5/1/2022 | $59.9 | ($59.9) | - | - |
| 22 | VoIP Guardian Partners 1, LLC [2] | Asset-Based Facility | Accounts receivable (international telecommunication) | 10/1/2015 | 9/1/2020 | $191.7 | - | - | $191.7 |
| | **Total** | | | | | **$788.0** | **($159.2)** | **($75.5)** | **$553.2** |

[1] 3/31/2019 Par Debt Amount has been increased to reflect the capitalization of reserves. The investment was converted from debt to equity and the par debt amount as of September 30, 2020 therefore represents an equity position in an amount that is subject to change once an appropriate valuation can be determined.
[2] 3/31/2019 Par Debt Amount has been reduced to correct for principal payment previously reported as interest payment.

1  KATHY BAZOIAN PHELPS (155564)
2  *kphelps@diamondmccarthy.com*
   DIAMOND MCCARTHY LLP
3  1999 Avenue of the Stars, Suite 1100
4  Los Angeles, California 90067-4402
   Telephone:  (310) 651-2997
5
6  CHRISTOPHER D. SULLIVAN (148083)
   *csullivan@diamondmccarthy.com*
7  STACEY L. PRATT (124892)
8  *stacey.pratt@diamondmccarthy.com*
   DIAMOND MCCARTHY LLP
9  150 California Street, Suite 2200
10 San Francisco, CA 94111
   Phone: (415) 692-5200
11
12 *Counsel for Bradley D. Sharp,*
   *Permanent Receiver*
13
                  **UNITED STATES DISTRICT COURT**
14
                  **CENTRAL DISTRICT OF CALIFORNIA**
15
                  **WESTERN DIVISION – LOS ANGELES**
16

| 17 | SECURITIES AND EXCHANGE COMMISSION, | Case No. 2:19−cv−02188−DSF−MRW<br>Hon. Dale S. Fischer |
|---|---|---|
| 18 | | |
| 19 | Plaintiff, | **PROOF OF SERVICE** |
| 20 | v. | |
| 21 | DIRECT LENDING INVESTMENTS LLC, | |
| 22 | | |
| 23 | Defendant. | |

24
25
26
27
28

1

**PROOF OF SERVICE**

I hereby declare under penalty of perjury pursuant to the laws of the state of California that I am a citizen of the United States, over the age of eighteen years and not a party to the within-entitled action.  My business address is 150 California Street, Suite 2200, San Francisco, CA 94111.  On **December 2, 2020**, I served a copy of the within document(s):

**SEVENTH STATUS REPORT OF PERMANENT RECEIVER BRADLEY D. SHARP [July 1, 2020 through November 30, 2020] WITH EXHIBITS**

X      **SERVED VIA ELECTRONIC TRANSMISSION/EMAIL**: On **December 2, 2020,** I served the following persons and/or entities by transmitting via electronic mail the document(s) listed above to the addresses set forth below:

Nicolas Morgan, nicolasmorgan@paulhastings.com

Matthew Dors, Esq., matthew.dors@collascrill.com

Rocco Cecere, Esq.,  rocco.cecere@collascrill.com

Rupert Stanning, Esq., rupert.stanning@collascrill.com

Christopher D. Johnson, cdj@cjacayman.com

Jill Zadny, jz@cjacayman.com

Jacob A. Johnson, Alston & Bird LLP, jacob.johnson@alston.com

Will Sugden, Alston & Bird LLP, will.sugden@alston

Mark Rosenbaum, mrosenbaum@wrslawyers.com

Howard J. Weg, hweg@hjwadvisor.com

X      **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):** On **December 2, 2020**, Pursuant to L.R. 5-3.2.1, the document listed above will be served by the court via NEF and hyperlink to the document which effects electronic service on counsel who are registered with the CM/ECF system.

2

1   I am readily familiar with the firm's practice of collection and processing

2   correspondence for mailing.  Under that practice it would be deposited with the U.S.

3   Postal Service on that same day with postage thereon fully prepaid in the ordinary

4   course of business.  I am aware that on motion of the party served, service is

5   presumed invalid if postal cancellation date or postage meter date is more than one

6   day after date of deposit for mailing in affidavit.

7   I declare under penalty of perjury under the laws of the state of California that

8   the above is true and correct. Executed on **December 2, 2020**, at San Francisco,

9   California.

12   */s/ Aiemee K. Low*
     Aiemee K. Low

3

PROOF OF SERVICE