KATHY BAZOIAN PHELPS (155564)
*kphelps@diamondmccarthy.com*
DIAMOND MCCARTHY LLP
1999 Avenue of the Stars, Suite 1100
Los Angeles, California 90067-4402
Telephone: (310) 651-2997

CHRISTOPHER D. SULLIVAN (148083)
*csullivan@diamondmccarthy.com*
STACEY L. PRATT (124892)
*stacey.pratt@diamondmccarthy.com*
DIAMOND MCCARTHY LLP
150 California Street, Suite 2200
San Francisco, CA 94111
Phone: (415) 692-5200

*Counsel for Bradley D. Sharp,*
*Permanent Receiver*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION – LOS ANGELES

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Case No. 2:19−cv−02188−DSF−MRW<br>Hon. Dale S. Fischer |
| Plaintiff, | **NOTICE OF MOTION AND MOTION OF RECEIVER FOR:** |
| v. | **(1) AUTHORITY TO PURSUE AVOIDANCE ACTIONS;**<br>**(2) APPROVAL OF PROPOSED PROCEDURES; AND**<br>**(3) APPROVAL OF FORM AND/OR LIMITATION OF NOTICE UNDER LOCAL RULE 66-7** |
| DIRECT LENDING INVESTMENTS LLC, | |
| Defendant. | |

1

1
2
3
4
5
6
7
8
9

*[MEMORANDUM OF POINTS AND AUTHORITIES AND SUPPORTING DECLARATION FILED CONCURRENTLY HEREWITH]*

Date:   April 12, 2021
Time:   1:30 p.m.
Dept.:  Courtroom 7D
Place:  United States District Court
        350 West 1st Street,
        Los Angeles, CA 90012

10
11
12
13
14
15
16

　　　PLEASE TAKE NOTICE THAT on April 12, 2021 at 1:30 p.m. in Courtroom 7D of the above-entitled Court, located at 350 West 1st Street, Los Angeles, CA 92701-4516, Bradley D. Sharp, the Court-appointed permanent receiver (the "Receiver"), will and hereby does make this Motion for: (1) Authority to Pursue Avoidance Actions; (2) Approval of Proposed Procedures; and (3) Form and/or Limitation of Notice Under Rule 66-7 (the "Motion").

17
18
19
20
21
22
23
24

　　　The Motion concerns the Receiver's recommended settlement procedures relating to transfers that the Receiver determines are voidable transfers under applicable law. The Receiver's Report Regarding the Investigation of the Receivership Entities' Business Conduct and Recommendations Regarding Distributions dated November 13, 2020 (ECF No. 320) (the "Receiver's Report") sets forth the Receiver's conclusions regarding the Receivership Entities being run by Brendan Ross as a fraudulent scheme and the conclusion that Ross, through DLI, was running a Ponzi scheme.

25
26
27
28

　　　DLI obtained investors for its loan portfolios through two "feeder" funds which were structured as limited partnerships, one covering the domestic investors (Direct Lending Income Fund, L.P. ("DLIF")) ("DLIF Investors"), and after October

2

1, 2016 one for foreign investors made through a related Cayman Islands limited partnership (Direct Lending Income Feeder Fund, Ltd. ("DLIFF")). The Motion covers only the investments made in DLIF and the payments made by DLIF back to the DLIF Investors.

The Receiver's investigation has revealed that some DLIF Investors did not receive any funds back on account of their investments, some DLIF Investors received a portion of the funds they invested, and other investors received back more than the dollar amount than they invested.  The allowed claims of DLIF Investors were evaluated in accordance with the Receiver's Distribution Plan based on their Total Investment, which eliminated the amount of claims for purported profits or interest the investors expected to receive. Pre-receivership, DLIF Investors were promised returns based on the net investment value ("NAV") of their investments, which was not an accurate representation of the true value of their investments. Accordingly, the portion of the claims attributable to those fictitious returns have been disallowed.

Some DLIF Investors, however, were actually paid substantial returns prior to the Receivership. Those investors received total profits that the Receiver has calculated to be more than tens of millions in the aggregate in excess of the amounts of their principal investments in DLIF (the "Net Winnings").[1] A total number of more than hundreds of DLIF Investors received the Net Winnings (the "Net Winners"). The Receiver contends that the Net Winnings are transfers made to the investors that are avoidable and recoverable for the benefit of all DLIF Investors (the "Net Winnings Claims"). This Motion seeks authority to pursue collection of the Net Winnings from the Net Winners and to fix procedures for the litigation and settlement

---

[1] Some DLIF Investors claims have been aggregated pursuant to the Distribution Plan where they held multiple accounts with the same taxpayer identification number.

Case No. 2:19−cv−02188−DSF−MRW          NOTICE OF MOTION AND MOTION OF RECEIVER FOR:
(1) AUTHORITY TO PURSUE AVOIDANCE ACTIONS; (2) APPROVAL OF PROPOSED
PROCEDURES; AND (3) APPROVAL OF FORM AND MANNER OF NOTICE

process to streamline the process and save costs.

By this Motion, the Receiver proposes the following procedures for pursuing the Net Winnings Claims:

**A.    Settlements**

The Receiver proposes a procedure to incentivize Net Winners to settle the Net Winner Claims promptly, without the need for litigation. Litigation is expensive and time-consuming for both sides and consumes judicial resources. Accordingly, the Receiver proposes and seeks approval of the following settlement procedures:

**1.    Definitions**

(a) "Demand Letters" means and refers to letters that the Receiver will send to Net Winner Recipients, setting forth a demand for payment and offer of settlement pursuant to these Settlement Procedures.

(b) "Early Settlement Period" shall mean and refer to the period of time that is 45 days following the delivery of the Demand Letters.

(c) "Hardship Discount" means and refers to a request by Net Winner Recipient for a discount on the amounts owed on account of an inability to be paid, which is subject to proof and documentation submitted to, and approved by the Receiver, in his business judgment. Eligibility for the program will be based on indicators of need, such as an inability to pay for necessary living expenses, such as housing, food, utilities and transportation, inability to pay medical expenses, a necessity to return to work for retirees, or the threat of declaring personal bankruptcy.  Any Net Winner Recipient choosing to request a Hardship Discount will be required to submit to the Receiver on a confidential basis copies of the last three years of federal tax returns, three years of statements from all financial accounts, a sworn financial statement reflecting all assets, liability, current income and expenses, and a list of all transfers over $5,000 made within the past four years.

(d) "Net Winner Claim" means and refers to the Receiver's claims to avoid and recover the net amount paid to a Net Winner Recipient above the amount of principal invested by the Net Winner Recipient, less any credit applied by the Receiver for a Hardship Discount or for a Reasonably Sustainable Defense.

(e) "Net Winner Recipients" means and refers to persons, including trusts, companies and other legal entities, who received funds from the Receivership Entities in excess of the amount that they invested with the Receivership Entities.

(f) "Reasonably Sustainable Defense" means and refers to a defense asserted by a Net Winner Recipient, subject to proof requested by the Receiver, which the Receiver determines in his business judgment has a reasonable likelihood of being sustained by a court.

(g) "Settlement Parameters" means and refers to the percentage and dollar figures set forth herein.

## 2.    Demand Letters

The Receiver will send Demand Letters to the Net Winner Recipients who received more than $10,000 in Net Winnings setting forth at least the following information:

(a) the total amount of Net Winner Claim ("Profit Amount");

(b) the Receiver's demand for the return of the Profit Amount and the legal basis for such claims;

(c) an offer to settle the Net Winnings Claims without litigation depending on the timing of the settlement as follows:

(1) If a settlement agreement signed within the Early Settlement Period, e.g. 45 days of the date of the Demand Letter, the Net Winnings Claim can be settled for 50% of the Profit Amount;

(2) If a settlement agreement is signed in the 45 days following the Early Settlement Period, the Net Winnings Claim can be settled for 60% of the Profit Amount;

(3) If a settlement is signed following that initial 90 day period, the Net Winnings Claim can be settled for 70% of the Profit Amount;

(4) Once the Receiver has filed a complaint in connection with a Net Winnings Claim, the Receiver will settle for 80% of the Profit Amount.

(collectively referred to as the "Settlement Benchmarks"); and

(d) a draft settlement agreement.

**3.    Settlement Agreements:**

(a) The Receiver will include a proposed settlement agreement, substantially in the form of Exhibit "1" attached to the Sharp Declaration, with each Demand Letter.

(b) All terms of the settlement agreement will be final.

(c) In order to accept the offer, a Net Winner Recipient must sign the settlement agreement and return it the Receiver or his counsel.

(d) The offer will not be deemed accepted until the signed documents have been received.

(e) Settlement agreements executed in compliance with these procedures will be immediately effective, without further Court approval.

(f) If a Net Winner Recipient requests payment terms, the Receiver may agree to installment payments of up to 12 months, he may increase the amount of the demand up to 10% more than the Settlement Benchmarks, and he will obtain a stipulated judgment to be held by the Receiver and not filed with the Court or otherwise sought to be enforced, provided the Net Winner Recipient timely makes all required payments under the settlement agreement. If the Net Winner Recipient defaults on any payments and does not cure such default within 10 days, the Receiver, in his discretion, may file a complaint against the Net Winner Recipient together with the stipulated judgment and proof of the Net Winner Recipient's default and request entry of the stipulated judgment.

### 4.    Adjustments to Net Profit Amount:

(a) The Receiver may, in his business discretion, without the need for further Court approval, offer Hardship Discounts of up to 100% of the amount of a Net Winner Claim. Any Net Winner Recipient requesting a Hardship Discount must submit all required documentation to the Receiver to be considered for such a discount, and the Receiver shall, in his discretion, to determine the validity of such a request and the impact on collectability of a judgment. Any such Hardship Discount approved by the Receiver will reduce the amount of the Net Winner Claim by that amount and the Settlement Parameters in section 3 hereof shall apply to the reduced amount.

(b) The Receiver may, in his business discretion, without the need for further Court approval, consider a Reasonably Sustainable Defense and make adjustments to the Net Winner Claim amount, of up to 100% of the amount of a Net Winner Claim. Any such Reasonably Sustainable Defense approved by the Receiver will reduce the amount of the Net Winner Claim by that amount and the Settlement Parameters in section 3 hereof shall apply to the reduced amount.

**5.      Court Approval**

(a) Provided that a proposed settlement represents a minimum recovery of at least the amounts in the Settlement Benchmarks pursuant to the terms set forth herein, as may be adjusted pursuant to Section 4 above, the Receiver may consummate settlements in his business judgment without further leave of the Court or additional notice.

(b) If a proposed settlement amount does not fall within these established settlement procedures or meet the Settlement Benchmarks, the Receiver shall file a motion with the Court seeking Court approval of such a settlement.  So as not to harm his ability to engage in settlement discussions with other parties or otherwise influence the outcome of other settlement discussions, the Receiver requests authority in advance to file any such motion for approval of a settlement outside of these settlement parameters under seal.

**A.      Litigation**

If 60 days have passed from mailing of the Demand Letter and a Net Winner Recipient has not accepted the settlement offer, the Receiver may file a complaint ("Net Winner Adversary Proceedings") against each Net Winner Recipient who has not accepted a settlement offer. In order to minimize the administrative expenses associated with the Net Winner Adversary Proceedings, the Receiver requests that they all be managed and adjudicated by one District Court Judge and one Magistrate Judge who are familiar with the underlying facts. Many of the cases may be filed at the same time and, for efficiency purposes, should be kept on the same track. Having the cases before one District Court Judge and one Magistrate Judge will also avoid inconsistent rulings, which could potentially lead to disparate treatment of similarly situated prospective defendants. Accordingly, the Receiver believes it is appropriate

for all Net Winner Adversary Proceedings to be transferred to this Court as related actions and intends to  will file a notice of related action with each complaint pursuant to Local Rule 83-1.3.1.

In addition to the cases treated as related actions and transferred to this Court, the cases should follow the Federal Rules of Civil Procedure and Local Rules of the Court. The Receiver will request that all settlement conferences be held before the Magistrate Judge and may seek permission from the Magistrate Judge to schedule multiple settlement conferences on the same day so as to minimize administrative expenses.

**B.      Business Judgment**

The Receiver's objective in pursuing the Net Winner Claims is to maximize the net recovery to the receivership estate. The Receiver will use his business judgment at all times in pursuing Net Winner Claims and remains focused on the objective of maximizing recovery. This may include seeking exceptions to the procedures described above in circumstances that warrant exception. The Receiver may request tolling agreements to stop the running of statute of limitations and statutes of repose. The Receiver may also seek to engage counsel on a contingency basis to pursue recovery of the Net Winner Claims.

The Motion is made following the Receiver's communications with counsel for the Securities and Exchange Commission under Local Rule 7-3, and the Receiver is advised that the SEC does not oppose the relief sought.  A judgment of liability has been entered against the sole defendant Direct Lending Investments, LLC, which is under the supervision and control of the Receiver, making a conference with that entity unnecessary.  There are numerous interested parties served with the Motion, making a pre-filing conference with the other interested parties impracticable.

This Motion is based upon this Notice, the Memorandum of Points and

Authorities, the concurrently filed Declaration of Bradley D. Sharp, the separate notice of hearing on the Motion, and upon such further oral argument, testimony and evidence as may be received at the hearing on this matter.

PLEASE TAKE FURTHER NOTICE that pursuant to Local Rule 7-9, any party who opposes the Motion must, not later than 21 days before the date of the hearing on the motion, serve upon all other parties and file with the Clerk either (a) the evidence upon which the opposing party will rely in opposition to the Motion and a brief but complete memorandum which shall contain a statement of all the reasons in opposition thereto and the points and authorities upon which the opposing party will rely, or (b) a written statement that that party will not oppose the motion. Evidence presented in all opposing papers shall comply with the requirements of L.R. 7-6, 7-7 and 7-8.

DATED: March 12, 2021            DIAMOND McCARTHY LLP

By:   /s/ *Kathy Bazoian Phelps*
Kathy Bazoian Phelps
Counsel for Bradley D. Sharp,
Permanent Receiver

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

NOTICE OF MOTION AND MOTION OF RECEIVER FOR ORDER APPROVING SETTLEMENT WITH LENDINGUSA