KATHY BAZOIAN PHELPS (155564)
*kphelps@diamondmccarthy.com*
DIAMOND MCCARTHY LLP
1999 Avenue of the Stars, Suite 1100
Los Angeles, California 90067-4402
Telephone: (310) 651-2997

CHRISTOPHER D. SULLIVAN (148083)
*csullivan@diamondmccarthy.com*
STACEY L. PRATT (124892)
*stacey.pratt@diamondmccarthy.com*
DIAMOND MCCARTHY LLP
150 California Street, Suite 2200
San Francisco, CA 94111
Phone: (415) 692-5200

*Counsel for Bradley D. Sharp,*
*Permanent Receiver*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION – LOS ANGELES

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>          Plaintiff,<br><br>     v.<br><br>DIRECT LENDING INVESTMENTS LLC,<br><br>          Defendant. | Case No. 2:19−cv−02188−DSF−MRW<br>Hon. Dale S. Fischer<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF RECEIVER FOR:**<br>**(1) AUTHORITY TO PURSUE AVOIDANCE ACTIONS;**<br>**(2) APPROVAL OF PROPOSED PROCEDURES; AND**<br>**(3) APPROVAL OF FORM AND/OR LIMITATIONS OF NOTICE UNDER LOCAL CIVIL RULE 66-7**<br><br>Date:      April 12, 2021<br>Time:     1:30 p.m.<br>Dept.:     Courtroom 7D<br>Place:    United States District Court<br>              350 West 1st Street,<br>              Los Angeles, CA 90012 |

Case No. 2:19−cv−02188−DSF−MRW

MEMO OF P/A ISO MOTION FOR (1) AUTHORITY TO PURSUE AVOIDANCE ACTION; (2) APPROVAL OF PROPOSED PROCEDURES; AND (3) APPROVAL OF FORM AND MANNER OF NOTICE

## <u>TABLE OF CONTENTS</u>

I. INTRODUCTION AND RELEVANT FACTUAL BACKGROUND ...........1

II. PROPOSED PROCEDURES ...................................................................2

  A. Settlements ...............................................................................3

    1. Definitions ......................................................................3

    2. Demand Letters ..............................................................4

    3. Settlement Agreements: ..................................................5

    4. Adjustments to Net Profit Amount: ...............................6

    5. Court Approval ...............................................................6

  B. Litigation ..................................................................................8

  C. Business Judgment ...................................................................9

III. THE COURT MAY APPROVE THE RELIEF REQUESTED UNDER THE COURT'S BROAD EQUITABLE POWERS .........................9

  A. The Settlement Procedures Are Appropriate .........................9

  B. Receiver Has Authority to Bring Avoidance Actions .........12

  C. Actual Fraudulent Intent Exists Through Both the Ponzi Scheme Presumption and the Badges of Fraud ....................13

  D. Statute of Limitations and Statute of Repose........................14

IV. NOTICE OF THE HEARING ON THIS MOTION SHOULD BE DEEMED APPROPRIATE AND SUFFICIENT ...........................16

V. CONCLUSION ....................................................................................17

1

## TABLE OF AUTHORITIES

2

<u>Cases</u>

3

*Barclay v. Mackenzie* (*In re AFI Holding, Inc.*),

4

    525 F.3d 700 (9th Cir. 2008)........................................................................13

5

*Bauer Bros. LLC v. Nike, Inc.*,

6

    2012 WL 1899838, at *3 (S.D. Cal. May 24, 2012) ........................................8

7

*CFTC v. Topworth Int'l, Ltd.*,

8

    205 F.3d 1107 (9th Cir. 1999)......................................................................10

9

*Delphix Corp. v. Actifio, Inc.*,

10

    2014 WL 4145520, at *2 (N.D. Cal. Aug. 20, 2014)..................................7, 8

11

*Donell v. Ghadrdan*,

12

    2013 U.S. Dist. LEXIS 26393, *5 (C.D. Cal. 2013)......................................14

13

*Donell v. Kowell*,

14

    533 F.3d 762 (9th Cir. 2007).....................................................................12, 13

15

*Donell v. Mojtahedian*,

16

    976 F.Supp.2d 1183 (C.D. Cal. 2013 ...........................................................14

17

*Foltz v. State Farm Mut. Auto. Ins. Co.*,

18

    331 F.3d 1122 (9th Cir. 2003)........................................................................7

19

*Gordon v. Dadante*,

20

    336 F. App'x 540 (6th Cir. 2009).................................................................10

21

*Hayes v. Palm Seedlings Partners - A* (*In re Agric. Research & Tech. Grp., Inc.*),

22

    916 F.2d 528 (9th Cir. 1990).........................................................................13

23

*In re Cohen*,

24

    199 B.R. 709 (B.A.P. 9th Cir. 1996).............................................................13

25

*In re First Alliance Mortgage Co.*,

26

    269 B.R. 428 (C.D. Cal. 2001)......................................................................16

27

*In re Lake State Commodities, Inc.*,

28

    253 B.R. 866 ..................................................................................................13

ii

*In re Nat'l Consumer Mortgage, LLC*,

    2013 U.S. Dist. LEXIS 5986 at *32-33 (D. Nev. 2013) ................................ 13

*In re United Energy Corp.*,

    944 F.2d 589 n.6 (9th Cir. 1991) .......................................................... 13, 14

*Janvey v. Alquire*,

    No. 3:09-cv-0724, 2014 WL 12654910 at *17 (N.D. Tex. July 30, 2014.) .... 11

*Koninklijke Philips N.V v. Elec-Tech International Co.*, Ltd.,

    2015 WL 581574, at *1-2 (N.D. Cal. Feb. 10, 2015) .................................... 7

*Oregonian Publ'g Co. v. US. Dist. Court*,

    920 F.2d 1462 (9th Cir. 1990) ........................................................... 7

*Richie Capital Mgmt., v. Kelley*,

    785 F.3d 273 (8th Cir. 2015.) ........................................................ 10

*Schwartz v. Cook*,

    2016 WL 1301186, at *2 (N.D. Cal. Apr. 4, 2016) ................................... 7, 8

*SEC v. Capital Consultants, LLC*,

    397 F.3d 733 (9th Cir. 2005) ............................................................ 10

*SEC v. Elliot*,

    953 F.2d 1560, 1569 (11th Cir. 1992) ................................................. 10

*SEC v. Hardy*,

    803 F .2d 1034, 1038 (9th Cir. 1986) ................................................... 9

*Sec. & Exch. Comm'n v. Ruderman*,

    No. CV 09-02974, 2011 WL 5857452, at *3 (C.D. Cal. Nov. 21, 2011) ....... 11

*United States v. Butler*,

    2012 WL 1535749, at *2 (N.D. Cal. May 1, 2012) ....................................... 7

*United States v. Edwards*,

    595 F.3d 1004 (9th Cir. 2010) ......................................................... 11

MEMO OF P/A ISO MOTION FOR (1) AUTHORITY TO PURSUE AVOIDANCE ACTION; (2) APPROVAL OF PROPOSED PROCEDURES; AND (3) APPROVAL OF FORM AND MANNER OF NOTICE

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION AND RELEVANT FACTUAL BACKGROUND

On April 1, 2019, this Court entered Preliminary Injunction Order and Order Appointing Permanent Receiver ("Receiver Order"), Doc. No. 10, appointing Bradley D. Sharp ("Receiver") as permanent receiver for the estate of defendant Direct Lending Investments LLC ("DLI"), and Direct Lending Income Fund, L.P., Direct Lending Income Feeder Fund, Ltd., DLI Capital, Inc., DLI Lending Agent, LLC, and DLI Assets Bravo, LLC and their successors, subsidiaries and affiliated entities (the "Receivership Entities").

As part of the Receiver's duties, he has analyzed the payments made by the Receivership Entities to investors and others to determine whether there are transfers that can be avoided as voidable transfers under applicable law. The Receiver's Report Regarding the Investigation of the Receivership Entities' Business Conduct and Recommendations Regarding Distributions dated November 13, 2020 (ECF No. 320) (the "Receiver's Report") sets forth the Receiver's conclusions regarding the Receivership Entities being run by Brendan Ross as a fraudulent scheme and the conclusion that Ross, through DLI, was running a Ponzi scheme.

DLI obtained investors for its loan portfolios through two "feeder" funds which were structured as limited partnerships, one covering the domestic investors (Direct Lending Income Fund, L.P. ("DLIF")) ("DLIF Investors"), and after October 1, 2016 one for foreign investors made through a related Cayman Islands limited partnership (Direct Lending Income Feeder Fund, Ltd. ("DLIFF")). This Motion covers only the investments made in DLIF and the payments made by DLIF back to the DLIF Investors.

The Receiver's investigation has revealed that some DLIF Investors did not receive any funds back on account of their investments, some DLIF Investors received a portion of the funds they invested, and other investors received back more than the dollar amount than they invested.  The allowed claims of DLIF Investors

1

were evaluated in accordance with the Receiver's Distribution Plan based on their Total Investment, which eliminated the amount of claims for purported profits or interest the investors expected to receive. Pre-receivership, DLIF Investors were promised returns based on the net investment value ("NAV") of their investments, which was not an accurate representation of the true value of their investments. Accordingly, the portion of the claims attributable to those fictitious returns have been disallowed.

Some DLIF Investors, however, were actually paid substantial returns prior to the Receivership. Those investors received total profits that the Receiver has calculated to be tens of millions in the aggregate in excess of the amounts of their principal investments in DLIF (the "Net Winnings").[1] A total number of more than hundreds of  DLIF Investors received the Net Winnings (the "Net Winners"). The Receiver contends that the Net Winnings are transfers made to the investors that are avoidable and recoverable for the benefit of all DLIF Investors (the "Net Winnings Claims"). This Motion seeks authority to pursue collection of the Net Winnings from the Net Winners and to fix procedures for the litigation and settlement process to streamline the process and save costs.

## II.   **PROPOSED PROCEDURES**

The Receiver's proposed procedures for pursuing Net Winnings Claims are designed to resolve the claims as efficiently and cost effectively as possible, thereby maximizing the recovery. Given the timing of transfers to the Net Winners, the Receiver seeks to move promptly and expeditiously so as to avoid losing the ability to recover transfers that fall outside the seven-year statute of repose, which is discussed further below. The Receiver proposes the following procedures for pursuing the Net Winnings Claims:

---

[1] Some DLIF Investors claims have been aggregated pursuant to the Distribution Plan where they held multiple accounts with the same taxpayer identification number.

## A.   Settlements

The Receiver proposes a procedure to incentivize Net Winners to settle the Net Winner Claims promptly, without the need for litigation. Litigation is expensive and time-consuming for both sides and consumes judicial resources. Accordingly, the Receiver proposes and seeks approval of the following settlement procedures:

### 1.   Definitions

(a) "Demand Letters" means and refers to letters that the Receiver will send to Net Winner Recipients, setting forth a demand for payment and offer of settlement pursuant to these Settlement Procedures.

(b) "Early Settlement Period" shall mean and refer to the period of time that is 45 days following the delivery of the Demand Letters.

(c) "Hardship Discount" means and refers to a request by Net Winner Recipient for a discount on the amounts owed on account of an inability to be paid, which is subject to proof and documentation submitted to, and approved by the Receiver, in his business judgment. Eligibility for the program will be based on indicators of need, such as an inability to pay for necessary living expenses, such as housing, food, utilities and transportation, inability to pay medical expenses, a necessity to return to work for retirees, or the threat of declaring personal bankruptcy. Any Net Winner Recipient choosing to request a Hardship Discount will be required to submit to the Receiver on a confidential basis copies of the last three years of federal tax returns, three years of statements from all financial accounts, a sworn financial statement reflecting all assets, liability, current income and expenses, and a list of all transfers over $5,000 made within the past four years.

(d) "Net Winner Claim" means and refers to the Receiver's claims to avoid and recover the net amount paid to a Net Winner Recipient above the amount of principal invested by the Net Winner Recipient, less any credit applied by the Receiver for a Hardship Discount or for a Reasonably Sustainable Defense.

MEMO OF P/A ISO MOTION FOR (1) AUTHORITY TO PURSUE AVOIDANCE ACTION; (2) APPROVAL OF PROPOSED PROCEDURES; AND (3) APPROVAL  OF FORM AND MANNER OF NOTICE

(e) "Net Winner Recipients" means and refers to persons, including trusts, companies and other legal entities, who received funds from the Receivership Entities in excess of the amount that they invested with the Receivership Entities.

(f) "Reasonably Sustainable Defense" means and refers to a defense asserted by a Net Winner Recipient, subject to proof requested by the Receiver, which the Receiver determines in his business judgment has a reasonable likelihood of being sustained by a court.

(g) "Settlement Parameters" means and refers to the percentage and dollar figures set forth herein.

**2.    Demand Letters**

The Receiver will send Demand Letters to the Net Winner Recipients who received more than $10,000 in Net Winnings setting forth at least the following information:

(a) the total amount of Net Winner Claim ("Profit Amount");

(b) the Receiver's demand for the return of the Profit Amount and the legal basis for such claims;

(c) an offer to settle the Net Winnings Claims without litigation depending on the timing of the settlement as follows:

(1) If a settlement agreement signed within the Early Settlement Period, e.g. 45 days of the date of the Demand Letter, the Net Winnings Claim can be settled for 50% of the Profit Amount;

(2) If a settlement agreement is signed in the 45 days following the Early Settlement Period, the Net Winnings Claim can be settled for 60% of the Profit Amount;

(3) If a settlement is signed following that initial 90 day period, the Net Winnings Claim can be settled for 70% of the Profit Amount;

4

(4) Once the Receiver has filed a complaint in connection with a Net Winnings Claim, the Receiver will settle for 80% of the Profit Amount.

(collectively referred to as the "Settlement Benchmarks")

(d) a draft settlement agreement substantially in the form of Exhibit "1" attached to the Sharp Declaration.

**3.     Settlement Agreements:**

(a) The Receiver will include a proposed settlement agreement, substantially in the form of Exhibit "1" attached to the Sharp Declaration, with each Demand Letter,

(b) All terms of the settlement agreement will be final.

(c) In order to accept the offer, a Net Winner Recipient must sign the settlement agreement and return it the Receiver or his counsel.

(d) The offer will not be deemed accepted until the signed documents have been received.

(e) Settlement agreements executed in compliance with these procedures will be immediately effective, without further Court approval.

(f) If a Net Winner Recipient requests payment terms, the Receiver may agree to installment payments of up to 12 months, he may increase the amount of the demand up to 10% more than the Settlement Benchmarks, and he will obtain a stipulated judgment to be held by the Receiver and not filed with the Court or otherwise sought to be enforced, provided the Net Winner Recipient timely makes all required payments under the settlement agreement. If the Net Winner Recipient defaults on any payments and does not cure such default within 10 days, the Receiver, in his discretion, may file a complaint against the Net Winner Recipient together with the stipulated judgment and proof of the Net Winner Recipient's default and request entry of the stipulated judgment.

### 4.      Adjustments to Net Profit Amount:

(a) The Receiver may in his business discretion, without the need for further Court approval, offer Hardship Discounts of up to 100% of the amount of a Net Winner Claim. Any Net Winner Recipient requesting a Hardship Discount must submit all required documentation to the Receiver to be considered for such a discount, and the Receiver shall, in his discretion, to determine the validity of such a request and the impact on collectability of a judgment. Any such Hardship Discount approved by the Receiver will reduce the amount of the Net Winner Claim by that amount, and the Settlement Parameters in section 3 hereof shall apply to the reduced amount.

(b) The Receiver may in his business discretion, without the need for further Court approval, consider a Reasonably Sustainable Defense and make adjustments to the Net Winner Claim amount, of up to 100% of the amount of a Net Winner Claim. Any such Reasonably Sustainable Defense approved by the Receiver will reduce the amount of the Net Winner Claim by that amount and the Settlement Parameters in section 3 hereof shall apply to the reduced amount.

### 5.      Court Approval

(a) Provided that a proposed settlement represents a minimum recovery of at least the amounts in the Settlement Benchmarks pursuant to the terms set forth herein, as may be adjusted pursuant to Section 4 above, the Receiver may consummate settlements in in his business judgment without further leave of the Court or additional notice.

(b) If a proposed settlement amount does not fall within these established settlement procedures or meet the Settlement Benchmarks, the Receiver shall file a motion with the Court seeking Court approval of such a settlement.  So as not to harm his ability to engage in settlement discussions with other parties or otherwise influence the outcome of other settlement discussions, the Receiver requests

authority in advance to file any such motion for approval of a settlement outside of
these settlement parameters under seal.

In the Ninth Circuit, there is a "strong presumption in favor of access to court
records" in both civil and criminal actions, which can only be overridden if there are
"sufficiently compelling reasons for doing so." *United States v. Butler*, 2012 WL
1535749, at \*2 (N.D. Cal. May 1, 2012) (quoting *Foltz v. State Farm Mut. Auto. Ins.
Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003)). "A party seeking to seal court proceedings
or documents can overcome the presumed right of public access under the First
Amendment 'only if three substantive requirements are satisfied: (1) closure serves a
compelling interest; (2) there is a substantial probability that, in the absence of
closure, this compelling interest would be harmed; and (3) there are no alternatives to
closure that would adequately protect the compelling interest." *Id*. (quoting
*Oregonian Publ'g Co. v. US. Dist. Court*, 920 F.2d 1462, 1466 (9th Cir. 1990)).
Here, there is such a compelling interest; there is a substantial probability that, in the
absence of sealing, that interest will be harmed; and there are no alternative to
sealing that would adequately protect that compelling interest. Compelling reasons
have been found to seal, for example, documents containing "information about [a
party's] business performance, structure, and finances that could be used to gain
unfair business advantage against them," *Schwartz v. Cook*, 2016 WL 1301186, at \*2
(N.D. Cal. Apr. 4, 2016); documents containing "highly sensitive information
regarding [the party's] product architecture and development," *Delphix Corp. v.
Actifio, Inc*., 2014 WL 4145520, at \*2 (N.D. Cal. Aug. 20, 2014); and documents in
the form of "emails containing information about [a party's] business practices,
recruitment efforts, and discussions regarding potential partnerships with other
product manufacturers," *Koninklijke Philips N.V v. Elec-Tech International Co*., Ltd.,
2015 WL 581574, at \*1-2 (N.D. Cal. Feb. 10, 2015).

Some Net Winners could use the settlement percentages reached with other
Net Winners to try to gain an unfair advantage. The specific terms and conditions of

MEMO OF P/A ISO MOTION FOR (1) AUTHORITY TO PURSUE
AVOIDANCE ACTION; (2) APPROVAL OF PROPOSED PROCEDURES;
AND (3) APPROVAL  OF FORM AND MANNER OF NOTICE

the settlements that the Receiver has reached with other Net Winners are not, and
should not be, relevant to other Net Winners. The negotiated agreements will reflect
that Receiver's strategy, strengths and weaknesses in his cases, and information that
will likely be used against him in subsequent settlement negotiations. *See, e.g.,
Schwartz v. Cook*, 2016 WL 1301186, at \*2 (N.D. Cal. Apr. 4, 2016) (sealing
"information about [a party's] business performance, structure, and finances that
could be used to gain unfair business advantage against them"); *Koninklijke Philips*,
2015 WL 581574, at \*1-2 (sealing "information about [a party's] business practices,
recruitment efforts, and discussions regarding potential partnerships with other
product manufacturers"); *Delphix*, 2014 WL 4145520, at \*2 (sealing documents
containing "highly sensitive information regarding [a party's] product architecture
and development"); *Bauer Bros. LLC v. Nike, Inc*., 2012 WL 1899838, at \*3 (S.D.
Cal. May 24, 2012) (finding compelling reasons to seal documents containing
marketing and advertising strategies and business data).

Accordingly, in the event that it becomes necessary for the Receiver to obtain
separate Court approval of any particular settlement agreement, he believes that it is
appropriate to file such a motion and the agreement under seal.

**B.    Litigation**

If 60 days have passed from mailing of the Demand Letter and a Net Winner
Recipient has not accepted the settlement offer, the Receiver may file a complaint
("Net Winner Adversary Proceedings") against each Net Winner Recipient who has
not accepted a settlement offer. In order to minimize the administrative expenses
associated with the Net Winner Adversary Proceedings, the Receiver requests that
they all be managed and adjudicated by one District Court Judge and one Magistrate
Judge who are familiar with the underlying facts. Many of the cases may be filed at
the same time and, for efficiency purposes, should be kept on the same track. Having
the cases before one District Court Judge and one Magistrate Judge will also avoid
inconsistent rulings, which could potentially lead to disparate treatment of similarly

8

Case No. 2:19–cv–02188–DSF–MRW          MEMO OF P/A ISO MOTION FOR (1) AUTHORITY TO PURSUE
AVOIDANCE ACTION; (2) APPROVAL OF PROPOSED PROCEDURES;
AND (3) APPROVAL  OF FORM AND MANNER OF NOTICE

situated prospective defendants. Accordingly, the Receiver believes it is appropriate for  all Net Winner Adversary Proceedings to be transferred to this Court as related actions and  will file a notice of related action with each complaint pursuant to Local Rule 83-1.3.1.

In addition to the cases treated as related actions and transferred to this Court, the cases should follow the Federal Rules of Civil Procedure and Local Rules of the Court. The Receiver will request that all settlement conferences be held before the Magistrate Judge and may seek permission from the Magistrate Judge to schedule multiple settlement conferences on the same day so as to minimize administrative expenses.

### C.    Business Judgment

The Receiver's objective in pursuing the Net Winner Claims is to maximize the net recovery to the receivership estate. The Receiver will use his business judgment at all times in pursuing Net Winner Claims and remain focused on the objective of maximizing recovery. This may include seeking exceptions to the procedures described above in circumstances that warrant exception. The Receiver may request tolling agreements to stop the running of statute of limitations and statutes of repose. The Receiver may also seek to engage counsel on a contingency basis to pursue recovery of the Net Winner Claims.

## III.    THE COURT MAY APPROVE THE RELIEF REQUESTED UNDER THE COURT'S BROAD EQUITABLE POWERS

### A.    The Settlement Procedures Are Appropriate

The "primary purpose of equity receiverships is to promote orderly and efficient administration of the estate by the district court for the benefit of creditors." *SEC v. Hardy*, 803 F.2d 1034, 1038 (9th Cir. 1986). To that end, district courts have broad powers to determine what is necessary for the administration and supervision of an equity receivership. *See SEC v. Capital Consultants, LLC*, 397 F.3d 733, 738

MEMO OF P/A ISO MOTION FOR (1) AUTHORITY TO PURSUE AVOIDANCE ACTION; (2) APPROVAL OF PROPOSED PROCEDURES; AND (3) APPROVAL  OF FORM AND MANNER OF NOTICE

(9th Cir. 2005). As the Ninth Circuit explained:

> A district court's power to supervise an equity receivership and to determine the appropriate action to be taken in the administration of the receivership is extremely broad. The district court has broad powers and wide discretion to determine the appropriate relief in an equity receivership.

*Id.* (emphasis added; citations omitted); *see also CFTC v. Topworth Int'l, Ltd.*, 205 F.3d 1107, 1115 (9th Cir. 1999) ("This court affords 'broad deference' to the [district] court's supervisory role and 'we generally uphold reasonable procedures instituted by the district court that serve th[e] purpose' of orderly and efficient administration of the receivership for the benefit of creditors."). "The power of a district court to impose a receivership or grant other forms of ancillary relief does not in the first instance depend on a statutory grant of power from the securities laws. Rather, the authority derives from the inherent power of a court of equity to fashion effective relief." *SEC v. Wencke*, 622 F.2d 1363, 1369 (9th Cir. 1980). The "primary purpose of equity receiverships is to promote orderly and efficient administration of the estate by the district court for the benefit of creditors." *SEC v. Hardy*, 803 F.2d 1034, 1038 (9th Cir 1986). As the appointment of a receiver is authorized by the broad equitable powers of the court, any distribution of assets must also be done equitably and fairly. *See SEC v. Elliot*, 953 F.2d 1560, 1569 (11th Cir. 1992).

Receivership courts, like bankruptcy courts, have discretion to approve settlements of disputed claims to receivership assets. *See e.g.*, *Richie Capital Mgmt., v. Kelley*, 785 F.3d 273, 278 (8th Cir. 2015.) There are no "federal rules [that] prescribe a particular standard for approving settlements in the context of an equity receivership; instead a district court has wide discretion to determine what relief is appropriate." *Gordon v. Dadante*, 336 F. App'x 540, 549 (6th Cir. 2009). Nonetheless, in this Circuit, the Court must consider the following factors in examining a proposed settlement:  the probability of success in the litigation; the

1   difficulties, if any, to be encountered in the matter of collection;  the complexity and
2   expense of the litigation; and the paramount interests of creditors, giving proper
3   deference to their reasonable views regarding the proposed compromise.  *Sec. &*
4   *Exch. Comm'n v. Ruderman*, No. CV 09-02974, 2011 WL 5857452, at *3 (C.D. Cal.
5   Nov. 21, 2011).)  "Although the Court may not simply 'rubber-stamp' the decision to
6   enter into a settlement, it need not conduct an exhaustive investigation, hold a mini-
7   trial on the merits of the claims sought to be compromised, or require that the
8   settlement be the best that could possibly be achieved."  *Id.*

9       This Court is instructed by Local Rule 66-8 to look to bankruptcy courts for
10  guidance in the receivership context (L.R. 66-8). The Ninth Circuit has held that
11  "[b]efore approving a settlement agreement, the bankruptcy court is charged with
12  considering the 'fairness, reasonableness, and adequacy' of the agreement." *United*
13  *States v. Edwards*, 595 F.3d 1004, 1012 (9th Cir. 2010) (citations omitted.) Because
14  compromises are favored in bankruptcy actions, courts generally give deference to a
15  trustee's business judgment and approve settlements negotiated in good faith and
16  which are "reasonable, fair, and equitable." *Ruderman*, 2011 WL 585752, at *3, *see*
17  L.R. 66-8.   This is consistent with the goal of both receiverships and liquidation
18  bankruptcy actions: the preservation and fair distribution of the liquidated assets.
19  *Janvey v. Alquire*, No. 3:09-cv-0724, 2014 WL 12654910 at *17 (N.D. Tex. July 30,
20  2014.)

21      The Settlement Procedures propose approval of settlements of the Net Winner
22  Claims at an amount of not less than 50% at the low end and up to 80% pursuant to
23  the Settlement Benchmarks. In the Receiver' business judgment, these Settlement
24  Benchmarks are reflective of the fair settlement value of these cases, taking into
25  account costs, risks, costs of collection. The Receiver believes that settlements at this
26  percentage would be negotiated in good faith and are "reasonable, fair, and
27  equitable."  The Settlement Procedures additionally propose allowing the Receiver
28  discretion to adjust the amount of the Net Winner Claim downward if he deems in

11

his business judgment that a Net Winner has sufficiently demonstrated that they should be given a Hardship Discount or they have other demonstrated a Reasonably Sustainable Defense.

The proposed Settlement Procedures will achieve the goal of bringing substantial assets into the receivership estate while avoiding the uncertainty of litigation and the costs and risks of both litigation and collection. The Receiver therefore requests that the Court approve the Settlement Procedures.

## B.    Receiver Has Authority to Bring Avoidance Actions

The Receiver has been granted the full powers of an equity receiver over all funds, property and assets belonging to, being managed by or in the possession of or control of the Receivership Entities.  (Receiver Order, Section VI.)  The Receiver Order provides that the Receiver has been granted specific powers and duties to sue, marshal, collect and take possession of the Receivership Entities' property, to investigate and conduct discovery to locate and account for the assets of or managed by the Receivership Entities, and to "take such action as is necessary and appropriate to preserve and take control of and to prevent the dissipation, concealment, or disposition of any assets of or managed by" the Receivership Entities, among others. (Receiver Order Section VI.A. and D.).

Under the California Uniform Voidable Transaction Act ("CUVTA"), in general terms, transfers are subject to avoidance and recovery when the transfers are made with (1) actual intent to defraud or (2) constructive fraudulent intent based on the lack of reasonably equivalent value being provided in exchange. Cal. Civ. Code § 3439.04(a). Federal equity receivers have standing to pursue fraudulent transfer claims on behalf of entities in receivership against the recipients of fraudulent transfers. *See Donell v. Kowell*, 533 F.3d 762, 776-777 (9th Cir. 2007).

## C. Actual Fraudulent Intent Exists Through Both the Ponzi Scheme Presumption and the Badges of Fraud

Where a Ponzi scheme is established, the perpetrator's actual intent to hinder, delay or defraud is inferred simply from the operation of a Ponzi scheme itself. "[T]he mere existence of a Ponzi scheme is sufficient to establish actual intent to hinder, delay or defraud." *Barclay v. Mackenzie* (*In re AFI Holding, Inc.*), 525 F.3d 700, 704 (9th Cir. 2008) (quoting *Hayes v. Palm Seedlings Partners - A* (*In re Agric. Research & Tech. Grp., Inc.*), 916 F.2d 528, 534 (9th Cir. 1990); *In re Cohen*, 199 B.R. 709,717 (B.A.P. 9th Cir. 1996) (actual intent to defraud is presumed when the payments were made from entities operating a Ponzi scheme); *see also Donell*, 533 F.3d at 767; *In re Slatkin*, 525 F.3d 805, 814 (9th Cir. 2008) (holding that transferor's operation of a Ponzi scheme "with the actual intent to defraud his creditors conclusively establishes the debtor's fraudulent intent under 11 U.S.C. § 548(a)(1)(A) and California Civil Code § 3439.04(a)(1), and precludes relitigation of that issue"); *In re Nat'l Consumer Mortgage, LLC*, 2013 U.S. Dist. LEXIS 5986 at *32-33 (D. Nev. 2013) ("Courts presume actual intent in relation to a Ponzi scheme because the debtor knows at the time of the transfer that the scheme ultimately must collapse.").

Once fraudulent intent is established and the transfer is shown to be made in furtherance of the Ponzi scheme, the burden then lies with the transferee to show it took in good faith ***and*** provided equivalent value in exchange. *See* Cal. Civ. Code § 3439.08(a); *In re Cohen*, 199 B.R. at 718-719. Payments made to profiting investors beyond the amount of their investment are not considered to be in exchange for value. *In re United Energy Corp.*, 944 F.2d 589, 595 n.6 (9th Cir. 1991) ("Such excess amounts would be avoidable because the debtor would not have received reasonably equivalent value for them."). This is because, among other reasons, such profits are fictitious as "they do not represent a return on legitimate investment activity." *See In re Lake State Commodities, Inc.*, 253 B.R. 866, 872 (citing to *In re*

13

*United Energy Corp.*, *supra*, 944 F.2d at 595). Thus, the Ninth Circuit has adopted the "netting rule" whereby amounts paid to investors are netted against their investments. *See Donell v. Ghadrdan*, 2013 U.S. Dist. LEXIS 26393, *5 (C.D. Cal. 2013) (citing *Donell v. Kowell*, 533 F.3d at 771). Any excess in the form of fictitious profits are subject to avoidance and recovery. *Id.*

### D. Statute of Limitations and Statute of Repose

Under the CUVTA, a claim for recovery of a fraudulent transfer based on actual intent to defraud generally must be brought within four years of the transfer or within one year of when the transfer was or reasonably could have been discovered by the claimant. Cal. Civ. Code § 3439.09(a). Accordingly, claims to recover investor profits paid from a Ponzi scheme, for which actual intent to defraud is presumed, generally must be brought within four years of the transfer or one year of when the court-appointed receiver discovered them or reasonably could have discovered them. *See Donell v. Mojtahedian*, 976 F.Supp.2d 1183, 1188-1189 (C.D. Cal. 2013 (rejecting argument that the one year limitations period from discovery begins to run immediately upon receiver's appointment).

The CUVTA also contains a seven-year statute of repose which limits recoverable transfers to those that occurred within seven years of filing the complaint. *See* Cal. Civ. Code § 3439.09(c). Accordingly, the maximum "reach back" period for recoverable fraudulent transfers is seven years from the date a complaint is filed. The Receiver believes that all of the Net Winner Claims fall within the applicable statute of limitations and statute of repose.

Additionally, the statutes of limitation and statutes of repose have been tolled by Governor Newsom's Executive Order N-38-20 and ER 9 due to the COVID-19 pandemic. Pursuant to Executive Order N-38-20, on April 6, 2020, the Council adopted ERs 1-11. Among those rules was ER 9, which tolled all statutes of limitation for civil causes of action until 90 days after the Governor declares the state of emergency related to the COVID-19 pandemic is lifted. As originally adopted,

Case No. 2:19–cv–02188–DSF–MRW

MEMO OF P/A ISO MOTION FOR (1) AUTHORITY TO PURSUE AVOIDANCE ACTION; (2) APPROVAL OF PROPOSED PROCEDURES; AND (3) APPROVAL OF FORM AND MANNER OF NOTICE

ER 9 provided:

> Notwithstanding any other law, the statutes of limitation
> for civil causes of action are tolled from April 6, 2020,
> until 90 days after the Governor declares that the state of
> emergency related to the COVID-19 pandemic is lifted.[2]

In its April 6, 2020 report prior to the meeting and vote to adopt ER 9, the Council explained the intended effect of ER 9:  "Tolling stops or suspends the running of time in statutes of limitations; when the tolling period ends (90 days from the end of the state of emergency), the time to bring an action will begin to run again."[3] Shortly after the adoption of ER 9, the Council thereafter circulated an alternative proposed rule,[4] which has now been adopted and went into effect on May 29, 2020.  ER 9 now clarifies, among other things, that it applies to both statutes of limitation and statutes of repose.[5]  Regarding statutes of limitation and repose that are over 180 days, ER 9(a) provides:

> Notwithstanding any other law, the statutes of limitations
> and repose for civil causes of action that exceed 180 days
> are tolled from April 6, 2020, until October 1, 2020.[6]

ER 9 "is intended to apply broadly to toll any statute of limitations on the filing of a pleading in court asserting a civil cause of action."[7]

---

[2] *See* https://www.courts.ca.gov/documents/2020-04-06-rules-effective-04-06-2020.pdf, pp. 28-29.

[3] *See* https://caanet.org/app/uploads/2020/04/20-141-Adoption-of-Emergency-Rules-FINAL.pdf, p. 13.

[4] *See* https://jcc.legistar.com/View.ashx?M=A&ID=790621&GUID=A0ED0998-D827-4792-9BD1-A3A4FCF939AA, pp. 3-4.

[5] *See* https://www.courts.ca.gov/documents/appendix-i.pdf, p. 13.

[6] *Id.*

[7] *Id.*, p. 14.

MEMO OF P/A ISO MOTION FOR (1) AUTHORITY TO PURSUE AVOIDANCE ACTION; (2) APPROVAL OF PROPOSED PROCEDURES; AND (3) APPROVAL  OF FORM AND MANNER OF NOTICE

1

2

## IV.   <u>NOTICE OF THE HEARING ON THIS MOTION SHOULD BE DEEMED APPROPRIATE AND SUFFICIENT</u>

The Receiver has (a) served notice of the hearing on this Motion on the parties and by mail to the known non-investor creditors of the Receivership Entity; and (b) posted the notice of hearing and the Motion on the Receiver's website (https://cases.stretto.com/dli). All of the Net Winners who may be impacted by the Motion will receive Notice of the Motion. The Receiver has also directed Stretto to email the notice of hearing to all investors within one business day following the filing of the Motion.  This notice complies with the provisions of Local Civil Rule 66-7 to the extent that notice to investors is required. The Receiver requests that the Court approve this form of notice as reasonable, appropriate, and the most cost-effective means of providing notice of the hearing under the circumstances, as there are approximately 975 investors both in the United States and overseas, and to the extent necessary, to approve the notice given as reasonable, limited notice appropriate under the circumstances and in the interests of time and cost.  As a court of equity supervising the receivership estate, the Court may make appropriate administrative orders governing the receivership, including limitations on and changes in notice and other procedures.  *See* F.R. Civ. P. 5(a) and (c) (authorizing the court to modify service procedures when numerous defendants are involved in litigation).  Local Civil Rule 66-8 directs a receiver to administer receivership estates in a manner similar to estates in bankruptcy, where orders limiting notice are routinely granted.  *See In re First Alliance Mortgage Co.*, 269 B.R. 428, 442 (C.D. Cal. 2001) (referencing in *dicta* in the court's recitation of facts the bankruptcy court's order limiting notice issued in that case); 11 U.S.C. section 102(1)(A) ("after notice and a hearing" means "after such notice as is appropriate in the particular circumstances, and such opportunity for hearing as is appropriate in the particular circumstances").

16

V.      **CONCLUSION**

For the foregoing reasons, the Receiver respectfully requests that this Court grant the relief as requested in detail in the Motion and all other appropriate relief.

DATED: March 12, 2021                    DIAMOND McCARTHY LLP

                                         By:  _/s/ Kathy Bazoian Phelps_
                                              Kathy Bazoian Phelps
                                              Counsel for Bradley D. Sharp
                                              Permanent Receiver