KATHY BAZOIAN PHELPS (155564)
kphelps@diamondmccarthy.com
DIAMOND MCCARTHY LLP
1999 Avenue of the Stars, Suite 1100
Los Angeles, California 90067-4402
Telephone: (310) 651-2997

CHRISTOPHER D. SULLIVAN (148083)
csullivan@diamondmccarthy.com
STACEY L. PRATT (124892)
stacey.pratt@diamondmccarthy.com
DIAMOND MCCARTHY LLP
150 California Street, Suite 2200
San Francisco, CA 94111
Phone: (415) 692-5200

Counsel for Bradley D. Sharp,
Permanent Receiver

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION – LOS ANGELES

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>DIRECT LENDING INVESTMENTS LLC,<br><br>Defendant. | Case No. 2:19-cv-02188-DSF-MRW<br>Hon. Dale S. Fischer<br><br>**DECLARATION OF BRADLEY D. SHARP IN SUPPORT OF MOTION OF RECEIVER FOR:**<br>**(1) AUTHORITY TO PURSUE AVOIDANCE ACTIONS;**<br>**(2) APPROVAL OF PROPOSED PROCEDURES; AND**<br>**(3) APPROVAL OF FORM AND/OR LIMITATION OF NOTICE UNDER LOCAL CIVIL RULE 66-7**<br><br>Date:    April 12, 2021<br>Time:    1:30 p.m.<br>Dept.:   Courtroom 7D |

1

Case No. 2:19-cv-02188-DSF-MRW          DECLARATION OF BRADLEY D. SHARP IN SUPPORT OF
MOTION FOR (1) AUTHORITY TO PURSUE AVOIDANCE ACTION;  (2) APPROVAL OF PROPOSED
PROCEDURES; AND (3) APPROVAL OF FORM AND MANNER OF NOTICE

Place:   United States District Court
350 West 1st Street,
Los Angeles, CA 90012

I, Bradley D. Sharp, declare and state:

1.     I was appointed Receiver by this Court for defendant Direct Lending Investments LLC ("DLI"), and Direct Lending Income Fund, L.P.("DLIF"), Direct Lending Income Feeder Fund, Ltd., DLI Capital, Inc., DLI Lending Agent, LLC, and DLI Assets Bravo LLC, and their successors, subsidiaries, and affiliated entities (the "DLI Receivership Entities") by order entered on April 1, 2019.

2.     I submit this Declaration in support of the Motion of Receiver for: (1) Authority to Pursue Avoidance Actions; (2) Approval of Proposed Procedures; and (3) Form and/or Limitations of Notice Under Local Rule 66-7.

3.     I have personal knowledge of the facts set forth in this Declaration, and, if called to testify, could testify competently thereto.

4.     Pursuant to the Preliminary Injunction Order and Order Appointing Permanent Receiver (Dkt. No. 10), I have been given the full powers of an equity receiver over all funds, property, assets, and choses in action belonging to, being managed by or in the possession or control of, the DLI Receivership Entities and to sue, collect, and take into possession all such property.  I am also authorized to make agreements as may be necessary and advisable in discharging my duties as permanent receiver.

5.     As part of my duties, I have analyzed the payments made by the Receivership Entities to investors and others to determine whether there are transfers that can be avoided as voidable transfers under applicable law. My Report Regarding the Investigation of the Receivership Entities' Business Conduct and Recommendations Regarding Distributions dated November 13, 2020 (ECF No. 320) (the "Receiver's

2

Report") sets forth my conclusions regarding Receivership Entities being run by Brendan Ross as a fraudulent scheme and the conclusion that Ross, through DLI, was running a Ponzi scheme.

6.      DLI obtained investors for its loan portfolios through two "feeder" funds which were structured as limited partnerships, one covering the domestic investors (Direct Lending Income Fund, L.P. ("DLIF")) ("DLIF Investors") and, after October 1, 2016, one for foreign investors made through a related Cayman Islands limited partnership (Direct Lending Income Feeder Fund Ltd. ("DLIFF")).  The Motion covers only the investments made in DLIF and the payments made by DLIF back to the DLIF Investors.

7.      My investigation has revealed that some DLIF Investors did not receive any funds back on account of their investments, some DLIF Investors received a portion of the funds they invested, and other investors received back more than the dollar amount than they invested. The allowed claims of DLIF Investors were evaluated in accordance with my Distribution Plan based on their Total Investment, which eliminated the amount of the claims for purported profits or interest the investors expected to receive. Pre-receivership, DLIF Investors were promised returns based on the net investment value ("NAV") of their investments, which was not an accurate representation to the true value of their investments. Accordingly, the portions of the claims attributable to those fictitious returns have been disallowed.

8.      Some DLIF Investors, however, were actually paid substantial returns prior to the Receivership. Those investors received total profits that I have calculated to be more tens of millions in the aggregate in excess of the amounts of their principal investments in DLIF (the "Net Winnings").[1] A total number of more than hundreds of DLIF Investors received the Net Winnings (the "Net Winners").  I believe that the Net

---

[1] Some DLIF Investors claims have been aggregated pursuant to the Distribution Plan where they held multiple accounts with the same taxpayer identification number.

Winnings are transfers made to the investors that are avoidable and recoverable for the benefit of all DLIF Investors (the "Net Winnings Claims"). The Motion seeks authority to pursue collection of the Net Winnings from the Net Winners and to fix procedures for the litigation and settlement process to streamline the process and save costs.

9.     I believe that the Settlement Procedures set forth in the Motion are fair and reasonable. The proposed procedures for pursuing Net Winnings Claims are designed to resolve the claims as efficiently and cost effectively as possible, thereby maximizing the recovery.

10.     A draft of the proposed form Settlement Agreement is attached as Exhibit "1" hereto. The language in the form Settlement Agreement, if adopted by any of the parties, will resolve all disputes with the agreeing party and in exchange will bring funds into the estate within a short amount of time and without the anticipated high costs and uncertainty of litigation.

11.     I believe that the approval of settlements of Net Winner Claims at an amount of not less than 50% for claims settled in the Early Settlement Period, 60% for the next 45 days, 70% thereafter until a complaint is filed, and 80% after a complaint is filed, without the need for further Court approval, is reasonable under the circumstances. In my business judgment, these settlement percentages are reflective of the fair settlement value of these cases, taking into account costs, risks, and costs of collection. I believe that settlements at this percentage would be negotiated in good faith and are "reasonable, fair, and equitable." The Settlement Procedures additionally propose allowing me the discretion to adjust the amount of the Net Winner Claim downward if I deem in my business judgment that a Net Winner has sufficiently demonstrated that they should be given a Hardship Discount or they have otherwise demonstrated a Reasonably Sustainable Defense. I believe that a Hardship Discount is appropriate where a Net Winner demonstrates an inability to pay, such that collection efforts would be fruitless or would not yield a full recovery. I further believe that if a Net Winner is able to demonstrate a Reasonably Sustainable Defense, that the Net

4

Winner Claim should be adjusted accordingly. While I do not presently contemplate that Net Winners will be able to establish a Reasonably Sustainable Defense, I believe that affording me the flexibility to evaluate such defenses and make any appropriate adjustments in the claim amount is appropriate and within my duties as Receiver. I request that such adjustments be made by me in my business discretion without the need for additional Court authority given the volume of claims and that I, in conjunction with my counsel, are well situated to evaluate the merits of any such defenses as may be asserted.

12.     If a proposed settlement amount does not fall within these established settlement procedures, I will file a motion with the Court seeking Court approval of such a settlement.  So as not to harm my ability to engage in settlement discussions with other parties or otherwise influence the outcome of other settlement discussions, I am requesting authority in advance to file any such motion for approval of a settlement outside of these settlement parameters under seal. I believe that some Net Winners could use the settlement percentages reached with other Net Winners to try to gain an unfair advantage. The specific terms and conditions of the settlements that I reach with other Net Winners are not, and should not be, relevant to other Net Winners. The negotiated agreements will reflect my strategy, strengths and weaknesses in the cases, and that information will likely be used against me in subsequent settlement negotiations.

13.     I believe that the proposed Settlement Procedures will achieve the goal of bringing substantial assets into the receivership estate while avoiding the uncertainty of litigation and the costs and risks of both litigation and collection. In my informed business judgment, I believe that the approval of the Settlement Procedures are fair, reasonable, and appropriate.

14.     There are approximately 975 investors in the Receivership Entity both in the United States and overseas.  I have a website for investors to obtain

5

Case No. 2:19−cv−02188−DSF−MRW          DECLARATION OF BRADLEY D. SHARP IN SUPPORT OF
MOTION FOR (1) AUTHORITY TO PURSUE AVOIDANCE ACTION;  (2) APPROVAL OF PROPOSED
PROCEDURES; AND (3) APPROVAL OF FORM AND MANNER OF NOTICE

information regarding the receivership (https://cases.stretto.com/dli). Additionally, I have directed my Court-approved claims agent, Bankruptcy Management Solutions dba Stretto ("Stretto"), to send by email the notice of hearing on this Motion to all investors. All of the Net Winners who may be impacted by the Motion will receive Notice of the Motion.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on March 12, 2021, at San Juan Capistrano, California.

Bradley D. Sharp
Permanent Receiver

# EXHIBIT 1

## SETTLEMENT AND RELEASE AGREEMENT

This Settlement and Release Agreement ("Agreement"), dated as of _____, 2021, is made by and between Bradley D. Sharp ("Receiver"), in his capacity as Court-appointed permanent receiver for Direct Lending Investments, Inc. and its subsidiaries and affiliates, and _____ ("Transferee").

## RECITALS

A.      On April 1, 2019, this Court entered Preliminary Injunction Order and Order Appointing Permanent Receiver ("Receiver Order"), Doc. No. 10, appointing Bradley D. Sharp ("Receiver") as permanent receiver for the estate of defendant Direct Lending Investments LLC ("DLI"), and Direct Lending Income Fund, L.P., Direct Lending Income Feeder Fund, Ltd., DLI Capital, Inc., DLI Lending Agent, LLC, and DLI Assets Bravo, LLC and their successors, subsidiaries and affiliated entities (the "Receivership Entities").

B.      Transferee was an investor in one or more of the Receivership Entities. The Receiver alleges that during the last seven years, Transferee received transfers from the Receivership Entities of $____ in excess of any amounts paid or value provided to the Receivership Entities, hereinafter referred to herein as the "Transfers." The Receiver has asserted claims against Transferee for avoidance and recovery of the Transfers made to Transferee pursuant to the California Uniform Avoidance Transaction Act. Transferee has disputed the Receiver's claims.

D.      The Receiver and Transferee have agreed to settle and resolve all disputes, and release all claims arising from the transfers from the Receivership Entities to Transferee, under the terms and conditions provided herein.

## AGREEMENT

NOW, THEREFORE, in consideration of the covenants and conditions hereinafter contained, and for other good and valuable consideration the receipt and sufficiency of which is hereby acknowledged the undersigned agree as follows:

1.      Payment.  In consideration of and subject to the covenants and conditions herein Transferees shall pay to the Receiver the total sum of $____ no later than fifteen (15) calendar days following execution of the Agreement. The Settlement Payment is to be  made by check payable to "Bradley D. Sharp, Receiver" to be delivered by check or by wire to the Receiver. Each party shall bear its own bank fees and/or transaction fees.

2.      *[If settlement payment to be paid in installments]* Stipulated Judgment. Contemporaneous with the execution of this Agreement, Transferees have signed the Stipulated Judgment for Disgorgement in favor of the Receiver in the amount of $_____ as against Transferee attached hereto as Exhibit A and delivered the same to the Receiver ("Stipulated Judgment"). The Receiver shall hold the Stipulated Judgment and not seek to have it entered or enforced against Transferee unless and until Transferee defaults on the payment(s) due pursuant to Section 2 above and fail to cure such default within ten business days of being notified in writing of the default by the Receiver or his counsel. If such default occurs and is not cured

within ten business days of Transferee receiving written notice, the Receiver may, in his sole discretion, take all steps necessary to have the Stipulated Judgment entered and enforced against Transferee by all available means. Within three business days following receipt of the settlement sum in full, the original Stipulation for Entry of Judgment will be destroyed.

3.      Mutual Release.  On the condition that all payments due under Section 1 above have been fully made and effective only upon satisfaction of such condition, the Receiver, on the one hand, and Transferees on the other hand, and each of them, for themselves, their agents, employees, partners, directors, officers, successors and assigns, forever, irrevocably and unconditionally release and discharge one another, and their respective officers, directors, representatives, heirs, executors, administrators, receivers, successors, assigns, predecessors, agents, attorneys and employees, of and from any and all claims, demands, debts, obligations, liabilities, costs, expenses, rights of action, causes of action, awards and judgments arising from the transfers making up the Profit Amount, all of which are hereinafter called, "Released Claims."

Each of the Receiver and Transferee acknowledges and agrees that the Released Claims may include claims of every nature and kind whatsoever, whether known or unknown, suspected or unsuspected and further acknowledge that they may be presently unknown or unsuspected, and may be based upon hereafter discovered facts different from, or in addition to, those which they now know, or believe to be true.  Nevertheless, the parties agree that the foregoing release shall be and remain effective in all respects, notwithstanding such different or additional facts, or the discovery thereof, and further hereby expressly waive and relinquish any and all rights provided in California Civil Code Section 1542 which provides as follows:

> "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."

The Receiver and Transferee expressly waive and release any rights and benefits that they have or may have under any similar law or rule of any other jurisdiction pertaining to the matters released herein.  It is the intention of the parties through this Agreement and with the advice of counsel to fully, finally and forever settle and release the claims and disputes existing between them as provided herein, known or unknown.  The releases herein given shall be and remain in effect as full and complete releases of all such matters notwithstanding the discovery of any additional claims or facts relating thereto.

4.      Court Approval Not Required.  The Receiver represents that the Court entered an order on ____, 2021, granting him authority to settle claims that meet certain parameters, which are met in this settlement, without the need for further notice or court order [Doc #____] (the "Settlement Procedures Order").

5.      Confidentiality.  Absent written consent by both Parties or Court order, neither Party shall disclose the terms of this Agreement to any third party, except that (a) the Receiver or his counsel, in accordance with the Settlement Procedures Order or applicable law, may file a

pleading in the receivership case stating the amount of the claim against Transferee and the amount for which it settled, (b) Transferee may disclose this Agreement to his attorneys, accountants and tax/financial or other advisors, (c) either Party may disclose the Agreement as required by any taxing authority, (d) either Party may disclose the Agreement in accordance with applicable law, and (e) either Party may disclose the Agreement as necessary to perform or enforce the Agreement.

6.    No Admission of Liability.  This Agreement was negotiated, in part, to avoid the time, effort and cost of litigation.  This Agreement was never intended and shall never constitute nor be construed as an admission of any liability or wrongdoing by either Party.

7.    No Third Party Beneficiary Rights.  Nothing contained in this Agreement shall confer any rights, claims, benefits or remedies upon any person or entity who is not a Party to this Agreement or expressly referenced herein.

8.    Voluntary Signing.  Each of the parties to this Agreement has executed this Agreement without any duress or undue influence.

9.    Independent Counsel.  Each of the parties acknowledge and agree that it has been represented by independent counsel of its own choice throughout all negotiations which preceded the execution of this Agreement, that it has executed and approved of this Agreement after consultation with said counsel, and that it shall not deny the validity of this Agreement on the ground that such party did not have the advice of legal counsel.

10.    Governing Law and Venue.  This Agreement shall in all respects be interpreted, enforced, and governed by and under the laws of California, and Federal Equity Receivership law, and subject to the exclusive jurisdiction of the District Court.

11.    Waiver/Amendment.  No breach of any provision of this Agreement can be waived unless in writing.  Waiver of any one breach of any provision of this Agreement is not a waiver of any other breach of the same or of any other provision of this Agreement.  Amendment of this Agreement may be made only by written agreement signed by the parties.

12.    Fax and Counterparts.  This Agreement may be executed by fax and/or in counterparts and, if so executed, each fax and/or counterpart shall have the full force and effect of an original.

13.    Attorneys' Fees and Costs.  The parties hereto shall each bear their own costs and attorneys' fees incurred in connection with the negotiation and documentation of this Agreement, and the parties' efforts to obtain District Court approval thereof.  If any proceeding, action, suit or claim is undertaken to interpret or enforce this Agreement, the prevailing party shall be entitled to reasonable attorneys' fees and costs incurred in connection with such dispute.

14.    Entire Agreement.  This Agreement contains the entire agreement among the Parties with respect to the matters referred to in this Agreement and supersedes all prior agreements, understandings, negotiations and discussions, whether oral or written, and there are no representations or other agreements between the Parties in connection with the subject matter hereof except as specifically set forth herein.  No delay or omission on the part of either Party in

exercising any right hereunder will operate as a waiver of such right or any other right.  A waiver on one occasion will not be construed as a bar to or a waiver of any right on any further occasion.

15.    Modification.  This Agreement may be modified only by a writing signed by both Parties.

16.    Warranties.  Each of the Parties warrants and represents that:

a.    it has not heretofore assigned, subrogated, or transferred or purported to assign, subrogate, or transfer, to any person, firm, partnership, corporation or entity whatsoever any action(s) or cause(s) of action at law or in equity, suits, debts, demands, claims, contracts, covenants, liens, liabilities, losses, costs, accounts, expenses (including, without limitation attorneys' fees), or damages released in this Agreement; and

b.    it has full power and authority to execute and perform its obligations under this Agreement in all respects; and

c.    it has not relied upon the advice of any representative, agent, or attorney of any of the other Parties, as to the legal or other consequences which attach from the assent to the terms of this Agreement.

17.    No Other Representations or Warranties.  The Parties acknowledge that no representations or warranties of any kind have been made by anyone to induce the signing of this Agreement other than as expressly set forth in this Agreement.

18.    Notices.  Notices to be provided hereunder shall be effective if sent to the following:

To Transferee:


To the Receiver:

Bradley D. Sharp, Receiver

Transferee


By:  _____



BRADLEY D. SHARP, COURT-APPOINTED PERMANENT RECEIVER


By:  _____
      BRADLEY D. SHARP, Receiver

1  KATHY BAZOIAN PHELPS (155564)
2  *kphelps@diamondmccarthy.com*
   DIAMOND MCCARTHY LLP
3  1999 Avenue of the Stars, Suite 1100
4  Los Angeles, California 90067-4402
   Telephone: (310) 651-2997
5
6  CHRISTOPHER D. SULLIVAN (148083)
   *csullivan@diamondmccarthy.com*
7  STACEY L. PRATT (124892)
   *stacey.pratt@diamondmccarthy.com*
8  DIAMOND MCCARTHY LLP
9  150 California Street, Suite 2200
   San Francisco, CA 94111
10 Phone: (415) 692-5200
11
12 *Counsel for Bradley D. Sharp,*
   *Permanent Receiver*
13
14              **UNITED STATES DISTRICT COURT**
15              **CENTRAL DISTRICT OF CALIFORNIA**
16              **WESTERN DIVISION – LOS ANGELES**

17 | SECURITIES AND EXCHANGE | Adv No. _____ |
   | COMMISSION, | |
18 | | Case No. 2:19−cv−02188−DSF−MRW |
19 | Plaintiff, | Hon. Dale S. Fischer |
20 | v. | **STIPULATION FOR ENTRY OF** |
   | | **JUDGMENT AGAINST DEFENDANT** |
21 | DIRECT LENDING INVESTMENTS | |
22 | LLC, | |
23 | Defendant. | |
24 | _____ | |
25 | BRADLEY D. SHARP, Receiver, | |
26 | | |
27 | Plaintiff, | |
28 | _____ | |

                              1

vs.

_____

                    Defendant.

This Stipulation is entered into by and between Plaintiff, Bradley D. Sharp, Receiver (the "Receiver"), and Defendant _____ ("Defendant") as follows:

    A.    On April 1, 2019, this Court entered Preliminary Injunction Order and Order Appointing Permanent Receiver ("Receiver Order"), Doc. No. 10, appointing Bradley D. Sharp ("Receiver") as permanent receiver for the estate of defendant Direct Lending Investments LLC ("DLI"), and Direct Lending Income Fund, L.P., Direct Lending Income Feeder Fund, Ltd., DLI Capital, Inc., DLI Lending Agent, LLC, and DLI Assets Bravo, LLC and their successors, subsidiaries and affiliated entities (the "Receivership Entities").

    B.    On _____, the Receiver filed a complaint to avoid and recover certain transfers made to Defendant, which was assigned Adv. No. _____ (the "Adversary Proceeding").

    C.    The Receiver alleged that certain fraudulent transfers were made to Defendant within the seven-year period prior to the filing date of the Receiver Order (the "Transfers") and that the Transfers are avoidable as fraudulent transfers under Cal Civil Code §3439.1 et seq. Defendant disputed the Receiver's contentions.

    D.    On or about _____, the parties entered into a Settlement and Release Agreement which fully resolved all of the issues in the Adversary Proceeding. The Settlement Agreement provided for the payment of the settlement sum over a period of several months, with the final installment due on _____.

    E.    The Settlement Agreement also provides that in the event of default under the terms of the agreement, the Receiver shall be entitled to judgment against Defendant in the amount of $_____, less any amounts already paid pursuant to the

1    Settlement Agreement.

2         F.    On the basis of the foregoing, Defendant agrees and stipulates that the

3    Receiver is entitled to judgment against him/her/it in the amount of $____, less any

4    prorated amounts already paid to the Receiver pursuant to the Settlement Agreement

5    and consents to entry of such judgment.

6

7         **IT IS SO STIPULATED.**

8

9

10   Dated:                              BRADLEY D. SHARP, RECEIVER

11

12                                       By: _____

13

14

15   Dated:

16                                       _____
                                         Defendant

17

18

19   APPROVED AS TO FORM AND CONTENT:

20

21   .

22

23   DATED:                              DIAMOND McCARTHY LLP

24                                       By:  */s/ Kathy Bazoian Phelps*
                                         Kathy Bazoian Phelps
25                                       Counsel for Bradley D. Sharp,
                                         Permanent Receiver
26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

NOTICE OF MOTION AND MOTION OF RECEIVER FOR ORDER APPROVING SETTLEMENT WITH LENDINGUSA