**RAINES FELDMAN LLP**
KATHY BAZOIAN PHELPS (SBN 155564)
*kphelps@raineslaw.com*
DAVID CASTLEMAN (SBN 326812)
*dcastleman@raineslaw.com*
1800 Avenue of the Stars, 12th Floor
Los Angeles, California 90067
Telephone: (310) 440-4100
Facsimile: (310) 691-1943

*Counsel for Bradley D. Sharp,*
*Permanent Receiver*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION – LOS ANGELES

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>DIRECT LENDING INVESTMENTS LLC,<br><br>Defendant. | Case No. 2:19−cv−02188−DSF−MRW<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF RECEIVER FOR: (A) APPROVAL AND PAYMENT OF FEES AND EXPENSES FOR APRIL 1, 2021 THROUGH JUNE 30, 2021 OF:**<br>**(1) RECEIVER BRADLEY D. SHARP;**<br>**(2) RAINES FELDMAN LLP;**<br>**(3) DIAMOND MCCARTHY LLP;**<br>**(4) DEVELOPMENT SPECIALISTS, INC.;**<br>**(5) GOLDBERG KOHN LTD.;**<br>**(6) BERKELEY RESEARCH GROUP;**<br>**(7) BANKRUPTCY MANAGEMENT SOLUTIONS DBA STRETTO**<br>**(8) JEFFER MANGELS BUTLER & MITCHELL; AND**<br>**(B) FOR APPROVAL OF FORM AND/OR LIMITATION OF NOTICE UNDER LOCAL CIVIL RULE 66-7**<br><br>*MOTION, ORDER AND SUPPORTING* |

1

MP&AS ISO MOTION FOR APPROVAL OF
PAYMENT OF FEES AND EXPENSES

2919811.1

*DECLARATIONS FILED
CONCURRENTLY HEREWITH*

Date:  August 30, 2021
Time:  1:30 p.m.
Dept.:  Courtroom 7D
Place:  United States District Court
        Western Division
        350 West 1st Street,
        Los Angeles. CA 90012

Case No. 2:19−cv−02188−DSF−MRW

MP&AS ISO MOTION FOR APPROVAL OF
PAYMENT OF FEES AND EXPENSES

2919811.1

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION AND RELEVANT FACTUAL BACKGROUND

Bradley D. Sharp ("Receiver") as permanent receiver for the estate of defendant Direct Lending Investments LLC ("DLI"), and Direct Lending Income Fund, L.P. ("DLIF"), Direct Lending Income Feeder Fund, Ltd. ("DLIFF"), DLI Capital, Inc., DLI Lending Agent, LLC, and DLI Assets Bravo LLC and their successors, subsidiaries and affiliated entities (the "Receivership Entities") through this Motion seeks approval for his ninth fee motion for the payment of fees of the Receiver and his professionals. The Motion covers the extensive services rendered by the Receiver and his professionals for the three-month period from April 1, 2021 through June 30, 2021 ("Expense Period").

On May 14, 2019, the Court issued an order granting the Receiver's motion to employ Diamond McCarthy LLP ("Diamond McCarthy") as his general counsel, Development Specialists, Inc. ("DSI") as his accountants and deputies, and Berkeley Research Group ("BRG") as his tax accountants, with compensation to be made upon application after notice and a hearing pursuant to Section XI of the Receiver Order. (Doc. No. 44). On October 3, 2019, the Court entered an order granting the Receiver's motion for several items of relief, including the Receiver's request to employ special creditors rights counsel, Goldberg Kohn Ltd. ("Goldberg Kohn") (Doc. No. 142). On June 11, 2021, the Court issued an order granting employment of Jeffer Mangels Butler & Mitchell LLP as his special probate litigation counsel (Doc. No. 639). On June 21, 2021, the Court issued an order granting the Receiver's motion to substitute in Raines Feldman LLP ("Raines Feldman") as his general counsel (Doc. No. 649).

Some of the highlights of the activity of the Receiver and his professionals during the Expense Period are summarized as follows and more fully described below and in the declarations filed in support of this motion;

1.   Pursuant to the settlement authority granted by the Court and with the

1

efforts of Raines Feldman employed on a contingency basis, the Receiver and his professionals have recovered over $20 million in connection with the Net Winner Claims;

2.      Since the Distribution Plan (Doc. No. 321) was approved by the Court on December 14, 2020 (Doc. No. 337), the Receiver has now sent distributions in the approximate amount of $102.83 million to 739 investors as the first wave of distributions to investors. The previously reserved sum of $2.13 million has been reduced to $867,094.47 as claims have been reviewed and resolved.

3.      The Receiver has continued to seek Court approval of a settlement with DLI's former auditors Deloitte & Touche, LLP[1] (Doc. No. 532) in which the Deloitte Entities have agreed to pay $31 million. Further briefing and a hearing took place on the settlement, which is still under review by the Court.

4.      The Receiver entered into two modified fee arrangements with Diamond McCarthy to pursue litigation claims against Duff & Phelps and Eisner Amper. The Receiver filed a complaint against Duff & Phelps in the Supreme Court of the State of New York, County of New York, on April 8, 2021, and attended a full day of mediation on the Eisner Amper matter that has not yet been concluded.

5.      The Receiver and his team have continued to make substantial progress with efforts to monetize the remaining investments in the portfolio and, specifically, have been in engaged in discussions with two counterparties regarding possible resolution of claims or litigation avenues to maximize the value of those investments.

6.      The Receiver has continued to field calls and email inquiries regarding the investor claims submitted by DLIF investors and to evaluate potential objections

---

[1] The settlement was reached with Deloitte & Touche, LLP, Deloitte Tax LLP, and Deloitte & Touche Cayman Islands (the "Deloitte Entities").

Case No. 2:19−cv−02188−DSF−MRW          MP&AS ISO MOTION FOR APPROVAL OF
                                        PAYMENT OF FEES AND EXPENSES

2919811.1

to claims.[2]

7.     The Receiver filed his ninth status report on May 3, 2021 (Doc No. 576), keeping the investors apprised of the status in the case. The report provided summaries of DLI's business and lists of the Receivership Entities' loan and investment portfolios, their status, and the balances outstanding, in addition to detailing the efforts the Receiver has made with respect to working to collect outstanding loans, liquidate assets, settle disputes, pursue financing and restructuring of portfolio positions, and pursue litigation claims in order to maximize recovery for investors and creditors of the receivership estate. He also updated his website with additional answers to Frequently Asked Questions.

The aggregate estimated budget for Receiver and professional fees and expenses for those professionals subject to this Motion for the Expense Period was approximately $3,000,000, subject to a variance of ten percent (10%) in the overall budget. The actual fees and expenses incurred by the Receiver and his professionals during the Expense Period for which the Receiver seeks approval total $1,496,812.44. Thus, the professional fees for this period were well below the budgeted amount. Given the broad scope of activities and extensive work performed by the Receiver and his professionals during the three-month period, the fees and expenses requested are reasonable.

## II.   SUMMARY OF RECEIVER'S AND PROFESSIONALS' SERVICES AND ACTIVITIES DURING THE EXPENSE PERIOD

The fees and expenses for which the Receiver seeks approval, and the services rendered by the Receiver and his professionals during this Expense Period, are summarized below and described in detail in the billing records attached to the declarations filed in support of this Motion.

---

[2] The time spent on matters relating solely to DLIF has been segregated and allowed fees and costs in this category will be paid from DLIF's portion of distributions.

### A.   Summary of Services of Receiver and DSI

For the Receiver, this motion seeks approval of his fees in the amount of $79,380.00, and an order authorizing payment of 80% of his approved fees, with the balance of unpaid fees payable through the final fee motion, unless otherwise ordered by the Court.

For DSI, the Receiver's accountants and deputies, the motion seeks approval of its fees in the amount of $684,506.26, and costs in the amount of $4,080.79, and an order authorizing payment of 80% of its approved fees and 100% of its approved costs, with the balance of unpaid fees payable through the final fee motion, unless otherwise ordered by the Court.

Without limiting the detail of the Receiver's and DSI's services, the following are summary descriptions of the services provided during the Expense Period:

### 1.   Case Administration

The Receiver and DSI have continued to coordinate and participate in numerous telephone calls with DLI employees, counsel, retained professionals, individual investors, investor groups and other parties to discuss case matters, court and investor reporting, investment portfolio matters, tax matters and other outstanding case issues. DSI continued to prepare information, analyses, and documents for counsel for internal purposes and for other needs in addition to administrative tasks necessary to properly manage the case. The Receiver and DSI also evaluated various court pleadings and coordinated with numerous professionals to discuss case matters. Additionally, the Receiver worked on various retention matters, including the employment of general counsel, litigation counsel and probate counsel.

### 2.   Management of Business Operations

The Receiver and DSI continued to spend significant time working closely with DLI employees to coordinate efforts with respect to operations, loan counterparties, cash collections, accounting and financial reporting, vendor and professional service

Case No. 2:19-cv-02188-DSF-MRW                MP&AS ISO MOTION FOR APPROVAL OF
                                              PAYMENT OF FEES AND EXPENSES

2919811.1

payments, human resources, investor relations, first interim distributions and other similar matters. DSI also coordinated with ordinary course professionals and critical vendors in order to continue assisting with the Receivership Entity's operational needs.

### 3. Cayman Activities

The Receiver and his deputies at DSI continued to spend significant time coordinating with counsel and Cayman Island professionals to manage the liquidation of DLIFF. The Receiver and DSI also worked closely with Cayman Island professionals to research and evaluate information and documents and prepare material in connection with investor requests, claims review, distributions, bank accounts, tax reporting, including Form 1042-S and supporting letters, tax refunds and third-party litigation efforts.

Any time spent by the Receiver in his role as a Joint Official Liquidator is being charged to the DLIFF Cayman Liquidation. The compensation requested as a Joint Official Liquidator is subject to the approval process in the Cayman courts.

### 4. Analysis of Assets and Recovery

The Receiver and DSI continued efforts to maximize the value of the loan portfolio and evaluated counterparty proposals, financial reporting and projections, and certain underlying collateral to manage investment positions to support the collection and maximization of value from the loan portfolio. The Receiver directed efforts in recovering loans and pursued settlements of various non-performing loans through negotiated payment terms.

DSI continued to hold numerous conference calls with various counterparties to obtain detailed data regarding the financial condition of the counterparties and other information to evaluate potential asset sales, refinancing and/or restructuring, and other alternative recovery scenarios. DSI and the Receiver also worked to evaluate other assets of the estate, including potential litigation claims.

DSI continued to monitor the performance and collection of Investment G's

5

MP&AS ISO MOTION FOR APPROVAL OF PAYMENT OF FEES AND EXPENSES

receivables portfolio and monitor and evaluate the business performance of Investment I and its affiliates, including corresponding with the counterparty's board to further the counterparty's efforts to reorganize and rebuild its own business. DSI evaluated multiple options available to the Receiver to protect DLI's interests in Investment N in light of a dispute between Investment N and another lender regarding their relative lien positions at their shared customer. Although significant litigation between Investment N and another lender has adversely impacted the collectability of the loan outstanding to DLI, DSI continues to work with Investment N to collect on other collateral within the portfolio.

DLI and Investment R concluded a negotiation that resulted in a restructured credit agreement that became effective in early June 2021. The new agreement provided potential incentives for early monetization of the position, and the borrower took advantage of those incentives shortly after the parties finalized the agreement. DLI was repaid $16.8 million in full settlement of the outstanding balance owed to DLI on June 30, 2021.

Further recovery efforts included working with VoIP Guardian counsel to explore and pursue recovery efforts, including evaluating reports, complaints filed, and other material in connection with the investigation. Additional efforts were taken to prepare data tapes for the IOU and QuarterSpot loan portfolios with the intention of reaching out to interested parties for a sale of charged off loans in both portfolios.

### 5. Strategic Acquisitions, Inc./DLIP/Liberty Fund Analysis Support

In connection with DLI Properties LLC ("DLIP") and Liberty Fund LLC ("Liberty", and their affiliate, Strategic Acquisitions, Inc. ("SAI"), DSI continued to assist the CRO in managing and liquidating the real estate portfolio assets, investigating litigation recoveries, and conducting analysis of historical cash transactions for potential fraudulent transfer actions, including evaluating personal

MP&AS ISO MOTION FOR APPROVAL OF PAYMENT OF FEES AND EXPENSES

2919811.1

financial statements provided by the guarantors of the debt and interacting with key participants associated with the assets. DSI has spent, and continues to spend, significant time monitoring those advances and recovery for the DLI estate which includes reporting obligations to DL Global and monthly updates. DSI spent significant time facilitating the closing of approximately $7.1 million in real estate sales in Q2 2021, bringing the total sales to date to approximately $96 million. DSI continues to supervise the rehabilitation of the remaining 7 properties to complete requisite work and prepare for their ultimate sale. DSI continued to assist with the restructuring of DLIP and Liberty and with communications with SAI regardin the accounting and budgeting operations for these counterparties.

Additionally, DSI continues to be engaged in forensic accounting analysis and evaluation of all DLIP, Liberty and SAI and related entities business activities to identify possible litigation claims.

The Receiver and DSI are tracking and billing all asset management and liquidation support work related to DLIP, Liberty, and SAI separately from general receivership work and DLIF-related work.

## 6. Receivership Reporting

DSI continued to spend time preparing weekly, monthly, quarterly, and semi-annual operational and financial reports, including the investment portfolio summary, Standardized Fund Accounting Report, actual vs. budget analyses, and monthly budget forecast. Additional time was spent preparing numerous supporting schedules for claims, professionals, and causes of action. Time was spent compiling, reviewing, and reporting on investor and creditor inquiries. Further time was spent on preparing status reports, including research and analysis.

## 7. Creditor Communication and Claims Analysis

DSI continued to evaluate proof of claim forms and prepare supporting schedules and reconciling schedules in connection with creditor claims filed with the

MP&AS ISO MOTION FOR APPROVAL OF PAYMENT OF FEES AND EXPENSES

2919811.1

Receivership estate. DSI and the Receiver spent considerable time working with counsel to evaluate DLI records in connection with creditor activity and to investigate creditor claims that are subject to potential objections. DSI continued to track creditor inquiries to address the status of DLI's claims review and conclusions.

DSI also maintained the FAQ section on the Receiver's website, which provides information on DLI, the status of the loan portfolio, the status of the receivership, the claims process in a receivership, distributions, tax filings, non-portfolio recovery efforts, and other similar information.

### 8. DLIF Investor Claims, Analysis, Communication and Distributions

DSI continued to analyze DLIF investor claims by evaluating proof of interest forms and preparing supporting reconciliation schedules. DSI and the Receiver spent considerable time working with counsel to research and evaluate DLI records in connection with investor activity and to investigate investor claims that are subject to potential objections. In connection with these efforts, DSI evaluated various investment records of the Receivership Entities to confirm investors' corresponding information, such as their history of subscriptions, redemptions, distributions, and transfers. Additionally, DSI performed multiple reviews and reconciliations of investor account information such as custodian changes, contact information, and other related data in connection with communication and distribution efforts for investors.

DSI spent time communicating with investors regarding the claims distribution methodology and distribution calculations. Substantial time was spent planning and releasing the second, third and fourth batch of First Interim Distribution checks to Class 4B DLIF Investors with allowed claims below a 30.95% recovery percentage consistent with the rising tide methodology discussed in the court approved distribution plan. Additional batches of the First Interim Distribution checks will be

MP&AS ISO MOTION FOR APPROVAL OF PAYMENT OF FEES AND EXPENSES

2919811.1

released as the Receiver confirms additional allowed claims below a 30.95% recovery percentage.

DSI continued to track investor inquiries pertaining to the status of DLI and the timing and procedures for payment of claims, including information on distribution calculations. Responses were provided to investors through the Receiver's website, emails, and phone calls. DSI and the Receiver also held phone calls with investor groups to discuss the status of the investment portfolio, claims and distribution matters and other pending receivership matters.

DSI prepared detailed analyses and conducted evaluations of numerous documents, records, and research to support identification of net winner claims and worked closely with counsel to develop and generate support material for demand letters in connection with net winner recovery efforts. The Receiver and his counsel evaluated numerous documents in connection settlement agreements, including hardship applications, financial statements, investor attorney inquiries, investor letters and other similar documents. The Receiver and his counsel negotiated settlement agreements directly with net winner investors or their counsel. Additionally, the Receiver and DSI conducted evaluation of numerous documents, records and research to support identification of broker dealers and finders that received commission fees for placing investors with DLIF. The Receiver has recovered approximately $20.4 million in cash from net winner investors and broker dealers and finders as of June 30, 2021.

The Receiver and his professionals are billing all work related to DLIF Investors separately and will charge such fees directly to DLIF.

### 9.    Litigation and Discovery

The Receiver and DSI worked closely with Diamond McCarthy and Raines Feldman to identify, investigate, and provide the data necessary to pursue avoidance claims, and other potential litigation claims, against third-party service providers and

net winners. DSI organized and processed substantial data to provide the information necessary to counsel to send demand letters to several hundred net winner recipients. The Receiver and DSI each reviewed and responded to numerous communications regarding settlement terms and participated in negotiations to resolve certain claims. They also evaluated hardship applications and provided information to counsel regarding related claims and backup information on transfers.

The Receiver assisted Diamond McCarthy in negotiating the settlement with the Deloitte Entities which ultimately led to a $31 million tentative settlement with the Deloitte Entities. The net amount after legal fees is expected to be collected within the next six months and will be included in future distributions to Class 4B DLIF Investors. The Receiver and his counsel continued discussions with the various involved parties and hope to provide an update in the coming months.

In connection with discovery requests from third parties, DSI continued to coordinate efforts to prepare and provide responsive documentation and records.

### 10. Reimbursable Expenses

DSI's incurred expenses included transportation in connection with receivership assistance and asset recovery support, including driving to construction sites and properties and driving to meetings with the CRO of Investment T. Expenses for FedEx were also incurred in connection with receivership assistance and portfolio and counterparty meetings.

### B. <u>Summary of Services of Receiver's General Counsel Raines Feldman</u>

For Raines Feldman, this motion seeks approval of its fees in the amount of $98,188.11 and costs of $30.27 and an order authorizing payment of 80% of the approved fees and 100% of the costs, with the balance of unpaid fees payable through the final fee motion, unless otherwise ordered by the Court.

The services of Raines Feldman, who substituted in as the Receiver's general

Case No. 2:19–cv–02188–DSF–MRW          MP&AS ISO MOTION FOR APPROVAL OF
                                        PAYMENT OF FEES AND EXPENSES

2919811.1

counsel in April 2021, are detailed in the billing records appended to the Declaration of Kathy Bazoian Phelps in support of this Motion. As the Receiver's general counsel during the Expense Period, Raines Feldman has assisted the Receiver in addressing issues relating to the general administration of the estate including the continued implementation of the first interim distribution and the evaluation of other potential litigation claims.

The fees incurred by Raines Feldman have been divided in three categories[3]:

| | |
|---|---|
| 4664-001: Case and Asset Administration | $37,998.73 |
| 4664-003: SAI/DLIP/Liberty | $58,984.49 |
| 4664-004: DLIF Investor Matters | $1,204.89 |

Costs: $30.27

Without limiting the detail of Raines Feldman's performed services, the following are summary descriptions of the services provided during the Expense Period:

**4664-001: Case and Asset Administration**

During the Expense Period, Raines Feldman performed a number of necessary tasks. Raines Feldman filed a motion for its substitution as General Counsel and Contingency Litigation Counsel (Doc. No. 567), which the court approved on June 21, 2021 (Doc. No. 649). Since its substitution as General Counsel and Contingency Litigation Counsel, Raines Feldman has assisted the Receiver in evaluating potential fee arrangements on litigation matters and reviewing proposed fee agreements and related pleadings. As the Receiver's general counsel, the firm has also assisted the Receiver in obtaining approval of the employment of special probate litigation counsel and in transitioning the general receivership representation.

Raines Feldman has monitored the claims objection process and associated

---

[3] These fees do not include the contingency fee in connection with the Net Winner claims that will be the subject of a separate motion.

| | |
|---|---|
| Case No. 2:19−cv−02188−DSF−MRW | MP&AS ISO MOTION FOR APPROVAL OF PAYMENT OF FEES AND EXPENSES |

2919811.1

deadlines, and has conferred with the Receiver and his team regarding resolution of claims and strategy regarding possible prosecution of certain objections. The firm has coordinated with Diamond McCarthy to ensure that no duplication of services has been provided and to transition certain matters that will be handled by Raines Feldman relating to particular claimants and recipients of commissions.

Raines Feldman has communicated extensively with the Receiver regarding other potential litigation claims against the estate and in reviewing financial reporting regarding such claims to assist the Receiver in his analysis. The firm has worked closely with the Receiver's team to refine the data relating to possible avoidance claims and to analysis the costs and risks of pursuit of such claims.

To ensure efficiency and coordination, the firm has participated in weekly calls with the Receiver and his team to discuss the pending issues in the case and upcoming matters. Raines Feldman has also fielded numerous calls and emails from investors pertaining to distributions and claim calculations.

In addition to its extensive communications with the Receiver and the investors, Raines Feldman has kept the SEC apprised of proposed motions and met and conferred with the SEC on its position relating to a variety of matters.

Raines Feldman has also assisted the Receiver in transactions with various counterparties, several of which involve troubled assets for which the Receiver is trying to find restructuring or other solutions to maximize value and provide monetary recoveries for the estate. Raines Feldman has monitored litigation by and against the counterparty relating to Investment N so that the Receiver can evaluate whether it is necessary action to preserve the value of the estate's collateral. That matter remains pending and ongoing services will be required to determine and pursue the most cost-effective and impactful path for recovery.  Otherwise, the Receiver also continues to liquidate active, outstanding loan portfolio positions held by the Receivership Entities.

### 4664-003: SAI/DLIP/Liberty

2919811.1

Ongoing issues with collection relating to certain remaining loan portfolios have arisen, and Raines Feldman has worked with the Receiver and his team to evaluate avenues of recovery. This matter has required the active involvement of the Receiver and his professionals in analyzing potential claims for recovery. They have sought relevant documentation and information regarding the claim and have engaged in discussions with the counterparty and its counsel to explore settlement options.

Raines Feldman evaluated potential claims, legal theories and strategies that the Receiver may have in connection with the claim owing from DLIP and Liberty. The firm has assisted the Receiver in evaluating claims against, and in communicating with counsel for the related parties, Strategic Holding Group ("SHG"), Strategic Acquisitions Inc. ("SAI"), Strategic Acquisitions LLC ("SAL"), BDR, Inc. ("BDR"), Strategic Property Management, Inc. ("SPMI"), The Address, Inc. ("TAI"), Strategic Reality Inc. ("SRI"), and Strategic Healthcare Services, Inc. dba Hira Health ("SHS") (collectively, the "SAI Entities"). The firm continues to assist the Receiver in evaluating this matter relative to the SAI Entities' business relationship with the Receivership Entities, DLI Properties LLC, DLI Property Holdings LLC, Strategic DLI Holdings, Inc., and Liberty Fund.

Raines Feldman issued demands for preservation of documents to each of the SAI Entities and affiliated parties. The firm also reviewed and analyzed related documents and information pertaining to the SAI Entities. The firm has assisted the Receiver with legal analysis of available options, remedies, and potential avenues for recovery and litigation. Raines Feldman, on behalf of the Receiver, engaged in discussions with counsel for the SAI Entities, specifically pre-litigation disclosures and settlement negotiations. In furtherance of the Receiver's claims, Raines Feldman prepared third-party record subpoenas to the SAI Entities and their banking

---

13

MP&AS ISO MOTION FOR APPROVAL OF PAYMENT OF FEES AND EXPENSES

2919811.1

institutions. Raines Feldman has prepared detailed documentation regarding the Receiver's claims to best position the Receiver relating to this matter.

### 4664-004: DLIF Investor Matters

Raines Feldman additionally spent time communicating with investors regarding the claims distribution methodology and distribution calculations and continued to track investor inquiries pertaining to the status of DLI and the timing and procedures for payment of claims, including information on distribution calculations. Raines Feldman responded to investors by directing them to the Receiver's website, emails, and phone calls. Raines Feldman has responded to individual investor inquiries and provided appropriate information to keep investors informed about the progress of the case.

### C.   Summary of Services of Diamond McCarthy

The services of Diamond McCarthy are detailed in the billing records appended to the Declaration of Christopher D. Sullivan in support of this Motion. As the Receiver's general counsel prior to the substitution during the Expense Period and as litigation counsel on certain matters, Diamond McCarthy's services have addressed a variety of issues facing the receivership, including the continued investigation and pursuit of litigation claims.

For Diamond McCarthy, this motion seeks approval of its fees in the amount of $356,939.54 and $43,499.26 in costs ($37,343.75 of which are on account of expert consultant fees) and an order authorizing payment of 80% of its approved fees and 100% of its approved costs, with the balance of the unpaid fees payable through the final fee motion, unless otherwise ordered by the Court. Without limiting the detail of Diamond McCarthy's performed services, the following are summary descriptions of the services provided during the Expense Period:

### 1.   Case Administration Matters

During the Expense Period and prior to substitution of general counsel,

Case No. 2:19−cv−02188−DSF−MRW          MP&AS ISO MOTION FOR APPROVAL OF
                                        PAYMENT OF FEES AND EXPENSES

2919811.1

1   Diamond McCarthy continued to assist the Receiver in coordinating the first wave of

2   distributions and speaking with investors regarding their claims.

3       Diamond McCarthy also worked on a motion seeking Court approval of the

4   Receivership budget from May 1, 2021 through July 31, 2021, and for an extension

5   of the Receiver's employment and payment of ordinary course professionals (Doc.

6   Nos. 545-546).  The motion was granted on May 17, 2021 (Doc. No. 611.)

7       On May 3, 2021, Diamond McCarthy on behalf of the Receiver prepared and

8   filed the Receiver's ninth status report covering the period of March 1, 2021 to April

9   16, 2021 (Doc. No. 576). Diamond McCarthy also prepared and filed a motion

10  seeking Court approval of the fees and expenses of the Receiver and his professionals

11  for the period of January 1, 2021 through March 31, 2021 (Doc. No. 643).

12              **2.      Legal Issues Regarding Loan and Investment Portfolios**

13      During the Expense Period, Diamond McCarthy assisted the Receiver in

14  transactions with various counterparties, several of which involve troubled assets for

15  which the Receiver is trying to find restructuring or other solutions to maximize value

16  and provide monetary recoveries for the estate. Diamond McCarthy was involved

17  particularly to address the basis of claims involving counterparties, providing

18  background information, weighing in on the scope of releases, and fashioning

19  responses regarding the Receiver's position. Diamond McCarthy filed a motion

20  seeking Court approval of the Receiver's settlement with the Investment R parties

21  (Doc. No. 528), which the Court granted on May 26, 2021.  (Doc. No. 625.)

22              **3.      SEC, DLIFF, and Investor Communications**

23      In addition to its extensive communications with the Receiver, Diamond

24  McCarthy has kept the SEC apprised of proposed motions and met and conferred

25  with the SEC on its position. Diamond McCarthy has also had extensive

26  communications with counsel for DLIFF, and counsel for JOL Christopher Johnson.

27      The Receiver has continued to receive investor inquiries regarding the case,

28

Case No. 2:19−cv−02188−DSF−MRW          MP&AS ISO MOTION FOR APPROVAL OF
                                        PAYMENT OF FEES AND EXPENSES

2919811.1

the assets, and related matters, including from a large group of investors who have joined together and engaged law firms to represent their interests in the case. Diamond McCarthy has responded to individual investor inquiries and provided appropriate information to keep investors informed about the progress of the case.

### 4.    Asset, Business, and Claims Investigation, and Litigation

Diamond McCarthy has continued to assist the Receiver in his investigation of the Receivership Entities' pre-receivership business activities, financial transactions, and potential litigation claims against third-parties and D&O claims. Diamond McCarthy has continued to review and analyze the productions of documents from third-parties to date, which exceed 750,000 pages of documents. This work product and other ongoing work continue to provide a foundation for recommendations concerning whether or not to initiate litigation against potential defendants to pursue recovery for the estate, investors, and creditors.

The investigation and development of litigation claims continued during the Expense Period. Although pre-litigation services performed by Diamond McCarthy and costs are billed under 2648-11, services and costs related to active litigation matters are divided into additional matter numbers:

Matter Number 2648-12 – work done relating to the Firm's joint engagement agreement with DLIFF for the DLIFF estate

Matter Number 2648-13 – claims against Deloitte Entities

Matter Number 2648 -14 – claims against Duff & Phelps

Matter Number 2648-16 - claims against Net Winners

Matter Number 2648-19 – investigation of DLIF related proof of claims

The work conducted with respect to each matter number is described below:

2648-13: The Receiver reached a settlement with the Deloitte Entities, the terms of which are set forth in the Settlement Agreement attached as Exhibit "1" to the Declaration of the Receiver filed in support the Motion for (i) Approval of Settlement

1  with Deloitte Entities; (ii) Entry of Scheduling Order; and (iii) Entry of Bar Order

2  ("Settlement Motion") (Doc. No. 532) filed on April 8, 2021. Diamond McCarthy

3  engaged in extensive arms' length discussions with counsel for various investor groups

4  that were participating in the settlement process, as well with the Deloitte Entities

5  regarding modification of the Settlement Agreement and related documents to address

6  the Court's concerns regarding the Settlement Motion in the face of opposition filed

7  by Opus Fund Services (USA) LLC, Bryce Mason and Frank Turner. Following the

8  hearing on the Settlement Motion, Diamond McCarthy prepared a reply memorandum

9  addressing those preliminary objections, as well as several issues raised by the Court

10  at the hearing.  (Doc. No. 610) and has continued discussions with the parties.

11      <u>2648 -14 Duff & Phelps</u>: On September 3, 2020 Diamond McCarthy filed a

12  complaint against Duff & Phelps for professional negligence, gross negligence,

13  aiding and abetting breach of fiduciary duty, negligent misrepresentation, and breach

14  of contract (Case No. 2:20-cv-08069, United States District Court for the Central

15  District of California). Duff & Phelps filed a motion to dismiss, which was granted

16  by the Court on grounds that a forum selection clause required that the case be

17  litigated in New York state court. Diamond McCarthy filed a second complaint in the

18  Supreme Court of the State of New York, County of New York, on April 8, 2021,

19  and a motion to dismiss was filed on June 28, 2021.

20      <u>2648-16</u>: Prior to the engagement of Raines Feldman as contingency counsel to

21  pursue the Net Winner Claims, Diamond McCarthy assisted the Receiver in evaluating

22  potential claims against some DLIF investors who paid substantial returns prior to the

23  receivership (the "Net Winner Claims"). The Net Winner Claims (with one exception)

24  are now being handled by the Raines Feldman firm. Diamond McCarthy created a new

25  billing matter number 2648-16, and work conducted on the Net Winner Claims since

26  February 2021 was billed under this matter number.  The April invoice for Matter No.

27  2648-16 includes unpaid time for March and April 2021 on the Net Winner Claims.

28

Case No. 2:19−cv−02188−DSF−MRW        MP&AS ISO MOTION FOR APPROVAL OF
                                      PAYMENT OF FEES AND EXPENSES

2919811.1

Diamond McCarthy is no longer handling the Net Winner Claims with the exception of one claim as conflicts counsel. During the Expense Period, Diamond McCarthy conducted the initial analysis of Net Winner Claims, entered into tolling agreements related to the claims, and communicated with a number of investors.

2648-19: Services performed by Diamond McCarthy with respect to investigating certain proofs of claims filed by creditors and investors of DLIF since March 2021 have been billed to matter number 2648-19. During the Expense Period, Diamond McCarthy intensified its review of many of the investor and non-investor creditor claims in order to ensure that only deserving investor and creditor claims are allowed and receive distributions. Diamond McCarthy created a process to determine which claims should be objected to and disallowed where there were circumstances that needed to be examined. For example, Diamond McCarthy investigated and continues to investigate possible insider claims, such as the entities of Brendan Ross, and his family members, and certain former DLI employees. Diamond McCarthy also did an initial review of potential claims against broker-dealers who received commissions, which matter has been transitioned to Raines Feldman. In addition, Diamond McCarthy investigated the claims of investors who redeemed investments close to the collapse of the DLI funds to determine or ensure that they did not have inside information that caused them to make their redemptions.

Pursuant to the terms of the Distribution Plan, Diamond McCarthy on behalf of the Receiver sent claim objection reservation notices to claimants who filed proofs of claims that the Receiver contends are subject to objections and should be disallowed. Diamond McCarthy also drafted and on behalf of the Receiver entered into stipulations with investor and non-investor creditors so that the parties can try to negotiate resolution of the claim disputes without Court involvement. Substantial progress has been made. Due to Diamond McCarthy's efforts, few contested investor claims remain as the vast majority of the issues raised have been resolved.

18

### 5. Expenses

Expenses incurred during this Expense Period were primarily related to the filing and service of pleadings and legal research. The expenses incurred for these activities are in the amount of $43,499.26. Diamond McCarthy also incurred expenses associated with the services provided by an expert consultant in evaluating litigation claims. The costs associated with expert consultant fees is in the amount of $37,343.75. Diamond McCarthy has not included out-of-town travel expenses it incurred in its fee and cost request in the Motion.

### D. <u>Summary of Services of Goldberg Kohn Ltd.</u>

The services performed by the law firm of Goldberg Kohn Ltd. ("Goldberg Kohn") are detailed in the billing statements attached to the Declaration of Dimitri Karcazes filed herewith and summarized in the Karcazes declaration. Goldberg Kohn's engagement as the Receiver's special creditors' rights counsel commenced on September 5, 2019 when the Receiver filed a motion to authorize its employment from that date, which was subsequently authorized by the Court's order issued October 2, 2019 (Doc. No. 142).

By this Motion, Goldberg Kohn seeks approval of its fees in the amount of $140,365.15 and costs in the total amount of $2,035.62, and an order authorizing payment of 80% of its approved fees and 100% of its approved costs, with the balance of unpaid fees payable through the final fee motion, unless otherwise ordered by this Court. The fees requested by Goldberg Kohn in this application are substantially below those requested in the previous application as the efforts to monetize the portfolio are nearing an end.

Goldberg Kohn performed a broad scope of services during the Expense Period as outlined in the invoices appended to the Karcazes Declaration as Exhibit "1." Goldberg Kohn continued its services relating to evaluation of restructuring efforts, negotiating agreements and settlements with counterparties, and addressing practical

and legal issues concerning key portfolios, including Kountable, and Investments M, S, T, and R. Goldberg Kohn also assisted the Receiver in developing strategies relating to the portfolios and provided feedback on proposed restructurings, and helped to document those agreements.

### E.   Summary of Services of Tax Accountants BRG

The services performed by BRG regarding the tax accounting matters are detailed in the billing statements attached to the Declaration of Vernon L. Calder as Exhibit "1." This Motion seeks approval of BRG's fees in the amount of $18,921.10, and costs in the amount of $208.33, and an order authorizing payment of 80% of its approved fees and 100% of its approved costs, with the balance of unpaid fees payable through the final fee motion, unless otherwise ordered by the Court.

During this Expense Period, BRG continued its work on the preparation of tax returns and other tax forms and reporting issues for the Receivership Entities. BRG resolved various issues related to tax reporting to foreign investors.  BRG performed tax research regarding tax issues related to clawback recoveries from IRA accounts, analyzed financial information and investor information, prepared state and federal income tax returns for the Receivership Entities.

### F.   Summary of Services of Claims Agent Bankruptcy Management Solutions DBA Stretto as Claims Agent

The services performed by Bankruptcy Management Solutions dba Stretto ("Stretto") as claims agent for the Receiver are detailed in the billing statements attached to the Receiver's Declaration as Exhibit "3." On June 18, 2019, the Court authorized the Receiver to employ Stretto effective as of April 9, 2019, to be compensated from the assets of the receivership estate. (Doc. No. 79).

By this Motion, Stretto seeks approval of its fees for services performed in the total amount of $36,519.60 and costs in the amount of $2,036.53 for the Expense Period.

The Receiver's duties require him to identify, account for, preserve and protect receivership assets, and to make payments and disbursements from the funds and assets taken into custody. Stretto has assisted the Receiver in his tasks by performing a number of services, including maintaining the receivership website and performing updates so that the Receiver can promptly and cost effectively keep investors and creditors advised of the status of the case. Stretto also processed incoming creditor inquiries, responded to creditors during the Expense Period, and disbursed the distributions. It also received and provided noticing and service of process assistance to the Receiver.

### G.   Summary of Services of Jeffer Mangels Butler & Mitchell LLP

The services performed by Jeffer Mangels Butler & Mitchell LLP ("JMBM") as special probate litigation counsel for the Receiver are detailed in the billing statements attached to the Declaration of Thomas M. Geher as Exhibit "1." On June 11, 2021, the Court authorized the Receiver to employ JMBM, to be compensated from the assets of the receivership estate (Doc. No. 639).

By this Motion, JMBM seeks approval of its fees for services performed in the total amount of $27,021.00 and costs in the amount of $138.60 for the Expense Period. The allowed fees for JMBM are not subject to a 20% holdback given the limited nature of the firm's engagement.

In summary, JMBM obtained, reviewed, and analyzed voluminous loan documents, guaranties, amendments, participation agreements, and forbearance agreements concerning two loans owing to the Receivership estate in the outstanding sums of approximately $99,000,000 and $64,000,000, respectively, guaranteed by the decedent. JMBM analyzed the Receiver's rights and options with respect to the enforcement and collection of the subject loans and participated in telephone calls with, and emails among, the Receiver and his professionals (and the subject loans' participants' counsel) concerning the Receivership estate's rights and options and with

respect to opening a probate proceeding. JMBM reviewed and analyzed substantial documentation regarding the matter and analyzed options for potential action by the Receiver to prevent the dissipation of assets. JMBM reviewed and analyzed all documents and pleadings filed in the decedent's probate case (which was only opened after JMBM's insistence), attended, telephonically, the hearings held in the decedent's probate case and monitored decedent's pending probate case.

## III. <u>THE FEES AND EXPENSES OF THE RECEIVER AND HIS PROFESSIONALS DURING THE EXPENSE PERIOD SHOULD BE APPROVED</u>

The "primary purpose of equity receiverships is to promote orderly and efficient administration of the estate by the district court for the benefit of creditors." *SEC v. Hardy*, 803 F.2d 1034, 1038 (9th Cir. 1986). To that end, district courts have broad powers to determine what is necessary for the administration and supervision of an equity receivership. *See SEC v. Capital Consultants, LLC*, 397 F.3d 733, 738 (9th Cir. 2005). As the Ninth Circuit explained:

> A district court's power to supervise an equity receivership and to determine the appropriate action to be taken in the administration of the receivership is extremely broad. The district court has broad powers and wide discretion to determine the appropriate relief in an equity receivership.

*Id.* (emphasis added; citations omitted); *see also CFTC v. Topworth Int'l, Ltd.*, 205 F.3d 1107, 1115 (9th Cir. 1999) ("This court affords 'broad deference' to the [district] court's supervisory role and 'we generally uphold reasonable procedures instituted by the district court that serve th[e] purpose' of orderly and efficient administration of the receivership for the benefit of creditors.").

It is a fundamental tenet of receivership law that expenses of administration incurred by the receiver, including those of the receiver, its counsel and others employed by the receiver, constitute priority expenses for which compensation should

be paid from the assets of the receivership. As explained in a leading treatise, *Clark on Receivers*:

> The obligations and expenses which the court creates in its administration of the property are necessarily burdens on the property taken possession of, and this, irrespective of the question who may be the ultimate owner, or who may have the preferred lien, or who may invoke the receivership. The appointing court pledges its good faith that all duly authorized obligations incurred during the receivership shall be paid.

2 Clark, Ralph Ewing, *A Treatise on the Law and Practice of Receivers* § 637, p. 1052 (3rd ed. 1992).

The Receiver is an officer of the Court charged with myriad duties under the Receiver Order, many of which have no relationship to recovery of assets or increasing the funds available for distribution to creditors. Because of the nature of the administrative and other services required in receiverships, the benefit a receiver confers on receivership property cannot be determined based solely on the increase or decrease in the value of property in the receiver's possession. As the Court explained in *Securities and Exchange Commission v. Elliott*, 953 F.2d 1560, 1577 (11th Cir. 1992)

> [I]t is sometimes difficult to ascertain what type of benefits a receiver has bestowed on receivership property. . . . . [A] benefit to a secured party may take more subtle forms than a bare increase in monetary value. Even though a receiver may not have increased, or prevented a decrease in, the value of the collateral, if a receiver reasonably and diligently discharges his duties, he is entitled to compensation. [Citations omitted.]

*Securities and Exchange Commission v. Elliott*, 953 F.2d at 1577.

The Court has broad discretion in determining the reasonableness of fees to be awarded a receiver. *See In re San Vicente Medical Partners Ltd.*, 962 F.2d 1402, 1409-10 (9th Cir. 1992). The Court may evaluate the time and effort expended by the

23

Receiver with respect to specific projects and aspects of the administration of the estate, and may look to a number of different factors under the case law in approving receiver's and counsel's fees. *Id*.

The Motion establishes that the Receiver and his professionals rendered extensive services and obtained significant and excellent results for the receivership estate during the Expense Period. *See Federal Trade Commission v. Capital Acquisitions & Management Corp.*, 2005 U.S. Dist. LEXIS 18504 (N.D. Ill. August 26, 2005). This Motion is the Receiver's ninth fee motion covering services rendered during the Expense Period, a period during which the Receiver, his accountants, counsel, and tax professionals continued to address numerous administrative issues and responsibilities as well as pursue litigation claims.

The efforts of the Receiver and his professionals during the Expense Period as set forth in this Motion have significantly benefited the estate, investors, and creditors. The Receiver and the professionals performed these services efficiently and successfully. The fees and expenses requested are reasonable, appropriate, and should be approved and authorized to be paid as requested.

## IV.   NOTICE OF THE HEARING ON THIS MOTION SHOULD BE DEEMED APPROPRIATE AND SUFFICIENT

The Receiver has (a) served notice of the hearing on this Motion on the parties and by mail to the known non-investor creditors of the Receivership Entity; and (b) posted the notice of hearing and the Motion on the Receiver's website (https://cases.stretto.com/dli). The Receiver has also directed Stretto to email the notice of hearing to all investors within one business day following the filing of the Motion. This notice complies with the provisions of Local Civil Rule 66-7 to the extent that notice to investors is required. The Receiver requests that the Court approve this form of notice as reasonable, appropriate, and the most cost-effective means of providing notice of the hearing under the circumstances, as there are approximately

975 investors both in the United States and overseas, and to the extent necessary, to approve the notice given as reasonable, limited notice appropriate under the circumstances and in the interests of time and cost. As a court of equity supervising the receivership estate, the Court may make appropriate administrative orders governing the receivership, including limitations on and changes in notice and other procedures. *See* F.R. Civ. P. 5(a) and (c) (authorizing the court to modify service procedures when numerous defendants are involved in litigation). Local Civil Rule 66-8 directs a receiver to administer receivership estates in a manner similar to estates in bankruptcy, where orders limiting notice are routinely granted. *See In re First Alliance Mortgage Co.*, 269 B.R. 428, 442 (C.D. Cal. 2001) (referencing in *dicta* in the court's recitation of facts the bankruptcy court's order limiting notice issued in that case); 11 U.S.C. section 102(1)(A) ("after notice and a hearing" means "after such notice as is appropriate in the particular circumstances, and such opportunity for hearing as is appropriate in the particular circumstances").

## V.  **CONCLUSION**

For the foregoing reasons, the Receiver respectfully requests that this Court grant the relief as requested in the Motion and all other appropriate relief.


DATED: July 30, 2021                RAINES FELDMAN LLP


                                    By:  /s/ *Kathy Bazoian Phelps*
                                         Kathy Bazoian Phelps
                                         Counsel for Bradley D. Sharp
                                         Permanent Receiver

Case No. 2:19−cv−02188−DSF−MRW          MP&AS ISO MOTION FOR APPROVAL OF
                                        PAYMENT OF FEES AND EXPENSES

2919811.1