**RAINES FELDMAN LLP**
KATHY BAZOIAN PHELPS (SBN 155564)
*kphelps@raineslaw.com*
DAVID CASTLEMAN (SBN 326812)
*dcastleman@raineslaw.com*
1800 Avenue of the Stars, 12th Floor
Los Angeles, California 90067
Telephone: (310) 440-4100
Facsimile: (310) 691-1943

*Counsel for Bradley D. Sharp,
Permanent Receiver*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION – LOS ANGELES

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>DIRECT LENDING INVESTMENTS LLC,<br><br>Defendant. | Case No. 2:19−cv−02188−DSF−MRW<br>Hon. Dale S. Fischer<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF RECEIVER FOR APPROVAL OF: (1) SECOND INTERIM DISTRIBUTION; AND (2) ORDER APPROVING FORM AND/OR MANNER OF NOTICE UNDER LOCAL CIVIL RULE 66-7**<br><br>Date: December 6, 2021<br>Time: 1:30 p.m.<br>Dept.: Courtroom 7D<br>Place: United States District Court<br>Western Division<br>350 West 1st Street,<br>Los Angeles, CA 90012 |

## TABLE OF CONTENTS

Contents

I.    INTRODUCTION ................................................................................................1

II.   STATEMENT OF FACTS ..................................................................................2

    A.    Procedural History.....................................................................................2

    B.    The Distribution Plan ................................................................................3

    C.    Assets Available for Distribution..............................................................3

        1.    Collection from Loan Portfolios......................................................3

        2.    Collections from Net Winner Claims..............................................4

        3.    Ongoing Litigation Efforts...............................................................4

    D.    DLIFF Liquidation Proceeding and DLIFF Investor Claims ..........5

III.  SUMMARY OF DISTRIBUTION PLAN..........................................................5

    A.    Classes of Claimants .................................................................................6

    B.    Assets Available for Distribution to Claimants.................................7

        1.    Pooled Assets...................................................................................7

        2.    DLIF Avoidance Actions ................................................................8

IV.  APPROVAL OF THE PROPOSED SECOND INTERIIM DISTRIBUTION PURSUANT TO THE DISTRIBUTION PLAN IS APPROPRIATE ........................................................................................................8

    A.    The Court has Broad Authority to Approve the Proposed Second Interim Distribution ...................................................................8

    B.    Rising Tide Distribution to Class 4B is Appropriate........................9

    C.    Reserves and Adjustments are Appropriate ....................................11

V.    SUBORDINATION OF CLAIMS ...................................................................12

VI.  AN INTERIM DISTRIBUTION OF $___ MILLION PURSUANT TO THE TERMS OF THE PLAN, AND ANOTHER $___ TO CLASS 4B DLIF INVESTORS IS APPROPRIATE ............................................12

VII. NOTICE OF THE HEARING ON THIS MOTION SHOULD BE DEEMED APPROPRIATE AND SUFFICIENT .......................................13

VIII. CONCLUSION..................................................................................................14

# TABLE OF AUTHORITIES

<u>Cases</u>

*CFTC v. Equity Financial Group, LLC*,
    2005 U.S. Dist. LEXIS 20001, at *77 (D.N.J. Sept. 2, 2005)............10, 17, 19

*CFTC v. Hojjberg*,
    No. 93-cv-3106, 1993 WL 441984, at *3 (N.D. Ill. Oct. 28, 1993) ...............18

*SEC v. Huber*,
    702 F.3d 903, 909 (7th Cir 2012 .................................................................18

*In re First Alliance Mortgage Co.*,
    269 B.R. 428 (C.D. Cal. 2001)....................................................................21

*Quilling v. Trade Partners, Inc.*,
    2007 WL 107669, * 1 (W.D. Mich. 2007).....................................................17

*Reebok Int'l v. Marnatech Enter., Inc.*,
    970 F.2d 552 (9th Cir.1992).......................................................................16

*S.E.C. v. Byers*,
    637 F. Supp. 2d 166 (S.D.N.Y. 2009)..........................................................17

*S.E.C. v. McGinn, Smith & Co., Inc.*,
    2016 WL 6459795 at *2 (N.D.N.Y. Oct. 31, 2016).........................................17

*SEC v. Basic Energy*,
    273 F.3d 657 (6th Cir. 2001).................................................................16, 17

*SEC v. Elliott*,
    953 F.2d 1560 (11th Cir. 1992)...................................................................16

*SEC v. Forex Asset Mgmt. LLC*,
    242 F.3d 325 5th Cir. 2001) .......................................................................17

*SEC v. Hardy*,
    803 F.2d 1034 (9th Cir. 1986)....................................................................16

*SEC v. Lincoln Thrift Ass'n,*
    577 F.2d 600 (9th Cir. 1978)......................................................................16

*SEC v. Wang*,
    944 F.2d 80 (2d Cir. 1991) .........................................................................17

<u>Rules</u>

11 U.S.C. § 102(1)(A) .......................................................................................22

F.R. Civ. P. 5 (c) ..............................................................................................21

F.R. Civ. P. 5(a) ...................................................................................................21

Local Civil Rule 66-8 ..........................................................................................21

## Regulations

Internal Revenue Service Reg. §1.468B-2(k)(2) .........................................................2

Bradley D. Sharp, the Court-appointed permanent receiver (the "Receiver") for the estate of Direct Lending Investments, LLC ("DLI"), Direct Lending Income Fund, L.P. ("DLIF" or the "Onshore Fund"), Direct Lending Income Feeder Fund, Ltd. ("DLIFF" or the "Offshore Fund" and together with DLIF, the "Feeder Funds"), DLI Capital, Inc. (DLI Capital"), DLI Lending Agent, LLC ("DLIA"), DLI Assets Bravo LLC ("DLIAB"), and their successors, subsidiaries and affiliated entities (collectively, the "Receivership Entities") pursuant to the Preliminary Injunction Order and Order Appointing Permanent Receiver issued April 1, 2019 ("Receiver Order") (Doc. No. 10), hereby files his Motion for Approval of: (1) Second Interim Distribution; and (2) Form and/or Manner of Notice Under Local Civil Rule 66-7 (the "Motion").

## I.  INTRODUCTION

The Receiver has collected additional funds into the receivership estate and seeks approval of his proposed second interim distribution. The Receiver previously obtained Court approval of his Distribution Plan which, in summary, provides for a priority of payments that, after payment of allowed administrative and priority claims, provides for a division of funds as between DLIF and DLIFF, and a distribution of DLIF's share to the DLIF investors pursuant to a rising tide distribution methodology. The Receiver has already made a first interim distribution pursuant to the terms of the Plan, in which he distributed $45,828,935 to DLIFF and $104,171,065 to DLIF. The DLIF investors received a first interim distribution that brought the level of funds paid to those investors (calculating both pre-receivership funds returned and the Receiver's first interim distribution) to 30.95% returns to DLIF investors. Those investors who received more than that percentage back pre-receivership have not yet received any distribution.

The Receiver's proposed second interim distribution contemplates distributing $61,500,000 from the common fund to DLIF and DLIFF, to be divided on a *pro rata* basis pursuant to the terms of the claims stipulation previously approved as between those two entities. Of that sum, $19,065,000 will be distributed to DLIFF Class 3 and $42,435,000 will be distributed to DLIF Class 4. The Receiver proposes to distribute an

additional $8,665,000 only to DLIF to be distributed pursuant to the rising tide methodology, which funds are derived solely from proceeds from settlements on avoidance claims relating to DLIF transfers (the "Net Winning Proceeds"). The proposed second interim distribution will bring the level of distribution to DLIF investors to 42.86%. A detailed schedule of the proposed distribution to investors, using investor generic identification numbers, is attached to the Declaration of Bradley D. Sharp as Exhibit "1" (the "Distribution Schedule").

In summary, this Motion requests:

1. Approval of the proposed second interim distribution of $61,500,000 to be shared by DLIF and DLIFF on a *pro rata* basis;

2. Approval of the proposed second interim distribution of $8,665,000 from the Net Winning Proceeds to Class 4B DLIF investors only;

3. Approval of the proposed Distribution Schedule substantially in accordance with the terms set forth in Exhibit "1" and subject to reserves and offsets as set forth herein; and

4. Approval of the form of notice of this Motion.

## II. STATEMENT OF FACTS

### A. Procedural History

The SEC filed a complaint against DLI on March 22, 2019, alleging fraud by DLI in violation of various federal securities law, including Sections 206(1) and 206(s) of the Advisors Act, Section 10(b) of the Exchange Act and Rule 10(b)(6), and Section 17(a) of the Securities Act, and Section 207 of the Advisers Act (the "Complaint").

The Receiver was appointed as receiver over the Receivership Entities by order entered on April 1, 2019. A qualified settlement fund ("QSF") was established by operation of law pursuant to Internal Revenue Service Reg. §1.468B-2(k)(2) on the date of commencement of the Receivership, or April 1, 2019, and all funds in the Receivership Estate subject to this proposed distribution are pooled assets to be distributed in accordance with the terms of the previously approved distribution plan.

## B. The Distribution Plan

The Receiver's Distribution Plan was approved by order entered on December 14, 2020 (ECF No. 337) (the "Distribution Plan"). The Distribution Plan provides for a priority of distributions from the Receivership Estate fund to the following classes of claimants: Administrative Claims (Class 1); Priority Claims (Class 2); DLIFF (Class 3) to be shared on a *pro rata* basis with DLIF Administrative Claims (Class 4A) and claims of DLIF Investors (Class 4B); General Unsecured Creditor Claims (Class 5); Indemnity Claims (Class 6); and Counter-Party Claims (Class 7).

The Distribution Plan also provides for a distribution methodology to Class 4B DLIF Investors that is based upon an equitable *pro rata* methodology called Rising Tide. Pursuant to the first interim distribution that was approved and made in accordance with the terms of the Distribution Plan, the Receiver has provided for the aggregate recovery to the DLIF Investors – from a combination of Pre-Receivership Returns and the first interim distributions – of 30.95% of the dollars invested.

Pursuant to the terms of the Distribution Plan and the first interim distribution, the Receiver has held reserves for certain claimants in lieu of distribution while certain claims objections matters are resolved. As of the time of this Motion, the Receiver is holding total reserves of $612,161.58 from the first interim distribution on account of 9 claims of investors in which there are still disputes pending. The Receiver contemplates that those reserves will either be paid out or retained.

## C. Assets Available for Distribution

The Receiver is continuing his efforts to recover additional funds for the benefit of the investors, which relate primarily from monetizing the loan portfolios and from his litigation efforts. Efforts to date have generated substantial sums that are available for distribution. The current balance of cash on hand is approximately $117,316,324. The source of those funds is summarized as follows:

### 1. Collection from Loan Portfolios

The principal assets of the Receivership Entities were the investments made with counterparties. The Receiver has liquidated, settled, and sold substantial positions in these investments. As of September 30, 2021, the Receiver has recovered approximately $229.2 million in portfolio collections.

### 2. Collections from Net Winner Claims

Efforts that have benefited the Class 4B DLIF Investors relate to the net winner claims, most of which the Receiver has settled. Through October 31, 2021, based on the settlement agreements executed to date, the Receiver has collected over $24,600,000 in cash in actual cash payments, with another approximately $2 million expected to be paid in installments over the next twelve months and to be collected as offsets after the next distribution to investors. These funds are available for distribution to Class 4 only. For accounting purposes, the Receiver intends to reserve funds from these collections that are chargeable to the DLIF Class 4 only, which include taxes as well as accrued and holdback professional fees and estimated professional fees directly associated with DLIF work. The Receiver intends to reserve approximately $12 million to cover any potential tax liability plus an additional approximately $3 million for actual and estimated professional fees arising from services provided for the benefit of the DLIF Class 4 only.

By this Motion, the Receiver proposes to distribute the sum of $51,100,000 ($42,435,000 from the *pro rata* share of the common fund proceeds and $8,665,000 from these net winner settlement efforts to Class 4B DLIF Investors pursuant to the Rising Tide methodology approved in the Distribution Plan.

### 3. Ongoing Litigation Efforts

The Receiver continues to pursue litigation claims that are either pending or have not yet been filed, so the amount of any additional recoveries is not yet known. The Receiver presently has an adversary proceeding pending against Duff & Phelps in New York, and he is in settlement discussions with Eisner Amper although no litigation has yet been filed. The Receiver also continues to evaluate claims against the insiders of the Receivership Entities and is engaged in preliminary discussions with some of those

parties. Any recoveries from these ongoing litigation efforts will be the subject of future distributions, subject to further Court approval at a later date.

Additionally, the Receiver has reached a settlement with Deloitte & Touche that is subject to Court approval. As part of that settlement process, the Receiver anticipates offering investors the option to opt in or out of the settlement. In order to best inform the investors of the consequences of such a decision, the Receiver intends to file a separate motion setting forth his proposed distribution methodology for the Deloitte & Touche settlement proceeds. The Receiver contemplates seeking authority to modify the terms of the Distribution Plan as to these particular settlement proceeds in light of the nature of the claim and in an effort to fashion the most equitable procedure possible regarding distribution of those funds. The Receiver will file a separate motion setting forth his proposed modification to the Plan and suggested distribution methodology as to the Deloitte & Touche settlement funds.

### D. DLIFF Liquidation Proceeding and DLIFF Investor Claims

Neither the Distribution Plan nor this proposed second interim distribution seek relief relative to the claimants or shareholders of DLIFF.[1] DLIFF shall receive its distribution pursuant to Class 3 of the Distribution Plan but shall make distributions from DLIFF pursuant to Cayman law in the Cayman liquidation proceeding described in the Distribution Plan and as set forth in the Claims Stipulation approved by order entered on December 14, 2020 (ECF No. 338). The proposed second interim distribution herein will allocate the distribution as between DLIF and DLIFF on a pro rata basis as required by the Distribution Plan and pursuant to the terms of the Claims Stipulation. DLIFF Class 3 will receive a distribution of $19,035,000 on account of the proposed second interim distribution.

### III.  SUMMARY OF DISTRIBUTION PLAN

---

[1] Any investors who originally invested in DLIF and later transferred their account to DLIFF are deemed DLIFF claimants and are not to receive any distributions pursuant to this Distribution Plan.

**A. Classes of Claimants**

The Receiver's Distribution Plan divides the classes of claimants into the following general categories for the following priority treatment:

Class 1: Administrative Professional Fees and Claims: To be paid in full up to the Allowed Amount of the Claims.

Class 2: Priority Claims: To be paid in full up to the Allowed Amount of the Claims.

Class 3: DLIFF's Allowed Claim pursuant to DLIFF Claims Stipulation: To share the funds remaining after payment of Classes 1 and 2, to be split on a *pro rata* basis with Class 4 DLIF Investor Claims pursuant to the DLIFF Claims Stipulation.

Class 4A: DLIF Administrative Claims will be paid up to the full amount of such Allowed DLIF Administrative Claims from distributions made in respect of the DLIF Claim under the Claims Stipulation.

Class 4B: DLIF Investor Claims: To share the funds remaining after payment of Classes 1 and 2, to be split on a *pro rata* basis with Class 3 DLIFF Claim pursuant to the Claims Stipulation. Distribution to Class 4 Investors shall be made pursuant to the Rising Tide methodology.

Class 5: Allowed General Unsecured Creditors: To receive distribution only upon payment in full of Classes 1, 2, 3 and 4, and to be paid *pro rata* with Classes 6 and 7.

Class 6: Allowed Indemnity Claims: To receive distribution only upon payment in full of Classes 1, 2, 3, and 4, and to be paid *pro rata* with Classes 5 and 7.

  Class 7: Allowed Counter-Party Claims: To receive distribution only upon payment in full of Classes 1, 2, 3, and 4, and to be paid *pro rata* with Classes 5 and 6.

**B. Assets Available for Distribution to Claimants**

  **1. Pooled Assets**

  The QSF contains all assets of the Receivership Entities, including any litigation proceeds that may be paid to the Receiver on account of any Cause of Action, Third Party Claim, and any proceeds of litigation brought on behalf of the Master Fund or any other Receivership Entity other than DLIFF or DLIF. Proceeds of DLIF Avoidance Actions are property of the QSF but shall be allocated exclusively to Class 4 as set forth in the Distribution Plan. Proceeds of Feeder Fund Litigation Assets are not allocated in this Distribution Plan and the allocation of any such assets shall be subject to a separate agreement or other resolution between the Receiver and the Cayman JOL.

  Assets of the Receivership Entities other than the Feeder Fund Litigation Assets and the DLIF Avoidance Actions will be pooled and will be used to make the second interim distribution on Allowed Claims pursuant to the terms of the Distribution Plan. All Allowed Claims to be paid pursuant to the Distribution Plan shall be paid from the assets in the QSF. Allocations of assets in the QSF between Classes 3 and 4 will be made pursuant to the terms of the Claims Stipulation as incorporated in this Distribution Plan.

  All of the assets for the Receivership Entities are now in the QSF, as will be any litigation proceeds received from the results of any litigation claims filed by the Receiver, other than as set forth in the Distribution Plan and the Claims Stipulation. The Receiver believes that the pooling of assets is proper as set forth in the Distribution Plan, and he is not aware of any basis, in equity or otherwise, to separate any particular assets for any

particular claimant.[2] No particular funds or assets were segregated for a single-purpose entity or for a particular claimant. The pooled assets shall be distributed on the priority basis and pursuant to the distribution methodology set forth in the Distribution Plan.

The Receiver proposes making a second interim distribution of $61,500,000. Of that sum, $19,065,000 will be distributed to DLIFF Class 3 and $42,435,000 will be distributed to DLIF Class 4.

### 2. DLIF Avoidance Actions

Any proceeds of litigation on account of DLIF Avoidance Actions arising from transfers made by DLIF shall be segregated for the benefit of Class 4 to be distributed to the DLIF Investors in Class 4B, and all associated costs with the Avoidance Actions shall be treated as Class 4A Claims. As set forth above, the Receiver anticipates that he will distribute approximately $8,665,000 to Class 4B DLIF Investors from such efforts.

## IV. APPROVAL OF THE PROPOSED SECOND INTERIIM DISTRIBUTION PURSUANT TO THE DISTRIBUTION PLAN IS APPROPRIATE

**A. The Court has Broad Authority to Approve the Proposed Second Interim Distribution**

The Court's power over an equity receivership and to determine appropriate procedures for administering a receivership is "extremely broad." *SEC v. Hardy*, 803 F.2d 1034, 1037-38 (9th Cir. 1986); *see SEC v. Basic Energy*, 273 F.3d 657, 668 (6th Cir. 2001); *SEC v. Elliott*, 953 F.2d 1560, 1566 (11th Cir. 1992); *SEC v. Lincoln Thrift Ass'n*, 577 F.2d 600, 606 (9th Cir. 1978) ("[T]he district court has broad powers and wide discretion to determine the appropriate relief in an equity receivership."). This extremely

---

[2] The Receiver may seek separate authority for slightly different disposition of settlement proceeds from Deloitte & Touche based on the terms of the settlement agreement and the basis of the underlying claim giving rise to the proceeds. The Receiver will seek separate court authority for any proposed change in the terms of the Distribution Plan or distribution methodology.

broad power and broad deference stem from the long-standing principle that the full scope of a court's equity jurisdiction should be recognized and applied by the courts. *Reebok Int'l v. Marnatech Enter., Inc.*, 970 F.2d 552, 561–62 (9th Cir.1992). The primary purpose of an equity receivership is to promote the orderly and efficient administration of the estate for the benefit of the creditors. *See Hardy*, 803 F.2d at 1038. The *Hardy* court stated that it would uphold "reasonable procedures instituted by the district court" that promote the district court's orderly and efficient administration of the receivership estate for the benefit of creditors. *Id.*

The Court has previously approved the Distribution Plan and has wide latitude when it exercises its inherent equitable power to approve a plan of distribution of receivership funds. *SEC v. Forex Asset Mgmt. LLC*, 242 F.3d 325, 331 (5th Cir. 2001) (affirming District Court's approval of plan of distribution because court used its discretion in "a logical way to divide the money"); *Quilling v. Trade Partners, Inc.*, 2007 WL 107669, * 1 (W.D. Mich. 2007) ("In ruling on a plan of distribution, the standard is simply that the district court must use its discretion in a logical way to divide the money" (internal quotations omitted)). In approving a plan of distribution in a receivership, "the district court, acting as a court of equity, is afforded the discretion to determine the most equitable remedy." *Forex*, 242 F.3d at 332. The Court may adopt any plan of distribution that is logical, fair, and reasonable. *SEC v. Wang*, 944 F.2d 80, 83-84 (2d Cir. 1991); *Basic Energy*, 273 F.3d at 671; *Quilling*, 2007 WL 107669 at *1; *S.E.C. v. Byers*, 637 F. Supp. 2d 166, 174 (S.D.N.Y. 2009) (internal quotation omitted) (collecting cases). *S.E.C. v. McGinn, Smith & Co., Inc.*, 2016 WL 6459795 at *2 (N.D.N.Y. Oct. 31, 2016) (internal quotations omitted).

### B. Rising Tide Distribution to Class 4B is Appropriate

The Court has previously approved the Rising Tide *pro rata* plan as an equitable distribution methodology as the most fair and equitable manner in which to treat the DLIF Investors. As a reminder, the manner in which Rising Tide calculations are made is described as follows: distributions are "calculated according to the following formula:

(actual dollars invested x *pro rata* multiplier) - withdrawals previously received = distribution amount."[3] The Rising Tide distribution to a given DLIF Investor is the sum of Pre-Receivership Returns, plus the amount that the Receiver has and will distribute pursuant to the Distribution Plan. The Rising Tide distribution divided by Total Investment equals the Rising Tide recovery percentage (i.e., the Recovery Threshold) for a given DLIF Investor. Each Allowed DLIF Investor Claim will be paid up to the Recovery Threshold based on the ratio of the Pre-Receivership Return received by a given DLIF Investor to such DLIF Investor's related Total Investment. If the DLIF Investor received Pre-Receivership Returns that exceed the final Rising Tide *Recovery Threshold*, the DLIF Investor will not receive a further distribution, unless and until all other Allowed DLIF Investors Claims are paid the same rising tide Recovery Threshold and there are additional sums to distribute to DLIF Investors.

The Receiver has calculated the distributions to be made to the Class 4B DLIF Investors, and a schedule of those distributions using investor generic identification numbers is attached to the Sharp Declaration as Exhibit "1." The Rising Tide distributions (including Pre-Receivership Returns, the first interim distribution, and the proposed second interim distribution will reach approximately at least 42.86% for all DLIF Investors assuming a $42,435,000 second interim distribution plus the special $8,665,000 distribution for Class 4B DLIF Investors. That is, DLIF Investors who received Pre-Receivership Returns from the Receivership Entities of less than 42.86% of their Total Investment would receive distributions from the Receivership such that their cumulative distributions would equal approximately 42.86% of their Total Investment. Under a Rising Tide methodology, this recovery percentage, or "Recovery Threshold," would be uniform across DLIF Investors who receive funds under the Distribution Plan. Under the Rising Tide method, DLIF Investors who lost the greatest percentage of their Total Investment receive a proportionately greater distribution from the Receivership

---

[3] *Equity Financial*, 2005 U.S. Dist. LEXIS 20001, at *83.

Property than DLIF Investors who already received proportionally larger returns as a result of Pre-Receivership Returns. Stated differently, the Rising Tide method equalizes distributions to all DLIF Investors, including those DLIF Investors who received disproportionate distributions from the Receivership Entities (made with later DLIF Investors' money); those DLIF Investors who received payments from the Receivership Entities do not benefit at the expense of those who did not.[4]

### C. Reserves and Adjustments are Appropriate

As set forth his original motion to approve the Distribution Plan, the Receiver contemplated that certain reserves would be held on account of the first interim distribution where the Receiver held possible objections to claims filed. Of those amounts held in reserve, $1,524,445 in claim objections have been resolved and have been distributed or retained as settlement proceeds. The Receiver continues to hold $612,161.58 on account of 9 claims from the first interims distribution. As those claims issues are resolved, the Receiver will either release or retain the reserves as agreed to by the parties or pursuant to further court order in connection with the claims objections.

Separately, the Receiver has entered into certain settlement agreements in connection with his net winner claims that provide for the withholding of future distributions as payment on account of settlements of net winner claims. Those amounts have been included in the Rising Tide calculation but amounts that would otherwise be paid as second interim distributions that are subject to settlement agreements will be retained by the Receiver and placed into the general pool of funds in the receivership case available to distribution pursuant to the terms of the Distribution Plan. Those settlements have resulted in the sum of $229,717.18 being retained from the first distribution for the benefit of the estate, and an additional $1,632,482.98 will be retained from future

---

[4] *See e.g.*, *Huber*, 702 F.3d 903, 909 (7th Cir. 2012) (approving use of "rising tide" distribution plan); *CFTC v. Hojjberg*, No. 93-cv-3106, 1993 WL 441984, at *3 (N.D. Ill. Oct. 28, 1993) (adopting a "rising tide" plan); *CFTC v. Equity Financial Group, LLC*, No. 04-1512, 2005 WL 2143975, at *25 (D.N.J. Sept. 2, 2005) (same).

distributions on account of net winner settlements. Those funds will then become available for general distribution to the Class 4B investors.

## V. SUBORDINATION OF CLAIMS

The Distribution Plan provides that Class 5, 6 and 7 claims will only receive distribution following payment in full to Class 1, 2, 3 and 4 claimants. Because Classes 3 and 4 are not yet scheduled or anticipated to receive payment in full, Classes 5, 6 and 7 continue to remain in a subordinated class and will not receive any distribution in connection with this Motion.

## VI. AN INTERIM DISTRIBUTION OF $61,500,000 PURSUANT TO THE TERMS OF THE PLAN, AND ANOTHER $8,665,000 TO CLASS 4B DLIF INVESTORS IS APPROPRIATE

The Receiver requests authority to make an interim distribution of $61,500,000 pursuant to the terms of the Distribution Plan and another $8,665,000 just to Class 4B DLIF Investors at this time. Specifically, the Receiver requests authority to pay or reserve funds as follows:

1. Class 1 Administrative claims: The Receiver will pay all allowed fees and expense claims of professionals. To the extent that no court approval has yet been obtained, or the Receiver intends to object to a claim, the Receiver will reserve funds for the full amount of the filed claims pending resolution. The Receiver will also pay or reserve for all known or anticipated administrative tax claims.

2. Class 2 Priority claims: The Receiver will pay all allowed Tax Claims.

3. Class 3: The Receiver will pay DLIFF's *pro rata* share, to be shared with Class 4 based upon the terms of the Claims Stipulation, of the remaining funds up to the proposed $19,065,000 interim distribution following payment or reserves for Classes 1 and 2.

4. Class 4:

      a. The DLIF Investors will receive distribution of their *pro rata* share of the distribution to be made to Class 4B, to be shared with Class 3, up to the amounts of the proposed $42,435,000 interim distribution following payment or reserves for Classes 1, 2 and 4A.

      b. Separately, the DLIF Investors will receive distribution of $8,665,000 from the Net Winning Proceeds to be distributed pursuant to the Rising Tide methodology.

The Receiver believes that a second interim distribution of $61,500,000 is appropriate and reasonable and that the distribution of the Net Winning Proceeds of $8,665,000 to the DLIF Investors is appropriate. The Receiver will continue to hold approximately $44,680,336 of undistributed cash on hand, and he continues to pursue recovery on the loan portfolios. Additionally, the Receiver is at the beginning stages of pursuing litigation claims and believes that additional recoveries may result from his litigation efforts.

## VII. NOTICE OF THE HEARING ON THIS MOTION SHOULD BE DEEMED APPROPRIATE AND SUFFICIENT

The Receiver has served notice of the hearing on this Motion on the parties and by mail to the known non-investor creditors of the Receivership Entity. The Receiver has posted the notice of hearing and the Motion on the Receiver's website (https://cases.stretto.com/dli). The Receiver has also directed Stretto, his Court-approved claims agent, to email the notice of hearing to all investors. The Receiver believes this notice complies with the provisions of Local Civil Rule 66-7 to the extent that notice to investors is required. The Receiver requests that the Court approve this form of notice as reasonable, appropriate, and the most cost-effective means of providing notice of the hearing under the circumstances, since there are approximately 975 investors both in the United States and overseas, and to the extent necessary, to approve the notice given as reasonable, limited notice appropriate under the circumstances and in the interests of time and cost. This Court, as a court of equity

supervising the receivership estate, may make appropriate administrative orders governing the receivership, including limitations on and changes in notice and other procedures. *See* F.R. Civ. P. 5(a) and (c) (authorizing the court to modify service procedures when numerous defendants are involved in litigation). In addition, pursuant to Local Civil Rule 66-8, a receiver is directed to administer receivership estates in a manner "as nearly as possible in accordance with the practice in the administration of estates in bankruptcy." Orders limiting notice when the Bankruptcy Code or Rules would otherwise require notice to all creditors are routinely granted in bankruptcy cases to promote the expeditious and economical administration of bankruptcy estates. *See In re First Alliance Mortgage Co.*, 269 B.R. 428, 442 (C.D. Cal. 2001) (referencing in *dicta* in the court's recitation of facts the bankruptcy court's order limiting notice issued in that case); 11 U.S.C. § 102(1)(A) (defining the phrase "after notice and a hearing" to mean "after such notice as is appropriate in the particular circumstances, and such opportunity for hearing as is appropriate in the particular circumstances").

## VIII. CONCLUSION

WHEREFORE, the Receiver respectfully requests that the Court grant the Motion and all relief requested therein.

DATED: November 4, 2021          RAINES FELDMAN LLP

                                 By:  /s/ *Kathy Bazoian Phelps*
                                      Kathy Bazoian Phelps
                                      Counsel for Bradley D. Sharp,
                                      Permanent Receiver