CHRISTOPHER D. SULLIVAN (148083)
*csullivan@diamondmccarthy.com*
STACEY L. PRATT (124892)
*stacey.pratt@diamondmccarthy.com*
DIAMOND MCCARTHY LLP
150 California Street, Suite 2200
San Francisco, CA 94111
Phone: (415) 692-5200

*Counsel for Bradley D. Sharp,*
*Permanent Receiver*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION – LOS ANGELES

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>            Plaintiff,<br><br>        v.<br><br>DIRECT LENDING INVESTMENTS LLC,<br><br>            Defendant. | Case No. 2:19−cv−02188−DSF−MRW<br>Hon. Dale S. Fischer<br><br>**DECLARATION OF BRADLEY D. SHARP IN SUPPORT OF AMENDED MOTION OF RECEIVER FOR APPROVAL OF SETTLEMENT WITH DELOITTE ENTITIES; ENTRY OF SCHEDULING ORDER; AND ENTRY OF ORDER APPROVING SETTLEMENT**<br><br>Date:   July 25, 2022<br>Time:   1:30 p.m.<br>Dept.:   Courtroom 7D<br>Place:   United States District Court<br>            Western Division<br>            350 West 1st Street,<br>            Los Angeles, CA 90012 |

2:19−cv−02188−DSF−MRW

1

DECLARATION OF BRADLEY D. SHARP IN SUPPORT OF
AMENDED MOTION OF RECEIVER FOR APPROVAL OF
SETTLEMENT WITH DELOITTE ENTITIES

I, Bradley D. Sharp, declare and state:

1.     I was appointed Receiver by this Court for defendant Direct Lending Investments LLC ("DLI"), and Direct Lending Income Fund, L.P. ("DLIF"), Direct Lending Income Feeder Fund, Ltd., DLI Capital, Inc., DLI Lending Agent, LLC, and DLI Assets Bravo LLC, and their successors, subsidiaries and affiliated entities (the "DLI Receivership Entities") by order entered on April 1, 2019.

2.     I submit this Declaration in support of the Amended Motion of Receiver for Approval of Settlement With Deloitte Entities; Entry of Scheduling Order; and Entry of Order Approving Settlement ("Amended Motion")

3.     I have personal knowledge of the facts set forth in this Declaration, and, if called to testify, could testify competently thereto.

4.     Pursuant to the Preliminary Injunction Order and Order Appointing Permanent Receiver (Dkt. No. 10), I have been given the full powers of an equity receiver over all funds, property, assets, and choses in action belonging to, being managed by or in the possession or control of, the DLI Receivership Entities and to sue, collect, and take into possession all such property.  I am also authorized to make agreements as may be necessary and advisable in discharging my duties as permanent receiver.

5.     With control of DLIFF's controlling shareholder, DLI, in my capacity as Receiver, in my business judgment, I thought it was best that I exercise the rights of DLI to place DLIFF into voluntary liquidation. I sought approval of this Court for before taking this action.  In its order entered on May 14, 2019 (Dkt. No. 43), this Court authorized Christopher D. Johnson and me to accept appointment as joint voluntary liquidators and/ or joint official liquidators of Direct Lending Income Feeder, Fund, Ltd. ("DLIFF") under the supervision of the Grand Court of the Cayman Islands. Christopher D. Johnson and I were appointed as joint voluntary liquidators and filed a petition to

DECLARATION OF BRADLEY D. SHARP IN SUPPORT OF AMENDED MOTION OF RECEIVER FOR APPROVAL OF SETTLEMENT WITH DELOITTE ENTITIES

place DLIFF's liquidation under the supervision of the Grand Court of the Cayman Islands. On July 25, 2019, the official liquidation of DLIFF was initiated by order of the Grand Court of the Cayman Islands and Christopher Johnson and I were appointed as Joint Official Liquidators ("JOLs") of DLIFF.

6.   On August 1, 2019, the Grand Court of the Cayman Islands entered a supervision order enabling the JOLs to compromise certain claims.

7.   On August 25, 2020, this Court entered an order approving a conflict management protocol, that granted Christopher D. Johnson the sole and exclusive right (subject to Cayman Court supervision) to act on behalf of DLIFF in the event of a conflict under certain terms and conditions with respect to Recusal Issues. (Dkt. No. 289-2, 293). In other respects, Christopher D. Johnson and I are authorized in our capacity as JOLs to act on behalf of DLIFF subject to Cayman court supervision.

8.   On December 14, 2020 (Dkt. No. 337), this Court approved the Distribution Plan, which provides for a priority of distributions from the receivership estate. The Distribution Plan provides for a distribution methodology to Class 4B DLIF Investors that is based upon the Rising Tide methodology.

9.   In furtherance of my duties, I, along with the assistance of my retained professionals, diligently investigated all potential claims against Deloitte & Touche LLP ("Deloitte"), Deloitte Tax LLP, and Deloitte & Touche Cayman Islands (collectively "Deloitte Entities") arising out of the professional services provided by the Deloitte Entities to the DLI Entities.[1] Based on an extensive investigation and the work of my litigation counsel and a confidential expert consultant, I believe that the receivership holds claims against the Deloitte Entities for professional negligence, aiding and abetting breach of fiduciary duty, negligent misrepresentation, and breach of contract. Further details on these claims, their strength and weaknesses, Deloitte's

---

[1] DLI Entities means DLIFF together with the DLI Receivership Entities.

3

DECLARATION OF BRADLEY D. SHARP IN SUPPORT OF AMENDED MOTION OF RECEIVER FOR APPROVAL OF SETTLEMENT WITH DELOITTE ENTITIES

defenses, the litigation risks, and complex disputed issues of fact and law are detailed in the Declaration of Christopher D. Sullivan of Diamond McCarthy in support of the Amended Motion. I, along with Diamond McCarthy and the confidential expert consultant, diligently evaluated these factors in deciding to mediate in the first place and then subsequently entering into a settlement.

10. On August 3, 2020, I, the JOLs, and the Deloitte Entities formally agreed to engage in a mediation under the direction and supervision of the Honorable Daniel Weinstein (Ret.) and Ambassador David Carden (Ret.). Judge Weinstein is one of the nation's most preeminent mediators of complex civil disputes and has mediated numerous securities cases. Following the August 3, 2020 agreement, the Party Investors joined the mediation process, agreeing to stay any actions that were already filed against the Deloitte Entities or to forbear from filing any such actions. The Party Investors' participation was valuable and gave me further comfort in concluding that the Investors[2] as a whole would support the mediation and a potential settlement.

11. The Party Investors were active in the mediation process. The Party Investors are composed of four investor groups: (1) investors represented by Levine Kellogg Lehman Schneider + Grossman LLP, The Meade Firm P.C., and Reiser Law P.C.; (2) investors that are plaintiffs in the action *Jackson v. Deloitte & Touche LLP*, Case No. 20GDCV00419 (Cal. Super. Ct.) ("Jackson Action"), represented by Nystrom, Beckman & Paris LLP (the "Jackson Group"); (3) investors represented by Bragar, Eagel & Squire P.C; and (4) investors that are putative lead plaintiffs in the action *Marcia Kosstrin Trust and Professional Home Improvements, Inc. Retirement Plan v. Direct Lending Investments, LLC, et al.*, Case No. 2:19-cv-02452 (C.D. Cal.) ("Class Plaintiffs"), represented by putative class counsel Ahdoot and Wolfson PC and Milberg Phillips Grossman LLP. These four groups collectively represent approximately 180

---

[2] Capitalized terms not defined in this declaration have the same meaning as in the Amended Confidential Settlement Agreement and Release.

DECLARATION OF BRADLEY D. SHARP IN SUPPORT OF AMENDED MOTION OF RECEIVER FOR APPROVAL OF SETTLEMENT WITH DELOITTE ENTITIES

investors. The Kosstrin Action was filed by the Class Plaintiffs against DLI, Brendan Ross, Bryce Mason, Frank Turner, Rodney Omanoff, and Quarterspot, Inc. ("Quarterspot") on April 1, 2019 and remains stayed. The Jackson Group initiated the Jackson Action against Deloitte, Deloitte Tax, and Opus Fund Services, LLC ("Opus") for negligent and intentional misrepresentations on April 28, 2020.

12.     Through the mediation process, the JOLs, the Deloitte Entities, the Party Investors, and I (collectively the "Parties") engaged in a robust exchange of documents and information related to their potential claims and defenses. On October 26, 2020, professionals on behalf of the DLI Entities, as well as the Party Investors, made a four-hour presentation to the mediators and the Deloitte Entities concerning the factual and legal bases for their claims. On December 14, 2020, the Deloitte Entities made an equally lengthy rebuttal presentation concerning their defenses.

13.     A two-day mediation was held on December 21 and 22, 2020 with the mediators, followed by a mediators' proposal for a settlement, culminating in an agreement-in-principle.  Prior to the mediation, my team and I, and the JOLs' team prepared a confidential and privileged summary of recommendations regarding potential claims and defenses. For purposes of mediation, Diamond McCarthy also prepared a confidential and privileged analysis of the strengths and weaknesses of Deloitte's various defenses, the likely impact on damages, and settlement ranges given the evaluated litigation risks. I studied these analyses, discussed the issues with my counsel, and evaluated the litigation risks involved in pursuing the claims against the Deloitte Entities, and the complex disputed issues of fact and law in deciding to settle with the Deloitte Entities.

14.     In the months that followed, the Parties negotiated and memorialized the terms of the settlement. On April 8, 2021, I filed the Motion for (i) Approval of Settlement with Deloitte Entities; (ii) Entry of Scheduling Order; and (iii) Entry of Bar Order ("Previous Motion"). On June 14, 2021, the Court held a hearing on the Previous

DECLARATION OF BRADLEY D. SHARP IN SUPPORT OF
AMENDED MOTION OF RECEIVER FOR APPROVAL OF
SETTLEMENT WITH DELOITTE ENTITIES

Motion. At the hearing, the Court directed certain questions and comments to the Parties and requested supplemental briefing. Since that hearing, the Parties have expended considerable time and thought in addressing the Court's concerns and fashioning workable solutions. The Parties, including my professionals and counsel for the Party Investors, have worked diligently over a period of months to respond to the Court's comments, and to create a framework that will preserve both Deloitte's desire for a global resolution and the rights of the Investors. As a result, we have substantially modified the Settlement. The terms of the modified Settlement are contained in the Amended Confidential Settlement Agreement and Release ("Amended Settlement Agreement") attached to this declaration as Exhibit 1. It is the product of significant effort and negotiations among the Parties.

15.     While the Amended Settlement Agreement has been changed considerably since I previously requested Court approval, as outlined in greater detail in the Amended Motion, I wish to highlight a few notable provisions for the Court. The Amended Settlement Agreement now provides Investors with the opportunity to exclude themselves from participation in the Settlement (*i.e.* opt out of the Settlement). Any Investor that does not wish to participate in the Settlement may exclude itself, will not be bound by the Amended Settlement Agreement, and will retain any rights to pursue claims against the Released Deloitte Entities. We have crafted robust notice procedures that I believe will ensure Investors are fully informed of this right to opt out and the consequences of doing so, including separate direct notices tailored to DLIF Investors and DLIFF Investors (Exs. H and I to Amended Settlement Agreement).  Additionally, we have made it easy for Investors to opt out; they simply need to send a letter by e-mail to my claims administrator Stretto stating they want to be excluded from the Settlement. I will also publish a notice multiple times in various domestic and internationally available newspapers (Ex. D to Amended Settlement Agreement) and all the notices (Ex. C, D, H, and I to the Amended Settlement Agreement) will be published

DECLARATION OF BRADLEY D. SHARP IN SUPPORT OF AMENDED MOTION OF RECEIVER FOR APPROVAL OF SETTLEMENT WITH DELOITTE ENTITIES

on the receivership's website.

16.     The following are the carefully crafted and negotiated material provisions in the Amended Settlement Agreement that pertain to the rights of Investors:

- Only Releasing Claimants and Participating DLIF Investors will release their claims against the Deloitte Entities. (Amended Settlement Agreement, §§ 1.19, 1.25, 4.1(a); Order Approving Settlement at 7). Participating DLIFF Investors will not release their claims (if any) against the Deloitte Entities because I understand that Cayman Islands law prohibits such releases, while limiting the ability of DLIF Investors to assert direct claims against the Deloitte Entities in numerous other ways.

- Only Releasing Claimants and Participating Investors will be barred from prosecuting or seeking relief in any state or federal court, arbitration proceeding, or other forum in the United States against the Released Deloitte Entities, with respect to claims related to the professional services the Deloitte Entities provided the DLI Entities. (Amended Settlement Agreement, §§ 1.18, 1.25, 4.1(b); Order Approving Settlement at 9).

- Opt-out Investors will not release their claims against the Deloitte Entities, nor shall such claims be barred.

- The Settlement Amount of $31,000,000, less attorneys' fees and expenses in the amount of up to $4.65 million (subject to Court approval), will be distributed to DLIF and DLIFF under the allocation set forth in the previously approved Claim Stipulation. Only Claimants and Participating DLIF Investors shall be eligible to receive any portion of the Settlement Amount from the Receiver. The portion of the Settlement Amount allocated to DLIFF will be distributed to DLIFF Investors in accordance with Cayman Islands law. (Amended Settlement Agreement, § 2.9).

The procedures set forth in the Amended Settlement Agreement in my judgment thus

DECLARATION OF BRADLEY D. SHARP IN SUPPORT OF
AMENDED MOTION OF RECEIVER FOR APPROVAL OF
SETTLEMENT WITH DELOITTE ENTITIES

give Investors the opportunity to decide for themselves whether to retain any rights to pursue claims against the Released Deloitte Entities or to participate in the Settlement.

17.   The parties, after thoughtfully considering the Court's comments and the objections filed to the previous Motion agreed to modify the settlement. The Amended Settlement Agreement and the Order Approving Settlement (Ex. E to the Amended Settlement Agreement) do not contain a Third Party claims bar. The Amended Settlement Agreement only requests an order barring Releasing Claimants and Participating Investors from prosecuting any claims or proceeding in the United States against the Released Deloitte Entities with respect to all claims bases on professional services provided by the Deloitte Entities to the DLI Entities. (Amended Settlement Agreement, § 4.1(b)). The Order Approving Settlement Agreement is also similarly structured to bar, restrain, and enjoin only the Releasing Claimants and Participating Investors (Order Approving Settlement ¶ 9) and not all "Investors, and all other Persons" (Dkt. 532- Ex. E at 10) on contrast to the corresponding proposed order submitted with the Previous Motion did. Thus, Third Parties are not prohibited from bringing claims against the Released Deloitte Entities.

18.   To the best of my knowledge, the only Third Parties that have either been sued or threatened with claims by the Claimants (and by virtue of those claims or threatened claims may have claims for contribution against the Deloitte Entities) are: 1) Opus, 2) Duff & Phelps, LLC, 3) EisnerAmper LLP, 4) QuarterSpot, and 5) certain DLI officers.  Among these Third Parties, only Opus has filed claims against certain of the Deloitte Entities. In my judgment, Opus, and all other Third Parties stand to gain from the Settlement because the Amended Settlement Agreement has a provision whereby any final verdict or judgment obtained by or on behalf of any Claimant or Participating DLIF Investor against any Third Party will be reduced by an amount that corresponds to the percentage of responsibility of the Released Deloitte Entities for common

DECLARATION OF BRADLEY D. SHARP IN SUPPORT OF AMENDED MOTION OF RECEIVER FOR APPROVAL OF SETTLEMENT WITH DELOITTE ENTITIES

damages, unless the law governing the final verdict or judgment provides otherwise (Amended Settlement Agreement, § 4.1(d)). In my informed judgment, I believe that, with these modifications, Third Parties are treated fairly under the Settlement.

19.    In addition, the Settlement is no longer conditioned upon determination by the court in *Jackson v. Deloitte & Touche LLP*, Case No. 20GDCV00419 (Ca. Super. Ct.), that the *Jackson* plaintiffs and the Deloitte Entities entered into the Amended Settlement Agreement in good faith pursuant to California Code of Civil Procedure Section 877.6.

20.    Also of note is the fact that the indemnity hold-back provision in the initial settlement agreement has been removed. This provision required me to withhold $2.5 million from the Settlement Amount to fund the Deloitte Entities' defenses against any claims that may be asserted by Releasing Claimants. The removal of this provision frees up an additional and unconditional $2.5 million for distribution. This is beneficial to the Receivership Entities and to Participating Investors.

21.    With material modifications made to the Settlement after the June 14, 2021 hearing, particularly with respect to the rights of DLIFF Investors to opt out of the Settlement and the ramifications of doing so, considerable effort was expended to address issues relating to Cayman Islands' law and proceedings. Mr. Johnson and I, and our Cayman Island counsel, thoughtfully reviewed and analyzed relevant Cayman Islands' laws and negotiated over a period of months with the Deloitte Entities' Cayman Islands' counsel over modifications to the Settlement and the timing and method of appropriate proceedings in the Cayman Islands. Mr. Johnson and I, as JOLs, upon privileged advice of Cayman Islands' counsel, concluded that the modifications to the Settlement impacting DLIFF Investors require sanction (approval) from the Grand Court of the Cayman Islands. Thus, the Amended Settlement Agreement requires the JOLs to make an application by means of interlocutory summons for an order providing that the JOLs have sanction to enter into the Settlement and the Amended Settlement

9

2:19-cv-02188-DSF-MRW                                    DECLARATION OF BRADLEY D. SHARP IN SUPPORT OF
                                                         AMENDED MOTION OF RECEIVER FOR APPROVAL OF
                                                         SETTLEMENT WITH DELOITTE ENTITIES

Agreement (Amended Settlement Agreement, § 2.2). The JOLs have already filed the summons. Understanding this Court's busy caseload, we have drafted the Amended Settlement Agreement to allow for the hearing on the Amended Motion to be held after the Grand Court in the Cayman Islands issues its decision on the JOLs' application for entry of a sanction order.

.      22.    I believe, in my informed judgment, that the terms of the Amended Settlement Agreement fairly, reasonably, and adequately resolve potential claims between the DLI Receivership Entities, Investors, and the Deloitte Entities. Before settling, I along with the assistance of my retained professionals, including personnel at Development Specialists Inc., Diamond McCarthy, and the confidential expert consultant, carefully considered and vigorously investigated, analyzed, and evaluated the claims against the Deloitte Entities; the counterclaims and defenses that would be asserted to those claims, including the actual defenses asserted by the Deloitte Entities; damage theories; and settlement ranges.  The claims possessed by the Receiver and JOLs, and those asserted by the represented Party Investors, and the Deloitte Entities' defenses thereto are described in some detail in the Amended Motion and in the accompanying Declaration of Christopher D. Sullivan.  While the Settlement Amount reflects the strength of those claims, the claims involve disputed facts, and complex and novel issues of law that would require a substantial amount of time and expense to litigate, with uncertainty as to the outcome of such litigation and any ensuing appeal. I believe that Mr. Sullivan's declaration accurately describes the complexity of the litigation that would be necessary to prosecute these claims. In light of the relative strengths and weaknesses of the claims and defenses, in my informed business judgment, the Settlement offers the best and substantial recovery to the DLIF and DLIFF estates, while avoiding prejudice to Third Parties or to Investors who decide to opt out.

23.    My decision to settle with the Deloitte Entities and to enter into the

DECLARATION OF BRADLEY D. SHARP IN SUPPORT OF
AMENDED MOTION OF RECEIVER FOR APPROVAL OF
SETTLEMENT WITH DELOITTE ENTITIES

Amended Settlement Agreement is guided by what, in my business judgment, I believe is in the best interest of the receivership estate, the constituents of who primarily are the Investors. For this reason, I welcomed the participation of the Party Investors in the settlement process and in negotiating the terms of the Amended Settlement Agreement. This active participation by Party Investors helped ensure that the concerns of the Investors were represented in the process.

24.     The Amended Settlement Agreement allows for all Investors to benefit from its terms, but also provides them with the option to exclude themselves and retain any rights to prosecute claims against the Deloitte Entities. The Amended Settlement Agreement affords Investors with certain protections including: 1) robust notice procedures designed to inform Investors of the Settlement, their right to exclude themselves from it and the ramifications of doing so; 2) the right of Investors to submit objections to the Settlement even if they elect to opt out; and 3) the opportunity for Investors to be heard at the Final Approval Hearing.

25.   Since the June 14, 2021 hearing, in consultation with my advisers, I have determined that rather than distributing the proceeds of the Settlement to DLIF Investors under the Rising Tide methodology, the better course is to distribute the Settlement proceeds to Participating DLIF Investors on a *pro rata* basis based on the Net Investment amount.[3]  This, based on my analysis, will enable 93 Investors who would otherwise be above the Rising Tide level for distribution to obtain the benefits of the Settlement should they elect to participate.  Further details on the reasoning behind this decision will be addressed in the Motion of Receiver for: (1) Disbursement of the

---

[3] Net Investment" is defined in the Distribution Plan as a "DLIF Investor's Total Investment less Pre-Receivership Returns."  "Total Investment" is defined as the "total amount of cash invested by a DLIF Investor." (Dkt. 321-2).  "Pre-Receivership Returns" means the "amount of cash payments a DLIF Investor received from the Receivership Entities through March 31, 2019, as interest payments, redemptions, or return of principal, irrespective of the characterization by the Receivership Entities of such payments." (Dkt. 321-2).

DECLARATION OF BRADLEY D. SHARP IN SUPPORT OF AMENDED MOTION OF RECEIVER FOR APPROVAL OF SETTLEMENT WITH DELOITTE ENTITIES

Deloitte Settlement Proceeds Through a Modification of Distribution Plan; and (2) Order Approving Form and/or Manner of Notice under Local Civil Rule 66-7 which will be noticed for hearing in conjunction with this motion.

26.     There are approximately 975 Investors in the Receivership Entity both in the United States and overseas.  I have a website for investors to obtain information regarding the receivership (https://cases.stretto.com/dli). Additionally, I have directed my Court-approved claims agent, Stretto, to send by email the notice of hearing on this Amended Motion to all Investors.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on  May 23   , 2022, at  San Juan Cap , California.

Bradley D. Sharp
Permanent Receiver

# EXHIBIT  1

## AMENDED CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE

This AMENDED CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE (this "**Agreement**") is by and between:

1) Bradley D. Sharp, as the permanent receiver (the "**Receiver**") for the estate of Direct Lending Investments, LLC, Direct Lending Income Fund, L.P., Direct Lending Income Feeder Fund, Ltd., DLI Capital, Inc., DLI Lending Agent, LLC, DLI Assets Bravo LLC (in Receivership) (collectively, the "**DLI Receivership Entities**");

2) Bradley D. Sharp and Christopher D. Johnson, solely in their capacities as Joint Official Liquidators ("**JOLs**") of Direct Lending Income Feeder Fund, Ltd. (in official liquidation) ("**DLIFF**") (DLIFF, together with the DLI Receivership Entities, the "**DLI Entities**");

3) Investors in the DLI Entities that participated in the Mediation (defined below) that are identified in **Exhibit A** to this Agreement ("**Party Investors**"):

   a) Those Investors represented by The Meade Firm P.C., Reiser Law P.C., and Levine Kellogg Lehman Schneider + Grossman LLP (the "**Century Group**");

   b) Those Investors that are plaintiffs in the action *Jackson v. Deloitte & Touche LLP*, Case No. 20GDCV00419 (Ca. Super. Ct.), represented by Nystrom, Beckman & Paris LLP (the "**Jackson Group**");

   c) Those Investors represented by Lawrence Eagel of Bragar Eagel & Squire, P.C. (the "**Eagel Group**");

   d) Those Investors that are putative lead plaintiffs in the action *Marcia Kosstrin Trust and Professional Home Improvements, Inc. Retirement Plan v. Direct Lending Investments, LLC, et al.*, Case No. 2:19-cv-02452 (C.D. Cal.), represented by putative class counsel Ahdoot and Wolfson PC and Milberg Phillips Grossman LLP (the "**Class Plaintiffs**").

4) Deloitte & Touche, LLP, Deloitte Tax LLP, and Deloitte & Touche LLP (Cayman Islands) (collectively, the "**Deloitte Entities**").

The Receiver, JOLs, the DLI Entities, the Party Investors, and the Deloitte Entities are individually referred to herein as a "**Party**" and, collectively, as the "**Parties**."

## RECITALS

WHEREAS, on March 22, 2019, the United States Securities Exchange Commission filed a lawsuit in the United States District Court, Central District of California against Direct Lending Investments, LLC, titled *Securities and Exchange Commission v. Direct Lending Investments, LLC*, Case No. 19-cv-2188 (the "**SEC Action**"), alleging violations of federal securities laws, including section 17(a) of the Securities Act of 1933 and section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder;

WHEREAS, on April 1, 2019, the court in the SEC Action appointed the Receiver to serve as the permanent receiver of the estate of the DLI Entities;

WHEREAS, on July 25, 2019, the DLIFF official liquidation was initiated by order of the Grand Court of the Cayman Islands (the **"Grand Court"**) in  FSD Cause No. 108 of 2019 (NSJ) (the "**Cayman Liquidation**");

WHEREAS, on August 1, 2019, the Grand Court filed a supervision order in the Cayman Liquidation (the "**Supervision Order**") that enabled the JOLs, *inter alia*, to compromise certain claims;

WHEREAS, in relevant part, the Supervision Order sanctioned the JOLs "on a joint and several basis" to exercise their powers to, *inter alia*, "bring or defend any action or other legal proceeding in the name and on behalf of [DLIFF]" (Supervision Order § 6(a));

WHEREAS, by agreement effective August 3, 2020, the Receiver, JOLs, and the Deloitte Entities determined to engage in a mediation process, under the direction and supervision of the Honorable Daniel Weinstein (Ret.) and Ambassador David Carden (Ret.) (the "**Mediators**"), to explore a mutually agreeable resolution of the Receiver's and JOLs' potential claims asserted by the Receiver and the JOLs on behalf of the DLI Entities against the Deloitte Entities;

WHEREAS, at various times following August 3, 2020, the Party Investors joined the mediation process, agreeing to stay any actions that had already been filed against the Deloitte Entities or to forebear from filing any other actions;

WHEREAS, on August 25, 2020, the court in the SEC Action entered an order approving the Receiver to enter into a conflict management protocol that, *inter alia*, granted Christopher D. Johnson the sole and exclusive right and power to act on behalf of DLIFF in the event of a conflict under certain terms and conditions with respect to Recusal Issues (SEC Action, Dkt. No. 289-2 at 17; *see also* Dkt. No. 293) and in other respects, Christopher D. Johnson and Bradley D. Sharp, in their capacity as JOLs, are otherwise authorized to act on behalf of DLIFF subject to court supervision;

WHEREAS, the Deloitte Entities, the Receiver/JOLs on behalf of the DLI Entities, and certain Party Investors engaged in a robust exchange of documents and information enabling the Parties to investigate their potential claims and defenses;

WHEREAS, on October 26, 2020, the Receiver, JOLs, and the Party Investors made a presentation to the Mediators and Deloitte Entities concerning the factual and legal bases for certain claims arising from the professional services provided by the Deloitte Entities to the DLI Entities;

WHEREAS, on December 14, 2020, the Deloitte Entities made a rebuttal presentation to the Mediators, Receiver, JOLs, and Party Investors concerning the factual and legal defenses to those claims discussed in the October 26, 2020 presentations;

WHEREAS, on December 21 and 22, 2020, the Parties engaged in mediation with the Mediators (the "**Mediation**"), and the Parties agreed on terms to resolve, on a global basis, all claims that the Receiver, JOLs, Party Investors, or any other Investor or entity has asserted or could assert against the Deloitte Entities arising out of or in any way related to the professional services provided by the Deloitte Entities to the DLI Entities;

WHEREAS, the Parties executed the Confidential Settlement Agreement and Release ("**Original Settlement Agreement**") on April 6-8, 2021, and the Receiver filed a Memorandum of Points and Authorities in Support of Motion of Receiver for: (1) Approval of Settlement With Deloitte Entities; (2) Entry of Scheduling Order; and (3) Entry of Bar Order (the "**Receiver's Motion**") on April 8, 2021, requesting that the court in the SEC Action approve, on a preliminary basis, the Original Settlement Agreement;

WHEREAS, on June 14, 2021, the court in the SEC Action held a hearing on the Receiver's Motion and directed certain questions and instructions to the Parties;

WHEREAS, the Parties, having taken the court in the SEC Action's questions and instructions under due consideration, are now memorializing their settlement in an amended long-form writing; and

WHEREAS, there has been no admission or finding of facts or liability by or against any of the Parties, and nothing herein should be construed as such.

NOW, THEREFORE, in consideration of the mutual covenants, agreements, and conditions contained in this Agreement, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

## SECTION 1.  DEFINITIONS

In addition to the terms defined above, the following terms shall have the meanings set forth below:

1.1.    "**Affiliate(s)**" and "**Affiliated**" means, with respect to any Person, a Person that directly or indirectly controls, is controlled by, or is under common control with such Person, a member of such Person's immediate family, or, if such Person is a partnership, any general partner or any Person controlling such general partner.  For purposes of this definition, "control" (including "controlled by" and "under common control with") means the power, directly or indirectly, to direct or cause the direction of the management and policies of such Person whether through ownership of voting securities, by contract, or otherwise.

1.2.    "**Claimant(s)**" means, collectively, the Receiver, the JOLs, the DLI Entities, and the Party Investors.

1.3.    "**Claimants' Counsel**" means the law firms that represent Claimants in the Mediation, including Diamond McCarthy LLP, The Meade Firm P.C., Reiser Law P.C., Levine

Kellogg Lehman Schneider + Grossman LLP, Nystrom Beckman & Paris LLP, Bragar Eagel & Squire, P.C., Ahdoot and Wolfson PC, and Milberg Phillips Grossman LLP.

1.4.     "**Class Action**" means the lawsuit pending in the United States District Court, Central District of California titled *Marcia Kosstrin Trust and Professional Home Improvements, Inc. Retirement Plan v. Direct Lending Investments, LLC, et al.*, Case No. 19-cv-02452.

1.5.     "**Confidential Information**" means the communications and discussions in connection with the negotiations that led to the Settlement and this Agreement, including the Mediation and related communication that are also separately subject to the terms of the Parties' Non-Use/Non-Waiver and Confidentiality Agreement.  Confidential Information also includes the existence and terms of the Settlement and this Agreement, but only until the filing of this Agreement and related documents with the court in the SEC Action.

1.6.     "**Day(s)**" means a calendar day; provided, that when a period that is counted by a number of days would result in the requirement that a particular action be taken on a Saturday, Sunday, or federal holiday, the period shall continue to run until the end of the next calendar day that is not a Saturday, Sunday, or federal holiday.

1.7.     "**DLIF**" means Direct Lending Income Fund, L.P.

1.8.     "**DLIF Investor(s)**" means individually and collectively, any Person that invested, through the purchase of limited partnership interests or otherwise, in DLIF.

1.9.     "**DLIFF Investor(s)**" means individually and collectively, any Person that invested, through the purchase of shares, in DLIFF.

1.10.    "**Effective Date**" means the first day by which all of the following events shall have occurred: (a) the Execution Date (defined below); (b) entry of the Order Approving Settlement (defined below) by the Court in the SEC Action as described in Section 2.3; (c) the Order Approving Settlement becoming Final; and (d) dismissal with prejudice of all claims against the Deloitte Entities in the Jackson Action (defined below) as described in Section 2.4.

1.11.    "**Execution Date**" means the first day by which the Parties' duly authorized representatives have executed this Agreement.

1.12.    "**Final**" means unmodified after the conclusion of, or expiration of, any right of any Person to pursue any and all possible forms and levels of appeal, reconsideration, or review, judicial or otherwise, including by a court or forum of last resort, wherever located, whether automatic or discretionary, or whether by appeal or otherwise; provided however, that the Sanction Order shall be deemed to be Final if, within fourteen days after entry of the Sanction Order, no party has sought to appeal the Sanction Order or any appeal of the Sanction Order shall have been resolved and the Sanction Order shall have been affirmed in all respects.

1.13.   "**Investor(s)**" means, individually and collectively, any Person that invested, via the purchase of limited partnership interests or otherwise, in any of the DLI Entities, including but not limited to the Party Investors and Participating Investors.

1.14.   "**Jackson Action**" means the lawsuit pending in the Superior Court of the State of California, County of Los Angeles titled *Alfred Jackson et al. v. Deloitte & Touche LLP et al.*, Case No. 20-GDCV-00419.

1.15.   "**Notice(s)**" means a communication, in substantially the form attached hereto as **Exhibit C or Exhibit D**, describing:  (a) the material terms of the Settlement; (b) the material terms of this Agreement; (c) the rights and obligations of the Parties with regard to the Settlement and this Agreement; (d) the deadline for the filing of objections to the Settlement, this Agreement, and the Order Approving Settlement, and (e) the date, time, and location of the hearing to consider final approval of the Settlement, this Agreement, and the Order Approving Settlement.

1.16.   "**Opt-out Investor(s)**" means any Investor that excludes itself from the Settlement pursuant to procedures described in the Opt-out Notices.

1.17.   "**Opt-out Notice(s)**" means a communication, in substantially the form attached hereto as **Exhibit H or Exhibit I**, describing:  (a) the material terms of the Settlement; (b) the material terms of this Agreement; (c) the rights and obligations of the Parties with regard to the Settlement and this Agreement; (d) the procedures by which Investors may exclude themselves from the Settlement; (d) the deadline for the filing of objections to the Settlement, this Agreement, and the Order Approving Settlement, and (e) the date, time, and location of the hearing to consider final approval of the Settlement, this Agreement, and the Order Approving Settlement.

1.18.   "**Participating Investor(s)**" means any Investor, including affiliates, successors, and assigns, that does not exclude itself from the Settlement pursuant to the procedures described in the Opt-out Notices.

1.19.   "**Participating DLIF Investor(s)**" means a DLIF Investor that is also a Participating Investor.  For the avoidance of doubt, the term Participating Investor(s) shall at all times in this Agreement be deemed to include both Participating DLIF Investor(s) and Participating DLIFF Investor(s), unless expressly provided otherwise.

1.20.   "**Participating DLIFF Investor(s)**" means a DLIFF Investor that is also a Participating Investor.  For the avoidance of doubt, the term Participating Investor(s) shall at all times in this Agreement be deemed to include both Participating DLIF Investor(s) and Participating DLIFF Investor(s), unless expressly provided otherwise.

1.21.   "**Person(s)**" means any natural person, partnership, corporation, limited liability company, association, joint stock company, trust, joint venture, governmental authority, affiliated group, or other entity or organization (incorporated or unincorporated).

1.22.   "**Related Actions**" means, collectively, the SEC Action, the Class Action, and the Jackson Action.

1.23.   "**Released Claims**" means, to the fullest extent that the law permits their release, all past, present, and future claims of any nature whatsoever, including, without limitation, all claims, suits, actions, allegations, damages (including, without limitation, contributory, compensatory, punitive, exemplary, rescissory, direct, consequential or special damages, restitution, and disgorgement), liabilities, causes of action, complaints, lawsuits, responsibilities, demands, rights, debts, penalties, costs, expenses, fees, injunctive relief, attorneys' fees, expert or consulting fees, prejudgment interest, indemnities, duties, losses, and obligations of any kind, known or unknown, foreseen or unforeseen, whether or not concealed or hidden, asserted or unasserted, existing or contingent, direct or indirect, anticipated or unanticipated, asserted or that could have been asserted by, or on behalf of, for the benefit of, or in the name of the Claimants or Participating DLIF Investors, whether legal, contractual, rescissory, statutory, or equitable in nature, whether arising under federal, state, common or foreign law, that now exist, have ever existed, or might ever exist, from the beginning of time in perpetuity, that are based upon, arise out of, or are related in any way to:  (a) the professional services provided by the Deloitte Entities to the DLI Entities; (b) the conduct, transactions, or occurrences set forth in any of the pleadings in the Related Actions; (c) the Related Actions; and (d) the conduct and subject matter of the Mediation, Settlement negotiations, and the negotiation of this Agreement (except for representations or obligations expressly included in this Agreement), including without limitation fraud in the inducement thereof.

1.24.   "**Released Deloitte Entities**" means (a) the Deloitte Entities; (b) the Deloitte Entities' predecessors, successors, Affiliates, Subsidiaries, divisions, assignors, and assignees; (c) each of the foregoing's past, present, and future officers, directors, board and board members, principals, partners, officials, employees, Subsidiaries, parents, Affiliates, divisions, joint venturers, contractors, subcontractors, subrogees, offices, controlled Persons, predecessors, successors, assignors, assigns, transferees, heirs, executors, shareholders, owners, investors, accountants, auditors, advisors, trustees, fiduciaries, consultants, agents, representatives, nominees, attorneys, partners, associates, senior counsel, managers, and members, in each case individually and collectively, together with any of their respective predecessors and successors in interest; and (d) each of the Deloitte Entities' insurers, reinsurers, excess insurers, underwriters, and claims administrators. For avoidance of doubt, "Released Deloitte Entities" include, without limitation, Deloitte & Touche, LLP, Deloitte Tax LLP, Deloitte & Touche LLP (Cayman Islands), Deloitte LLP, Deloitte Consulting LLP, Deloitte Financial Advisory Services LLP, Deloitte Transactions and Business Analytics LLP, Deloitte Services LP, and Deloitte USA LLP.

1.25.   "**Releasing Claimants**" means the Claimants and each of their agents, representatives, managers, employees, attorneys (in his or her capacity as attorney for the Claimants or any one of the Claimants), heirs, administrators, executors, assigns, predecessors and successors in interest, insurers, reinsurers, excess insurers, and any other Person claiming by, through, on behalf of, or for the benefit of any of them.

1.26.   "**Sanctions**" means all economic or financial sanctions or trade embargoes imposed, administered, or enforced from time to time by any relevant sanctions authority with jurisdiction over any Party to this Agreement.

1.27.    **"Settlement"** means the agreed resolution of the Released Claims in the manner set forth in this Agreement.

1.28.    **"Subsidiary"** and **"Subsidiaries"** means, with respect to any Person (including any natural person, partnership, corporation, limited liability company, trust, joint venture, affiliated group, or other entity), an entity in which at least 10% of the outstanding equity or financial interests are owned, directly, indirectly, or beneficially by such Person.

1.29.    **"Third Party"** means a nonparty to this Agreement that has been or may be sued by any of the Claimants or Participating Investors for claims arising out of, relating to, or in connection with the DLI Entities.

## SECTION 2.  THE SETTLEMENT

2.1.    <u>Settlement Amount</u>.  The Deloitte Entities agree to pay as the settlement amount the total sum of thirty-one million U.S. dollars ($31,000,000) (the "**Settlement Amount**").  The Settlement Amount shall be deposited into escrow account(s) to be identified by the Receiver (the "**Settlement Fund**").  No Deloitte Entity shall have any obligation to pay Claimants, Claimants' Counsel, or any other Person any monetary consideration in excess of the Settlement Amount.

2.2.    <u>Grand Court Sanction</u>.  The JOLs shall make an application to the Grand Court seeking an order holding that the JOLs have sanction to enter into the Settlement and Agreement in their entirety without modification or limitation (other than immaterial modifications or limitations, with materiality to be agreed between the JOLs and the Deloitte Entities), and to take all necessary steps to consummate the Settlement, including but not limited to supporting approval of the Settlement by the court in the SEC Action (the "**Sanction Order**").

(a)    Procedures for Securing Grand Court Sanction.

(i)    <u>Summons</u>: Within seven (7) Days after the Execution Date, the JOLs shall make an application by way of interlocutory summons, including any supporting evidence, to the Grand Court requesting the Grand Court to make the Sanction Order (the "Summons").

(ii)    <u>Preparation and Prosecution of the Summons</u>: The JOLs shall be responsible for the preparation of the Summons and all steps required to progress it to conclusion in a timely manner.  The JOLs shall keep the Deloitte Entities informed as to any material developments.

(iii)    <u>Notice of Summons</u>:  The JOLs shall be responsible for the dissemination of the Summons to DLIFF Investors, which will include the day by which any objection to the requested Sanction Order must be notified to the JOLs.  The JOLs shall give notice of the Summons, and any supporting documents as appropriate, to DLIFF Investors in accordance with any directions order issued by the Grand Court.  The JOLs shall seek a directions order that provides that a) the JOLs shall serve the Summons on the liquidation committee and, by way of and so as to give notice, send the Summons to the DLIFF Investors by email within two (2)

business days of receipt by the JOLs of the sealed directions order, and b) any party served with or given notice of the Summons who intends to appear at any hearing of the Summons or object to the grant of the Sanction Order shall notify the JOLs accordingly by email within fourteen (14) days of delivery of the Summons to them.

(iv)     No Recourse Against the Released Deloitte Entities Regarding the Summons:  The Released Deloitte Entities shall have no responsibility, obligation, or liability whatsoever for, and no Party or any other Person shall have any recourse against any of the Released Deloitte Entities with respect to, the cost associated with providing the Summons to DLIFF Investors pursuant to this Agreement.  As of the Execution Date, all Claimants, and all other Persons that Claimants represent or on whose behalf Claimants have been empowered to act by any court fully, finally, and forever release and relinquish the Released Deloitte Entities from any and all such responsibility, obligation, and liability.

(v)     Parties to Advocate:  The JOLs shall take all reasonable steps to advocate and encourage the Grand Court to approve, as soon as possible consistent with Cayman law and procedure, the Settlement and this Agreement and to make the Sanction Order.

(vi)     No Challenge:  No Party shall challenge the approval of the Settlement, this Agreement, or the Summons, and no Party will encourage or assist any other Party or Third Party in challenging the Settlement, this Agreement, or the Summons.

2.3.     Court Approval in the SEC Action.  The Receiver shall seek approval by the court in the SEC Action of the Settlement and the terms of this Agreement in their entirety without modification or limitation, and the entry of an order by the court in the SEC Action, exactly in the form of **Exhibit E** hereto (the "**Order Approving Settlement**"), with no modification or limitations (other than immaterial modifications or limitations, with materiality to be determined by the Deloitte Entities in their good-faith discretion).

(a)     Procedures for Securing Court Approval in the SEC Action

(i)     Motion:  Within one (1) Day after the Summons has been filed with the Grand Court, the Receiver shall submit to the court in the SEC Action a motion requesting entry of an order substantially in the form attached hereto as **Exhibit B** (the "**Scheduling Order**"): (a) preliminarily approving the Settlement; (b) approving the content and plan for publication and dissemination of the Notices; (c) setting the day by which any objection to the Settlement or this Agreement must be filed; and (d) scheduling a hearing to consider final approval of the Settlement and entry of the order required by Section 2.3 of this Agreement (the **"Motion for Approval in the SEC Action"**).  With respect to the content and plan for publication and dissemination of the Notices, the Receiver will propose that: (a) Notices in substantially the form attached hereto as **Exhibit C** and **Exhibit D,** and Opt-out Notices in substantially the form attached hereto as **Exhibit H, and Exhibit I** be sent or published as specified in the Scheduling Order.  The Receiver's Motion for Approval in the SEC Action shall additionally request that the court in the SEC Action, *inter alia*, enter in the SEC Action an Order Approving Settlement in exactly the form attached hereto as **Exhibit E.**  In advance of filing the motion papers to

accomplish the foregoing, the Receiver shall provide the Deloitte Entities with a reasonable opportunity to review and comment on such motion papers.

(ii)     <u>Notice Preparation and Dissemination</u>:  The Receiver shall be responsible for the preparation and dissemination of the Notices pursuant to this Agreement and as directed by the court in the SEC Action.

(iii)     <u>No Recourse Against the Released Deloitte Entities Regarding Notice</u>:  The Released Deloitte Entities shall have no responsibility, obligation, or liability whatsoever for, and no Party or any other Person shall have any recourse against any of the Released Deloitte Entities with respect to, the cost associated with providing Notice pursuant to this Agreement and as directed by the court in the SEC Action or any claims that may arise from or relate to the Notice process.  As of the Execution Date, all Claimants, and all other Persons that Claimants represent or on whose behalf Claimants have been empowered to act by any court fully, finally, and forever release and relinquish the Released Deloitte Entities from any and all such responsibility, obligation, and liability.

(iv)     <u>Parties to Advocate</u>:  The Parties shall take all reasonable steps to advocate and encourage the court in the SEC Action to approve the Settlement and this Agreement.

(v)     <u>No Challenge</u>:  No Party shall challenge the approval of the Settlement or this Agreement, or the Motion for Approval in the SEC Action, and no Party will encourage or assist any other Party or Third Party in challenging the Settlement or this Agreement, or the Motion for Approval in the SEC Action.

(vi)     <u>Hearing on Motion and Obligation to Withdraw Motion</u>. Hearing on the Motion for Approval in the SEC Action shall be noticed at least sixty (60) Days after the Motion for Approval in the SEC Action is filed (the **"Hearing Date"**).  In the event the Summons has not been decided by the Hearing Date, the Receiver shall request that the Hearing Date be postponed for a period of time sufficient to allow the Grand Court to issue a decision on the Summons.  In the event the Sanction Order is not entered by the Grant Court as described in Section 2.2, or such order does not become Final, the Receiver shall withdraw the Motion for Approval in the SEC Action.

2.4.     <u>Dismissal of the Jackson Action</u>.  Within seven (7) Days of entry of the Order Approving Settlement by the court in the SEC Action, the Jackson Group shall dismiss with prejudice all claims against the Deloitte Entities in the Jackson Action.  The Deloitte Entities may, at their sole election, move for entry of an order determining the good faith nature of the Jackson Group's Settlement with the Deloitte Entities pursuant to Section 877.6 of the California Code of Civil Procedure and barring contribution claims by any alleged joint tortfeasors against the Deloitte Entities.  Should the Deloitte Entities elect to make such motion, the Jackson Group agrees not to oppose the motion and to take all reasonable steps to advocate and encourage the court in the Jackson Action to grant the motion.

2.5.   <u>All Parties' Right to Withdraw</u>.  All Parties shall have the right to withdraw in the event:

(a)   The court in the SEC Action does not provide the approval and enter the order described in Section 2.3, or such order does not become Final.  Pursuant to this Section 2.5(a), any Party shall have the right to withdraw its agreement to the Settlement and to this Agreement by providing thirty (30) Days written notice of withdrawal to the other Parties.  Notwithstanding the foregoing, in the event the court in the SEC action does provide the approval and enter the order described in Section 2.3, or such order does become Final, within any thirty (30) Day withdrawal notice period, such notice of withdrawal shall become ineffective, and all Parties' right to withdraw its agreement to the Settlement and to this Agreement pursuant to this Section 2.5(a) shall expire.

(b)   The Grand Court does not enter the Sanction Order within sixty (60) Days from the day on which the JOLs file the Summons as described in paragraph 2.2(a)(i), or if the Summons is not submitted within seven (7) Days after the Execution Date as required in paragraph 2.2(a)(i).  Pursuant to this Section 2.5(b), any Party shall have the right to withdraw its agreement to the Settlement and to this Agreement by providing thirty (30) Days written notice of withdrawal to the other Parties.  Notwithstanding the foregoing, in the event the Grand Court enters the Sanction Order within any thirty (30) Day withdrawal notice period, such notice of withdrawal shall become ineffective, and all Parties' right to withdraw its agreement to the Settlement and to this Agreement pursuant to this Section 2.5(b) shall expire.

2.6.   <u>Deloitte Entities' Right to Withdraw</u>.  The Deloitte Entities shall have the sole right to withdraw from the Settlement in the event that Opt-out Investors exceed a certain agreed upon threshold (the "**Opt-out Threshold**").  Simultaneously herewith, counsel for the Parties are executing a confidential Supplemental Agreement Regarding Requests for Exclusion (the "**Supplemental Agreement**").  The Supplemental Agreement sets forth certain conditions under which the Deloitte Entities shall have the option to withdraw from the Settlement and render this Agreement null and void in the event that the Opt-out Threshold is reached.  The Parties agree to maintain the confidentiality of the Supplemental Agreement, which shall be submitted for review to the court in the SEC Action *in camera* and shall be submitted to the Grand Court as a confidential document.  The Supplemental Agreement shall not be filed in any other court unless a dispute arises as to its terms, or as otherwise ordered by a court of competent jurisdiction, nor shall the Supplemental Agreement otherwise be disclosed unless ordered by a court of competent jurisdiction.  If submission of the Supplemental Agreement is required for resolution of a dispute or is otherwise ordered by a court of competent jurisdiction, the Parties will undertake to have the Supplemental Agreement submitted to the relevant court *in camera* or under seal.

2.7.   <u>Effect of Withdrawal</u>.  In the event that any Party withdraws its agreement to the Settlement or this Agreement in accordance with Sections 2.5 or 2.6, each Party shall be returned to such Party's respective position immediately prior to such Party's execution of this Agreement, but with all applicable tolling agreements between Claimants and the Deloitte Entities extended until thirty (30) Days after any Party withdraws from this Agreement.  This Agreement will be null and void and of no further force or effect whatsoever (other than the

terms of this Section 2.7 and Section 6 of this Agreement, which shall survive), shall not be admissible in any ongoing or future proceedings for any purpose whatsoever, and shall not be the subject or basis for any claims by any Party against any other Party.  To exercise its right under this Section to withdraw its agreement to the Settlement and to this Agreement, a Party must provide written notice of such withdrawal to all other Parties.

2.8.    Payment of Settlement Amount.  No later than fifteen (15) Days after the Effective Date or when the Receiver provides, in writing, account information, wire-transfer instructions, and Form(s) W-9 (whichever date is later), the Deloitte Entities will pay the Settlement Amount into escrow account(s) identified by the Receiver.  Claimants have agreed among themselves, and with Claimants' Counsel, on the method for allocation of the Settlement Amount and for the payment of attorneys' fees and expenses.

2.9.    Allocation and Distribution of Settlement Amount.  The Deloitte Entities shall have no involvement in, and no responsibility, duty, or liability for, the allocation and distribution of the Settlement Amount among the Claimants, Claimants' Counsel, any Investors, and/or any other Persons, except that the Receiver and the JOLs have represented to the Deloitte Entities and agree that (a) only Claimants, and Participating DLIF Investors, shall be eligible to receive any portion of the Settlement Amount from the Receiver and the Receiver shall implement reasonable controls to limit distributions of the Settlement Amount to Claimants and Participating DLIF Investors; (b) the distribution of the Settlement Amount to DLIFF Investors will be determined in accordance with Cayman Islands law; and (c) a Participating DLIF Investors' receipt of their allocation of the Settlement Amount shall not reduce the distributions or payments from the Receiver to which that Investor would otherwise have been entitled.  The Receiver, the JOLs, DLI Entities and Party Investors have entered into a separate Agreement Regarding Disbursement of Attorneys' Fees ("**Attorneys' Fees Agreement**"), attached hereto as **Exhibit F**.  Section 1.2 of the Attorneys' Fees Agreement contemplates, among other things, that counsel for the Party Investors will move in the SEC Action for an award of attorneys' fees and reimbursements of expenses up to the full amount of the Attorneys' Fund as defined in the Attorneys' Fees Agreement ("**Motion for Approval of Attorneys' Fund**").  The Deloitte Entities agree not to oppose or otherwise object to the Motion for Approval of Attorneys' Fund, including the proposed order granting the Motion for Approval of Attorneys' Fund in the form attached hereto as **Exhibit G**.  For the avoidance of doubt, the Deloitte Entities have no responsibility, duty, or liability for, or obligation arising under, the Attorneys' Fees Agreement, and any breach or failure of the Attorneys' Fees Agreement shall have no impact on this Agreement.

2.10.    Release of Liability for Allocation.  The Order Approving Settlement shall contain a finding and order reasonably acceptable to the Deloitte Entities that the Deloitte Entities shall have no liability related to the allocation or distribution of the Settlement Amount between and among the Claimants, Participating DLIF Investors, and their respective counsel.  The releases and covenants set forth in Section 4 shall not be impacted in any way by any dispute that exists or that later arises between Claimants, Participating DLIF Investors, and their respective counsel, lienholders, or  any of them concerning their share of the Settlement Amount or concerning their right, title, or interest in any portion of the Settlement Amount.

2.11.   <u>No Admission or Evidence</u>.  Nothing in this Agreement shall be construed as an admission by any Party or as evidence in support of any wrongdoing or liability of any kind.

## SECTION 3.  TAX TREATMENT

3.1.   <u>Taxes/Costs</u>.  The payment of all taxes imposed as a result of the performance of this Agreement is solely the obligation of the Claimants, and shall be paid exclusively by Claimants.  The Deloitte Entities shall have no liability for the taxes or the tax treatment of any of the sums paid pursuant to this Agreement, and each of the Claimants releases and forever discharges the Deloitte Entities from any liability related to taxes or the tax treatment of any of the sums paid pursuant to this Agreement and agrees to indemnify and hold the Deloitte Entities harmless from and against any claim regarding the proper tax treatment of the Settlement or the Deloitte Entities' satisfaction of its obligations under applicable tax law.  For the avoidance of doubt, each Claimant is agreeing to hold Deloitte Entities harmless from their own claims regarding proper tax treatment or satisfaction of obligation under applicable tax law and to indemnify Deloitte Entities for any claims made by Claimants or by Claimants' Counsel.

3.2.   <u>No Representations Regarding Tax Treatment</u>.  The Deloitte Entities have not made, and the Claimants do not rely upon, any representations regarding the tax treatment of the sums paid pursuant to this Agreement.

3.3.   <u>Form W-9 and Documentation</u>.  In consideration of the releases and covenants provided in this Agreement, Claimants' Counsel shall provide to Deloitte Entities correct taxpayer identification numbers on Form(s) W-9 and correct account information and wiring instructions for the Settlement payment concurrent with the execution of this Agreement.

## SECTION 4.  RELEASES AND OTHER COVENANTS

4.1.   <u>Releasing Claimants' and Participating Investors' Releases</u>:

(a)   <u>The Releasing Claimants' and Participating DLIF Investors' Release of Released Deloitte Entities</u>.  Each Releasing Claimant and each Participating DLIF Investor, for good and valuable consideration the receipt and adequacy of which is hereby acknowledged, shall fully, finally, and forever release, covenant not to sue, and discharge each of the Released Deloitte Entities from any and all Released Claims held by, on behalf of, for the benefit of, or in the name of the Releasing Claimant.

(b)   <u>Bar Order</u>.  Each Releasing Claimant and each Participating Investor shall forever be barred and enjoined from prosecuting against any of the Released Deloitte Entities, now or at any time in the future, any action, lawsuit, cause of action, claim, investigation, demand, complaint, or proceeding of any nature, including but not limited to litigation, arbitration, or other proceeding, in any state or federal court, arbitration proceeding, or other forum in the United States that relates to, is based upon, arises from, or is connected with the professional services provided by the Deloitte Entities to the DLI Entities.

(c)    <u>The Releasing Claimants' and Participating DLIF Investors' Covenant Not to Sue Released Deloitte Entities</u>.  Each Releasing Claimant and Participating DLIF Investor, for good and valuable consideration the receipt and adequacy of which is hereby acknowledged, shall covenant not to cause, authorize, voluntarily assist or cooperate in, or induce any Third Party to pursue the commencement, maintenance, or prosecution of any action or proceeding (whether in the United States, the Cayman Islands, or elsewhere) relating to or arising from any Released Claims against any of the Released Deloitte Entities.  This provision does not restrict a Releasing Claimant or Participating DLIF Investor from testifying truthfully if subpoenaed as a witness.

(d)    <u>The Proportionate Fault Reduction of Any Final Verdict or Judgment Obtained by a Releasing Claimant or Participating DLIF Investor Against Any Third Party</u>.  Any final verdict or judgment obtained by or on behalf of any Claimant or Participating DLIF Investor against any Third Party shall be reduced by an amount that corresponds to the percentage of responsibility of the Released Deloitte Entities for common damages.  However, where the law governing such final verdict or judgment ("**Other Governing Law**") requires a reduction in a different amount, the final verdict or judgment shall be reduced by an amount as provided by such Other Governing Law.

4.2.    <u>Other Covenants</u>

(a)    <u>Claimants' Settlements with Third-Parties</u>.  Each Releasing Claimant covenants and agrees that in the event any Releasing Claimant settles with a Third Party, the Claimant will require as a term and condition of settlement that the Third Party release the Released Deloitte Entities from all potential claims arising out of, directly or indirectly, the Released Claims, including but not limited to claims for contribution or indemnity. The Released Deloitte Entities shall provide reciprocal releases in favor of such Third Party.

(b)    <u>Further Assurances.</u>  The Receiver, for himself and on behalf of the DLI Entities, hereby covenants and agrees that he shall take, and shall cause the DLI Entities to take, all actions reasonably necessary to enforce and carry out the terms of the Scheduling Order, the Order Approving Settlement, and this Agreement, including all reasonable requests by the Deloitte Entities to enforce the Scheduling Order, the Order Approving Settlement, and this Agreement.  Similarly, the JOLs, for themselves and on behalf of DLIFF, hereby covenant and agree that they shall take, and shall cause DLIFF to take, all actions reasonably necessary to enforce and carry out the terms of this Agreement.  For the avoidance of doubt, the Receiver and the JOLs shall be obligated to seek enforcement of the Order Approving Settlement in the event any person or entity brings or seeks to bring a claim against any of the Deloitte Entities that may be prohibited by, or in violation of, the Order Approving Settlement.  The Receiver's and the JOLs' obligation to seek enforcement of the Order Approving Settlement described in this Section shall continue for the duration of their appointments as the receiver for the DLI Entities and liquidator for DLIFF, respectively.  Nothing in this Agreement prevents the Deloitte Entities from also seeking to enforce the Order Approving Settlement.

4.3.     Actions Relating to Enforcement of Agreement.   For avoidance of doubt, no
provision in this Section 4 shall preclude any claims relating to the breach or enforcement of this
Agreement.

4.4.    Releases.  The releases in this Section 4 include an express, informed, knowing and
voluntary waiver and relinquishment of the Released Claims to the fullest extent permitted by law.
The Parties acknowledge that they may have sustained damages, losses, costs or expenses that are
presently unknown and unsuspected and that such damages, losses, costs, or expenses that may
have been sustained may give rise to additional damages, losses, costs, or  expenses in the future.
The Parties further acknowledge that they have negotiated this Agreement taking into account
presently unsuspected and unknown claims, counterclaims, causes of action, damages, losses,
costs and expenses, and the Parties voluntarily and with full knowledge of its significance,
expressly waive and relinquish any and all rights they may have under any state, federal, or foreign
statute, rule or common law principle, in law or equity, relating to limitations on general releases.
Specifically, each Party hereby expressly waives any rights it may have under California Civil
Code § 1542 (or any other similar law in any jurisdiction) which provides that:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS
> THAT THE CREDITOR OR RELEASING PARTY DOES
> NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER
> FAVOR AT THE TIME OF EXECUTING THE RELEASE
> AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE
> MATERIALLY AFFECTED HIS OR HER SETTLEMENT
> WITH THE DEBTOR OR RELEASED PARTY.**

4.5.    Agreement as Defense.  This Agreement may be pleaded as a full and complete
defense to, and may be used as the basis for, an injunction against any action, suit, or other
proceeding, which may be instituted, prosecuted, or maintained in breach of this Agreement.  The
Parties agree that violation of this Agreement will constitute irreparable injury sufficient to support
the imposition of injunctive relief.

## SECTION 5.  REPRESENTATIONS AND WARRANTIES

5.1.  Representations and Warranties of Claimants and Their Counsel.  Claimants hereby
represent and warrant to the Deloitte Entities that the statements contained in this Section 5.1 are
true and correct.

(a)     Authority.  Claimants' Counsel hereby represent and warrant to the Deloitte
Entities, as a material term of this Agreement, that they have obtained all requisite power and
authority to enter into this Agreement on behalf of each Claimant, and to consummate the releases
and covenants contemplated hereby.  Each Claimant has been informed of the terms of this
Agreement and agrees to the execution of this Agreement and to carry out Claimants' obligations
hereunder.  The execution, delivery, and performance by Claimants' Counsel of this Agreement,
the consummation of the releases and covenants contemplated hereby, have been duly authorized
by all requisite action on the part of each Claimant.

14

(b)     Enforceability.   Each Claimant hereby represents and warrants to the Deloitte Entities, as a material term of this Agreement, that this Agreement constitutes legal, valid, and binding obligations of each Claimant, enforceable against each Claimant in accordance with its terms.

(c)     No Conflicts; Consents.   Each Claimant hereby represents and warrants to the Deloitte Entities, as a material term of this Agreement, that the execution, delivery, and performance by Claimants' Counsel of this Agreement, and the consummation of the releases and covenants contemplated hereby, do not and will not: (i) violate or conflict with any organizational documents with respect to that Claimant; or (ii) violate or conflict with any governmental or court order or law applicable to any Claimants.  Each Claimant hereby represents and warrants to the Deloitte Entities, as a material term of this Agreement, that no consent, approval, waiver or authorization is required to be obtained by Claimants' Counsel from any additional Person in connection with the execution, delivery, and performance of this Agreement by Claimants' Counsel and each Claimant and the consummation of the releases and covenants contemplated hereby.

(d)     No Assignments or Liens.   Each Claimant hereby represents and warrants to the Deloitte Entities, as a material term of this Agreement, that that Claimant is the proper party to assert the Released Claims, and that, except for a transfer upon the death or incapacity of a Claimant, that Claimant has not assigned or in any way conveyed, transferred, or encumbered all or any portion of the claims or rights released pursuant to Section 5.

(e)     No Sanctions Violation.   Claimants will not, directly or indirectly, use the proceeds of the Settlement Fund or lend, contribute, or otherwise make available such proceeds from the Settlement Fund to any Subsidiary, joint venture partner, or other Person: (i) to fund any activities or business of or with any Person, or in any country or territory, that, at the time of such funding, is the subject of Sanctions, or (ii) in any other manner that would result in a violation of Sanctions by any Person (including any Claimant).

5.2.   Receiver and JOLs' Warranties.   The Receiver and JOLs represent and warrant to the Deloitte Entities, as a material term of this Agreement, upon reasonable investigation and to the best of their knowledge, that they (i) are not aware of any Released Claims being considered or brought by any Investor or Person other than the Party Investors, and (ii) will not participate in, or in any way assist with, any proceeding against the Deloitte Entities that is in any way related to the Deloitte Entities' provision of professional services to the DLI Entities, except to the extent that the Receiver or JOLs are compelled by court order or other lawful process to testify or produce documents in such proceeding.

5.3.   Representations and Warranties of Deloitte Entities.   The Deloitte Entities hereby represent and warrant to Claimants that the statements contained in this Section 5.3 are true and correct.

(a)     Authority and Enforceability.   The Deloitte Entities have obtained all requisite power and authority to consummate the releases and covenants contemplated hereby.

The execution, delivery, and performance by Deloitte Entities of this Agreement and the consummation of the releases and covenants contemplated hereby have been duly authorized by all requisite action on the part of Deloitte Entities.  This Agreement constitutes legal, valid, and binding obligations of the Deloitte Entities, enforceable against the Deloitte Entities in accordance with its terms.

(b)     No Conflicts; Consents.  The execution, delivery, and performance by the Deloitte Entities of this Agreement, and the consummation of the releases and covenants contemplated hereby, do not and will not: (i) violate or conflict with any organizational documents of the Deloitte Entities; or (ii) violate or conflict with any governmental or court order or law applicable to the Deloitte Entities.  No consent, approval, waiver, or authorization is required to be obtained by the Deloitte Entities from any additional person in connection with the execution, delivery, and performance by the Deloitte Entities and the consummation of the releases and covenants contemplated hereby.

## SECTION 6.  CONFIDENTIALITY

6.1.     Confidentiality.  Except as necessary to obtain court approval of the Settlement and this Agreement in the SEC Action, to obtain the Sanction Order from the Grand Court, to provide the Notices as required by this Agreement, or to enforce or effectuate the terms of the Settlement and this Agreement, the Parties will keep confidential and shall not publish, communicate, or otherwise disclose, directly or indirectly, in any manner whatsoever, Confidential Information to any Person except that: (a) a Party may disclose Confidential Information pursuant to a legal, professional, or regulatory obligation; court order; or lawfully issued subpoena, but only after providing prompt written notice to the other Parties so that, to the extent practicable, each Party has the time and opportunity, before disclosure of any Confidential Information, to seek and obtain a protective order preventing or limiting disclosure; and (b) a Party may disclose Confidential Information based on specific written consent from each of the other Parties.  Notwithstanding anything else in this Agreement or otherwise, such consent may be transmitted by email.

6.2.     Media Inquiries.  Except as expressly provided in this Section 6, the Parties agree not to discuss or communicate in any fashion regarding the existence or terms of this Agreement with members of the news media, or social media, or in any other form of print or electronic communication likely to be publicly disseminated.  The Parties shall not initiate any contact with members of the news media regarding the Released Claims, the Deloitte Entities' involvement in the Related Actions, or this Agreement or its terms, and shall respond to any news media or other inquiry about the status of the Related Actions, the Released Claims, or this Agreement by stating only that the alleged claims have been settled on mutually satisfactory, confidential terms with no admission of liability.

6.3.     Mediation Documents.  Except as expressly provided in this Agreement and as required by applicable law, all other documents, communications, and information disclosed by or received from a Party as part of the Parties' Mediation process shall remain confidential pursuant to this Section 6 and subject to the terms of the Parties' Non-Use/Non-Waiver and Confidentiality Agreement (as defined below), and shall continue to be protected from disclosure under the

mediation confidentiality statutes, the lawyer-client privilege (including the common-interest doctrine), the work-product doctrine, or under any other applicable  privilege or protection from disclosure.

## SECTION 7.  MISCELLANEOUS

7.1.    <u>Entire Agreement</u>.  This Agreement is the final, complete, and exclusive agreement of the Parties with respect to the subject matter hereof, and supersedes and merges all prior and contemporaneous discussions, representations, promises, understandings and agreements, whether written or oral, between the Parties with respect to such subject matter.  For the avoidance of doubt, nothing in this Agreement is intended to negate or modify the Non-Use/Non-Waiver and Confidentiality Agreement entered into by the Parties in October 2020 as part of the mediation process (the "**Parties' Non-Use/Non-Waiver and Confidentiality Agreement**".)

7.2.    <u>Amendments</u>.  This Agreement may be modified or amended only by a written instrument duly executed by each of the Parties.

7.3.    <u>Governing Law</u>.  This Agreement shall be governed by, and interpreted in accordance with, the laws of the United States of America and the State of California, in each case, excluding any conflicts or choice-of-law rule or principle that might otherwise refer construction or interpretation of this Agreement to the substantive law of any other jurisdiction.

7.4.    <u>Costs and Attorneys' Fees</u>.  The Parties shall bear their own costs and attorneys' fees relating to or arising from any of the Related Actions, the Mediation, and the negotiation of this Agreement.

7.5.    <u>Dispute Resolution</u>.  This Section 7.5 provides the exclusive method for resolving or adjudicating any disputes, controversies, or claims arising under, out of, or relating to this Agreement including, without limitation, its formation, validity, binding effect, interpretation, performance, breach, or termination (a "**Dispute**").  Any Dispute shall be submitted to the Honorable Daniel Weinstein (Ret.) and Ambassador David Carden (Ret.) for resolution through expedited mediation, and if mediation is unsuccessful, the Parties agree to binding arbitration before a mutually acceptable arbitration panel pursuant to JAMS arbitration rules.

7.6.    <u>Non-disparagement</u>.  Except for statements made, positions taken, or any testimony given in the Related Actions, each Party agrees not to make, publish or assist others to make or publish any statement that disparages, discredits or defames any other Party in connection with any matter that was or could have been raised in the Related Actions.

7.7.    <u>Assignment</u>.  No Party may assign, delegate, or otherwise transfer (by operation of law, change of control, or otherwise) any of its rights or obligations under this Agreement without the prior written consent of the other Parties, which consent will not be unreasonably withheld. Any attempted assignment, delegation, or transfer without such consent shall be deemed void. Notwithstanding the foregoing, the Deloitte Entities may assign their rights and obligations under this Agreement without consent to any successor in interest of the Deloitte Entities provided that

in each case, any such assignment shall be effective only if the assignee agrees to be bound by all terms and conditions of, and obligations under, this Agreement.

7.8.     Successors and Assigns; No Third-Party Beneficiaries.  The provisions of this Agreement shall be binding upon and inure to the benefit of the Parties and their respective successors and permitted assigns.  No provision of this Agreement is intended to confer any rights, benefits, remedies, obligations, or liabilities hereunder upon any Person other than the Parties and their respective successors and permitted assigns.

7.9.     Waiver.  No breach of any provision hereof shall be deemed waived unless expressly waived in writing by each of the Parties who may assert such breach.  No waiver that may be given by a Party shall be applicable except in the specific instance for which it is given. No waiver of any provision hereof shall be deemed or shall constitute a waiver of any other provisions hereof (whether or not similar), nor shall any such waiver constitute a continuing waiver, unless otherwise expressly provided therein.  Except where a specific period for action or inaction is provided in this Agreement, neither the failure nor any delay on the part of any Party in exercising any right, power, or privilege under this Agreement shall operate as a waiver thereof, nor shall any waiver on the part of any Party of any such right, power, or privilege, nor any single or partial exercise of any such right, power, or privilege, preclude any other or further exercise thereof or the exercise of any other such right, power, or privilege.  The rights and remedies of the Parties with respect to the subject matter hereof are cumulative and not alternative.

7.10.    Invalidity of Any Release.  In the event that the release of any Releasing Claimant's or Participating DLIF Investor's Released Claims is determined to be invalid or ineffective, the release of all other Releasing Claimants and Participating DLIF Investors shall remain valid.  In that circumstance, the Releasing Claimant or Participating DLIF Investor whose release has been determined to be invalid or ineffective shall be required to repay in full his/her/its share of the Settlement Amount received under this Agreement.

7.11.    Notice.  Any notice, request, instruction, or other document to be given hereunder by any Party to any other Party shall be in writing and shall be delivered personally, by overnight delivery service, or by e-mail, and shall be deemed given: (a) if delivered by hand, when delivered, (b) if delivered by overnight delivery, one (1) business day after deposited with a nationally recognized overnight delivery service, and (c) if sent by e-mail, upon delivery, as follows:

> For the Receiver, JOLs, and DLI Entities:
>
> Bradley D. Sharp
> 333 S. Grand Avenue, Suite 4100
> Los Angeles, CA 90071-1544
> E-mail:  bsharp@dsiconsulting.com
>
> and
>
> Christopher D. Johnson

PO Box 2499 Elizabethan Square, Shedden Road, George Town
Grand Cayman KY1-1104, Cayman Islands
E-mail:  CDJ@cjacayman.com

with a copy (which shall not constitute notice) to:

Christopher D. Sullivan
DIAMOND McCARTHY LLP
150 California Street, Suite 2200
San Francisco, CA 94111
E-mail: csullivan@diamondmccarthy.com


For the Deloitte Entities:

Gavin M. Masuda
Associate General Counsel
Deloitte
555 Mission Street
San Francisco, CA 94105
E-mail: gmasuda@deloitte.com

with a copy (which shall not constitute notice) to:

Peter A. Wald
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
E-mail: peter.wald@lw.com


For the Jackson Group:

Todd Kellerman
V3Limited LLC
150 N. Radnor Chester Road, Suite F-200
Radnor, PA 19087
E-mail: tkellerman@v3-limited.com

with a copy (which shall not constitute notice) to:

Michael Paris
NYSTROM, BECKMAN & PARIS LLP
One Marina Park Drive, 15th Floor

Boston, MA 02210
E-mail: mparis@nbparis.com

For the Century Group:

Sameer Kero
19 N. Aberdeen St. PHN
Chicago, IL 60607
E-mail: skero123@gmail.com

with a copy (which shall not constitute notice) to:

Tyler Meade
THE MEADE FIRM PC
12 Funston Avenue, Suite A
San Francisco, CA 94129
E-mail: tyler@meadefirm.com

Michael Reiser
REISER LAW, P.C.
1475 N. Broadway, Suite 300
Walnut Creek, CA 94596
E-mail: michael@reiserlaw.com

Jeffrey C. Schneider
Jason Kellogg
LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 22nd Floor
Miami, FL 33131
E-mail: jcs@lklsg.com
E-mail: jk@lklsg.com

For the Eagel Group:

Andrew J. Baer
3180 Harness Creek Road
Annapolis, MD 21403
E-mail: andrewbaer@usa.net

with a copy (which shall not constitute notice) to:

Lawrence Eagel

BRAGAR EAGEL & SQUIRE, P.C.
810 Seventh Avenue, Suite 620
New York, NY 10019
E-mail: eagel@bespc.com

For the Class Plaintiffs:

Marcia Kosstrin Trust
41 Aquila Road
Stamford, CT 06902
E-mail: woodartist1000@gmail.com

and

Professional Home Improvements Inc. Retirement Plan
41 Aquila Road
Stamford, CT 06902
E-mail: woodartist1000@gmail.com

with a copy (which shall not constitute notice) to:

David E. Azar
MILBERG TADLER PHILLIPS GROSSMAN LLP
11766 Wilshire Boulevard, Suite 500
Los Angeles, CA 90025
E-mail: dazar@milberg.com
and

Henry J. Kelston
Ahdoot & Wolfson PC
2600 West Olive Ave., Suite 500
Burbank, CA 91505

7.12.   Headings.   All headings in this Agreement are included solely for convenient reference, are not intended to be full and accurate descriptions of the contents of this Agreement, shall not be deemed a part of this Agreement, and shall not affect the meaning or interpretation of this Agreement.

7.13.   Construction.   This Agreement shall be deemed to have been drafted jointly by the Parties and without regard to any presumption or rule requiring construction or interpretation against the Party drafting an instrument or causing an instrument to be drafted.  Every term and provision of this Agreement shall be construed according to its fair meaning and not strictly for or against a Party.  This Agreement, and the construction of this Agreement, shall be governed by California law.

7.14.   <u>Execution</u>.  This Agreement may be executed in one or more counterparts, all of which together shall constitute one and the same agreement.  This Agreement may be executed by facsimile or by a PDF image delivered via e-mail copy of this Agreement, including the signature pages, which facsimile or PDF image shall be deemed an original.

[*Remainder of Page Intentionally Left Blank*]

Dated: May 18, 2022

On behalf of the Receiver

Christopher D. Sullivan
**DIAMOND McCARTHY LLP**
150 California Street, Suite 2200
San Francisco, CA 94111
Telephone: (415) 692-5200

Dated: May 18, 2022

On behalf of the JOLs (solely in their capacity as joint official liquidators of DLIFF)

Christopher D. Sullivan
**DIAMOND McCARTHY LLP**
150 California Street, Suite 2200
San Francisco, CA 94111
Telephone: (415) 692-5200

Dated: May 18, 2022

On behalf of the Deloitte Entities

Peter A. Wald
**LATHAM & WATKINS LLP**
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 391-0600

Dated:

On behalf of the Jackson Group

Michael Paris
**NYSTROM, BECKMAN & PARIS LLP**
One Marina Park Drive, 15th Floor
Boston, MA 02210
Telephone: (617) 778-9100

23

Dated: _____          On behalf of the Receiver


_____
Christopher D. Sullivan
**DIAMOND McCARTHY LLP**
150 California Street, Suite 2200
San Francisco, CA 94111
Telephone: (415) 692-5200


Dated: _____          On behalf of the JOLs (solely in their
capacity as joint official liquidators of
DLIFF)


_____
Christopher D. Sullivan
**DIAMOND McCARTHY LLP**
150 California Street, Suite 2200
San Francisco, CA 94111
Telephone: (415) 692-5200


Dated: _____          On behalf of the Deloitte Entities


_____
Peter A. Wald
**LATHAM & WATKINS LLP**
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 391-0600


Dated: *5/12/22*          On behalf of the Jackson Group

_____
Michael Paris
**NYSTROM, BECKMAN & PARIS LLP**
One Marina Park Drive, 15th Floor
Boston, MA 02210
Telephone: (617) 778-9100

Dated: 5/12/2022

On behalf of the Century Group

Tyler Meade
THE MEADE FIRM PC
12 Funston Avenue, Suite A
San Francisco, CA 94129
Telephone: (415) 724-9600

Michael Reiser
REISER LAW, P.C.
1475 N. Broadway, Suite 300
Walnut Creek, CA 94596
Telephone: (925) 256-0400

Jeffrey C. Schneider
Jason Kellogg
LEVINE KELLOGG LEHMAN
SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 22nd Floor
Miami, FL 33131
Telephone: (305) 403-8788

Dated: 6/12/2022

On behalf of the Eagel Group

Lawrence P. Eagel
**BRAGAR EAGEL & SQUIRE, P.C.**
810 Seventh Avenue, Suite 620
New York, NY 10019
Telephone: (212) 308-5888

Dated:  May 16, 2022

On behalf of Class Plaintiffs

David E. Azar
**MILBERG TADLER PHILLIPS
GROSSMAN LLP**
11766 Wilshire Boulevard, Suite 500
Los Angeles, CA 90025
Telephone: (213) 617-1200

**NEW FIRM NAME AND
ADDRESS**:
MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC
280 S. Beverly Drive, Suite PH
Beverly Hills, California 90212

# EXHIBIT A

## EXHIBIT A

### Century Group

1.     Atkins Investment Partnership
2.     Edward Atkins, trustee of the Edward M. Atkins Trust
3.     Vernon James Armour, trustee of the Vernon James Armour, Trust dated 04/04/1988 and the Vernon James Armour Trust dated 08/14/2018
4.     Ronald Berman, trustee of the Ronald Berman Revocable Trust
5.     Elizabeth Blinderman
6.     Paul Blinderman, trustee of the Paul Blinderman Revocable Trust
7.     Joseph M. Boniecki
8.     Patricia Booth, trustee of the Patricia Booth Revocable Trust and the Laurence O. Booth Irrevocable Family Trust of 2012
9.     Anne Burke
10.    John Burke
11.    Christopher John Burke
12.    Francis Campise
13.    Joseph Campolo, Jr. individually and as trustee of the Joseph P Campolo Jr. Revocable Trust
14.    Joseph S. Chasen
15.    Mari Christopherson, trustee of the Mari Louisa Christopherson Trust
16.    Amy Chuckrow and Jonathan Stulgis, trustees of the Trust Under the Will of Robert Chuckrow Deceased
17.    Sherwood Guernsey, trustee of the Carol C. Guernsey Irrevocable Trust
18.    Phillip Crump
19.    David Decker, Sr. individually and as trustee for the Mary Louise Decker Family GST Trust
20.    David Decker, Jr., trustee of the 2017 Decker Family Irrevocable Gift Trust
21.    2012 DPDS Fund L.P.
22.    Barbara Drumm
23.    Dusty47 LLC
24.    Four J Family LLC
25.    Jeffrey Goldberg, trustee of the Jeffrey M. Goldberg Trust u/a dtd 08/01/1995
26.    Harmony Investments LLC
27.    Charles Harrold, III
28.    Margaux Marbury Harrold
29.    Stephanie Harrold, trustee of the Stephanie A. Harrold Revocable Trust
30.    Nancy Lynn Morton, trustee of the Harrold Family Dynasty Trust
31.    Charles Cotton Harrold IV, trustee of the C. Cotton Harrold IV Investment Trust
32.    JP Morgan Trust Company of Delaware, trustee of the Trust Under the Will of Marion E. Horween FBO Nancy Horween Trust
33.    JP Morgan Trust Company of Delaware, trustee of the Trust Under the Will of Marion E. Horween FBO Lisa Horween Kelly
34.    Sally Jo Morris, trustee of the Suzanne Kanis Revocable Trust
35.    Ronald D. Kaplan

36. Michael R. Kaskie
37. Kilrea Family Investments, LLC
38. Scott Kilrea, trustee of the Scott Kilrea Trust U/A DTD 04/14/1997
39. John Henry Koehler III
40. Sandra Sue Koehler
41. Karl Henry John Koehler III and Inna Koehler, trustees of the Jay Koehler and Inna Koehler Living Trust
42. Kreiseder Family LLC
43. LTR I LLC
44. Sheffee Lulkin
45. Shefee Lulkin & Associates, Inc.
46. John L MacCarthy, trustee of the John Leland MacCarthy Revocable Trust
47. John D. Marschall, trustee of the John D. Marschall Trust
48. Peter J. McDonald, trustee of the Peter J. McDonald Trust DTD 04/22/2010
49. William McKenna
50. Nancy Mengel
51. Robert Mueckler, II
52. Steven Patrick Nedelka
53. Holly Nelson-Johnson and Terry Nelson-Johson, trustees of the E. Holly Nelson-Johnson Family Irrevocable Trust
54. Mark Ordower, trustee of the Mark Ordower Revocable Trust
55. Ordower Investments
56. James Papesch
57. Peer Pedersen, Jr., trustee of the Declaration of Trust of Peer Pedersen
58. John Muehlstein, trustee of the Peer Pedersen Trust
59. Barry Lance Polonitza
60. Ruthmarie Connor, trustee of the Rollin Polonitza Family Trust
61. Mary Polonitza, trustee of the Jard Polonitza Separate Property Trust
62. Beri Lynn Polonitza, trustee of the Beri Lynn Polonitza Revocable Trust
63. Phillip Porpora, trustee of the Phillip Porpora Trust
64. Liza Reynolds Limited Partnership
65. RJDC Management Company LLC
66. Scott Anthony Ronan
67. Jerry G. Ryder
68. Kimberly Seeds
69. James Sharman
70. Victoria Clewell, trustee of the Ronald J. Sloane Family Trust
71. SSSB Partnership
72. Jonathan Stulgis, trustee of the Jonathan W. Stulgis Family Trust
73. Doris J. Wik
74. Frances Armour Williamson, trustee of the Frances Armour Williamson TTEE Revocable Trust of Frances Armour Williamson
75. Yiming Zhang
76. Stephen Jay Akana
77. Harminder Brar and Pearlene Brar as trustees of the Brar Family Trust
78. Robert Brilliant, trustee of the Brilliant Family Trust

79. Jerome Yap Chua
80. Orla Cunningham, LLC
81. Barry P. Garrison, trustee of the Barry P. Garrison
82. Eugene Goebel
83. Jessa Ann Goebel
84. Stephanie Marie Grein
85. Brent Horowitz and Heather Thompson as trustees of the Horowitz Family Trust
86. Julie Lewis
87. Stacy K. Li
88. Ronald McLeod, trustee of the Ronald McLeod Revocable Trust
89. John D. Michael
90. Daniel Michael and Lillian Leong as trustees of the Michael Leong Family Trust DTD 08/13/2013
91. Jennifer Mvongo, trustee of the Jennifer M. Mvongo Revocable Trust
92. Ramesh Patel and Alison Patel, trustees of the R. Patel and A. Patel TTEE, Kenew DBP U/A DTD 12/31/2016
93. David Malcolm Potts
94. Thomas F. Reiser, Jr.
95. James E. Salter
96. Ridge Sampson, trustee of the Ridge Sampson Revocable Trust
97. Aaron Michael Silva
98. Gerald Guy Stokes, Jr.
99. Max Luis Tejada
100. Trinh-Mai N. Vo
101. Bret M. Walberg
102. Michael Witlin
103. Bennet Woodward
104. Dimitri Katamanin, individually and as trustee of the Four Season's Trust
105. Sameer Kero, trustee of the Flexedge Investment Management Defined Benefit Pension Plan & Trust
106. Sameer Kero
107. Chanda Mehta Kero
108. N. Kero Investments, LTD., LLLP
109. S. Kero Limited Partnership
110. Niloufer Kero
111. Niloufer Kero, trustee of Niloufer Kero Revocable Family Trust
112. Shawkat Kero
113. Sarita Mehta
114. Narendrakumar Mehta
115. Smita Mehta
116. Pareshkumar Desai
117. Etienne Boillot and Stuart E. Lucas, trustees of the GST Trust
118. Anthony V. Dub
119. Michael Driscoll
120. Neal Driscoll
121. Alia Driscoll

122. Dennis J. FitzSimons
123. U.S. Bank N.A and Soyla V. Rausch as trustee for the Carrie G. Cox TUW Tr. B FBO Mary Hancock and the Harriet C. Collis TUA Tr. B FBO Mary Hancock
124. William Wayne Hancock III, trustee of the George B. Hancock Trust
125. John Vance Hancock
126. Nancy A.D. Hancock
127. Michael Harrigan individually and as trustee for the Michael J. Harrigan Trust
128. John H. Heuberger, trustee of the WBK 2012 Trust
129. Loeb Holding Corporation
130. Armando Pauker
131. SAS ARDIS
132. Vasundhara Tolia
133. Osman Uslu
134. Bret M. Walberg
135. Shai Wininger
136. Philip Nadel
137. Blair Ambach
138. Chancellor Capital
139. Sanjay Tolia
140. Vinay Tolia, trustee of the Sanjay Tolia 2014 Annuity Trust
141. Peter T. Lambrakis
142. Warrington Capitla LLC
143. John W. Buttrick
144. Michael D Wik and Christine A. Wik JTWROS

**Eagel Group**

1. Andrew Baer, individually and as trustee of the Andrew J. Baer Trust
2. Michael Rosenbloom, individually and as trustee with Robyn Rosenbloom of the Michael Rosenbloom Revocable Trust
3. Wing Point Investments LLC
4. Eytan Turjeman
5. Naamith Heiblum
6. Mordehai Heiblum
7. Rachel Heiblum
8. Yehudith (Judy) Heiblum
9. Zohar Heiblum
10. Reuven Heiblum
11. Greg Isaacs
12. Bernard E. Francois, as trustee of the Bernard E. Francois Living Trust
13. Seth Rosenberg
14. Deborah Loughman
15. John Miller
16. Douglas Zinke

**Nystrom Beckman & Paris Group**

1.      Alfred Jackson
2.      Michael Jackson
3.      Granger Construction Company
4.      Wiener Acquisition Company, LLC
5.      Millicent Calicchio
6.      Valerie Sabet
7.      Maxx Venture Fund H, LLC
8.      Ogie, LLC
9.      The Steven C. Calicchio Foundation
10.     Charitable Lead Annuity Trust "A" U/W Of Steven Calicchio
11.     Charitable Lead Annuity Trust "B" U/W Of Steven Calicchio
12.     Exempt Trust U/W Of Steven Calicchio FBO Axel Calicchio
13.     Exempt Trust U/W Of Steven Calicchio FBO Oriana Calicchio
14.     AJC Legacy Investments, LLC
15.     OCC Legacy Investments, LLC
16.     Douglas Deming
17.     Douglas Hamilton
18.     Felicitas Deb Fund, LP
19.     Felicitas SA1, LP
20.     A-One Commercial Insurance Risk Retention Group, Inc.

**Class Plaintiffs**

1.  Marcia Kosstrin Trust
2.  Professional Home Improvements Inc. Retirement Plan

# EXHIBIT  B

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION – LOS ANGELES**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Case No. 2:19-cv-02188-DSF-MRW |
| Plaintiff, | Hon. Dale S. Fischer |
| v. | **[PROPOSED] SCHEDULING ORDER** |
| DIRECT LENDING INVESTMENTS, LLC, | |
| Defendant. | |

This matter is before the Court on the Amended Motion for (i) Approval of Settlement Agreement with the Deloitte Entities; (ii) Entry of Scheduling Order; and (iii) Entry of Order Approving Settlement ("**Amended Approval Motion**") filed by the Receiver.  Following a hearing held on June 14, 2021 on a prior motion for approval, the Parties subsequently modified the Settlement and filed a Joint Status Conference Statement, noting for the Court the relevant changes that were made to the Settlement.  The terms of the modified Settlement are contained in the Amended Confidential Settlement Agreement and Release submitted as Exhibit 1 to the Declaration of Bradley D. Sharp accompanying the Amended Approval Motion ("**Amended Settlement Agreement**").  The Amended Approval Motion and supplemental documents concern the Amended Settlement Agreement among and between, on the one hand, (a) Bradley D. Sharp, in his capacity as the Court-appointed Receiver (the "**Receiver**") for the estate of Direct Lending Investments,

LLC, Direct Lending Income Fund, L.P., Direct Lending Income Feeder Fund, Ltd., DLI Capital, Inc., DLI Lending Agent, LLC, DLI Assets Bravo LLC (in Receivership) (collectively, the "**DLI Receivership Entities**"); (b) Bradley D. Sharp and Christopher D. Johnson, in their capacities as Joint Official Liquidators ("**JOLs**") of Direct Lending Income Feeder Fund, Ltd. (in official liquidation) ("**DLIFF**") (DLIFF, together with the DLI Receivership Entities, the "**DLI Entities**"); (c) investors in the DLI Entities ("**Investors**") that participated in the Mediation and are identified in Exhibit A to the Amended Settlement Agreement ("**Party Investors**") (specifically, those Investors represented by The Meade Firm P.C., Reiser Law P.C., and Levine Kellogg Lehman Schneider + Grossman LLP, those Investors that are plaintiffs in the action *Jackson v. Deloitte & Touche, LLP*, Case No. 20GDCV00419 (Ca. Super. Ct.) and represented by Nystrom Beckman & Paris LLP, those Investors represented by Bragar Eagel & Squire, P.C., and those Investors that are putative lead plaintiffs in the action *Marcia Kosstrin Trust and Professional Home Improvements, Inc. Retirement Plan v. Direct Lending Investments, LLC, et al.*, Case No. 2:19-cv-02452 (C.D. Cal.) and represented by putative class counsel Ahdoot and Wolfson PC and Milberg Coleman Bryson Phillips Grossman PLLC); and, on the other hand, (d) Deloitte & Touche, LLP, Deloitte Tax LLP, and Deloitte & Touche LLP (Cayman Islands) (collectively, the "**Deloitte Entities**").  Capitalized terms not otherwise defined in this order shall have the meaning assigned to them in the Amended Settlement Agreement.

The Receiver seeks the Court's approval of the terms of the Amended Settlement Agreement, including entry of a final order approving the Settlement in the present action (the "**Order Approving Settlement**").  After reviewing the terms of the Amended Settlement Agreement and considering the arguments presented in the Amended Approval Motion, the Court preliminarily approves the Amended Settlement Agreement as adequate, fair, and reasonable.  Accordingly, the Court enters this Scheduling Order to: (i) provide for notice of the terms of the Amended

Settlement Agreement, including the proposed Order Approving Settlement; (ii) set the deadline for filing objections to and opting out of the Amended Settlement Agreement and the Order Approving Settlement; (iii) set the deadline for responding to any objection so filed; and (iv) set the date of the final approval hearing regarding the Amended Settlement Agreement and the Order Approving Settlement (the "**Final Approval Hearing**"), as follows:

1.     Preliminary Findings on the Amended Settlement Agreement: Based upon the Court's review of the terms of the Amended Settlement Agreement, the arguments presented in the Amended Approval Motion and Joint Status Conference Statement, and the accompanying appendices and exhibits, the Court preliminarily finds that the Amended Settlement Agreement is fair, reasonable, and adequate, *U.S. v. Edwards*, 595 F.3d 1004, 1012 (9th Cir. 2010); and resulted from vigorous, good faith, arm's length, mediated negotiations involving experienced and competent counsel.  The Court, however, reserves a final ruling with respect to the terms of the Amended Settlement Agreement until after the Final Approval Hearing referred to below in Paragraph 2.

2.     Final Approval Hearing: The Final Approval Hearing will be held before the Honorable Dale S. Fischer of the United States District Court for the Central District of California, First Street Courthouse, 350 West 1st Street, Los Angeles, California 90012, in Courtroom 7D, at __:__ _.m. on _____, 2022, which is a date at least sixty (60) calendar days after entry of this Scheduling Order. The purposes of the Final Approval Hearing will be to: (i) determine whether the terms of the Amended Settlement Agreement should be finally approved by the Court; (ii) determine whether the Order Approving Settlement attached as Exhibit E to the Amended Settlement Agreement should be entered by the Court; (iii) rule upon any objections to the Amended Settlement Agreement or the Order Approving Settlement; and (v) rule upon such other matters as the Court may deem appropriate.

3.    Notice:  The Court approves the form of Notice of Settlement attached as Exhibit C to the Amended Settlement Agreement, the Notices of Settlement and Right of Exclusion from Settlement (the "**Opt-out Notices**") attached as Exhibits H and I to the Amended Settlement Agreement, and finds that the methodology, distribution, and dissemination of these notices: (i) constitute the best practicable notice; (ii) are reasonably calculated, under the circumstances, to apprise all Persons who may have a Released Claim against the Released Deloitte Entities (specifically the Interested Parties[1]), of the Amended Settlement Agreement, and the releases therein; (iii) are reasonably calculated, under the circumstances, to apprise all Interested Parties of the right to object to the Amended Settlement Agreement and the Order Approving Settlement, and the right of Investors to opt out of the Settlement, and to appear at the Final Approval Hearing; (iv) constitute due, adequate, and sufficient notice; (v) meet all requirements of applicable law, including the Federal Rules of Civil Procedure, the United States Constitution (including Due Process), and the Rules of the Court; and (vi) will provide to all Persons a full and fair opportunity to be heard on these matters.  The Court further approves the form of the Publication Notice attached as Exhibit D to the Amended Settlement Agreement.  Therefore:

a.    The Receiver is directed, no later than seven (7) calendar days after entry of this Scheduling Order, to cause the Notice of Settlement in substantially the same form attached as Exhibit C to the Amended Settlement Agreement to be sent via electronic mail, first class mail, or international delivery service to all Interested Parties.

b.    The Receiver is directed, no later than seven (7) calendar days after entry of this Scheduling Order, to cause the appropriate Opt-out Notice(s) in

---

[1] Interested Parties means, collectively, all parties to the SEC Action, all known creditors, all known Investors of DLI Entities, all Claimants, and, to the extent not already included in the foregoing, Opus Fund Services (USA) LLC, Opus Fund Services (Bermuda) Ltd., Duff & Phelps, LLC, and EisnerAmper LLP.

substantially the same form attached as Exhibit H or I to the Amended Settlement Agreement to be sent via electronic mail, first class mail, or international delivery service to all known Investors of DLI Entities.

c.     The Receiver is directed, no later than seven (7) calendar days after entry of this Scheduling Order, to cause the Publication Notice in substantially the same form attached as Exhibit D to the Amended Settlement Agreement to be published twice in the national edition of *The Wall Street Journal,* twice in the international edition of *The New York Times*, and once in *The Los Angeles Times*.

d.     The Receiver is directed, no later than seven (7) calendar days after entry of this Scheduling Order, to cause the Amended Settlement Agreement, the Amended Approval Motion and Joint Status Conference Statement, this Scheduling Order, the Notice (Exhibit C to the Amended Settlement Agreement), the Opt-out Notices (Exhibits H and I to the Amended Settlement Agreement) and all exhibits and appendices attached to these documents, to be posted on the Receiver's website (http://case.stretto.com/dli).

e.     The Receiver is directed promptly to provide the Amended Settlement Agreement, the Amended Approval Motion and Joint Status Conference Statement, this Scheduling Order, the Notice of Settlement, and the Opt-out Notices, and all exhibits and appendices attached to these documents, to any Person who requests such documents via email to TeamDLI@stretto.com; or by telephone, by calling the Stretto Administrator at 855-885-1564.  The Receiver may provide such materials in the form and manner that the Receiver deems most appropriate under the circumstances of the request.

f.     No less than ten (10) calendar days before the Final Approval Hearing, the Receiver shall cause to be filed with the Clerk of this Court written evidence of compliance with subparts (a) through (d) of this Paragraph, which may be in the form of an affidavit or declaration.

4.     <u>Objections and Appearances at the Final Approval Hearing</u>: Any

Person who wishes to object to the terms of the Amended Settlement Agreement or the Order Approving Settlement, or who wishes to appear at the Final Approval Hearing, must do so by emailing a written objection to TeamDLI@stretto.com, no later than [insert date of 21st day before Final Approval Hearing], 2022.   All objections must:

        a.    contain the name, address, telephone number, and  an email address of the Person filing the objection;

        b.    contain the name, address, telephone number, and email address of any attorney representing the Person filing the objection;

        c.    be signed by the Person filing the objection, or his or her attorney;

        d.    state, in detail, the basis for any objection;

        e.    attach any document the Court should consider in ruling on the Amended Settlement Agreement and the Order Approving Settlement; and

        f.    if the Person objecting wishes to appear at the Final Approval Hearing, make a request to do so.

The Receiver is directed to compile all objections submitted into a single pleading and file them with the Court.

Any Person submitting an objection shall be deemed to have submitted to the jurisdiction of this Court for all purposes of that objection, the Amended Settlement Agreement, and the Order Approving Settlement. Potential objectors who do not present opposition by the time and in the manner set forth above shall be deemed to have waived the right to object (including any right to appeal) and shall be forever barred from raising such objections in this action or any other action or proceeding. Persons do not need to appear at the Final Approval Hearing or take any other action to indicate their approval.  The Court may decline to permit anyone who fails to file a written objection and request to appear at the Final Approval Hearing as set forth

in subparts (a) through (f) of this paragraph to appear at the Final Approval Hearing. The Court will exercise discretion as to whether it wishes to hear from any Person who fails to make a timely written objection and request to appear.

5.     Responses to Objections:   Any Party to the Amended Settlement Agreement may respond to an objection filed pursuant to Paragraph 4 by filing a response in the SEC Action no later than [insert date of 7th day before the Final Approval Hearing].  To the extent any Person emailing an objection cannot be served by action of the Court's CM/ECF system, a response must be served to the email and/or mailing address provided by that Person.

6.     Adjustments Concerning Hearing and Deadlines:  The date, time, and place for the Final Approval Hearing, and the deadlines and date requirements in this Scheduling Order, shall be subject to adjournment or change by this Court without further notice other than that which may be posted by means of ECF.  If no objections are timely filed or if the objections are resolved prior to the Final Approval Hearing, the Court may cancel and proceed without a Final Approval Hearing.

7.     Use of Order:  Under no circumstances shall this Scheduling Order be construed, deemed, or used as an admission, concession, or declaration by or against any of the Deloitte Entities of any fault, wrongdoing, breach or liability.  Neither this Scheduling Order, nor the proposed Amended Settlement Agreement, or any other settlement document, shall be filed, offered, received in evidence, or otherwise used in these or any other actions or proceedings or in any arbitration, except to give effect to or enforce the Amended Settlement Agreement or the terms of this Scheduling Order.

**IT IS SO ORDERED.**

Signed on _____, 2022

_____
DALE S. FISCHER
UNITED STATES DISTRICT JUDGE

# EXHIBIT  C

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION – LOS ANGELES**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>DIRECT LENDING INVESTMENTS, LLC,<br><br>Defendant. | Case No. 2:19-cv-02188-DSF-MRW<br>Hon. Dale S. Fischer<br><br>**NOTICE OF SETTLEMENT** |

**NOTICE OF SETTLEMENT**

PLEASE TAKE NOTICE that the following parties have reached an agreement (the "**Amended Settlement Agreement**") among and between, on the one hand, (a) Bradley D. Sharp, in his capacity as the Court-appointed Receiver (the "**Receiver**") for the estate of Direct Lending Investments, LLC, Direct Lending Income Fund, L.P. ("**DLIF**"), Direct Lending Income Feeder Fund, Ltd., DLI Capital, Inc., DLI Lending Agent, LLC, DLI Assets Bravo LLC (in Receivership) (collectively, the "**DLI Receivership Entities**"); (b) Bradley D. Sharp and Christopher D. Johnson, in their capacities as Joint Official Liquidators ("**JOLs**") of Direct Lending Income Feeder Fund, Ltd. (in official liquidation) ("**DLIFF**") (DLIFF, together with the DLI Receivership Entities, the "**DLI Entities**"); (c) investors in the DLI Entities ("**Investors**") that participated in the Mediation (as defined in the Amended Settlement Agreement) and identified in Exhibit A to the Amended Settlement Agreement ("**Party Investors**") (specifically, those Investors represented by The Meade Firm P.C., Reiser Law P.C., and Levine Kellogg Lehman Schneider + Grossman LLP; those Investors that are plaintiffs in the action *Jackson v. Deloitte & Touche, LLP*, Case No.

1   20GDCV00419 (Ca. Super. Ct.) (the "**Jackson Action**")  and represented by Nystrom Beckman

2   & Paris LLP; those Investors represented by Bragar Eagel & Squire, P.C.; and those Investors that

3   are putative lead plaintiffs in the action *Marcia Kosstrin Trust and Professional Home*

4   *Improvements, Inc. Retirement Plan v. Direct Lending Investments, LLC, et al.*, Case No. 2:19-cv-

5   02452 (C.D. Cal.) and represented by putative class counsel Ahdoot and Wolfson PC and Milberg

6   Coleman Bryson Phillips Grossman PLLC); and, on the other hand, (d) Deloitte & Touche, LLP,

7   Deloitte Tax LLP, and Deloitte & Touche LLP (Cayman Islands) (collectively, the "**Deloitte**

8   **Entities**").

9          Under the terms of the Amended Settlement Agreement, the Deloitte Entities will pay the

10   amount of thirty-one million U.S. dollars ($31,000,000) (the "**Settlement Amount**") to be

11   deposited into escrow account(s) for DLIF Investors; for DLIFF; and for payment of Court

12   approved attorneys' fees.  The Settlement Amount less attorneys' fees and expenses as awarded

13   by the Court ("**Net Settlement Amount**"), will be disbursed by the Receiver to DLIF Investors

14   and will be distributed by the JOLs pursuant to Cayman Islands law.  As described in more detail

15   in the applicable Notice of Settlement and Right of Exclusion from Settlement ("**Opt-out Notice**"),

16   a portion of the Net Settlement Amount will be distributed on a pro rata basis to persons or entities

17   that invested, through the purchase of limited partnership interests or otherwise, in DLIF ("**DLIF**

18   **Investors**") that do not exclude themselves from the Settlement ("**Participating DLIF**

19   **Investors**") pursuant to the procedures described therein.  A separate portion of the Net Settlement

20   Amount will be distributed by the JOLs in accordance with Cayman Islands law.  In return, the

21   Receiver, the JOLs, the DLI Entities, the Party Investors (the "**Claimants**"), and Participating

22   DLIF Investors will release all claims against the Deloitte Entities arising out of, relating to, or in

23   connection with the professional services provided by the Deloitte Entities to the DLI Entities

24   among other Released Claims.[1]   The Claimants, Participating DLIF Investors, and DLIFF

25   _____

26   [1] "Released Claims" means, to the fullest extent that the law permits their release, all past, present,
    and future claims of any nature whatsoever, including, without limitation, all claims, suits, actions,
    allegations, damages (including, without limitation, contributory, compensatory, punitive,

27   exemplary, rescissory, direct, consequential or special damages, restitution, and disgorgement),
    liabilities, causes of action, complaints, lawsuits, responsibilities, demands, rights, debts, penalties,

28   costs, expenses, fees, injunctive relief, attorneys' fees, expert or consulting fees, prejudgment

Investors that do not exclude themselves from the Settlement pursuant to the procedures in the applicable Opt-out Notice ("**Participating DLIFF Investors**")[2] will be barred by the Order Approving Settlement (defined below) from prosecuting or seeking monetary or any relief in the United States against any of the Released Deloitte Entities[3] with respect to any and all such claims. Any final verdict or judgment obtained by or on behalf of any Claimant or Participating DLIF Investor against any Third Party[4]  shall be reduced by the proportionate fault of the Released Deloitte Entities, unless governing law requires otherwise.  Concurrent with this Notice, Investors are being served with an Opt-out Notice describing the steps that Investors must take to exclude themselves from the Settlement.

PLEASE TAKE FURTHER NOTICE that the Receiver has filed in *Securities and Exchange Commission v. Direct Lending Investments, LLC*, Case No. 19-cv-2188 (C.D. Cal.) (the

---

interest, indemnities, duties, losses, and obligations of any kind, known or unknown, foreseen or unforeseen, whether or not concealed or hidden, asserted or unasserted, existing or contingent, direct or indirect, anticipated or unanticipated, asserted or that could have been asserted by, or on behalf of, for the benefit of, or in the name of the Claimants or Participating Investors, whether legal, contractual, rescissory, statutory, or equitable in nature, whether arising under federal, state, common or foreign law, that now exist, have ever existed, or might ever exist, from the beginning of time in perpetuity, that are based upon, arise out of, or are related in any way to:  (a) the professional services provided by the Deloitte Entities to the DLI Entities; (b) the conduct, transactions, or occurrences set forth in any of the pleadings in the Related Actions; (c) the Related Actions; and (d) the conduct and subject matter of the Mediation, Settlement negotiations, and the negotiation of this Agreement (except for representations or obligations expressly included in this Agreement), including without limitation fraud in the inducement thereof.

[2] Participating DLIF Investors and Participating DLIFF Investors together are referred to as "Participating Investors".

[3] "Released Deloitte Entities" means (a) the Deloitte Entities; (b) the Deloitte Entities' predecessors, successors, Affiliates, Subsidiaries, divisions, assignors, and assignees; (c) each of the foregoing's past, present, and future officers, directors, board and board members, principals, partners, officials, employees, Subsidiaries, parents, Affiliates, divisions, joint venturers, contractors, subcontractors, subrogees, offices, controlled Persons, predecessors, successors, assignors, assigns, transferees, heirs, executors, shareholders, owners, investors, accountants, auditors, advisors, trustees, fiduciaries, consultants, agents, representatives, nominees, attorneys, partners, associates, senior counsel, managers, and members, in each case individually and collectively, together with any of their respective predecessors and successors in interest; and (d) each of the Deloitte Entities' insurers, reinsurers, excess insurers, underwriters, and claims administrators. For avoidance of doubt, "Released Deloitte Entities" include, without limitation, Deloitte & Touche, LLP, Deloitte Tax LLP, Deloitte & Touche LLP (Cayman Islands), Deloitte LLP, Deloitte Consulting LLP, Deloitte Financial Advisory Services LLP, Deloitte Transactions and Business Analytics LLP, Deloitte Services LP, and Deloitte USA LLP.

[4] "Third Party" means any nonparty to the Amended Settlement Agreement that has been or may be sued by any of the Claimants or Participating Investors for claims relating to, or in connection with, the DLI Entities.

"**SEC Action**") the Amended Motion for (i) Approval of Settlement Agreement with the Deloitte Entities; (ii) Entry of Scheduling Order; and (iii) Entry of Order Approving Settlement ("**Amended Approval Motion**"). Following a hearing held on June 14, 2021 on a prior motion for approval, the Parties subsequently modified the Settlement.  The Receiver and the Deloitte Entities also filed a Joint Status Conference Statement noting for the Court the changes to the Settlement in the Amended Settlement Agreement. The Settlement is expressly conditioned on the Court approving the Amended Settlement Agreement and entering an order in the form of Exhibit E attached to the Amended Settlement Agreement ("**Order Approving Settlement**").  While the Settlement also requires that the Grand Court of the Cayman Islands supervising the DLIFF liquidation make an order stating that the JOLs have sanction to enter into the Settlement and the Amended Settlement Agreement, this order has already been granted.

**This matter may affect your rights and you may wish to consult an attorney.**

The material terms of the Amended Settlement Agreement are as follows:

a) The Deloitte Entities will pay $31,000,000 into escrow accounts to be identified by the Receiver pursuant to the Amended Settlement Agreement;

b) Investors shall have the right to exclude themselves from participation in the Settlement pursuant to the procedures described in the applicable Opt-out Notice. In the event that Investors that opt-out of the Settlement exceed a certain threshold agreed upon by the signatories to the Amended Settlement Agreement ("**Opt-out Threshold**"), the Deloitte Entities shall have the sole and exclusive right to withdraw from and terminate the Settlement;

c) Counsel for Claimants and the Deloitte Entities are executing a confidential Supplemental Agreement Regarding Requests for Exclusion. This supplemental agreement sets forth certain conditions under which the Deloitte Entities shall have the option to withdraw from the Settlement and render the Settlement Agreement null and void in the event that the Opt-out Threshold is reached;

d) Entry of an Order Approving Settlement: specifying (i) that each of the Claimants and Participating DLIF Investors release each of the Released Deloitte Entities from

all Released Claims; (ii) that each of the Claimants and Participating Investors are barred from seeking monetary or other relief in any state or federal court, arbitration proceeding, or other forum in the United States against any of the Released Deloitte Entities with respect to any and all claims based on the professional services provided by the Deloitte Entities to the DLI Entities; (iii) any final verdict or judgment obtained by or on behalf of any Claimant or Participating DLIF Investor against any Third Party shall be reduced by an amount that corresponds to the percentage of responsibility of the Released Deloitte Entities for common damages. However, where the law governing such final verdict or judgment ("**Other Governing Law**") requires a reduction in a different amount, the final verdict or judgment shall be reduced by an amount as provided by Other Governing Law.

e)  An Agreement Regarding Disbursement of Attorneys' Fees, attached as Exhibit F to the Amended Settlement Agreement, establishes an Attorneys' Fund in the amount of $4,650,000 to compensate the attorneys who represented the Party Investors, subject to Court approval of the Attorneys' Fee Motion [ECF No. ___]. The Receiver, JOLs, and the Deloitte Entities do not object to the Attorneys' Fee Motion;

f)  The Receiver will disseminate notice of the Amended Settlement Agreement as set forth in the Scheduling Order entered in the SEC Action (ECF No. [__]), including via this Notice to all Interested Parties[5] and the applicable Opt-out Notice to all Investors (through one or more of the following: first class mail, email, or international delivery) and provide publication notice.

Copies of the Amended Settlement Agreement, the Amended Approval Motion, the Joint Status Conference Statement, and other supporting papers may be obtained from the Court's docket in the SEC Action [ECF No. _____] and are also available on the website of the Receiver

---

[5] Interested Parties means, collectively, all parties to the SEC Action, all known creditors, all known Investors of DLI Entities, all Claimants, and, to the extent not already included in the foregoing, Opus Fund Services (USA) LLC, Opus Fund Services (Bermuda) Ltd., Duff & Phelps, LLC, and EisnerAmper LLP.

(http://case.stretto.com/dli).  Copies of these documents may also by requested by email, by sending the request to TeamDLI@stretto.com; or by telephone, by calling the Stretto Administrator at 855-885-1564.  Unless otherwise specified, all capitalized terms not defined herein are defined in the Amended Settlement Agreement.

PLEASE TAKE FURTHER NOTICE that the final hearing on the Amended Approval Motion is set for [_____], 2022 (the "**Final Approval Hearing**").  Any Person who wishes to object to the terms of the Amended Settlement Agreement, or the Order Approving Settlement, or who wishes to appear at the Final Approval Hearing, must do so by emailing a written objection to TeamDLI@stretto.com no later than [insert date of 21st day before Final Approval Hearing], 2022.  All objections must:

a.      contain the name, address, telephone number, and (if applicable) an email address of the Person filing the objection;

b.      contain the name, address, telephone number, and email address of any attorney representing the Person filing the objection;

c.      be signed by the Person filing the objection, or his or her attorney;

d.      state, in detail, the basis for any objection;

e.      attach any document the Court should consider in ruling on the Amended Settlement Agreement and the Order Approving Settlement; and

f.      if the Person filing the objection wishes to appear at the Final Approval Hearing, make a request to do so.

Any Person submitting an objection shall be deemed to have submitted to the jurisdiction of this Court for all purposes of that objection, the Settlement Agreement, and the Order Approving Settlement.  Potential objectors who do not present opposition by the time and in the manner set forth above shall be deemed to have waived the right to object (including any right to appeal) and shall be forever barred from raising such objections in this action or any other action or proceeding.  Persons do not need to appear at the Final Approval Hearing or take any other action to indicate their approval.  The Court may decline to permit anyone who fails to submit a written objection and request to appear at the Final Approval Hearing as set forth in subparts (a) through (f) above

from appearing at the Final Approval Hearing.  The Court will exercise discretion as to whether it wishes to hear from any person or entity who fails to make a timely written objection and request to appear.

Dated:                                                  DIAMOND MCCARTHY LLP

                                         By:  /s/ Christopher D. Sullivan
                                              Christopher D. Sullivan, counsel
                                              For Bradley D. Sharp,
                                              Permanent Receiver

# EXHIBIT  D

**Publication Notice**

To be published twice in the following newspapers: national edition of *The Wall Street Journal*

and the international edition of *The New York Times;* and once in *The Los Angeles Times*:

PLEASE TAKE NOTICE that the Court-appointed Receiver for the estate of Direct Lending Investments, LLC, Direct Lending Income Fund, L.P., ("**DLIF**"), Direct Lending Income Feeder Fund, Ltd., ("**DLIFF**"), DLI Capital, Inc., DLI Lending Agent, LLC, DLI Assets Bravo LLC (in Receivership) (collectively "**DLI Receivership Entities**"), the Joint Official Liquidators of Direct Lending Income Feeder Fund, Ltd. (in official liquidation) (together with DLI Receivership Entities "**DLI Entities**"), and the Party Investors of the DLI Entities (collectively "**Claimants**") have reached an agreement to settle all claims asserted or that could have been asserted against Deloitte & Touche, LLP, Deloitte Tax LLP, and Deloitte & Touche LLP (Cayman Islands) (collectively, the "**Deloitte Entities**") by Claimants or any DLIF Investor that does not exclude itself from the Settlement ("**Participating DLIF Investors**"), that are based upon, related to, or in connection with the professional services provided by the Deloitte Entities to the DLI Entities, among other Released Claims (the "**Amended Settlement Agreement**"). All capitalized terms not defined in this notice are defined in the Amended Settlement Agreement.

Pursuant to the Amended Settlement Agreement, the Deloitte Entities will pay the amount of $31,000,000 ("**Settlement Amount**") to be deposited into escrow account(s) for DLIF Investors; for DLIFF; and for the payment of Court approved attorneys' fees. Counsel for Party Investors seek to be paid attorney's fees of up to $4.65 million that will be deducted from the Settlement Amount ("**Net Settlement Amount**"). As part of the Amended Settlement Agreement, the Receiver has requested entry of a final order approving the Settlement from the United States District Court, Central District of California, *Securities and Exchange Commission v. Direct Lending Investments*, LLC, Case No. 19-cv-2188 ("**SEC Action**").

Investors have the right to exclude themselves from the Amended Settlement Agreement pursuant to the procedures described in the notice to be sent to Investors ("**Opt-out Notices**"). The deadline to opt-out is [_____]. If the Court in the SEC Action approves the Settlement, Claimants and Participating DLIF Investors will be eligible to receive their portion of the Net Settlement Amount as determined by the distribution method approved by the Court in the SEC Action. A separate portion of the Net Settlement Amount will be distributed by the JOLs of DLIFF in accordance with Cayman Islands law. Claimants and Participating DLIF Investors will release any claim or cause of action of every nature and description against the Released Deloitte Entities, whether arising under

**EXHIBIT D**

federal, state, statutory, regulatory, common, foreign, or other law, based upon, arising out of, or related in any way to (a) professional services provided to the DLI Entities, (b) the conduct, transactions, or occurrences set forth in any of the pleadings in the Related Actions, (c) the Related Actions, (d) the conduct and subject matter of the Mediation between the Parties, the Settlement negotiations, and the negotiation of the Amended Settlement Agreement.  Claimants and Participating Investors will be barred from pursuing a lawsuit or seeking monetary or other relief against the Deloitte Entities in the United States related in any way to the professional services provided by the Deloitte Entities to the DLI Entities.  Additionally, Claimants and DLIF Participating Investors agree, and by order of the Court in the SEC Action will be required to, reduce the amount of any final verdict or judgment they obtain against any Third Party by an amount that corresponds to the percentage of responsibility of the Released Deloitte Entities for common damages.  However, where the law governing such final verdict or judgment ("**Other Governing Law**") requires a reduction in a different amount, the final verdict or judgment shall be reduced by an amount as provided by Other Governing Law.  If a DLIF Investor excludes itself, that Investor will not be entitled to receive any portion of the Settlement Amount, but keeps any right to sue or continue to sue the Deloitte Entities on claims related in any way to the professional services provided by the Deloitte Entities to the DLI Entities.  If a DLIFF Investor excludes itself, that Investor will retain any claims it may have against the Deloitte Entities and any rights it has to share in the distribution proceeds as determined under Cayman Islands law. Specific information regarding these rights and options, and how to exercise them, is provided in the applicable Opt-out Notices.

The Court in the SEC Action will hold a hearing to consider whether to approve the Amended Settlement Agreement and enter the Order Approving Settlement at _____ _.m, on ____, 2022, in Courtroom 7D of the United States District Court for the Central District of California, First Street Courthouse, 350 West 1st Street, Los Angeles, California 90012. The Court will consider whether the Settlement is adequate, fair, and reasonable. If you wish to object to the Amended Settlement Agreement or appear at the hearing, you must email a written objection to TeamDLI@stretto.com on or before [insert date of 21st day before Final Approval Hearing]. Specific information on objecting is provided in the Opt -out Notices and the Amended Notice of Proposed Settlement (collectively "**Notices**").

Complete copies of the Amended Settlement Agreement, the proposed Order Approving Settlement, and other settlement documents are available on the Receiver's website:   http://case.stretto.com/dli  or by emailing: TeamDLI@stretto.com or by calling: 855-885-1564.

# EXHIBIT  E

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION – LOS ANGELES**

SECURITIES AND EXCHANGE COMMISSION,

        Plaintiff,

        v.

DIRECT LENDING INVESTMENTS, LLC,

        Defendant.

Case No. 2:19-cv-02188-DSF-MRW

Hon. Dale S. Fischer

**[PROPOSED] ORDER APPROVING SETTLEMENT**

This matter is before the Court on the Amended Motion for (i) Approval of Settlement Agreement with the Deloitte Entities; (ii) Entry of Scheduling Order; and (ii) Entry of Order Approving Settlement (**"Amended Approval Motion"**). Following a hearing held on June 14, 2021 on a prior motion for approval, the Parties subsequently modified the Settlement and have filed a Joint Status Conference Statement, noting for the Court the relevant changes that were made to the Settlement. The terms of the modified Settlement are contained in the Amended Confidential Settlement Agreement and Release attached as Exhibit 1 to the Declaration of Bradley D. Sharp accompanying the Amended Approval Motion (the "**Amended Settlement Agreement**"). The Amended Approval Motion and supplemental documents concerning the Amended Settlement Agreement among and between, on the one hand, (a) Bradley D. Sharp, in his capacity as the Court-appointed Receiver (the "**Receiver**") for the estate of Direct Lending Investments, LLC, Direct Lending Income Fund, L.P., Direct Lending Income Feeder Fund, Ltd., DLI Capital, Inc., DLI Lending Agent, LLC, DLI Assets Bravo LLC (in Receivership) (collectively, the "**DLI Receivership Entities**"); (b) Bradley D. Sharp and Christopher D. Johnson, in their capacities as Joint Official Liquidators ("**JOLs**") of Direct Lending Income Feeder Fund, Ltd. (in official liquidation) ("**DLIFF**") (DLIFF, together with the DLI Receivership Entities, the "**DLI Entities**"); (c) investors in the DLI Entities ("**Investors**") that participated in the Mediation (as defined in the Amended Settlement Agreement) and identified in Exhibit A to the Amended Settlement Agreement ("**Party Investors**") (specifically, those Investors represented by The Meade Firm P.C., Reiser Law P.C., and Levine Kellogg Lehman Schneider + Grossman LLP (the "**Century Group**"), those Investors that are plaintiffs in the action *Jackson v. Deloitte & Touche, LLP*, Case No. 20GDCV00419 (Ca. Super. Ct.) (the "**Jackson Action**") and represented by Nystrom Beckman & Paris LLP (the "**Jackson Group**"), those Investors represented

by Bragar Eagel & Squire, P.C. (the "**Eagel Group**"), and those Investors that are putative lead plaintiffs in the action *Marcia Kosstrin Trust and Professional Home Improvements, Inc. Retirement Plan v. Direct Lending Investments, LLC, et al.*, Case No. 2:19-cv-02452 (C.D. Cal.) and represented by putative class counsel Ahdoot and Wolfson PC and Milberg Coleman Bryson Phillips Grossman PLLC) (the "**Class Plaintiffs**"); and, on the other hand, (d) Deloitte & Touche, LLP, Deloitte Tax LLP, and Deloitte & Touche LLP (Cayman Islands) (collectively, the "**Deloitte Entities**").   Capitalized terms not otherwise defined in this order shall have the meaning assigned to them in the Amended Settlement Agreement.

Following notice and a hearing, and having considered the Amended Approval Motion, the Joint Status Conference Statement, and other filings including any objections, and having heard the arguments of counsel, the Court GRANTS the Amended Approval Motion.

## I.    INTRODUCTION

The events preceding the Amended Approval Motion, including this Court's appointment of the Receiver and the settling parties' settlement negotiation efforts are documented in the settling parties' submissions to the Court.  *See* Dkts. 532, 608-10, 612-13.

By agreement effective August 3, 2020, the Receiver, JOLs, and the Deloitte Entities determined to engage in a mediation process to explore a mutually agreeable resolution of the Receiver and JOLs' potential claims against the Deloitte Entities related to the Deloitte Entities' provision of professional services to the DLI Entities. At various times following August 3, 2020, the Party Investors joined the mediation process, agreeing to stay any actions that had already been filed against the Deloitte Entities and/or forbear from filing any such actions.

Under the terms of the Amended Settlement Agreement, the Deloitte Entities will fund the Settlement Fund in the amount of thirty-one million U.S. dollars

($31,000,000) to be deposited into escrow accounts to be identified by the Receiver. In return: (a) Claimants and persons or entities that invested, through the purchase of limited partnership interests or otherwise, in DLIF that do not exclude themselves from the Settlement ("**Participating DLIF Investors**") will release all Released Claims against the Deloitte Entities; (b) Claimants, Participating DLIF Investors, and persons or entities that invested through DLIFF that do not exclude themselves from the Settlement ("**Participating DLIFF Investors**")[1] will be barred by order of this Court from seeking monetary relief or other relief in any court, arbitration proceeding, or other forum in the United States against the Released Deloitte Entities with respect to claims based on the professional services provided by the Deloitte Entities to the DLI Entities; and (c) Claimants and Participating DLIF Investors will agree to reduce any final verdict or judgment they may obtain against any Third Party[2] by the proportionate fault of the Released Deloitte Entities, unless governing law requires otherwise.  The Amended Settlement Agreement is conditioned on the Court's approval of the Settlement and entry of this Order Approving Settlement. Investors who exclude themselves from the Settlement pursuant to the procedures described in the applicable Notice of Settlement and Right of Exclusion from Settlement ("**Opt-Out Notices**") are not bound by the Settlement or this Order Approving Settlement.

The Court entered a Scheduling Order on _____ __ , 2022 [ECF No. ___], which, *inter alia*, preliminarily approved the Amended Settlement Agreement, approved the form and content of the Notice of Settlement, the Publication Notice, and the Opt-Out Notices and method and manner of service and publication, established opt-out procedures by which Investors could exclude themselves from

---

[1] Participating DLIF Investors and Participating DLIFF Investors are referred to together as "**Participating Investors**."

[2] Third Party means any non-party to the Amended Settlement Agreement that has been or may be sued by any of the Claimants or Participating Investors for claims arising out of, relating to, or in connection with the DLI Entities.

participation in the Settlement, and set the date for a Final Approval Hearing. The Receiver filed a declaration with the Court detailing compliance with the notices and publication requirements contained in the Scheduling Order [ECF No. _____].

On _____, 2022, the Court held the scheduled Final Approval Hearing. For the reasons set forth herein, the Court finds that the terms of the Amended Settlement Agreement are adequate, fair, and reasonable, and that the Amended Settlement Agreement is **APPROVED**. The Court further finds that entry of this final Order Approving Settlement is appropriate.

## II.   ORDER

It is **ORDERED, ADJUDGED, AND DECREED** as follows:

1.     The Amended Approval Motion is GRANTED in its entirety. Any objections are overruled to the extent not otherwise withdrawn or resolved.

2.     Terms used in this Order Approving Settlement are defined in the Amended Settlement Agreement, unless expressly otherwise defined herein.

3.     The Court "has broad powers and wide discretion to determine the appropriate relief in [this] equity receivership[,]" including the authority to approve settlements and enter injunctive relief, bar orders and other equitable remedies. *See S.E.C. v. Capital Consultants, LLC*, 397 F.3d 733, 738 (9th Cir. 2005); *see also In re Consol. Pinnacle W. Securities Litig./ADR Tr. Corp.-Merabank Litig*., 51 F.3d 194, 197 (9th Cir. 1995). Moreover, the Court has jurisdiction over the subject matter of this action, and the Receiver is the proper party to seek entry of this Order Approving Settlement.

4.     The Court finds that the methodology, form, content and dissemination of the Notice of Settlement and Opt-Out Notices: (i) were implemented in accordance with the requirements of the Scheduling Order; (ii) constituted the best practicable notice; (iii) were reasonably calculated, under the circumstances, to apprise all Persons who may have a Released Claim against the Released Deloitte

Entities (specifically the Interested Parties[3]), of the Amended Settlement Agreement, the releases therein, and the injunctions provided for in this Order Approving Settlement; (iv) were reasonably calculated, under the circumstances, to apprise all Persons who may have a Released Claim against the Released Deloitte Entities (specifically the Interested Parties), of the right to object to the Amended Settlement Agreement and this Order Approving Settlement, the right for Investors to exclude themselves from the Settlement, and to appear at the Final Approval Hearing; (v) were reasonable and constituted due, adequate, and sufficient notice; (vi) met all applicable requirements of law, including, without limitation, the Federal Rules of Civil Procedure, the United States Constitution (including Due Process), and the Rules of the Court; and (vii) provided to all Persons a full and fair opportunity to be heard on these matters.

5. The Court finds that the Amended Settlement Agreement was reached following an extensive investigation of the facts and resulted from vigorous, good faith, arm's-length, mediated negotiations involving experienced and competent counsel. The Parties have represented that material components of the Amended Settlement Agreement include: a) the release of all claims that have been, could have been, or could be asserted against any of the Released Deloitte Entities by Claimants and Participating DLIF Investors arising out of or related to the events leading to these proceedings, including those arising from or related to the Deloitte Entities provision of professional services to the DLI Entities, b) the bar order set forth in paragraph 9 below; and c) the reduction in any final verdict or judgment obtained by Claimants or Participating DLIF Investors against any Third Party by the proportionate fault of the Released Deloitte Entities for common damages, unless governing law requires otherwise. This Order is therefore necessary and appropriate

---

[3] Interested Parties means, collectively, all parties to the SEC Action, all known creditors and Investors of DLI Entities, all Claimants, and to the extent not already included in the foregoing, Opus Fund Services (USA) LLC, Opus Fund Services (Bermuda) Ltd., Duff & Phelps LLC, and EisnerAmper LLP.

in order to obtain relief for victims of the fraud pursuant to the Amended Settlement Agreement. The foregoing excludes potential claims by the SEC, the Department of Justice, or other regulatory agencies and in no way forecloses any governmental authority from pursuing investigations or actions related to the operation of the DLI Entities.

6. Accordingly, the Court finds that the Amended Settlement Agreement is, in all respects, fair, reasonable, and adequate in the best interests of all Persons claiming an interest in, having authority over, or asserting a claim against any of the Released Deloitte Entities, including but not limited to the Claimants and all Investors of the DLI Entities. The Amended Settlement Agreement is fully and finally approved. The Parties are directed to implement and consummate the Amended Settlement Agreement in accordance with the terms and provisions of the Amended Settlement Agreement and this Order Approving Settlement.

7. Pursuant to the Amended Settlement Agreement, as of the Effective Date, each of the Releasing Claimants and Participating DLIF Investors fully, finally, and forever releases, covenants not to sue, and discharges each of the Released Deloitte Entities from any and all Released Claims (as defined in the Amended Settlement Agreement) held by, on behalf of, for the benefit of, or in the name of the Releasing Claimant or Participating DLIF Investor, and shall forever be barred and enjoined from commencing, instituting, prosecuting, maintaining, or seeking monetary or other relief respecting any and all of the Released Claims against any and all of the Released Deloitte Entities. Further, pursuant to the Amended Settlement Agreement, as of the Effective Date, each of the Deloitte Entities, fully, finally, and forever releases, covenants not to sue, and discharges any and all Released Claims against each and every one of the Releasing Claimants and Participating Investors, and shall forever be barred and enjoined from commencing, instituting, prosecuting, maintaining or seeking monetary or other relief respecting

any and all of the Released Claims against any and all of the Releasing Claimants, Participating Investors, or their respective Counsel.

8. Pursuant to the Amended Settlement Agreement, any final verdict or judgment obtained by or on behalf of any Claimant or Participating DLIF Investor against any Third Party shall be reduced by an amount that corresponds to the percentage of responsibility of the Released Deloitte Entities for common damages. However, where the law governing such final verdict or judgment ("**Other Governing Law**") requires a reduction in a different amount, the final verdict or judgment shall be reduced by an amount as provided by Other Governing Law.

9. The Court permanently bars, restrains and enjoins each of the Releasing Claimants and Participating Investors, whether acting in concert with the foregoing or claiming by, through, or under the foregoing, or otherwise, all and individually, from directly, indirectly, or through a third party, prosecuting, against any of the Deloitte Entities, now or at any time in the future, any action, lawsuit, cause of action, claim, investigation, demand, complaint, or proceeding of any nature in any state or federal court, arbitration proceeding, or other forum in the United States, whether individually, derivatively, on behalf of a class, as a member of a class, or in any other capacity whatsoever, that in any way relates to, is based upon, arises from, or is connected with the professional services provided by the Deloitte Entities to the DLI Entities. The foregoing excludes potential claims by the SEC or other regulatory agencies. Nothing in the foregoing shall preclude any Releasing Claimant or Participating Investor from cooperating with governmental authorities in a lawful manner or responding to a valid subpoena.

10. Notwithstanding anything to the contrary in this Order Approving Settlement, the foregoing releases do not release the Parties' rights and obligations under the Amended Settlement Agreement or bar the Parties from seeking to enforce or effectuate the terms of the Amended Settlement Agreement.

11.     The Released Deloitte Entities have no responsibility, obligation, or liability whatsoever with respect to the cost associated with or the content of the Notice; the notice process; the Distribution Plan; the implementation of the Distribution Plan; the administration of the Amended Settlement Agreement; the management, investment, disbursement, allocation, or other administration or oversight of the Settlement Amount, any other funds paid or received in connection with the Amended Settlement Agreement, or any portion thereof; the payment or withholding of taxes; the determination, administration, calculation, review, or challenge of claims to the Settlement Amount, any portion of the Settlement Amount, or any other funds paid or received in connection with the Amended Settlement Agreement; or any losses, attorneys' fees, expenses, vendor payments, expert payments, or other costs incurred in connection with any of the foregoing matters.  No appeal, challenge, decision, or other matter concerning any subject set forth in this paragraph shall operate to terminate, cancel or modify the Amended Settlement Agreement or this Order Approving Settlement.

12.     Nothing in this Order Approving Settlement or the Amended Settlement Agreement and no aspect of the Amended Settlement Agreement or negotiation thereof is or shall be construed to be an admission or concession of any violation of any statute or law, of any fault, liability or wrongdoing, or of any infirmity in the claims or defenses of the Parties with regard to any of the complaints, claims, allegations or defenses in any proceeding.  The Deloitte Entities have always denied and continue to expressly deny any liability or wrongdoing with respect to any claims related to their provision of professional services to the DLI Entities.

13.     The Deloitte Entities are ordered to deliver or cause to be delivered the Settlement Amount ($31,000,000) as described in the Amended Settlement Agreement.  The Parties are ordered to act in conformity with all other provisions of the Amended Settlement Agreement.

14.     The terms of the Settlement and of this Order shall be forever binding on the Deloitte Entities, Claimants, and all Participating Investors, as well as their respective successors and assigns.  The persons or entities listed on Exhibit [●] hereto have excluded themselves from the Settlement pursuant to the procedures described in the Opt-Out Notice and are not bound by the terms of the Settlement or this Order.

15.     Without in any way affecting the finality of this Order Approving Settlement, the Court retains continuing jurisdiction over the Parties for purposes of, among other things, the administration, interpretation, consummation, and enforcement of this Order Approving Settlement including, without limitation, the injunctions and releases herein, and to enter orders concerning implementation of its distribution of the Settlement Amount.

20.     The Court expressly finds and determines, pursuant to Federal Rule of Civil Procedure 54(b), that there is no just reason for any delay in the entry of this Judgment Approving Settlement, which is both final and appealable, and immediate entry by the Clerk of the Court is expressly directed.

21.     The Receiver shall cause this Order Approving Settlement to be served via email, first class mail, or international delivery service, on all Interested Parties and any Person that filed an objection to approval of the Amended Settlement Agreement or this Order Approving Settlement.

**IT IS SO ORDERED**

Signed on _____, 2022


_____
DALE S. FISCHER
UNITED STATES DISTRICT JUDGE

9

# EXHIBIT  F

## AMENDED AGREEMENT REGARDING DISBURSEMENT OF ATTORNEYS' FEES

This AGREEMENT REGARDING DISBURSEMENT OF ATTORNEYS' FEES ("**Agreement**") is by and between:

1) Bradley D. Sharp, as the permanent receiver (the "**Receiver**") for the estate of Direct Lending Investments, LLC, Direct Lending Income Fund, L.P., Direct Lending Income Feeder Fund, Ltd., DLI Capital, Inc., DLI Lending Agent, LLC, DLI Assets Bravo LLC (in Receivership) (collectively, the "**DLI Receivership Entities**");

2) Bradley D. Sharp and Christopher D. Johnson, solely in their capacities as Joint Official Liquidators ("**JOLs**") of Direct Lending Income Feeder Fund, Ltd. (in official liquidation) ("**DLIFF**") (DLIFF, together with the DLI Receivership Entities, the "**DLI Entities**"); and

3) Investors in the DLI Entities that participated in the Mediation (defined below) as are referenced in the Amended Confidential Settlement Agreement and Release entered into contemporaneously herewith ("**Party Investors**").

The Receiver, JOLs, the DLI Entities, and the Party Investors are individually referred to herein as a "**Party**" and, collectively, as the "**Parties**."

## RECITALS

WHEREAS, on March 22, 2019, the United States Securities Exchange Commission filed a lawsuit in the United States District Court, Central District of California against Direct Lending Investments, LLC, titled *Securities and Exchange Commission v. Direct Lending Investments, LLC*, Case No. 19-cv-2188 (the "**SEC Action**"), alleging violations of federal securities laws, including section 17(a) of the Securities Act of 1933 and section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder;

WHEREAS, on April 1, 2019, the court in the SEC Action appointed the Receiver to serve as the permanent receiver of the estate of the DLI Entities;

WHEREAS, on July 25, 2019, the DLIFF official liquidation was initiated by order of the Grand Court of the Cayman Islands in Court FSD Cause No. 108 of 2019 (NSJ) (the "**Cayman Liquidation**");

WHEREAS, on August 1, 2019, the Grand Court of the Cayman Islands filed a supervision order in the Cayman Liquidation (the "**Supervision Order**") that enabled the JOLs, *inter alia*, to compromise certain claims;

WHEREAS, in relevant part, the Supervision Order sanctioned the JOLs "on a joint and several basis" to exercise the powers to, *inter alia*, "bring or defend any action or other legal proceeding in the name and on behalf of [DLIFF]" (Supervision Order § 6(a));

WHEREAS, by agreement effective August 3, 2020, the Receiver, JOLs, and Deloitte & Touche, LLP, Deloitte Tax LLP, and Deloitte & Touche Cayman Islands (collectively, the "**Deloitte Entities**") determined to engage in a mediation process, under the direction and

supervision of the Honorable Daniel Weinstein (Ret.) and Ambassador David Carden (Ret.) (the "**Mediators**"), to explore a mutually agreeable resolution of the Receiver's and JOLs' potential claims against the Deloitte Entities;

WHEREAS, at various times following August 3, 2020, the Party Investors joined the mediation process, agreeing to stay any actions that had already been filed against the Deloitte Entities or to forebear from filing any such actions;

WHEREAS, on August 25, 2020, the court in the SEC Action entered an order approving the Receiver to enter into a conflict management protocol that, *inter alia*, granted Christopher D. Johnson the sole and exclusive right and power to act on behalf of DLIFF in the event of a conflict under certain terms and conditions with respect to Recusal Issues (SEC Action, Dkt. No. 289-2 at 17; *see also* Dkt. No. 293) and in other respects Christopher D. Johnson and Bradley D. Sharp, in their capacity as JOLs, are otherwise authorized to act on behalf of DLIFF subject to court supervision;

WHEREAS, the Deloitte Entities, the Receiver/JOLs on behalf of the DLI Entities, and certain Party Investors engaged in a robust exchange of documents and information enabling the Parties to investigate their potential claims and defenses;

WHEREAS, on October 26, 2020, the Receiver, JOLs, and the Party Investors made a presentation to the Mediators and Deloitte Entities concerning the factual and legal bases for certain claims arising from the professional services provided by the Deloitte Entities to the DLI Entities;

WHEREAS, on December 14, 2020, the Deloitte Entities made a rebuttal presentation to the Mediators, Receiver, JOLs, and Party Investors concerning the factual and legal defenses to those claims discussed in the October 26, 2020 presentations;

WHEREAS, on December 21 and 22, 2020, the Parties engaged in mediation with the Mediators (the "**Mediation**"), and the Parties have agreed on terms to resolve, on a global basis, all claims that the Receiver, JOLs, Party Investors, or any other Investor or entity has asserted or could assert against the Deloitte Entities arising out of or in any way related to the professional services provided by the Deloitte Entities to the DLI Entities;

WHEREAS, the Parties and the Deloitte Entities executed the Confidential Settlement Agreement and Release ("**Original Settlement Agreement**") on April 6-8, 2021, and the Receiver filed a Memorandum of Points and Authorities in Support of Motion of Receiver for: (1) Approval of Settlement With Deloitte Entities; (2) Entry of Scheduling Order; and (3) Entry of Bar Order (the "**Receiver's Motion**") on April 8, 2021, requesting that the court in the SEC Action approve, on a preliminary basis, the Original Settlement Agreement;

WHEREAS, Exhibit G to the Original Settlement Agreement was the Agreement Regarding Disbursement of Attorneys' Fees ("**Original Attorneys' Fee Agreement**");

WHEREAS, on June 14, 2021, the court in the SEC Action held a hearing on the Receiver's Motion and directed certain questions and instructions to the Parties and the Deloitte Entities;

WHEREAS, the Parties and the Deloitte Entities, having taken the court in the SEC Action's questions and instructions under due consideration, memorialized their settlement in a long-form writing entitled Amended Confidential Settlement Agreement and Release (the "**Master Agreement**") entered into contemporaneously herewith;

WHEREAS, the Parties wish to amend the Original Attorneys' Fee Agreement to comport with the Master Agreement, and memorialize the way in which the attorneys' fees to counsel for the Party Investors will be addressed and handled;

WHEREAS, all capitalized terms used in this Agreement shall have the meaning given to them in the Master Agreement.

NOW, THEREFORE, in consideration of the mutual covenants, agreements, and conditions contained in this Agreement, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

## SECTION 1.  ATTORNEYS' FUND

1.1.    The Receiver, JOLs, DLI Entities, and Party Investors agree that, upon payment of the Settlement Fund, fifteen percent (15%) of the Settlement Fund, or Four Million Six Hundred and Fifty Thousand Dollars ($4,650,000.00), shall be set aside to compensate the attorneys who represented the Party Investors (the "**Attorneys' Fund**") for their assistance in achieving the settlement memorialized in the Master Agreement.

1.2.    The Receiver, JOLs, and DLI Entities agree not to oppose or otherwise object to the application by counsel for the Party Investors in the SEC Action for an award of attorneys' fees and reimbursement of expenses up to the full amount of the Attorneys' Fund, so long as such application is consistent with the terms of this Agreement.  Notwithstanding the foregoing, in the event the court in the SEC Action approves an amount to be disbursed from the Attorneys' Fund that is less than the full amount held in the Attorneys' Fund, that difference shall be promptly disbursed to the Receiver for the benefit of the estate of the DLI Entities, subject to the approval by the court in the SEC Action.

1.3.    Subject to approval by the Court in the SEC Action and except as that Court may otherwise direct, the Receiver, JOLs, DLI entities, and Party Investors agree that the Attorneys' Fund shall be distributed by the Receiver in accordance with the following provisions:

(a)    Within thirty (30) days after entry of the Scheduling Order, one counsel representing the Party Investors, copying all other counsel representing the Party Investors, shall advise the Receiver, in writing, that they have agreed on an allocation of the Attorneys' Fund.  If approved by the court in the SEC Action, the Receiver shall disburse the Attorneys' Fund in accordance with that allocation.

(b)    If counsel representing the Party Investors are unable to reach agreement as to the allocation of the Attorneys' Fund, they shall file motions for attorneys' fees before the court in the SEC Action and the court in the SEC Action shall establish the distribution allocation for the Attorneys' Fund.

(c)     Notwithstanding any other provisions in this Agreement, the Receiver shall not disburse any monies held in the Attorneys' Fund until the Effective Date.

(d)     No counsel for the Party Investors shall be entitled to further compensation from the Receiver, JOLs, DLI Entities, or Deloitte Entities.  The Attorneys' Fund shall be sole source of compensation for counsel for the Party Investors.

(e)     The resolution of the distribution of the Attorneys' Fund shall have no impact on the other terms of the Master Agreement.  All other terms of the Master Agreement shall remain in full force and effect irrespective of any issues regarding the allocation or distribution of the Attorneys' Fund and irrespective of any decision by the court in the SEC Action regarding the allocation or disbursement of the Attorneys' Fund.

## SECTION 2.  MISCELLANEOUS

2.1.    <u>Entire Agreement</u>.  This Agreement is the final, complete, and exclusive agreement of the Parties with respect to the subject matter hereof, and supersedes and merges all prior and contemporaneous discussions, representations, promises, understandings and agreements, whether written or oral, between the Parties with respect to such subject matter.

2.2.    <u>Amendments</u>.  This Agreement may be modified or amended only by a written instrument duly executed by each of the Parties.

2.3.    <u>Governing Law</u>.  This Agreement shall be governed by, and interpreted in accordance with, the laws of the United States of America and the State of California, in each case, excluding any conflicts or choice-of-law rule or principle that might otherwise refer construction or interpretation of this Agreement to the substantive law of any other jurisdiction.

2.4.    <u>Execution</u>.  This Agreement may be executed in one or more counterparts, all of which together shall constitute one and the same agreement.  This Agreement may be executed by facsimile or by a PDF image delivered via e-mail copy of this Agreement, including the signature pages, which facsimile or PDF image shall be deemed an original.

[*Remainder of Page Intentionally Left Blank*]

Dated: *May 24, 2022*

On behalf of the Receiver and JOLs

Christopher D. Sullivan
**DIAMOND McCARTHY LLP**
150 California Street, Suite 2200
San Francisco, CA 94111
Telephone: (415) 692-5200

Dated:

On behalf of the Jackson Group

Michael Paris
**NYSTROM, BECKMAN & PARIS LLP**
One Marina Park Drive, 15th Floor
Boston, MA 02210
Telephone: (617) 778-9128

Dated:

On behalf of the Century Group

Tyler Meade
**THE MEADE FIRM PC**
12 Funston Avenue, Suite A
San Francisco, CA 94129
Telephone: (415) 724-9600

Michael Reiser
**REISER LAW, P.C.**
1475 N. Broadway, Suite 300
Walnut Creek, CA 94596
Telephone: (925) 256-0400

Dated:                                      On behalf of the Receiver and JOLs

_____
Christopher D. Sullivan
**DIAMOND McCARTHY LLP**
150 California Street, Suite 2200
San Francisco, CA 94111
Telephone: (415) 692-5200

Dated: 5/24/22                              On behalf of the Jackson Group

_____
Michael Paris
**NYSTROM, BECKMAN & PARIS LLP**
One Marina Park Drive, 15th Floor
Boston, MA 02210
Telephone: (617) 778-9128

Dated:                                      On behalf of the Century Group

_____
Tyler Meade
**THE MEADE FIRM PC**
12 Funston Avenue, Suite A
San Francisco, CA 94129
Telephone: (415) 724-9600

_____
Michael Reiser
**REISER LAW, P.C.**
1475 N. Broadway, Suite 300
Walnut Creek, CA 94596
Telephone: (925) 256-0400

Dated:                                        On behalf of the Receiver and JOLs

_____

Christopher D. Sullivan
**DIAMOND McCARTHY LLP**
150 California Street, Suite 2200
San Francisco, CA 94111
Telephone: (415) 692-5200

Dated:                                        On behalf of the Jackson Group

_____

Michael Paris
**NYSTROM, BECKMAN & PARIS LLP**
One Marina Park Drive, 15th Floor
Boston, MA 02210
Telephone: (617) 778-9128

Dated: 5/24/22                                On behalf of the Century Group

_____

Tyler Meade
**THE MEADE FIRM PC**
12 Funston Avenue, Suite A
San Francisco, CA 94129
Telephone: (415) 724-9600

_____

Michael Reiser
**REISER LAW, P.C.**
1475 N. Broadway, Suite 300
Walnut Creek, CA 94596
Telephone: (925) 256-0400

Jeffrey C. Schneider
Jason Kellogg
**LEVINE KELLOGG LEHMAN
SCHNEIDER + GROSSMAN LLP**
201 South Biscayne Boulevard, 22nd Floor
Miami, FL 33131
Telephone: (305) 403-8788

Dated: May 24, 2022

On behalf of the Eagel Group

Lawrence Eagel
**BRAGAR, EAGEL & SQUIRE**
885 3rd Avenue, Suite 3040
New York, NY 10022
Telephone: (212) 308-5858

Dated: May 24, 2022

On behalf of Class Plaintiffs

David E. Azar
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC**
DAVID E. AZAR (SBN 218319)
280 S. Beverly Drive, Suite PH
Beverly Hills, California 90212
Telephone: (213) 617-1200
dazar@milberg.com

# EXHIBIT  G

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION – LOS ANGELES**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Case No. 2:19-cv-02188-DSF-MRW |
| Plaintiff, | Hon. Dale S. Fischer |
| v. | **[PROPOSED] ORDER APPROVING ATTORNEYS' FUND** |
| DIRECT LENDING INVESTMENTS, LLC, | |
| Defendant. | |

This matter is before the Court on the Motion for Approval of Attorneys' Fund filed by all counsel for the Party Investors (as defined below) (the "**Motion**"). The Motion relates to the Receiver's motion for (i) Approval of Settlement with the Deloitte Entities; (ii) Entry of Scheduling Order; and (iii) Entry of Order Approving Settlement filed by the Receiver (the "**Amended Approval Motion**"). Following a hearing held on June 14, 2021 on a prior motion for approval, the Parties subsequently modified the Settlement. The terms of the modified Settlement are contained in the Amended Confidential Settlement Agreement and Release attached as Exhibit 1 to the Supplemental Declaration of Bradley D. Sharp accompanying the Amended Approval Motion ("**Amended Settlement Agreement**"). The Amended Approval Motion concerns a proposed settlement among and between, on the one hand, (a) Bradley D. Sharp, in his capacity as the Court-appointed Receiver (the "**Receiver**") for the estate of Direct Lending Investments, LLC, Direct Lending

Income Fund, L.P., Direct Lending Income Feeder Fund, Ltd., DLI Capital, Inc., DLI Lending Agent, LLC, DLI Assets Bravo LLC (in Receivership) (collectively, the "**DLI Entities**"); (b) Bradley D. Sharp and Christopher D. Johnson, in their capacities as Joint Official Liquidators of Direct Lending Income Feeder Fund, Ltd. (in official liquidation) ("**JOLs**"); (c) investors in the DLI Entities that participated in the Mediation (as defined in the Amended Settlement Agreement ) and identified in Exhibit A to the Amended Settlement Agreement ("**Party Investors**"); and, on the other hand, (d) Deloitte & Touche, LLP, Deloitte Tax LLP, and Deloitte & Touche Cayman Islands (collectively, the "**Deloitte Entities**").

At mediation, the Party Investors were represented by The Meade Firm p.c., Reiser Law P.C., and Levine Kellogg Lehman Schneider + Grossman LLP, Nystrom Beckman & Paris LLP, Bragar Eagel & Squire, P.C., Ahdoot and Wolfson PC, and Milberg Phillips Grossman LLP (collectively, the "**Firms**").  Specifically, (1) the Century Group was represented by The Meade Firm P.C., Reiser Law P.C., and Levine Kellogg Lehman Schneider + Grossman LLP; (2) the Jackson Group, which includes Investors that are plaintiffs in the action *Jackson v. Deloitte & Touche LLP*, Case No. 20GDCV00419 (Ca. Super. Ct.), was represented by Nystrom Beckman & Paris LLP; (3) the Eagel Group was represented by Lawrence Eagel of Brager, Eagel & Squire LLP; and (4) the Class Plaintiffs, who are putative lead plaintiffs in the action *Marcia Kosstrin Trust and Professional Home Improvements, Inc. Retirement Plan v. Direct Lending Investments, LLC, et al.*, Case No. 2:19-cv-02452 (C.D. Cal.) were represented by putative class counsel Ahdoot and Wolfson PC and Milberg Phillips Grossman LLP.  Capitalized terms not otherwise defined in this order shall have the meaning assigned to them in the Amended Settlement Agreement.

Following notice and a hearing, and having considered the filings and heard the arguments of counsel, the Court hereby **GRANTS** the Motion.

## I.    INTRODUCTION

1    This action arises from a series of events, including fraudulent activities by
2    DLI Entities' management, leading to the collapse of the DLI Entities.  On April 1,
3    2019, this Court appointed the Receiver to serve as permanent receiver of the estate
4    of the DLI Entities.  After a period of investigation, the Receiver believed to have
5    identified potential claims against third parties, including the Deloitte Entities.  The
6    Deloitte Entities have always denied and continue to expressly deny any and all
7    allegations of negligence or wrongdoing.

8    By agreement effective August 3, 2020, the Receiver, JOLs, and the Deloitte
9    Entities determined to engage in a mediation process to explore a mutually agreeable
10   resolution of the Receiver and JOLs' potential claims against the Deloitte Entities
11   related to the Deloitte Entities provision of professional services to the DLI Entities.
12   At various times following August 3, 2020, the Party Investors joined the mediation
13   process, agreeing to stay any actions that had already been filed against the Deloitte
14   Entities and/or forbear from filing any such actions.

15   Under the terms of the Settlement Agreement, the Deloitte Entities will fund
16   the Settlement Fund in the amount of thirty-one million U.S. dollars ($31,000,000)
17   to be deposited into escrow accounts to be identified by the Receiver.

18   The Court entered a Scheduling Order on _____ __ , 2022 [ECF No.
19   ___], which, *inter alia*, preliminarily approved the Amended Settlement Agreement,
20   approved the form, and content of the Notice of Settlement, the Publication Notice,
21   and the Opt-out Notices and method and manner of service and publication, and set
22   the date for a final approval hearing on the Amended Approval Motion.

23   On _____, 2022, the Court held the scheduled final approval hearing.
24   For the reasons set forth herein, the Court finds that the amount of the Attorneys'
25   Fund sought in the Motion is fair and reasonable and thus appropriate.

26   **II.   ORDER**

27   It is hereby **ORDERED, ADJUDGED, AND DECREED** as follows:

28   1.    The Motion is GRANTED in its entirety.

2.      The Court has jurisdiction over the subject matter of this action, and the Firms are the proper parties to seek entry of this Order.

3.      The Court finds that the amount sought as attorneys' fees in the Motion, fifteen percent (15%), is fair and reasonable.  The Settlement was achieved, in part, by the Firms, who accepted the engagement on a contingency and modified contingency fee basis and, thus, undertook and accepted substantial risks of non-payment for their work on the matter.

4.      This Court has considered the requested fees in light of the value of the relief obtained and finds that counsel for the Party Investors have achieved more than some degree of success on the merits.  The Court finds that fifteen percent (15%) is fair and reasonable using the "percentage of recovery" method and the "lodestar" crosscheck.  The Ninth Circuit has established 25% as the benchmark for a reasonable fee award and the requested award falls well below that benchmark. Indeed, courts within this Circuit have routinely awarded attorneys' fees in excess of 30 percent (30%) of a settlement amount, so the requested fee award here falls well below that range and well below the range of customary fees in the private market, which also oftentimes exceeds thirty percent (30%).

5.      Here, the Firms, along with the Receiver, obtained a substantial recovery for Investors.  Due to the complexity of factual and legal issues, this matter required a high degree of skill and experience, and there was a risk that that investors ultimately may not prevail.  In sum, each of the factors supports the Firms' request for approval of the Attorneys' Fund equal to 15% of the Settlement Fund.

6.      The Court has reviewed the declarations supplied by the Firms and finds that the lodestar crosscheck also confirms the reasonableness of the requested fee award.

7.      The Court notes that the Receiver and the Deloitte Entities have not objected to the Motion.  The Court has also been advised that the Firms have reached agreement about the way in which to allocate the fees sought among them.

8.      Accordingly, the Receiver shall distribute fifteen percent (15%) of the Settlement Fund to the Firms based on the allocation to which they have agreed.

9.      Without in any way affecting the finality of this Order, the Court retains continuing and exclusive jurisdiction over the Parties for purposes of, among other things, the administration, interpretation, consummation, and enforcement of this Order.

**IT IS SO ORDERED**

Signed on _____, 2022

_____
DALE S. FISCHER
UNITED STATES DISTRICT JUDGE

# EXHIBIT H

1

2

3

4 **UNITED STATES DISTRICT COURT**

5 **CENTRAL DISTRICT OF CALIFORNIA**

6 **WESTERN DIVISION – LOS ANGELES**

7

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Case No. 2:19-cv-02188-DSF-MRW Hon. Dale S. Fischer |
| Plaintiff, | |
| v. | **NOTICE TO DIRECT LENDING INCOME FUND INVESTORS OF SETTLEMENT AND RIGHT OF EXCLUSION FROM SETTLEMENT** |
| DIRECT LENDING INVESTMENTS, LLC, | |
| Defendant. | |

15

16        The purpose of this Notice is to inform you that a proposed settlement has been

17 reached with Deloitte & Touche, LLP, Deloitte Tax LLP, and Deloitte & Touche LLP

18 (Cayman Islands) and to inform you of your right to exclude yourself from participation in

19 the Settlement ("<u>Settlement</u>" described below) pursuant to procedures explained in this

20 Notice.  If you exclude yourself (i.e., opt out of) the Settlement, you will not be entitled to

21 receive any of the Settlement Amount ("<u>Settlement Amount</u>" defined below).  Additionally,

22 if too many DLIFF and/or DLIF investors decide to take action and opt out, the Deloitte

23 Entities may withdraw from the Settlement. If you do nothing, you may be entitled to receive

24 a distribution from the Settlement Amount. This Notice describes important rights you may

25 have and the steps you must take if you wish to be excluded from the Settlement.

26        <u>While you are entitled to opt out from the terms of the Settlement, opting out may</u>

27 <u>risk the Deloitte Entities withdrawing from, and in effect, terminating the Settlement.  This</u>

28

1   **notice explains the Settlement and the consequences of opting out.  You should consider**

2   **consulting with your attorney regarding the Settlement, your choices, and this Notice.**

3   　　　　　**A federal court authorized this Notice. This is not a solicitation from a lawyer.**

4   　　**The Settlement**: The following parties have reached an agreement (the "**Amended**

5   **Settlement Agreement**") among and between, on the one hand, (a) Bradley D. Sharp, in his

6   capacity as the Court-appointed Receiver (the "**Receiver**") for the estate of Direct Lending

7   Investments, LLC, Direct Lending Income Fund, L.P., Direct Lending Income Feeder Fund, Ltd.,

8   DLI Capital, Inc., DLI Lending Agent, LLC, DLI Assets Bravo LLC (in Receivership)

9   (collectively, the "**DLI Receivership Entities**"); (b) Bradley D. Sharp and Christopher D.

10  Johnson, in their capacities as Joint Official Liquidators ("**JOLs**") of Direct Lending Income

11  Feeder Fund, Ltd. (in official liquidation) ("**DLIFF**") (DLIFF, together with the DLI Receivership

12  Entities, the "**DLI Entities**"); (c) investors in the DLI Entities ("**Investors**") that participated in

13  the Mediation (as defined in the Amended Settlement Agreement) and identified in Exhibit A to

14  the Amended Settlement Agreement ("**Party Investors**") (specifically, those Investors represented

15  by The Meade Firm P.C., Reiser Law P.C., and Levine Kellogg Lehman Schneider + Grossman

16  LLP; those Investors that are plaintiffs in the action *Jackson v. Deloitte & Touche, LLP*, Case No.

17  20GDCV00419 (Ca. Super. Ct.) (the "**Jackson Action**") and represented by Nystrom Beckman &

18  Paris LLP; those Investors represented by Bragar Eagel & Squire, P.C.; and those Investors that

19  are putative lead plaintiffs in the action *Marcia Kosstrin Trust and Professional Home*

20  *Improvements, Inc. Retirement Plan v. Direct Lending Investments, LLC, et al.*, Case No. 2:19-cv-

21  02452 (C.D. Cal.) and represented by putative class counsel Ahdoot and Wolfson PC and Milberg

22  Coleman Bryson Phillips Grossman PLC); and, on the other hand, (d) Deloitte & Touche, LLP,

23  Deloitte Tax LLP, and Deloitte & Touche LLP (Cayman Islands) (collectively, the "**Deloitte**

24  **Entities**").

25  　　　　Under the terms of the Amended Settlement Agreement, the Deloitte Entities will pay the

26  amount of thirty-one million U.S. dollars ($31,000,000) (the "**Settlement Amount**") to be

27  deposited into escrow account(s). The Settlement Amount less attorneys' fees and expenses in an

28  amount of up to $4.65 million to be determined by the Court in the SEC Action (the "**SEC Action**"

1  defined below) will be paid to Direct Lending Income Fund, L.P. ("DLIF") and DLIFF  in

2  accordance with the percentage split for recoveries as previously approved by the Court [Dkt. No.

3  318]. The portion of the Settlement Amount to DLIF will be subject to a reserve for potential taxes

4  with the remainder to be distributed to persons or entities that invested, through the purchase of

5  limited partnership interests or otherwise, in DLIF (the "**DLIF Investors**") that do not exclude

6  themselves from the Settlement pursuant to the procedures described in this Notice (the

7  "**Participating DLIF Investors**"). The separate portion of the Settlement Amount to DLIFF will

8  be distributed to creditors and persons or entities that invested, through the purchase of shares, in

9  DLIFF (the **"DLIFF Investors"**) in accordance with Cayman Islands law. In return: (a) the

10  Receiver, the JOLs, the DLI Entities, the Party Investors (the "**Claimants**"), and Participating

11  DLIF Investors  will release all claims against the Released Deloitte Entities[1] relating to or in

12  connection with the professional services provided by the Deloitte Entities to the DLI Entities

13  among other Released Claims ("**Released Claims**" defined below); (b) the Claimants,

14  Participating DLIF Investors and DLIFF Investors that do not exclude themselves from the

15  Settlement (the **"Participating DLIFF Investors"** (Participating DLIFF Investors and

16  Participating DLIF Investors are referred to together as "Participating Investors")) shall forever be

17  barred and enjoined by judgment of the Court in the SEC Action from commencing, prosecuting,

18  or seeking monetary relief or any other relief in any court, arbitration proceeding, or other forum

19  in the United States against the Deloitte Entities with respect to the Released Claims; and (c) any

20  final verdict or judgment obtained by or on behalf of any Claimant or Participating DLIF Investor

---

22  [1] "Released Deloitte Entities" means (a) the Deloitte Entities; (b) the Deloitte Entities'
predecessors, successors, Affiliates, Subsidiaries, divisions, assignors, and assignees; (c) each of

23  the foregoing's past, present, and future officers, directors, board and board members, principals,
partners, officials, employees, Subsidiaries, parents, Affiliates, divisions, joint venturers,

24  contractors, subcontractors, subrogees, offices, controlled Persons, predecessors, successors,
assignors, assigns, transferees, heirs, executors, shareholders, owners, investors, accountants,

25  auditors, advisors, trustees, fiduciaries, consultants, agents, representatives, nominees, attorneys,
partners, associates, senior counsel, managers, and members, in each case individually and

26  collectively, together with any of their respective predecessors and successors in interest; and (d)
each of the Deloitte Entities' insurers, reinsurers, excess insurers, underwriters, and claims

27  administrators. For avoidance of doubt, "Released Deloitte Entities" include, without limitation,
Deloitte & Touche, LLP, Deloitte Tax LLP, Deloitte & Touche LLP (Cayman Islands), Deloitte

28  LLP, Deloitte Consulting LLP, Deloitte Financial Advisory Services LLP, Deloitte Transactions
and Business Analytics LLP, Deloitte Services LP, and Deloitte USA LLP.

against any Third Party will be reduced [2] by the proportionate fault of the Released Deloitte Entities, unless governing law requires otherwise.

The Receiver filed the Amended Motion for (i) Approval of Settlement Agreement with the Deloitte Entities; (ii) Entry of Scheduling Order; and (iii) Entry of Order Approving Settlement (the "**Amended Approval Motion**"). Following a hearing held on June 14, 2021 on the prior motion for approval, the Parties subsequently amended the settlement, the terms of which are contained in the Amended Settlement Agreement.  The Receiver and the Deloitte Entities filed a Joint Status Conference Statement, describing ways in which the Amended Settlement Agreement was revised to address certain questions the Court in the SEC Action had raised about the original agreement.  The Parties to the Amended Settlement Agreement seek approval of the Court in the SEC Action of the terms of the Amended Settlement Agreement and entry of a final order approving the Settlement (the "**Order Approving Settlement**").  For further details on the Settlement, please consult the Notice of Settlement that you have been served along with this Notice. You may also obtain copies of the Amended Settlement Agreement, the proposed Order Approving Settlement, the Amended Approval Motion, the Joint Status Conference Statement, and supporting papers from the Court's docket in the SEC Action [ECF Nos _____] and from the Receiver's website (http://case.stretto.com/dli).

**Attorneys' Fees**: Counsel for the Party Investors have asked the Court in the SEC Action for a fee award based upon fifteen percent (15%) of the Settlement Amount (a total of $4.65 million).

**Deadlines**: The following deadlines apply to the Settlement:

Request exclusion from the Settlement:  _____, 2022

Submit an Objection: _____, 2022

Court Hearing on the Amended Approval Motion: _____, 2022

**Your legal rights are affected whether you act or do not act. Read this Notice carefully.**

---

[2] Third Party means any nonparty to the Amended Settlement Agreement that has been or may be sued by any of the Claimants or Participating Investors for claims relating to, or in connection with the DLI Entities.

| YOUR LEGAL RIGHTS AND OPTIONS IN THE SETTLEMENT | |
|---|---|
| **DO NOTHING** | If you agree to the Settlement and wish to participate in a distribution of proceeds from the Settlement, you do not need to do anything.  If you do nothing and the Court approves the Settlement, you will release all claims against the Deloitte Entities related in any way to the professional services provided by the Deloitte Entities to the DLI Entities.  You will also be barred by court order from pursuing your own lawsuit against the Deloitte Entities in the United States related in any way to the professional services provided by the Deloitte Entities to the DLI Entities. |
| **"OPT OUT" TO EXCLUDE YOURSELF FROM THE SETTLEMENT TERMS** | If you opt-out from the Settlement, you will get no payment. This is the only option that allows you to pursue your own lawsuit against the Deloitte Entities related in any way to the professional services provided by the Deloitte Entities to the DLI Entities.  If you opt-out, you can still object to the Settlement. |
| **SUBMIT AN OBJECTION** | You may object to the Settlement, the terms of the Amended Settlement Agreement, or the Order Approving Settlement, and request that the Court not approve the Settlement.  If you object to the Settlement, you must also elect whether to opt-out.  If you object to the Settlement and you do not exclude yourself, and your objection is overruled by the Court, you will participate in a distribution of proceeds from the Settlement and release and be barred from pursuing your own lawsuit against the Deloitte Entities related in any way to the professional services provided by the Deloitte Entities to the DLI Entities. |

The Court in *Securities and Exchange Commission v. Direct Lending Investments, LLC*, Case No. 19-cv-2188 (C.D. Cal.) (the "**SEC Action**") must decide whether to approve the

Settlement. The Court will consider whether the Amended Settlement Agreement is adequate, fair, and reasonable. Distributions will only be made if the Court approves the Settlement and after objections or appeals, if any, are resolved.

### THE SETTLEMENT BENEFITS - WHAT CAN YOU GET

1. **What does the Settlement provide?**

The Deloitte Entities have agreed to pay $31,000,000 in cash pursuant to the Settlement Agreement to be deposited into escrow account(s) to be identified by the Receiver.  The Settlement Amount less any Attorneys' Fees and expenses awarded by the Court in the SEC Action shall constitute the "**Net Settlement Amount.**"

2. **How will the Settlement be allocated?**

The Net Settlement Amount will be distributed to DLIF and DLIFF in accordance with the prior Court-approved Claims Allowance Stipulation to divide certain proceeds by the Receivership Entities between DLIF and DLIFF. A portion of the Net Settlement Amount will be distributed by the Receiver on a pro rata basis to Participating DLIF Investors. This pro rata distribution will be based on each DLIF Investor's Net Investment (Total Investment less pre-receivership returns). The separate portion of the Net Settlement Amount to be received by DLIFF will be distributed by the JOLs in accordance with Cayman Islands law.

The amount of the distribution from the Net Settlement Amount that you may receive cannot be determined at this time with accuracy because the distribution depends on whether other Investors exclude themselves from the Settlement and on the amount of Attorneys' Fees awarded to the counsel for the Party Investors.

3. **What am I giving up to potentially get a payment?**

Unless you exclude yourself from the Settlement pursuant to the procedures described in this Notice, you will have released all Released Claims ("**Released Claims**" defined below) against the Deloitte Entities, and you will be barred and enjoined from prosecuting any Released Claims against the Deloitte Entities.

Released Claims means, to the fullest extent that the law permits their release, all past, present, and future claims of any nature whatsoever, including, without limitation, all

claims, suits, actions, allegations, damages (including, without limitation, contributory, compensatory, punitive, exemplary, rescissory, direct, consequential or special damages, restitution, and disgorgement), liabilities, causes of action, complaints, lawsuits, responsibilities, demands, rights, debts, penalties, costs, expenses, fees, injunctive relief, attorneys' fees, expert or consulting fees, prejudgment interest, indemnities, duties, losses, and obligations of any kind, known or unknown, foreseen or unforeseen, whether or not concealed or hidden, asserted or unasserted, existing or contingent, direct or indirect, anticipated or unanticipated, asserted or that could have been asserted by, or on behalf of, for the benefit of, or in the name of the Claimants or Participating DLIF Investors, whether legal, contractual, rescissory, statutory, or equitable in nature, whether arising under federal, state, common or foreign law, that now exist, have ever existed, or might ever exist, from the beginning of time in perpetuity, that are based upon, arise out of, or are related in any way to:  (a) the professional services provided by the Deloitte Entities to the DLI Entities; (b) the conduct, transactions, or occurrences set forth in any of the pleadings in the Related Actions[3]; (c) the Related Actions; and (d) the conduct and subject matter of the Mediation[4], Settlement negotiations, and the negotiation of this Agreement (except for representations or obligations expressly included in this Agreement), including without limitation fraud in the inducement thereof.

Put simply, you will not be able to able to pursue any lawsuit or any claim against the Deloitte Entities that in any way is related to the services provided by the Deloitte Entities to the DLI Entities.

Additionally, if you do not exclude yourself from the Settlement pursuant to the procedures described in this Notice, you are agreeing to, and by order of the Court in the SEC Action will be required to, reduce the amount of any final verdict or judgment you obtain against any Third Party by an amount that corresponds to the percentage of responsibility of the Released Deloitte Entities for common damages.  However, where the law governing such final verdict or judgment ("**Other Governing Law**") requires a reduction in a different amount, the final verdict or judgment shall be reduced by an amount as provided by Other Governing Law.

---

[3] The Related Actions mean collectively the SEC Action, the Jackson Action, and the lawsuit titled *Marcia Kosstrin Trust and Professional Home Improvements, Inc. Retirement Plan v. Direct Lending Investments, LLC, et al.*, Case No. 2:19-cv-02452 (C.D. Cal.)

[4] Mediation means the mediation that took place on December 21 and 22, 2020 between the Receiver, JOLs, the DLI Entities, the Party Investors, and the Deloitte Entities, leading to the Settlement.

**EXCLUDING YOURSELF FROM THE SETTLEMENT**

If you do not want a payment from the Settlement, but you want to keep any right to bring a claim, sue, or continue to sue the Deloitte Entities on your own for any Released Claims, then you must take the following steps. This is called "excluding yourself" and is sometimes referred to as "opting out."

In the event that Investors that opt out of the Settlement exceed a certain threshold agreed upon by the parties to the Amended Settlement Agreement, the Deloitte Entities have the sole and exclusive right to withdraw from and terminate the Settlement. The Receiver and the JOLs believe that the Settlement is beneficial for all investors and creditors of the DLI Entities.

4. **How do I opt out?**

To exclude yourself from the Settlement, you must send a letter by e-mail stating that you want to be excluded from the Settlement in *Securities and Exchange Commission v. Direct Lending Investments, LLC*, Case No. 19-cv-2188 (C.D. Cal.). You must include your name, address, telephone number, and e-mail address on the letter. You must sign the letter and e-mail it so that it is received no later than _____, 2022 to:

TeamDLI@stretto.com

You cannot exclude yourself on the phone. You must submit the written exclusion request via e-mail as noted above.

If you ask to be excluded, you are not eligible to receive any Settlement payment. By opting out, you will not receive any benefit from the Settlement.

5. **If I do not opt out, can I sue the Deloitte Entities for the same claim later?**

No. Unless you exclude yourself, you give up the right to sue the Deloitte Entities for the Released Claims. If you have a pending lawsuit against any of the Deloitte Entities, speak to your lawyer in that case immediately. Remember, the exclusion date is _____, 2022.

6. **If I opt out, can I get money from the Settlement?**

No. If you exclude yourself, you will not be entitled to any distribution under the Settlement described here. But you may sue, continue to sue, or be part of a different lawsuit against the Deloitte Entities asserting a Released Claim.

1                                    **OBJECTING TO THE SETTLEMENT**

2          You can tell the Court in the SEC Action that you do not agree with the Settlement, the

3 Amended Settlement Agreement, or the Order Approving the Settlement.

4       **7. How do I object?**

5         If you wish to object to the terms of the Amended Settlement Agreement or the Order

6 Approving the Settlement, or you wish to appear at the Final Approval Hearing (the "**Final**

7 **Approval Hearing"** described below), you must submit a written objection via e-mail to

8 TeamDLI@stretto.com, no later than _____, 2022. All objections must:

9               a.      contain the name, address, telephone number, and an email address of the

10 Person filing the objection;

11               b.      contain the name, address, telephone number, and email address of any

12 attorney representing the Person filing the objection;

13               c.      be signed by the Person filing the objection, or his or her attorney;

14               d.      state, in detail, the basis for any objection;

15               e.      attach any document the Court should consider in ruling on the Amended

16                               Settlement Agreement and the Order Approving the Settlement;

17               f.      if you wish to appear at the Final Approval Hearing make a request to do

18                               so.

19         Please note that if you do not submit an objection by the time and in the manner provided

20 above, you will be deemed to have waived the right to object (including any right to appeal) and

21 shall be forever barred from raising such objections in the SEC Action or any other action or

22 proceeding. The Court may decline to permit anyone who fails to submit a written objection and

23 request to appear at the Final Approval Hearing from appearing at the Final Approval Hearing.

24 The Court will exercise discretion as to whether it wishes to hear from any person or entity who

25 fails to make a timely written objection and request to appear.

26         If you do not opt-out and you object to the Settlement, and your objection is overruled by

27 the Court, you will release and be barred from pursuing your own lawsuit against the Deloitte

28

Entities related in any way to the professional services provided by the Deloitte Entities to the DLI
Entities.

You do not need to appear at the Final Approval Hearing or take any other action to indicate
your approval.

## FINAL APPROVAL HEARING

The Court in the SEC Action will hold a hearing to decide whether to approve the Amended
Settlement Agreement and enter the Order Approving the Settlement.

8. **When and where will the Court decide whether to approve the Settlement?**

The Court will hold the Final Approval hearing on the Settlement at __:__ _.m. on
_____, 2022, in Courtroom 7D of the United States District Court for the Central District
of California, First Street Courthouse, 350 West 1st Street, Los Angeles, California 90012. The
purposes of the Final Approval Hearing will be to: (i) determine whether the terms of the Amended
Settlement Agreement should be finally approved by the Court; (ii) determine whether the Order
Approving the Settlement should be entered by the Court; (iii) rule upon any objections to the
Amended Settlement Agreement or the Order Approving Settlement; and (v) rule upon such other
matters as the Court may deem appropriate. At the hearing, the Court will consider whether the
Amended Settlement Agreement is adequate, fair, and reasonable.

9. **Do I need to come to the Final Approval Hearing?**

No. If you submit an objection, you do not have to come to the Court to talk about it. As
long as your written objection is received on time, the Court will consider it. If you wish to make
an appearance at the Final Approval Hearing, you must make a request to do so in your objection.

## IF YOU DO NOTHING

10. **What happens if I do nothing at all?**

You do not have to do anything to participate in the Settlement. If the Court in the SEC
Action grants final approval of the Settlement and enters the Order Approving the Settlement, you
will be bound by the Settlement (including the releases) and if you are a DLIF Investor, you will
receive payment on a pro rata basis as discussed above in Paragraph 2.

**IF YOU WANT MORE INFORMATION**

11. **How do I get more details on the Settlement?**

    This Notice does not provide all the details of the Settlement and the Amended Settlement Agreement. For further details, you can obtain copies of the Amended Settlement Agreement, the proposed Order Approving the Settlement, the Notice of Settlement, the Amended Approval Motion, the Joint Status Conference Statement, and other supporting papers from the Receiver's website (http://case.stretto.com/dli). Copies of these documents may also by requested by email, by sending the request to TeamDLI@stretto.com; or by telephone, by calling the Stretto Administrator at 855-885-1564.

Dated:                                   DIAMOND MCCARTHY LLP

                                          By:  /s/ Christopher D. Sullivan
                                             Christopher D. Sullivan, counsel
                                           For Bradley D. Sharp,
                                           Permanent Receiver

# EXHIBIT  I

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION – LOS ANGELES**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>DIRECT LENDING INVESTMENTS, LLC,<br><br>Defendant. | Case No. 2:19-cv-02188-DSF-MRW<br>Hon. Dale S. Fischer<br><br>**NOTICE TO DIRECT LENDING INCOME FEEDER FUND INVESTORS OF SETTLEMENT AND RIGHT OF EXCLUSION FROM SETTLEMENT** |

**You are receiving this Notice as an investor in Direct Lending Income Feeder Fund. Ltd. ("DLIFF").  A federal court in the United States authorized this Notice. This is not a solicitation from a lawyer.**

**The purpose of this Notice is to inform you that a proposed settlement has been reached with Deloitte & Touche, LLP, Deloitte Tax LLP, and Deloitte & Touche LLP (Cayman Islands) (the "Deloitte Entities").  Among the recoveries pursued on behalf of DLIFF, as well as Direct Lending Income Fund, L.P. ("DLIF"), are claims against the Deloitte Entities in respect of the provision of audit services by the Deloitte Entities.  Such claims are related to proceedings in the United States , including those pending in the U.S. District Court for the Central District of California with the case number 2:19-cv-02188-DSF-MRW (the "U.S. Receivership Proceedings" and the "U.S. Receivership Court" respectively).  If approved by the U.S. Receivership Court, the proposed settlement will result in monies being paid by the Deloitte Entities to escrow accounts established by the Receiver**

for DLIF, who will then distribute a portion of the monies to the Joint Official Liquidators (the "**JOLs**") of DLIFF (the "<u>Deloitte Settlement Monies</u>").  The portion of the Deloitte Settlement Monies distributed to DLIFF will be distributed to investors and creditors of DLIFF in accordance with applicable Cayman Islands law.

The purpose of this Notice is also to inform you of your right to exclude yourself from participation in the Settlement (the "<u>Settlement</u>" described below) pursuant to procedures explained in this Notice.  If you do nothing, and if the Receiver's request that the U.S. Receivership Court enter an order barring you from pursuing claims against the Deloitte Entities in the United States is granted, you will be barred from pursuing claims against the Deloitte Entities in the United States.  You may also decide to exclude yourself from the Settlement and the order barring you from pursuing claims against the Deloitte Entities in the United States will not apply.  However, if too many DLIFF and/or DLIF investors decide to take action and exclude themselves (or "opt-out"), the Deloitte Entities may withdraw from the Settlement.  If the Deloitte Entities withdraw from the Settlement, investors and creditors will lose the benefit of receiving the Settlement Monies.

<u>While you are entitled to opt out from the terms of the Settlement, opting out may risk the Deloitte Entities withdrawing from, and in effect, terminating the Settlement.  This notice explains the Settlement and the consequences of opting out.  You should consider consulting with your attorney regarding the Settlement, your choices, and this Notice.</u>

**The Settlement**: The following parties have reached an agreement (the "**<u>Amended Settlement Agreement</u>**") among and between, on the one hand, (a) Bradley D. Sharp, in his capacity as the Court-appointed Receiver (the "**<u>Receiver</u>**") for the estate of Direct Lending Investments, LLC, Direct Lending Income Fund, L.P., Direct Lending Income Feeder Fund, Ltd., DLI Capital, Inc., DLI Lending Agent, LLC, DLI Assets Bravo LLC (in Receivership) (collectively, the "**<u>DLI Receivership Entities</u>**"); (b) Bradley D. Sharp and Christopher D. Johnson, in their capacities as JOLs of Direct Lending Income Feeder Fund, Ltd. (in official liquidation) ("**<u>DLIFF</u>**") (DLIFF, together with the DLI Receivership Entities, the "**<u>DLI Entities</u>**");

(c) investors in the DLI Entities ("**Investors**") that participated in the Mediation (as defined in the Amended Settlement Agreement) and identified in Exhibit A to the Amended Settlement Agreement ("**Party Investors**") (specifically, those Investors represented by The Meade Firm P.C., Reiser Law P.C., and Levine Kellogg Lehman Schneider + Grossman LLP; those Investors that are plaintiffs in the action *Jackson v. Deloitte & Touche, LLP*, Case No. 20GDCV00419 (Ca. Super. Ct.) (the "**Jackson Action**") and represented by Nystrom Beckman & Paris LLP; those Investors represented by Bragar Eagel & Squire, P.C.; and those Investors that are putative lead plaintiffs in the action *Marcia Kosstrin Trust and Professional Home Improvements, Inc. Retirement Plan v. Direct Lending Investments, LLC, et al.*, Case No. 2:19-cv-02452 (C.D. Cal.) and represented by putative class counsel Ahdoot and Wolfson PC and Milberg Coleman Bryson Phillips Grossman PLC); and, on the other hand, (d) Deloitte & Touche, LLP, Deloitte Tax LLP, and Deloitte & Touche LLP (Cayman Islands) (collectively, the "**Deloitte Entities**").

Under the terms of the Amended Settlement Agreement, the Deloitte Entities will pay the amount of thirty-one million U.S. dollars ($31,000,000) (the "**Settlement Amount**") to be deposited into escrow account(s) for DLIF Investors; for DLIFF; and for payment of Court approved attorneys' fees. The Settlement will resolve all claims and potential claims by the Receiver, the JOLs and all DLIF investors who do not opt out.  The Settlement Amount, less attorneys' fees and expenses in an amount of up to $4.65 million to be determined by the U.S. Receivership Court, will be distributed to DLIFF and DLIF in accordance with the prior Court-approved Claim Allowance Stipulation to divide certain proceeds received by the Receivership Entities between DLIFF and DLIF. ("Claim Allowance Stipulation") http://case.stretto.com/dli, Dkt. No. 318-2). Any proceeds of the Settlement Amount received by DLIFF will be distributed by the JOLs in accordance with Cayman Islands law.  In return for the Settlement Amount, the Receiver, the JOLs, the DLI Entities, and the Party Investors (the "**Claimants**") will release all claims against the Deloitte Entities relating to or in connection with the professional services provided by the Deloitte Entities to the DLI Entities, among other Released Claims ("**Released Claims**" defined below).  In addition, the Settlement is conditioned upon the U.S. Receivership

Court in the SEC Action (the "**SEC Action**" defined below) entering an order barring those investors in DLIF and DLIFF (which, for the avoidance of doubt, includes their successors and assigns wherever referred to herein) who do not opt out from pursuing claims in the United States against the Deloitte Entities.  In addition, the Receiver, the JOLs and those investors in DLIF who do not opt out agree that any final verdict or judgment obtained with respect to certain claims they may pursue against a Third Party[1] will be reduced by the proportionate fault of the Released Deloitte Entities[2], unless governing law requires otherwise.

The Receiver filed the Amended Motion for (i) Approval of Settlement Agreement with the Deloitte Entities; (ii) Entry of Scheduling Order; and (iii) Entry of Order Approving Settlement (the "**Amended Approval Motion**").  Following a hearing held on June 14, 2021 on a prior motion for approval, the Parties subsequently amended the settlement, the terms of which are contained in the Amended Settlement Agreement.  The Receiver and the Deloitte Entities filed a Joint Status Conference Statement, describing ways in which the Amended Settlement Agreement was revised to address certain questions the U.S. Receivership Court had raised about the original agreement. The Parties to the Amended Settlement Agreement seek approval of the U.S. Receivership Court in the SEC Action of the terms of the Amended Settlement Agreement and entry of a final order approving the Settlement (the "**Order Approving Settlement**").  For further details on the Settlement, please consult the Notice of Settlement that you have been served along with this

---

[1] "Third Party" means any nonparty to the Amended Settlement Agreement that has been or may be sued by any of the Claimants or Participating Investors for claims relating to, or in connection with the DLI Entities.

[2] "Released Deloitte Entities" means (a) the Deloitte Entities; (b) the Deloitte Entities' predecessors, successors, Affiliates, Subsidiaries, divisions, assignors, and assignees; (c) each of the foregoing's past, present, and future officers, directors, board and board members, principals, partners, officials, employees, Subsidiaries, parents, Affiliates, divisions, joint venturers, contractors, subcontractors, subrogees, offices, controlled Persons, predecessors, successors, assignors, assigns, transferees, heirs, executors, shareholders, owners, investors, accountants, auditors, advisors, trustees, fiduciaries, consultants, agents, representatives, nominees, attorneys, partners, associates, senior counsel, managers, and members, in each case individually and collectively, together with any of their respective predecessors and successors in interest; and (d) each of the Deloitte Entities' insurers, reinsurers, excess insurers, underwriters, and claims administrators. For avoidance of doubt, "Released Deloitte Entities" include, without limitation, Deloitte & Touche, LLP, Deloitte Tax LLP, Deloitte & Touche LLP (Cayman Islands), Deloitte LLP, Deloitte Consulting LLP, Deloitte Financial Advisory Services LLP, Deloitte Transactions and Business Analytics LLP, Deloitte Services LP, and Deloitte USA LLP.

Notice.  You may also obtain copies of the Amended Settlement Agreement, the proposed Order Approving Settlement, the Amended Approval Motion, the Joint Status Conference Statement, and supporting papers from the Court's docket in the SEC Action [ECF Nos _____] and from the Receiver's website (http://case.stretto.com/dli).

**Attorneys' Fees**: Counsel for the Party Investors have asked the Court for a fee award based upon fifteen percent (15%) of the Settlement Amount (a total of $4.65 million).

**Deadlines**:

Request exclusion from the Settlement:  _____, 2022

Submit an Objection: _____, 2022

Court Hearing on the Amended Approval Motion: _____, 2022

**Your legal rights are affected whether you act or do not act. Read this Notice carefully.**

| YOUR LEGAL RIGHTS AND OPTIONS IN THE SETTLEMENT | |
| --- | --- |
| **DO NOTHING** | If you are in favor of the Settlement, which will provide millions of dollars to the investors and creditors of the DLI entities, you do not need to do anything.  If you do nothing and the U.S. Receivership Court approves the Settlement, you will be barred from pursuing your own lawsuit against the Deloitte Entities in the United States related in any way to the professional services provided by the Deloitte Entities to the DLI Entities. |
| **"OPT OUT" TO EXCLUDE YOURSELF FROM THE SETTLEMENT TERMS AND BEING BARRED** | If you believe that you have independent claims against the Deloitte Entities related to the DLI Entities that you intend to pursue in the United States, you must opt-out in order to preserve your right to pursue such claims.  Opting-out is the only way that you can preserve such claims if the Receivership Court approves the Settlement.  If you opt out, you can still object to the Settlement. |

| SUBMIT AN OBJECTION | You may object to the Settlement, the terms of the Amended Settlement Agreement, or the Order Approving Settlement and request that the U.S. Receivership Court not approve the Settlement.  If you object to the Settlement, you must also elect whether to opt-out.   If you do not opt-out and the U.S. Receivership Court overrules your objection, you will be barred from pursuing your own lawsuit against the Deloitte Entities in the United States related in any way to the professional services provided by the Deloitte Entities to the DLI Entities. |
|---|---|

The U.S. Receivership Court in *Securities and Exchange Commission v. Direct Lending Investments, LLC*, Case No. 19-cv-2188 (C.D. Cal.) (the "**SEC Action**") must decide whether to approve the Settlement. The U.S. Receivership Court will consider whether the Amended Settlement Agreement is adequate, fair, and reasonable. Distributions will only be made if the U.S. Receivership Court approves the Settlement and after objections or appeals, if any, are resolved.

### THE SETTLEMENT BENEFITS - WHAT CAN YOU GET

1. **What does the Settlement provide?**

The Deloitte Entities have agreed to pay $31,000,000 in cash pursuant to the Settlement Agreement to be deposited into escrow account(s) to be identified by the Receiver. The Settlement Amount, less any Attorneys' Fees and expenses awarded by the U.S. Receivership Court, shall constitute the "**Net Settlement Amount**".

2. **How will the Settlement be allocated?**

The Net Settlement Amount will be distributed to DLIF and to DLIFF in accordance with the prior Court-approved Claim Allowance Stipulation to divide certain proceeds received by the Receivership Entities between DLIFF and DLIF.  The proceeds of the Net Settlement Amount received by DLIFF will be distributed by the JOLs in accordance with  Cayman Islands law.

3. **What am I giving up if I do not opt out?**

If you do not opt out pursuant to the procedures described in this Notice, the U.S. Receivership Court will be asked to enter an order barring and enjoining you from prosecuting any claims against the Deloitte Entities in the United States based on the provision of audit services by the Deloitte Entities.

Put simply, you will not be able to able to pursue any lawsuit or any claim against the Deloitte Entities in the United States that in any way is related to the services provided by the Deloitte Entities to the DLI Entities.

**THE PROCESS FOR OPTING OUT**

If you want to keep any right to bring a claim, sue, or continue to sue the Deloitte Entities on your own in the United States, then you must take the following steps.  This is called "excluding yourself" or "opting out."  ***If too many investors opt out, the Deloitte Entities may withdraw from the Settlement. The Receiver and the JOLs believe that the Settlement is beneficial for all investors and creditors of the DLI Entities.***

4. **How do I opt out?**

To opt out, you must send a written letter by e-mail stating that you want to opt out and not be barred from pursuing claims you have and wish to bring in the United States against the Deloitte Entities related to their work for the DLI Entities.    Your email should reference this case as follows:  *Securities and Exchange Commission v. Direct Lending Investments, LLC*, Case No. 19-cv-2188 (C.D. Cal.).  You must include your name, address, telephone number, and e-mail address on the written letter. You must sign the written letter and e-mail it so that it is received no later than _____, 2022 to:

TeamDLI@stretto.com

You may not opt out over the telephone. You must submit the written exclusion request via e-mail as noted above.

5. **If I do not opt out, can I sue the Deloitte Entities for the same claim later in the United States?**

7

No. Unless you opt-out, you will be barred by order of the Court from suing the Deloitte Entities in the United States for claims based on the professional services provided by the Deloitte Entities to the DLI Entities. If you have a pending lawsuit against any of the Deloitte Entities, speak to your lawyer in that case immediately. Remember, the deadline to opt out is _____, 2022.

**OBJECTING TO THE SETTLEMENT**

You can also oppose approval of the Settlement, the Amended Settlement Agreement, or the Order Approving the Settlement by objecting.

6. **How do I object?**

If you wish to object to the terms of the Amended Settlement Agreement or the Order Approving the Settlement, or you wish to appear at the Final Approval Hearing (the "**Final Approval Hearing**" described below), you must submit a written objection via e-mail to TeamDLI@stretto.com, no later than _____, 2022. All objections must:

a. contain the name, address, telephone number, and an email address of the Person filing the objection;

b. contain the name, address, telephone number, and email address of any attorney representing the Person filing the objection;

c. be signed by the Person filing the objection, or his or her attorney;

d. state, in detail, the basis for any objection;

e. attach any document the Court should consider in ruling on the Amended Settlement Agreement and the Order Approving the Settlement;

f. if you wish to appear at the Final Approval Hearing make a request to do so.

Please note that if you do not submit an objection by the time and in the manner provided above, you will be deemed to have waived the right to object (including any right to appeal) and shall be forever barred from raising such objections in the SEC Action or any other action or proceeding in the United States. The U.S. Receivership Court may decline to permit anyone who

fails to submit a written objection and request to appear at the Final Approval Hearing from appearing at the Final Approval Hearing. The U.S. Receivership Court will exercise discretion as to whether it wishes to hear from any person or entity who fails to make a timely written objection and request to appear.

If you do not opt-out and you object to the Settlement, and your objection is overruled by the U.S. Receivership Court, you will be barred from pursuing your own lawsuit in the United States against the Deloitte Entities related in any way to the professional services provided by the Deloitte Entities to the DLI Entities.

You do not need to appear at the Final Approval Hearing or take any other action to indicate your approval.

**FINAL APPROVAL HEARING**

The Court in the SEC Action will hold a hearing to decide whether to approve the Amended Settlement Agreement and enter the Order Approving the Settlement.

7. **When and where will the Court decide whether to approve the Settlement?**

The Court will hold the Final Approval hearing on the Settlement at __:__ _.m. on _____, 2022, in Courtroom 7D of the United States District Court for the Central District of California, First Street Courthouse, 350 West 1st Street, Los Angeles, California 90012. The purposes of the Final Approval Hearing will be to: (i) determine whether the terms of the Amended Settlement Agreement should be finally approved by the U.S. Receivership Court; (ii) determine whether the Order Approving the Settlement should be entered by the United States Receivership Court; (iii) rule upon any objections to the Amended Settlement Agreement or the Order Approving Settlement; and (v) rule upon such other matters as the U.S. Receivership Court may deem appropriate. At the hearing, the U.S. Receivership Court will consider whether the Amended Settlement Agreement is adequate, fair, and reasonable.

8. **Do I need to come to the Final Approval Hearing?**

No. If you submit an objection, you do not have to come to the Court to talk about it. As

long as your written objection is received on time, the U.S. Receivership Court will consider it. If you wish to make an appearance at the Final Approval Hearing, you must make a request to do so in your objection.

<strong>IF YOU DO NOTHING</strong>

9. **What happens if I do nothing at all?**

You do not have to do anything.  If you do not object to the U.S. Receivership Court approving the Settlement and if you do not want to opt out, you do not need to do anything.  If you do nothing and the U.S. Receivership Court approves the Settlement, you will receive your portion of the Settlement Monies, to the extent you are entitled in accordance with Cayman Islands law, from the JOLs in the Cayman Islands.  If you do nothing and the U.S. Receivership Court grants final approval of the Settlement and enters the Order Approving the Settlement, you will be barred from pursuing claims against the Deloitte Entities in the United States based on the professional services provided by the Deloitte Entities to the DLI Entities.

<strong>IF YOU WANT MORE INFORMATION</strong>

10. **How do I get more details on the Settlement?**

This Notice does not provide all the details of the Settlement and the Amended Settlement Agreement. For further details, you can obtain copies of the Amended Settlement Agreement, the proposed Order Approving the Settlement, the Notice of Settlement, the Amended Approval Motion, the Joint Status Conference Statement, and other supporting papers from the Receiver's website (http://case.stretto.com/dli). Copies of these documents may also by requested by email, by sending the request to TeamDLI@stretto.com; or by telephone, by calling the Stretto Administrator at 855-885-1564.

Dated:                                                      DIAMOND MCCARTHY LLP

                                                            By: /s/ Christopher D. Sullivan
                                                            Christopher D. Sullivan, counsel
                                                            For Bradley D. Sharp,
                                                            Permanent Receiver